# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ACCELERON, LLC,

                    Plaintiff,

        v.

DELL, INC.,

                    Defendant.

Civil Action File No.

1:12-CV-04123-TCB

# BRIEF IN SUPPORT OF ACCELERON, LLC'S MOTION TO STRIKE
# DELL'S OBVIOUSNESS-BASED INVALIDITY CONTENTIONS

# TABLE OF CONTENTS

1. INTRODUCTION ..................................................................................1

2. STATEMENT OF FACTS .....................................................................2

3. ARGUMENT ........................................................................................7

   3.1. THIS COURT HAS AUTHORITY TO STRIKE IMPROPER INVALIDITY CONTENTIONS .............................................................................7

   3.2. OBVIOUSNESS-BASED INVALIDITY CONTENTIONS MUST MEET THREE REQUIREMENTS OR RISK BEING BARRED ..................................8

   3.3. DELL'S OBVIOUSNESS INVALIDITY CONTENTIONS FAIL TO MEET THE THREE REQUIREMENTS OF THE LOCAL PATENT RULES .................10

      3.3.1. DELL REFUSES TO IDENTIFY "EACH SUCH COMBINATION" THAT ALLEGEDLY RENDERS A '021 PATENT CLAIM OBVIOUS ..................................................................................11

      3.3.2. SINCE DELL REFUSES TO IDENTIFY "EACH SUCH COMBINATION," IT CANNOT POSSIBLY IDENTIFY A "MOTIVATION TO COMBINE" EACH SPECIFIC COMBINATION ..................................................................................14

      3.3.3. DELL ONLY PROVIDES 12 OBVIOUSNESS-BASED CLAIM CHARTS, WHICH THEMSELVES ARE IMPROPER, AND SAYS IT WOULD BE UNDULY BURDENSOME TO PROVIDE ANY MORE ......................................................................................17

      3.3.4. THIS COURT HAS PREVIOUSLY REJECTED DELL'S APPROACH TO OBVIOUSNESS-BASED INVALIDITY CONTENTIONS .......................................................................19

      3.3.5. DELL'S OBVIOUSNESS-BASED INVALIDITY CONTENTIONS SHOULD BE STRUCK NOW BECAUSE DELL CANNOT MEET THE STANDARD TO AMEND ......................................................23

4. CONCLUSION....................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Bayer Healthcare Pharms., Inc. v. River's Edge Pharms, LLC,*
  2015 U.S. Dist. LEXIS 179672 (N.D. Ga 2015)............................................ 8, 10

*Capital Sec. Sys. v. NCR Corp.,*
  2017 U.S. Dist. LEXIS 82678 (N.D. Ga. 2017)........................................ passim

*ChemFree Corp. v. J. Walter, Inc.,*
  250 F.R.D. 570 (N.D. Ga. 2007) .................................................... 7, 8, 9

*Coopervision, Inc. v. Ciba Vision Corp.,*
  480 F. Supp. 2d 884 (E.D. Tex 2007) .................................................24

*Emory Univ. v. Nova BioGenetics, Inc.,*
  2008 U.S. Dist. LEXIS 57642 (N.D. Ga. 2008).......................................25

*KSR Int'l Co. v. Teleflex Inc.,*
  550 U.S. 398 (2007) ................................................................14

*McKesson Info. Sols. LLC v. Epic Sys Corp.,*
  495 F.Supp.2d 1329 (N.D. Ga. 2007) ................................................7

*Mediatek, Inc. v. Freescale Semiconductor, Inc.,*
  2014 U.S. Dist. LEXIS 22442 (N.D. Cal. 2014).......................................10

*Mitchell v. Ford Motor Co.,*
  318 Fed. Appx. 821 (11th Cir. 2009) ...............................................24

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys.,*
  467 F.3d 1355 (Fed. Cir. 2006) .................................................. 8, 25

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.,*
  2008 U.S. Dist. LEXIS 123217 (N.D. Ga. 2008)......................................23

*Pactiv Corp. v. Multisorb Techs., Inc.,*
  2013 U.S. Dist. LEXIS 75585 (N.D. Ill. 2013)..................................... 20, 21

*STS Software Sys., Ltd. v. WitnessSys.,*
  2008 U.S. Dist. LEXIS 17667 (N.D. Ga. 2008)........................................8

# TABLE OF EXHIBITS

Exhibit 1 – Dell's Invalidity Contentions

Appendices to Exhibit 1:

## PATENTS THAT ARE PRIOR ART UNDER § 102(A), § 102(B), AND/OR  102(E)

Appendix A-1 - U.S. Patent No. 5317697A
Appendix A-2 - U.S. Patent No. 5331509A
Appendix A-3 - U.S. Patent No. 5390324A
Appendix A-4 - U.S. Patent No. 5488531A
Appendix A-5 - U.S. Patent No. 5530810A
Appendix A-6 - U.S. Patent No. 5938751A
Appendix A-7 - U.S. Patent Nos. 6157534A & 6742068
Appendix A-8 - U.S. Patent No. 6157974
Appendix A-9 - U.S. Patent No. 6169729B1
Appendix A-10 - U.S. Patent No. 6198642B1
Appendix A-11 - U.S. Patent No. 6208522B1
Appendix A-12 - U.S. Patent No. 6260155
Appendix A-13 - U.S. Patent No. 6289376B1
Appendix A-14 - U.S. Patent No. 6294848B1
Appendix A-15 - U.S. Patent No. 6295299B1
Appendix A-16 - U.S. Patent No. 6317345B1
Appendix A-17 - U.S. Patent No. 6324062B1
Appendix A-18 - U.S. Patent No. 6324608
Appendix A-19 - U.S. Patent No. 6325636
Appendix A-20 - U.S. Patent No. 6411506
Appendix A-21 - U.S. Patent No. 6452789B1
Appendix A-22 - U.S. Patent No. 6528904
Appendix A-23 - U.S. Patent No. 6564274B1
Appendix A-24 - U.S. Patent No. 6591324
Appendix A-25 - U.S. Patent No. 6594150B2
Appendix A-26 - U.S. Patent No. 6606253B2
Appendix A-27 - U.S. Patent No. 6678155B1
Appendix A-28 - U.S. Patent No. 6170028
Appendix A-29 - U.S. Patent No. 6747878B1

Appendix A-30 - U.S. Patent No. 6757748
Appendix A-31 - U.S. Patent No. 6804193B1
Appendix A-32 - U.S. Patent No. 6925052B1
Appendix A-33 - U.S. Patent No. 6950895B2
Appendix A-34 - U.S. Patent No. 6985967
Appendix A-35 - U.S. Patent No. 7032119
Appendix A-36 - U.S. Patent No. 7339786B2
Appendix A-37 - U.S. Patent No. 6,331,933
Appendix A-38 - U.S. Patent No. 6,065,053
Appendix A-39 - U.S. Patent No. 6,202,160
Appendix A-40 - U.S. Patent No. 6,026,458
Appendix A-41 - U.S. Patent No. 6681282
Appendix A-42 - U.S. Provisional Patent Application No. 60/179,734

## NON-PATENTS PUBLICATIONS THAT ARE PRIOR ART UNDER § 102(A) AND/OR § 102(B)

Appendix B-1 - 2013-07-12 [1015] -Preboot execution Environment (PXE) Specification Ver. 2.1
Appendix B-2 - CompactPCI® Hot Swap Specification PICMG 2.1 R1.0
Appendix B-3 - Data Storage for e-Business

## SYSTEMS/SERVICES THAT ARE PRIOR ART UNDER § 102(A), THE PUBLIC USE AND/OR OFFER FOR SALE PROVISIONS OF 35 U.S.C/ § 102(B), AND /OR THE PRIOR INVENTION PROVISION OF § 102(G)(2)

Appendix C-1 - Xyplex Network 9000
Appendix C-2 - Sun Netra
Appendix C-3 - HP 9000 Superdome
Appendix C-4 - Cubix Density
Appendix C-5 - Proliant 8500
Appendix C-6 - Motorola CPX8000
Appendix C-7 - Ketris 9000
Appendix C-8 - RLX
Appendix C-9 - QuantumNet
Appendix C-10 - Chipcom

Appendix C-11 - HP S-Series Server
Appendix C-12 - StorPoint NAS
Appendix C-13 – Starfire

## "ILLUSTRATIVE EXAMPLES" OF OBVIOUSNESS-BASED INVALIDITY CLAIM CHARTS

Appendix D-1 - Ketris System in Combination with Gasparik, PXE Specification, Haddock, Feuerstraeter, CompactPCI, Jackson, Pallotti, Hayward, Kociecki, Goodrich, Burckhartt, Golden, Wallach, Kornfeld, StorPoint NAS, Nouri, and/or Sheikh

Appendix D-2 - RLX System in Combination with Gasparik, PXE Specification, Haddock, Feuerstraeter, CompactPCI, Jackson, Pallotti, Hayward, Kociecki, Goodrich, Burckhartt, Golden, Wallach, Kornfeld, StorPoint NAS, Nouri, Sheikh, and/or the Ketris system

Appendix D-3 - ProLiant System in Combination with Gasparik, PXE Specification, Haddock, Feuerstraeter, CompactPCI, Jackson, Pallotti, Hayward, Kociecki, Goodrich, Burckhartt, Golden, Wallach, Kornfeld, StorPoint NAS, Nouri, Sheikh, and/or the Ketris system

Appendix D-4 - Chipcom System in Combination with Gasparik, PXE Specification, Haddock, Feuerstraeter, CompactPCI, Jackson, Pallotti, Hayward, Kociecki, Goodrich, Burckhartt, Golden, Wallach, Kornfeld, StorPoint NAS, Nouri, Sheikh, and/or the Ketris system

Appendix D-5 - Cubix Density System in Combination with Gasparik, PXE Specification, Haddock, Feuerstraeter, CompactPCI, Jackson, Pallotti, Hayward, Kociecki, Goodrich, Burckhartt, Golden, Wallach, Kornfeld, StorPoint NAS, Nouri, Sheikh, and/or the Ketris system

Appendix D-6 - Motorola CPX8000 System in Combination with Gasparik, PXE Specification, Haddock, Feuerstraeter, CompactPCI, Jackson, Pallotti, Hayward, Kociecki, Goodrich, Burckhartt, Golden, Wallach, Kornfeld, StorPoint NAS, Nouri, Sheikh, and/or the Ketris system

Appendix D-7 - Hipp '748 in Combination with Gasparik, PXE Specification, Haddock, Feuerstraeter, CompactPCI, Jackson, Pallotti, Hayward, Kociecki, Goodrich, Burckhartt, Golden, Wallach, Kornfeld, StorPoint NAS, Nouri,

Sheikh, and/or the Ketris system

Appendix D-8 - Hipp '506 in Combination with Gasparik, PXE Specification, Haddock, Feuerstraeter, CompactPCI, Jackson, Pallotti, Hayward, Kociecki, Goodrich, Burckhartt, Golden, Wallach, Kornfeld, StorPoint NAS, Nouri, Sheikh, and/or the Ketris system

Appendix D-9 - Hipp 636 in Combination with Gasparik, PXE Specification, Haddock, Feuerstraeter, CompactPCI, Jackson, Pallotti, Hayward, Kociecki, Goodrich, Burckhartt, Golden, Wallach, Kornfeld, StorPoint NAS, Nouri, Sheikh, and/or the Ketris system

Appendix D-10 - Hipp '878 in Combination with Gasparik, PXE Specification, Haddock, Feuerstraeter, CompactPCI, Jackson, Pallotti, Hayward, Kociecki, Goodrich, Burckhartt, Golden, Wallach, Kornfeld, StorPoint NAS, Nouri, Sheikh, and/or the Ketris system

Appendix D-11 - Hipp '967 in Combination with Gasparik, PXE Specification, Haddock, Feuerstraeter, CompactPCI, Jackson, Pallotti, Hayward, Kociecki, Goodrich, Burckhartt, Golden, Wallach, Kornfeld, StorPoint NAS, Nouri, Sheikh, and/or the Ketris system

Appendix D-12 - Gallagher in Combination with Gasparik, PXE Specification, Haddock, Feuerstraeter, CompactPCI, Jackson, Pallotti, Hayward, Kociecki, Goodrich, Burckhartt, Golden, Wallach, Kornfeld, StorPoint NAS, Nouri, Sheikh, and/or the Ketris system

Exhibit 2 – Acceleron's Aug. 14, 2017 letter to Dell

Exhibit 3 – Dell's Sept. 13, 2017 Response Letter

Exhibit 4 – Dell's Aug. 1, 2013 Letter to the Court

1. **INTRODUCTION**

Three-card Monte can be a fun game … for the dealer. But for the player (the mark) who always loses when it matters most, not so much.

On an exponentially larger scale, that is the game Dell is playing with its obviousness-based Invalidity Contentions, as Dell tells Acceleron that despite what Patent L.R. 4.3(a) requires, it is just too "burdensome to create detailed claim charts for the thousands of invalidating combinations" contained in its Invalidity Contentions. Ex. 1 at 65. Instead, Dell instructs Acceleron that later, when it matters most (*e.g.,* expert reports), Dell can "combine any of a number of prior art references" from its "thousands of invalidating combinations" to allege invalidity of the '021 patent. Until then, Acceleron is left in the dark like the mark on the street.

However, this three-card monte game that is Dell's obviousness-based Invalidity Contentions violates this Court's Patent Local Rules, which explicitly require Dell: (a) to specifically identify "each such combination" that allegedly makes a claim of the '021 patent obvious, (b) to state the motivation to combine "each such combination" of invalidating prior art, and (c) to provide a "chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found." Patent L.R. 4.3(a)(2) & (3). Because Dell purposefully ignores these three requirements, which are the equivalent of case management orders of this Court,

1

Dell's obviousness-based invalidity contentions should be struck—a remedy that is both appropriate and well within this Court's authority.

## 2. STATEMENT OF FACTS

On May 3, 2017, the Court reopened this case after having been administratively closed for three-and-a-half years while Dell took its best shot at invalidating the '021 patent in two separate *Inter Partes* Review (IPR) challenges at the U.S. Patent & Trademark Office (USPTO). *See* Doc. 49. Dell's IPR challenges failed to invalidate the '021 patent, as claims 3, 14-17, 20, 22-24 and 34-36 emerged unscathed and remain asserted as being infringed by Dell.[1]

Upon reopening the case, the Court ordered the parties to file a new scheduling order, which occurred on May 17, 2017 and was entered by the Court the following day. *See* Doc. 51 (Joint Motion) & Doc. 52 (Order). The events set out in the Scheduling Order were directed to claim construction proceedings for the '021 patent based on the Court's Patent Local Rules. Per the Order, Dell was required to serve its Patent L.R. 4.3 Invalidity Contentions by July 17, 2017.  *See* Doc. 52.

After discovery reopened on May 17, 2017, Dell waited until July 3, 2017 to serve seven third-party subpoenas designed to seek prior art to the '021 patent. *See*

---

[1] Only Dell's appeal for claim 3 of the '021 patent remains pending at the Federal Circuit.

Docs. 58-64. Dell set the compliance date for these seven third-party subpoenas as July 17, 2017—the same day its Invalidity Contentions were due. *See id.*

Dell did serve Invalidity Contentions on July 17, 2017, totaling about 11,543 pages of content. *See* Ex. 1. In them, Dell identifies 24 prior art references in Table 4 as allegedly anticipating the '021 patent. *Id.* at 28-29.

In Table 5, Dell alleges invalidity via obviousness (§ 103). *See id.* at 29. Table 5 spans 31 pages and contains 101 separate groupings of many prior art references allegedly "rendering the Asserted Claims [of the '021 patent] obvious, alone or in combination with other references." *Id.* at 30. Additionally, Dell proclaims that it can "rely on *any* combination of prior art references disclosed" in Table 5 or even any undisclosed "combinations [that happen to be] disclosed within the prosecution history of the references" contained in the 101 groupings of Table 5. *Id.* (emphasis added).



*Image Excerpt from Table 5 of Dell's Invalidity Contentions (page 31).*

The image shown right is an excerpt of Table 5 and depicts just one of the 101 groupings of prior art references in Table 5. This depicted grouping contains about 43 prior art references (although seven appear to be listed twice) and is representative of the other 100 groupings in

Table 5. *Id.* Dell states it can "rely on *any* combination of prior art references" from this and each of its 100 other groupings, which Dell admits could result in "thousands of invalidating combinations."[2] *Id.* at 31 & 65 (emphasis added). None of Dell's 101 groupings in Table 5 identifies "each such combination," that is, a single specific combination of prior art that allegedly invalidates a claim of the '021 patent on obviousness grounds. *See id.*

Instead of providing the claim charts required by Patent L.R. 4.3(a)(3) for "each such combination," Dell states "it would be unduly burdensome to create detailed claim charts for the thousands of invalidating combinations" from Table 5. *Id.* at 65. As such, Dell instead only "provide[s] illustrative examples of such invalidating combinations" in Exhibits D-1–12. *Id.* at 65. Dell also proclaims that its "inclusion of exemplary combinations does not preclude Dell from identifying *other* invalidating combinations as appropriate." *Id.* (emphasis added). The image below is an excerpt of the chart in Exhibit D-1. There is no specific identification of any particular alleged obviousness combination in the excerpt or elsewhere in Exhibit D-1. Plus, this excerpt is similar to the charts in Exhibits D-2 through D-12.

---

[2] By claiming it could rely on "any" combination, Dell's forecast of "thousands of invaliding combinations" is grossly conservative.  Reducing the 43 references in the image above to 36 by eliminating the seven duplicates leaves $3.72 \times 10^{41}$ possible combinations of prior art references (36 factorial) in just this one reference grouping.



*Page 1 of Exhibit D-1 of Dell's Invalidity Contentions.*

However, with respect to its 12 charts in Exhibits D-1–12, Dell concludes that it "would have been obvious to one of ordinary skill in the art *to combine any of a number* of prior art references, including *any combination* of those identified in Exhibits D-1–12, to meet the limitations of the Asserted Claims." *Id.* at 65.  But again, Exhibits D-1–12 do not actually identify any specific combination of references as allegedly invalidating any claim of the '021 patent.  Ex. D-1 – D-12 to Ex. 1.

Dell also indicates that it can go beyond what it even identified in its contentions and rely on content that it did not even cite.  Specifically, Dell states that it fully intends to be able "to rely on *uncited portions* of the prior art references, other publications, and testimony to establish bases for combinations of certain cited references that render the Asserted Claims obvious."  Ex. 1 at 3 (emphasis added). Elsewhere, Dell tells Acceleron that it "reserves the right to argue any claim limitations of the Asserted Claims are disclosed in *non-cited portions* of these references." *Id.* at 28 (emphasis added).

Upon examining Dell's Invalidity Contentions, Acceleron identified a number of fatal deficiencies in detail to Dell by letter. *See* Ex. 2, Acceleron's Aug. 14, 2017 Letter to Dell. Acceleron's Aug. 14 letter detailed Dell's failure to comply with Patent L.R. 4.3(a)(2) (hereinafter "Patent L.R." is shortened to "LPR") in not identifying "each such combination" and motivation to combine each such combination alleged by Dell to render a claim of the '021 patent obvious. *Id.*; LPR 4.3(a)(2). The Aug. 14 letter also chronicled Dell's failure to comply with LPR 4.3(a)(3) for failing to provide the required claim chart "identifying where specifically in each alleged item of prior art each element of each asserted claim is found." Ex. 2*;* LPR 4.3(a)(3).

Dell responded on Sept. 13, 2017. Ex. 3, Dell's Sept. 13, 2017 Response Letter.  In its response, Dell disputed Acceleron's Aug. 14 letter and refused to correct problems identified by Acceleron.  *See id.*

Since then, Dell has continued to supplement its Invalidity Contentions, including on July 21, 2017; Aug. 15, 2017; Sept. 28, 2017; Dec. 5, 2017; Jan. 19, 2018; Feb. 19, 2018; and most recently on March 9, 2018. Dell's supplements add even *more* content to its charts but still fail to address the fundamental deficiencies described herein. Dell's Invalidity Contentions now total about 12,127 pages of content. Yet, they still do not specify "each such combination" of alleged obviousness and respective motivations to combine therefor, as explicitly required by LPR

6

4(a)(2). And Dell also still has not provided a chart for each such combination, as required by LPR 4(a)(3).

### 3. ARGUMENT

#### 3.1. THIS COURT HAS AUTHORITY TO STRIKE IMPROPER INVALIDITY CONTENTIONS

This Court's Patent "Rules were adopted to 'facilitate the speedy, fair and efficient resolution of patent disputes.'" *ChemFree Corp. v. J. Walter, Inc.*, 250 F.R.D. 570, *573 (N.D. Ga. 2007)(quoting LPR 1.2(a)). The Patent Rules "require the disclosing party to include very specific information." *Capital Sec. Sys. v. NCR Corp.*, 2017 U.S. Dist. LEXIS 82678, *19 (N.D. Ga. 2017)(citing *ChemFree*, 250 F.R.D. at *573). The "Local Patent Rules have been characterized as an 'exercise in forced door closing' in the sense that they force the parties to take infringement and invalidity positions early in the litigation and stick to them." *McKesson Info. Sols. LLC v. Epic Sys Corp.,* 495 F.Supp.2d 1329, 1332 (N.D. Ga. 2007).

As such, the Federal Circuit has found that courts' local patent rules are "essentially a series of case management orders." *O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006). Thus, "[t]he court may impose any 'just' sanction for failure to obey a scheduling order, including 'refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohib-

iting that party from introducing designated matters in evidence.'" *Id.* (quoting former FED. R. CIV. P. 37(b)(2)(B), now Rule 37(b)(2)(A)(ii)). And on more than one occasion, this Court has done just that for violations of its Patent Local Rules. *See e.g., Capital Sec. Sys.*, 2017 U.S. Dist. LEXIS 82678 (striking NCR's late disclosure of invalidity contentions pursuant to FED. R. CIV. P. 37(c)(1) for failure to disclose "each [] combination" it claimed rendered the patents-in-suit obvious); *Bayer Healthcare Pharms., Inc. v. River's Edge Pharms, LLC,* 2015 U.S. Dist. LEXIS 179672 (N.D. Ga 2015) (Knowles, Spec. Master) (striking Defendant's invalidity contentions and motivations to combine as untimely because only first introduced in expert report) *adopted*, 2015 U.S. Dist. LEXIS 179671 (May, J.); *STS Software Sys., Ltd. v. WitnessSys.*, 2008 U.S. Dist. LEXIS 17667, *7 (N.D. Ga. 2008) (excluding motivations to combine in an obviousness analysis which first appeared in an expert witness' rebuttal report.), and *ChemFree*, 250 F.R.D. 570 (Camp, J.) (striking four prior art patent references in Defendant's improper invalidity contentions). Therefore, this Court has the authority to strike improper invalidity contentions pursuant to FED. R. CIV. P. 37(c)(1).

## 3.2. OBVIOUSNESS-BASED INVALIDITY CONTENTIONS MUST MEET THREE REQUIREMENTS OR RISK BEING BARRED

"[I]nvalidity contentions serve a function far more important than the mere identity and disclosure of potentially relevant evidence: they explain exactly *how* the

opposing party will use that evidence to invalidate the patents." *ChemFree*, 250

F.R.D. at 573 (emphasis in original). To that end, LPR 4.3(a)(2) & (3), which are as

follows, require invalidity contentions to contain at least three items, including

**(a)** the identity of each specific combination of prior art that makes a claim obvious,

**(b)** the purported motivation to combine that specific combination of prior art, and

**(c)** a chart identifying where specifically in each alleged combination of prior art

exactly where each element of each asserted claim is allegedly found:

> (2) For each item of prior art disclosed, whether each item of prior art
> anticipates each asserted claim or renders it obvious. If the disclosing
> party contends that a combination of items of prior art makes a claim
> obvious, *each such combination*, and the *motivation to combine* such
> items, *shall be identified*.
>
> (3) A *chart identifying where specifically* in each alleged item of prior
> art each element of each asserted claim is found;

LPR 4.3(a)(2) & (3) (color-coded emphasis added).

Judge Duffey has described LPR 4.3(a)(2) as "requir[ing a defendant] to iden-

tify for its claim that a combination of prior art items renders a claim obvious, '*each*

*such combination*, and the motivation to combine such items.'" *Capital Sec. Sys.*,

2017 U.S. Dist. LEXIS 82678 at *19 (emphasis in original). Judge Duffey has fur-

ther stated that the purpose of this rule "is undermined when parties are permitted to

make initial 'place holder' disclosures regarding infringement or validity and then

make substantial changes or additions to those contentions immediately prior to or

after the close of fact discovery." *Id.* For this reason, "[i]nvalidity contentions not disclosed are barred." *Bayer Healthcare Pharms.,* 2015 U.S. Dist. LEXIS 179672 at *16 (quoting *Mediatek, Inc. v. Freescale Semiconductor, Inc.*, 2014 U.S. Dist. LEXIS 22442, *3 (N.D. Cal. 2014)).

### 3.3. DELL'S OBVIOUSNESS INVALIDITY CONTENTIONS FAIL TO MEET THE THREE REQUIREMENTS OF THE LOCAL PATENT RULES

Although Dell's invalidity contentions total over 12,000 pages, they fail to satisfy the three requirements of LPR 4.3(a)(2) & (3) set out above. First, Dell fails to identify "each such combination" that allegedly makes any claim of the '021 patent obvious. Because Dell fails to do that, it likewise fails to disclose the "motivation to combine" the prior art references of "each such combination." And then finally, Dell just flat-out refuses to comply with LPR 4.3(a)(3), which requires Dell to chart "each such combination" and show where the elements of each asserted claim are allegedly specifically found within "each such combination" of prior art. Dell admits its disregard for LPR 4.3(a)(3) by claiming that it would just be too "burdensome to create detailed claim charts for the thousands of invalidating combinations," providing only 12 "exemplary," but still noncompliant, claim charts instead. *Id.* at 65 & 87. Each of these three intentional violations is addressed below in turn.

### 3.3.1. Dell Refuses to Identify "Each Such Combination" that Allegedly Renders a '021 Patent Claim Obvious

Section III(A) of Dell's Invalidity Contentions is entitled "Identification of Prior Art." Ex. 1 at 6. Tables 1, 2, and 3 in § III(A) contain prior art from which Dell creates Table 4 for its anticipation-based invalidity contentions (not subject to this motion) and Table 5 for Dell's obviousness-based invalidity contentions (the focus of this motion). *See id.* § III(A). Specifically, Table 1 contains Dell's list of 42 "Patents that are Prior Art under § 102(a), § 102(b), and/or § 102(e);" Table 2 contains Dell's list of three "Non-Patent Publications that are Prior Art under § 102(a) and/or § 102(b);" and Table 3 contains 14 entries of "Systems/Services that are Prior Art under § 102(a), the public use and/or offer for sale provisions of 35 U.S.C. § 102(b), and/or the prior invention provision of § 102(g)(2)." *Id.*

Table 4 is introduced in § III(C) under the heading: "Disclosure of Invalidity Due to Anticipation" and contains a list of 24 items that Dell describes as "Prior art references anticipating one or more of the Asserted Claims." *Id.* at 27-29. Dell further states that "the prior art references listed in Table 4 and charted in Appendices A-C each *anticipate* the Asserted Claims." *Id.* at 29-30 (emphasis added). But because this motion is not about anticipation under § 102, Table 4 is not the focus.

However, Table 5 is the focus of this motion and is found in § III(D) under the heading: "Disclosure of Invalidity Due to Obviousness." *Id.* at 29. In describing

Table 5, Dell states, "Prior art references rendering the Asserted Claims obvious, alone or in combination with other references, are outlined below and listed in Table 5." *Id.* at 30.  It is here where Dell goes off the rails.

Table 5 spans 31 pages and contains 101 obviousness combination groupings. *Id.* at 31-62. Plus, each grouping contains anywhere from about 25 to about 50 prior art references. *Id.* The image right (also depicted on page 3) is an excerpt of just *one* of the 101 groupings and appears to contain about 43 prior art references.



| Table 5: References Rendering Obvious at Least one Asserted Claim | |
|---|---|
| **Prior Art** | **Asserted Claim** |
| *Gallagher* combined with the knowledge of a POSITA, and/or in view of *Fung, Hipp '748, Hipp '636, Hipp '878, Hipp '506, Hipp '967, Jackson, Creason, Silverman, Wong, Pallotti, Papa, Manweiler, Kikinis, Treiber, Kociecki, Heath, Xyplex Network 9000, Sun Netra, HP 9000 Superdome, Cubix Density, Proliant 8500, Motorola CPX8000, Ketris 9000, Ketris 2000, RLX, QuantumNet, Chipcom, Starfire,* or *HP S-Series Server,* and/or in further view of *Ketris 9000, Ketris 2000, Chipcom, Motorola CPX8000, Bottom '895, Wong, Pallotti, Goodrich, Hayward, Kociecki,* or *Aldridge* | 3 |

*Image Excerpt from Table 5 of Dell's Invalidity Contentions (page 31).*

For each of the 101 groupings in Table 5, Dell announces it can "combine *any* of a number of prior art references," which it states could result in "thousands of invalidating combinations." *Id.* at 65 (emphasis added). Elsewhere Dell proclaims its intention to rely on "any combination of prior art references disclosed" in Table 5. *Id.* at 30.

In the grouping depicted above, Dell identifies no specific prior art combination that allegedly renders claim 3 obvious. So Acceleron has no way of knowing if Dell intends to rely on any of the exemplary obvious combination scenarios A, B, or

C depicted below, which represent just three of the "thousands of invalidating combinations" from the depiction above upon which Dell could possibly rely.



Not only could Dell choose any of these three exemplary combinations A, B, or C from just the one grouping shown above, but Dell proclaims that it could also choose "to rely on *any* combination of any prior art references disclosed herein." *Id.* at 30 (emphasis added). So Dell knows exactly what it is doing, or better yet, not doing—it is intentionally refusing to comply with LPR 4.3(a)(2).

### 3.3.2. Since Dell Refuses to Identify "Each Such Combination," It Cannot Possibly Identify a "Motivation to Combine" Each Specific Combination

As discussed above, a defendant must in its invalidity contentions identify the motivation to combine each such combination that it alleges to render a claim of the patent-in-suit obvious. *See* LPR 4.3(a)(2). The "motivation to combine" references is simply described as the "reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007).

Since Dell refuses to identify each combination of prior art that allegedly renders a claim of the '021 patent invalid, Dell cannot possibly disclose the motivation to combine each such combination. Thus, for this reason alone, Dell's Invalidity Contentions further violate LPR 4.3(a)(2).

Yet, Dell spends 78 pages trying to make it look like it meets the motivation-to-combine disclosure requirement. *See* Ex. 1 at 62-140. However, since Dell cannot identify a motivation-to-combine for a combination it did not specify in the first place, it instead creates two different sets of prior art buckets from which it says it could "combine any of a number of prior art references." *Id.* at 65. But Dell's bucket approach to addressing the motivation-to-combine disclosure requirement fails to satisfy its burden and has previously been rejected by this Court. *See infra.* § 3.3.4.

14

Dell's first set of prior art buckets has 13 buckets, each of an allegedly inter-related technology. Ex. 1 at 66. Into each of the 13 technology buckets, Dell throws in a number of prior art references from Tables 1-3 and describes why the reference allegedly belongs in that technology bucket. *Id.* at 68-87. Applying circular logic, Dell then summarily concludes that "it would have been obvious to one of ordinary skill in the art to combine any of a number of prior art references" from the 13 buckets based on its foundational assertion that the references are all allegedly from inter-related technologies. *Id.* at 65. However, this approach hardly rises to the level of specificity and detail required by LPR 4.3(a)(2).

Dell's second set of prior art buckets has seven buckets. The first six are based on a primary prior art reference from Table 3, and the seventh is based on a related group of patents (the Hipp patents) from Table 1. *See* Ex. 1 at 87-141. Dell fills each of these seven buckets with secondary prior art references from Tables 1-3 and then at only a high level states that all the secondary references "relate to the same area of technology" and "are from the same field of endeavor" as the primary prior art reference of that particular bucket. *Id.* at 88-89. This, according to Dell, apparently satisfies its motivation to combine disclosure for any secondary reference that may fall into that primary reference's bucket.

15

Thereafter, Dell provides some "exemplary combinations" for each of the seven prior art buckets. *See id.* at 87 & 98-141. However, Dell makes perfectly clear that it is "not limited to only those exemplary claims or limitations" with respect to the untold number of combinations that may exist for each of the seven prior art buckets.  *Id.* at 87. That is, Dell explicitly states that "inclusion of exemplary combinations does not preclude Dell from identifying other invalidating combinations as appropriate." *Id.* at 65.  And, when discussing "exemplary combination," Dell declares that it intends to be able to further rely upon "any one or more of the references" identified in its Invalidity Contentions.  *Id.* at 98, 103, 110, 116, 122, 130, 138.  Thus, Acceleron has no way of knowing whether Dell will actually rely on any of the "exemplary combinations" or whether Dell will pull a switcheroo at the last minute when it matters most (*e.g.,* in an expert report) in favor of some other undisclosed combination. That is why the "exemplary combinations" in § III(E) are not really meaningful, and it is unfair for Acceleron to have to expend resources on even the "exemplary combinations" only to have the rug pulled out from under it later. Thus, this second set of buckets also fails to constitute the proper motivation to combine disclosure required by LPR 4.2(a)(3).

### 3.3.3. DELL ONLY PROVIDES 12 OBVIOUSNESS-BASED CLAIM CHARTS, WHICH THEMSELVES ARE IMPROPER, AND SAYS IT WOULD BE UNDULY BURDENSOME TO PROVIDE ANY MORE

Not only does Dell intentionally ignore LPR 4.3(a)(2) in not providing "each such combination" that allegedly renders the '021 patent obvious, but it also ignores LPR 4.3(a)(3), which simply requires a defendant to chart each combination of prior art references that it contends renders an asserted patent claim to be invalid. *See* LPR 4.3(a)(3). That is, if a claim is alleged to be invalid as being obvious, Dell is required to provide a detailed chart that specifically maps each element of the allegedly-invalid claim to the prior art reference or combination of prior art references. *See id.* Dell did not do this. In fact, Dell will not even dispute that it did not provide such charts for "each such combination" of prior art references, for it explicitly admits that "it would be unduly burdensome to create detailed claim charts for the thousands of invalidating combinations…." Ex. 1 at 65.

Instead, Dell only provides 12 charts in Exhibits D-1—12 as "illustrative examples of such invalidating combinations." *Id.* These 12 exemplary charts are deficient and should be struck for failure to identify "each such combination" that allegedly renders a claim of the '021 patent invalid, as required by LPR 4.3(a)(2).



*Page 1 of Exhibit D-1 of Dell's Invalidity Contentions.*

The image above is an excerpt of the heading of Dell's chart for Exhibit D-1, and it does not specify any specific combination of prior art references. Plus, in the chart that follows in Exhibit D-1 (which is also true in Exhibits D-2 through D-12), there is no way to tell what combination(s) Dell intends to assert.  Thus, Dell could possibly allege invalidity based on *any combination of:* (1) the Ketris system plus one or more of:  (2) Gasparik, (3) PXE Specification, (4) Haddock, (5) Feuerstraeter, (6) CompactPCI, (7) Jackson, (8) Pallotti, (9) Hayward, (10) Koceicki, (11) Goodrich, (12) Burckhartt, (13) Golden, (14) Wallach, (15) Kornfeld, (16) StorPoint NAS, (17) Nouri, *and/or* (18) Sheikh. Ex. D-1 to Ex. 1.

The three images below are just three exemplary possible combination scenarios for Exhibit D-1. However, because Dell does not limit its possible combinations, (just like in Table 5), that means there are 6,402,373,705,727,997 (over 6 quadrillion) additional separate theoritical possibilities (18 factorial) for this chart in Exhibit D-1 alone!



But Dell does not stop there. Dell goes on to state that its "inclusion of exemplary combinations [in Exhibits D-1—12] does not preclude Dell from identifying other combinations as appropriate," without indicating when that might possibly be. Ex. A at 65. Because nowhere in Dell's Invalidity Contentions, including in Exhibits D-1—12, does Dell identify each such contention, *all* of Dell's obviousness-based invalidity contentions should be struck.

### 3.3.4. THIS COURT HAS PREVIOUSLY REJECTED DELL'S APPROACH TO OBVIOUSNESS-BASED INVALIDITY CONTENTIONS

This Court has previously considered and rejected similar non-compliant invalidity contentions like Dell's. Just last year, Judge Duffey in *Capital Sec. Sys.*, 2017 U.S. Dist. LEXIS 82678, granted a motion to strike NCR's late disclosure of

invalidity contentions pursuant to FED. R. CIV. P. 37(c)(1) for failure to disclose "each [] combination" it claimed rendered the patents-in-suit obvious. This Court found that NCR "did not identify specific obviousness combinations or motivations to combine specific groups of references." *Id.* at *4. Instead, NCR "relied on a small set of primary references, and a few *buckets* of secondary references, each corresponding to one or more features missing from the primary references." *Id.* at *18 (emphasis in original). Judge Duffey concluded that NCR failed to comply with the plain language of LPR 4.3(a)(2) by failing to disclose "each combination" that rendered the patents-in-suit obvious and also by failing to "identify the motivation to combine each such combination of prior art." *Id.* at 20.

In striking NCR's invalidity contentions, Judge Duffey relied on *Pactiv Corp. v. Multisorb Techs., Inc.,* 2013 U.S. Dist. LEXIS 75585 (N.D. Ill. 2013), where the court struck an expert report because it contained new invalidity arguments based on combinations and citations of prior art not disclosed previously in invalidity contentions. *See Capital Sec. Sys.*, 2017 U.S. Dist. LEXIS 82678 at *19-20. Just like Dell, Pactiv's contentions indicated the intention to rely on "uncited portions of prior art references" and "other publications" to show obviousness. *Pactiv Corp.*, 2013 U.S. Dist. LEXIS 75585 at *9.  The court rejected Pactiv's contentions that contained only an "exemplary claim chart," with Pactiv's reservation of right for later

providing "expert testimony on combining the cited art." *Id.* at *8. The *Pactiv* court concluded that an "exemplary chart that allows Pactiv to rely on uncited portions of prior art is contrary to the high level of specificity required by this rule," which Judge Duffey concluded to be "substantially similar" to LPR 4.3 in this case. *Id.* at *9; *see also Capital Sec. Sys.*, 2017 U.S. Dist. LEXIS 82678 at *19-20.

Just like the invalidity contentions described in *Capital Sec.* and *Pactiv*, Dell's obviousness-based invalidity contentions, as established above, do not "identify specific obviousness combinations or motivations to combine specific groups of references." *Id.* at *4.  Just like in *Pactiv*, where Pactiv's obviousness-based invalidity charts were only "exemplary claim chart[s]," which were struck, Dell's are only "illustrative examples." *Pactiv Corp.*, 2013 U.S. Dist. LEXIS 75585 at *9; Ex. A at 65. As Judge Duffey rejected NCR's bucket approach to obviousness, which enabled NCR to avoid identifying specific combinations and motivations to combine therefore, so should this Court reject Dell's similar bucket approach. *Capital Sec. Sys.*, 2017 U.S. Dist. LEXIS 82678 at *19; *See supra.* § 3.3.2.

Similarly, like in *Pactiv*, Dell has made clear it intends to be able to rely on *uncited portions* of prior art references. *Pactiv Corp.*, 2013 U.S. Dist. LEXIS 75585 at *9; Ex. 1 at 3 ("Dell further reserves the right to rely on *uncited portions* of the

prior art references, other publications…")(emphasis added); and 28 ("The cited references may contain other disclosures of each claim element as well, and Dell reserves the right to argue any claim limitations of the Asserted Claims are disclosed in *non-cited portions* of these references.") (emphasis added). Just like the *Pactiv* court expressly rejected such hide-the-ball tactics, so should the Court do here.

In response to Acceleron's August 14, 2017 letter that first brought this issue to Dell's attention, Dell tried to distinguish *Capital Security Systems*, *Pactiv Corp.,* and *Bayer Healthcare* on the basis that they each involved the disclosure of new invalidity grounds in an expert report. Ex. C at 3. Since this case has not yet reached expert discovery on invalidity, Dell argued those cases are not yet applicable. *See id.*

Dell's argument misses the point. Quite simply, because Dell's invalidity contentions are non-compliant in the first instance, Dell cannot possibly submit an expert report later in this case that will not be the very situations contemplated in *Capital Security Systems*, *Pactiv Corp.,* and *Bayer Healthcare*. And Dell provides no reason to wait for what will inevitably happen when the issue can be resolved much more quickly and efficiently now and at a far lower cost.  Plus, doing so now actually will reduce the number of disputed issues between the parties and greatly streamline this case for trial.  Furthermore, Acceleron has no way of preparing for the actual

obviousness-based invalidity assertions that Dell will ultimately make. Thus, Dell's obviousness-based invalidity contentions should be struck now.

### 3.3.5. DELL'S OBVIOUSNESS-BASED INVALIDITY CONTENTIONS SHOULD BE STRUCK NOW BECAUSE DELL CANNOT MEET THE STANDARD TO AMEND

All Dell had to do was identify the specific prior art combinations it believed rendered obvious a claim of the '021 patent. Notably, Dell was able to do just that in its IPR petition to the USPTO back in 2013, so why not here, especially after previously telling this Court back in 2013 that administratively closing the case then to permit focus on its IPRs would later "simplify issues for the Court" now? Ex. 4, Dell's Aug. 1, 2013 letter to the Court. Of course the answer is that Dell does not want to spell out its obviousness-based invalidity contentions in detail because it intentionally wants to leave Acceleron in the dark for as long as possible.

And now, Dell cannot simply amend its obviousness contentions to identify "each such combination" and to provide a "motivation to combine such items" from its July 17, 2017 disclosure, because this court "has interpreted Rule 4.5(b) to require a showing of 'good cause,' meaning that a party has been diligent in amending its contentions after the discovery of new evidence." *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 2008 U.S. Dist. LEXIS 123217, *8-9 (N.D. Ga. 2008) (Evans, J.), *reversed and vacated on other grounds*, 695 F.3d 1285 (Fed. Cir. 2012). Dell

cannot meet this standard because intentional noncompliance cannot be laundered in to "good cause." *See Coopervision, Inc. v. Ciba Vision Corp.*, 480 F. Supp. 2d 884, 887 (E.D. Tex. 2007) (noting that the point of amendment is "not to create supposed loopholes through which parties may practice litigation by ambush.").

Plus, the parties have already completed all claim construction briefing and have already conducted the *Markman* hearing back in January with Special Master Bill Needle.  Upon submission of Mr. Needle's report to the Court, the parties will have only a short time to submit any objections. FED. R. CIV. P. 53. And after the Court enters a claim construction ruling, the parties will move immediately into a brief 45-day period of discovery, followed by the submission of expert reports on invalidity (among other issues), depositions, and summary judgment. *See* LPRs 6.7 – 7.2.  Thus, in view of the present stage of the case, there is no good cause to allow Dell to amend its contentions to overcome these glaring deficiencies, which are likely tactical in nature.

Consequently, when Dell, through its expert report, for the first time discloses a specific obviousness combination upon which it relies, it will not be "substantially justified" or able to show this intentional calculated decision was harmless to Acceleron. *See Capital Sec. Sys.*, 2017 U.S. Dist. 82678 at *21 (citing *Mitchell v. Ford Motor Co.,* 318 Fed. Appx. 821, 825 (11th Cir. 2009)). That is, Dell cannot justify

its purposeful three-card monte game for obviousness-based invalidity designed to obscure Dell's true obviousness grounds until after the close of discovery. Clearly, Acceleron will be harmed in being prevented from focusing its discovery efforts on the central and ultimate obviousness-based invalidity issue that Dell will assert.

Thus, the effect of Dell's intentional noncompliance with this Court's Local Patent Rules, which "are essentially a series of case management orders," is that Dell should be prohibited from "introducing designated matters in evidence." *O2 Micro Int'l, Ltd.*, 467 F.3d at 1363; *see also Capital Sec. Sys.*, 2017 U.S. Dist. LEXIS 82678 at *12-13 (striking NCR's noncompliant invalidity contentions based on Fed. R. Civ. P. 37(c)(1)) and *Emory Univ. v. Nova BioGenetics, Inc.*, 2008 U.S. Dist. LEXIS 57642, *8 (N.D. Ga. 2008) (Thrash, J.) (finding a party's complete disregard for the Patent Local Rules to support excluding the introduction of any evidence to challenge the patent's validity).

## 4. CONCLUSION

Because Dell has purposefully violated this Court's Patent Local Rules by providing non-compliant obviousness-based invalidity contentions, so as to keep Acceleron in the dark until after the close of fact discovery, *all* of Dell's obviousness-based invalidity contentions (including Table 5 and Exhibits D-1—12) should be struck by this Court pursuant to Fed. R. Civ. P. 37(c)(1).

Respectfully submitted this 15th day of March, 2018.

/s/ N. Andrew Crain

N. Andrew Crain
Georgia Bar No. 193081
*andrew.crain@thomashorstemeyer.com*
Dan R. Gresham
Georgia Bar No. 310280
*dan.gresham@thomashorstemeyer.com*
Eric Maurer
Georgia Bar No. 478199
*eric.maurer@thomashorstemeyer.com*
Robert D. Gravois
Georgia Bar No. 600183
*robert.gravois@thomashorstemeyer.com*
**THOMAS | HORSTEMEYER, LLP**
3200 Windy Hill Rd SE
Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Plaintiff Acceleron, LLC*

## **LOCAL RULE 7.1D CERTIFICATION**

The undersigned hereby certifies that the foregoing was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

*/s/ N. Andrew Crain*
N. Andrew Crain
Georgia Bar No. 193081
*Attorney for Plaintiff Acceleron, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| ACCELERON, LLC, <br><br> Plaintiff, <br><br> v. <br><br> DELL, INC., <br><br> Defendant. | Civil Action File No. <br><br> 1:12-CV-04123-TCB |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 15, 2018, the foregoing was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

/s/ N. Andrew Crain
N. Andrew Crain
Georgia Bar No. 193081
*Attorney for Plaintiff Acceleron, LLC*

4831-3079-2798, v. 9