## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ACCELERON, LLC,

               Plaintiff,

   v.

DELL, INC.,

     Defendant.

Civil Action File No.

1:12-CV-04123-TCB

**BRIEF IN SUPPORT OF ACCELERON, LLC'S MOTION TO STRIKE
PORTIONS OF DR. WILLIAM MICHALSON'S INVALIDITY REPORTS**

# TABLE OF CONTENTS

1.  INTRODUCTION ..................................................................................1

2.  FACTUAL BACKGROUND.................................................................3

3.  APPLICABLE LEGAL STANDARDS.................................................6

    3.1.  Judicial Estoppel........................................................................6

    3.2.  Rule 26(a)(2) Disclosures of Expert Opinions.....................7

4.  ARGUMENT.........................................................................................8

    4.1.  The Court Should Strike the Motivations-to-Combine Raised in the Initial Invalidity Report that Were Not Disclosed in Dell's Invalidity Contentions ...........................................................8

    4.2.  The Court Should Strike the Previously Undisclosed Opinions Belatedly Raised in Dr. Michalson's Rebuttal Report.......................10

        4.2.1.  Paragraphs 86-87 of the Rebuttal Invalidity Report add previously undisclosed modifications to the asserted prior art to allegedly render claim 3 obvious. .........................................10

        4.2.2.  Paragraphs 108, 109 and 111 of the Rebuttal Invalidity Report add previously undisclosed modifications to the asserted prior art to allegedly render claim 3 obvious. .............12

        4.2.3.  Paragraphs 140-141 of the Rebuttal Invalidity Report point to previously uncited structures as being the recited "caddies" of claim 3................................................14

        4.2.4.  Paragraph 153 of the Rebuttal Invalidity Report adds previously undisclosed modifications to the asserted prior art..............................................................16

        4.2.5.  Paragraphs 234-235 of the Rebuttal Invalidity Report add two previously undisclosed bases to challenge claim 20..........17

4.2.6. Paragraph 255 of the Rebuttal Invalidity Report relies upon a previously undisclosed combination of alleged prior art references that Dell is not permitted to assert............................19

4.2.7. Paragraphs 315, 317, 324, 329, 334, 340, 346, 351, and 356 raise new theories for claim element 24[e].............................21

4.2.8. Paragraphs 127, 155, 250-251, 257-258, 274, 330, 336, and 341 add new motivations to combine the asserted prior art. ....23

4.3. The Opinions First Disclosed in the Rebuttal Invalidity Report Could Have Been Disclosed in the Initial Report and Result in Severe Prejudice to Acceleron ...........................................................24

5. CONCLUSION..............................................................................................25

# TABLE OF AUTHORITIES

**CASES**

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
   876 F.3d 1350 (Fed. Cir. 2017) ...................................................................5

*Davis v. Wakelee*,
   156 U.S. 680 (1895) .....................................................................................6

*In re Coastal Plains*, *Inc.*,
   179 F.3d 197 (5th Cir. 1999) .......................................................................6

*ITT Corp. v. Xylem Grp., LLC*,
   No. 1:11-cv-3669-WSD, 2012 U.S. Dist. LEXIS 197312 (N.D. Ga. 2012).........7

*New Hampshire v. Maine*,
   532 U.S. 742 (2001) .................................................................................6, 7

*Pegram v. Herdrich*,
   530 U.S. 211 (2000) .....................................................................................6

*Stephenson v. Wyeth LLC*,
   2011 U.S. Dist. LEXIS 119013 (D. Kan. 2011)...........................................7

*STS Software Sys., Ltd. v. Witness Sys.*,
   No. 1:04-CV-2111-RWS, 2008 U.S. Dist. LEXIS 17667 (N.D. Ga. 2008) .........7

**STATUTES**

FED. R. CIV. P. 26(a)(2)(B)(i)                                                   7

FED. R. CIV. P. 26(a)(2)(C)(ii)                                                  7

Fed. R. Civ. P. 37(c)(1)                                                         8

# TABLE OF EXHIBITS

Exhibit A – Transcript (Redacted) of January 30, 2019 Hearing

Exhibit B – Expert Report of William Michalson, Ph.D. on the Invalidity of the Asserted Claims of U.S. Patent No. 6,948,021 ("Initial Invalidity Report")

Exhibit C – Expert Rebuttal Report of William Michalson, Ph.D. on the Invalidity of the Asserted Claims of U.S. Patent No. 6,948,021 ("Rebuttal Invalidity Report")

Exhibit D – Initial Expert Report of William O. Putnam Regarding Validity of U.S. Patent No. 6,948,021

Exhibit E – U.S. Patent No. 6,948,021

Exhibit F – Relevant Excerpts of Transcript of Deposition of Dr. William Michalson on June 20, 2019

Exhibit G – Table of Previously Undisclosed Motivations-to-Combine Asserted in Michalson's Initial Invalidity Report

Exhibit H – Table of Previously Undisclosed Motivations-to-Combine Asserted in Michalson's Rebuttal Invalidity Report

Exhibit I – Dell's Revised Roadmap for Previously Disclosed Obviousness Combinations and Motivations to Combine

## 1.  INTRODUCTION

The Court should strike certain portions of the Rule 26(a)(2) reports of Dell's technical expert, Dr. William Michalson, for containing untimely disclosures of opinions on the alleged invalidity of the '021 Patent. At the hearing for Acceleron's motion to strike Dell's obviousness-based invalidity contentions for failing to comply with the fundamental disclosure requirements of Patent Local Rule 4.3 (Doc. 108), the Court found that "Dell did not comply with the local patent rule at all in what they provided. I especially take umbrage with statements such as, you know, these are just exemplary, and if we really want to we can come back and mix whatever permutations and combinations we can think of. This is not how this works." Ex. A at 19:16-22.

Despite finding that Dell failed to comply with Patent L.R. 4.3, the Court gave Dell a second chance to disclose its obviousness case and adopted Dell's proposal regarding the invalidity arguments Dell could assert. Doc. 238 at 2. Under Dell's proposal, which the Court incorporated into its Order, Dell agreed to limit its obviousness challenges to the 56 specific prior art combinations that it identified in an email to the Court against the eight asserted claims. *Id.* at Ex. B, 3-4. Importantly, Dell also agreed that "each motivation-to-combine [the prior art] must have been identified in the cover pleading [of Dell's invalidity contentions]." *Id.* at 4-5.

Dr. Michalson's reports on invalidity, however, fail to comply with the Court's Order and Rule 26(a)(2). First, Dr. Michalson's initial expert report on invalidity ("the Initial Invalidity Report") asserts motivations to combine the asserted prior art that are not disclosed in Dell's invalidity contentions. This new information violates the Court's Order requiring all motivations-to-combine to have been disclosed in Dell's invalidity contentions. *See* Doc. 238 at Ex. B, 3-4.

Second, Dr. Michalson's rebuttal expert report on invalidity ("the Rebuttal Invalidity Report") raises a previously undisclosed combination of alleged prior art. Specifically, Dr. Michalson combines a Transmeta Design Guide with the Hipp and Starfire references to assert that claim 20 is obvious. Ex. C at ¶ 255. The Transmeta Design Guide is not included in any of the combinations that Dell is permitted to assert. *See* Doc. 238 at Ex. B, 4. In fact, Dell had failed to identify or produce the Transmeta Design Guide during discovery, and Acceleron first learned of this reference only when Dr. Michalson included it as an exhibit to his Rebuttal Invalidity Report. *See* Ex. C at Ex. B.

Third, in violation of Rule 26(a)(2), Dr. Michalson's Rebuttal Invalidity Report raises new invalidity opinions that were not previously disclosed in his Initial Invalidity Report. As such, Acceleron's technical expert, Mr. William Putnam, is unable to opine on the untimely opinions that were raised only after he responded to

Initial Invalidity Report. Accordingly, Acceleron will suffer severe prejudice as a result of Dr. Michalson's untimely disclosure of new opinions if Dell is allowed to rely upon them for summary judgment or at trial.

After the Court allowed Dell to raise obviousness challenges despite finding that Dell's Invalidity Contentions "did not comply with the local patent rule at all in what they provided," Ex. A at 19:16-18, one would have expected Dell to be especially diligent in complying with the Court's Order and Rules. Instead, Dell has only been emboldened to further engage in its game of hiding the ball and sandbagging Acceleron with its ever-changing invalidity arguments. The Court, having now given Dell multiple chances to comply with the Court's Rules, should put an end to Dell's game and strike the improper portions of Dr. Michalson's reports.

## 2.   FACTUAL BACKGROUND

On March 15, 2018, Acceleron moved to strike Dell's obviousness-based invalidity contentions for failure to comply with the basic disclosure requirements of Patent L.R. 4.3(a)(2) & 3. Doc. 108. Briefing for that motion was completed on April 19, 2018. *See* Doc. 123.

On January 30, 2019, the Court held a hearing on that motion to strike. *See* Doc. 218. At the hearing, the Court found "that Dell did not comply with the local patent rule at all in what they provided." Ex. A at 19:16-18. The Court stated that "I

3

am not going to strike the invalidity contentions of Dell. But I am not satisfied that the rule has been complied with." *Id.* at 31:7-9. The Court held the motion in abeyance and ordered the parties to attempt to resolve the motion by agreement using the guidance that was provided by the Court. *Id.* at 32:7-12.

On March 20, 2019, Acceleron notified the Court that the parties were at an impasse and asked the Court to adopt one of two proposals regarding the obviousness-based combinations that Dell would be allowed to assert in this case. *See* Doc. 238 at Ex. A, 2-4. Dell submitted a counter-proposal on April 1, 2019. *Id.* at Ex. B, 3-5.

In Dell's counter-proposal, Dell represented to the Court that the obviousness challenges it sought to raise were only "clarify[ing] existing contentions." *Id.* at Ex. B, 3. To persuade the Court that it was not attempting to raise previously undisclosed invalidity argument, Dell told the Court that the "roadmap" it provided Acceleron "list[s] a pin cite to where Acceleron can find each and every motivation to combine" in Dell's invalidity contentions. *Id.*[1] The roadmap, according to Dell, "quite literally identifie[s] the page number where the combination and motivation to combine were previously disclosed." *Id.* Moreover, Dell represented to the Court that its roadmap

---

[1] The roadmap referenced by Dell is attached as Exhibit I.

4

"include[s] pin cites to every single motivation to combine." *Id.* at Ex. B, 7; *see also id.* at Ex. B, 10 ("Dell . . . has provided a roadmap identifying the precise page number for the motivation to combine 'each such combination.'")

On the same day that Dell submitted its counter-proposal, the Court denied Acceleron's motion to strike and adopted Dell's proposal as part of its Order. Doc. 238 at 2; Doc. 201 (discovery schedule). The proposal incorporated into the Court's Order states that "Dell is . . . limited to the discrete references and claim-by-claim combinations" identified on page 4 of its letter to the Court. *Id.* at Ex. B, 3-4. Additionally, "each motivation-to-combine [the references] must have been identified in the cover pleading [of Dell's invalidity contentions]." *Id.* 4-5.[2]

Hours after the Court ruled on the motion, Dell submitted Dr. Michalson's Initial Invalidity Report. *See* Ex. B. On May 24, 2019, Acceleron's expert, William Putnam, submitted his report responding to Dr. Michalson's invalidity opinions. *See* Ex. D. On June 7, 2019, Dr. Michalson submitted his Rebuttal Invalidity Report. *See* Ex. C. After the parties' experts were deposed, expert discovery closed on July 8. Doc. 244 at Ex. 1. Sur-rebuttal expert reports are not permitted in this case. *See id.*

---

[2] The Court's Patent Local Rules require invalidity contentions to identify the "motivation to combine" the references that allegedly render obvious a claim. Patent L.R. 4.3(a)(2).

3.    **A**PPLICABLE **L**EGAL **S**TANDARDS

### 3.1.   Judicial Estoppel

"Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee*, 156 U.S. 680, 689 (1895). "This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.'" *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)); *see also In re Coastal Plains*, *Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (explaining that, "[t]he purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." (internal quotations omitted)).

"Judicial estoppel is committed to the discretion of the Court, and is informed by the following factors: (1) whether a party's later position is "clearly inconsistent" with an earlier position; (2) whether the party "succeeded in persuading a court to accept that party's earlier position," such that "judicial acceptance of the inconsistent position . . . would create the perception that [the court] was misled;" and (3) whether

the "party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750-51 (citations and internal quotation marks omitted).

### 3.2. Rule 26(a)(2) Disclosures of Expert Opinions

An expert's initial report must contain "a *complete* statement of *all* opinions the witness will express and the basis and reasons for them." FED. R. CIV. P. 26(a)(2)(B)(i) (emphasis added). Rule 26(a)(2) further allows an expert to submit a rebuttal report, but only "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party . . . ." FED. R. CIV. P. 26(a)(2)(C)(ii) (emphasis added). A party must make these disclosures at the time and in the sequence that the Court orders. *Id.* at (a)(2)(C).

It is well-established that "[a] party's opportunity to submit a rebuttal expert report is not license to expand its case-in-chief." *ITT Corp. v. Xylem Grp., LLC*, No. 1:11-cv-3669-WSD, 2012 U.S. Dist. LEXIS 197312, at *8 (N.D. Ga. 2012). Thus, an expert's rebuttal report is "not the proper place for presenting new arguments," *STS Software Sys., Ltd. v. Witness Sys.*, No. 1:04-CV-2111-RWS, 2008 U.S. Dist. LEXIS 17667, at *6 (N.D. Ga. 2008), or "to introduce new legal theories," *ITT Corp.*, 2012 U.S. Dist. LEXIS 197312, at *8 (quoting *Stephenson v. Wyeth LLC*, 2011 U.S. Dist. LEXIS 119013, at *1 (D. Kan. 2011)).

When a party fails to timely disclose the information required by Rule 26(a), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Moreover, the Patent Local Rules state that "supplementation of expert reports is presumptively prejudicial, especially where the opinions could have been disclosed earlier and the prejudice caused cannot be lessened." Patent L.R. 7.3. Accordingly, the Patent Local Rules prohibit untimely expert opinions "unless (a) the tendering party shows cause that the amendment or supplementation could not reasonably have been made earlier and (b) all reasonable steps are made to ameliorate prejudice to the responding party." *Id*.

## 4.   ARGUMENT

### 4.1.   The Court Should Strike the Motivations-to-Combine Raised in the Initial Invalidity Report that Were Not Disclosed in Dell's Invalidity Contentions

Under the principle of judicial estoppel discussed above, Dell should be prohibited from asserting motivations-to-combine that were not disclosed in Dell's Invalidity Contentions. In Dell's proposal adopted by the Court, Dell represented that it was only "clarify[ing] existing contentions" and that "each motivation-to-combine [was] identified in the cover pleading [of Dell's invalidity contentions]." Doc. 238 at Ex. B, 3, 4-5. The Court, relying upon Dell's representations, denied Acceleron's

motion and granted Dell's proposal regarding the obviousness challenges Dell was permitted to raise. Doc. 238. But Dell's representation that it would raise only motivations-to-combine previously disclosed in the cover pleading of its invalidity contentions turned out to be inaccurate.

The table in Exhibit G quotes the new motivations-to-combine that are raised in paragraphs 243-244, 253, 255, 261-263, 269, 440, 452-453, 478-479, and 499-501 of Dr. Michalson's Initial Invalidity Report. The table in Exhibit G also includes the purported "pin cite" that, according to Dell, "quite literally identifie[s] the page number where the combination and motivation to combine were previously disclosed" in Dell's invalidity contentions. Doc. 238, Ex. B at 3. Thus, if a motivation-to-combine identified in Exhibit G was actually disclosed in Dell's invalidity contentions, then it must appear at one or more of the pages identified Dell's roadmap.

However, a simple comparison of the each motivation-to-combine identified in Exhibit G to the actual pages cited in Dell's roadmap (roadmap attached as Exhibit I) reveals that none of the identified motivations-to-combine were disclosed in Dell's invalidity contentions. By way of example, there is no discussion of why a POSITA would be motivated to combine Hipp's '748 patent with "Ketris" on any of the cited pages in Dell's roadmap identified above. *Compare* Ex. G at 1 (sourced from Dr. Michalson's Initial Invalidity Report at Ex. B at ¶¶ 243-244) *with* Doc. 208.1 (Dell's

Second Amended Invalidity Contentions); Docs. 108.28, 108.32, 208.6, 208.7, 208.10, & 208.11 (Appendices. A-26, A-30, C-7, C-8, D-1, & D-2, respectively). Sure, these references are mentioned on some of cited pages, and perhaps even generally described, but they are not described in regard to each other. As such, the Court should strike paragraphs 243-244 as well as paragraphs 253, 255, 261-263, 269, 440, 452-453, 478-479, and 499-501 of Dr. Michalson's Initial Invalidity Report and preclude Dell from relying on the opinions disclosed therein for summary judgment and at trial.

### 4.2. The Court Should Strike the Previously Undisclosed Opinions Belatedly Raised in Dr. Michalson's Rebuttal Report

#### 4.2.1. *Paragraphs 86-87 of the Rebuttal Invalidity Report add previously undisclosed modifications to the asserted prior art to allegedly render claim 3 obvious.*

In asserting that claim 3 of the '021 Patent is obvious in view of Ketris, Dr. Michalson's Initial Invalidity Report proposes modifying Ketris by merely "plac[ing] a metal enclosure around the Server Blades [of Ketris][3]" to allegedly satisfy the claim elements. Ex. B at ¶ 232. Dr. Michalson describes in his Initial Invalidity Report that the metal enclosure would be a "ventilated enclosure," but he does

---

[3] Dr. Michalson's reports italicize the names of the asserted prior art. *See*, *e.g.*, Ex. B, ¶ 67 ("*Dellacona*," "*Gooodrich*"). Unless indicated otherwise, the italics have been removed when quoting the reports.

not provide any further opinions regarding the enclosure that would need to be added to Ketris in order to allegedly render claim 3 obvious. *See* Ex. B at ¶ 232.

However, after Acceleron's expert explained in his responsive validity report that placing a ventilated enclosure around the Ketris server blades would not work (Ex. D at ¶¶ 121-136), Dr. Michalson changed how he proposes modifying Ketris. Specifically, instead of merely placing a ventilated enclosure around the Ketris server blades, Dr. Michalson's Rebuttal Invalidity Report adds the following proposed modifications to the enclosure: (1) making the enclosure "notched at or near the ejector/injector handles so the handles rotate without interfering with the enclosure" (Ex. C at ¶ 86); (2) making the enclosure "designed to house [only] selected components of the Server Blade while not interfering with the ejector/injector handles" (*id.*); (3) replacing Ketris's server blade "ejector/injector handles . . . with a handle attached to the enclosure similar to that used on the Ketris power supplies" (*id.*); (4) making the enclosure "such that part of the PCB extends past the enclosure, leaving the Server Blade compatible with the Compact PCI standard" (*id.* at ¶ 87); (5) making the enclosure "include an edge, ridge, or other components that extends beyond the enclosure to interface with the guides in the chassis" (*id.*); and (6) designing the enclosure like the components illustrated in Exhibit A of Dr. Michalson's Rebuttal Report—which is a document that was neither identified nor produced by

Dell or Dr. Michalson prior to submission of the Rebuttal Report (*id.*). *See* Ex. C at Ex. A.

None of these six modifications to the enclosure is disclosed in the Initial Invalidity Report. *Compare* Ex. B at ¶ 232 *with* Ex. C at ¶¶ 86-87. Therefore, paragraphs 86-87 of the Rebuttal Invalidity Report are previously undisclosed invalidity theories that should be stricken.

### 4.2.2. *Paragraphs 108, 109 and 111 of the Rebuttal Invalidity Report add previously undisclosed modifications to the asserted prior art to allegedly render claim 3 obvious.*

In asserting that the combination of Hipp and Ketris render claim 3 obvious, Dr. Michalson's Initial Invalidity Report proposes combining teachings of Hipp with the "module enclosures" disclosed in Ketris. Ex. B at ¶ 243. Dr. Michalson's Initial Invalidity Report does not propose modifying the enclosures of Ketris in any way when combining them with the teachings of Hipp. *See id.*

However, after Acceleron's expert explained in his responsive validity report that adding the Ketris enclosures to Hipp would not work (Ex. D at ¶¶ 138-169), Dr. Michalson proposed additional, previously undisclosed modifications to the asserted references. Specifically, Dr. Michalson's Rebuttal Invalidity Report proposes the following additional modifications to the Hipp and/or Ketris: (1) modifying the Ketris enclosures "such that part of the PCB [printed circuit board] extends past the

enclosure, leaving the web server processing card compatible with the guides" (Ex. C at ¶ 108); (2) modifying the Ketris enclosures based on the components illustrated in Exhibit A of Dr. Michalson's Rebuttal Report—which is a document that was neither identified nor produced by Dell or Dr. Michalson prior to submission of the Rebuttal Report (*id.*); (3) modifying the Ketris enclosures to "include an edge, ridge, or other components that extends from the enclosure to interface with the guides in the chassis" (*id.*); (4) modifying the Ketris enclosures such that it they are "notched at or near the ejector levers so the handles rotate without interfering with the enclosure;" (*id.* at ¶ 109); (5) modifying Hipp's web server processing cards such that their "ejector levers [are] replaced with a handle attached to the enclosure similar to that used on the Ketris power supplies" (*id.*); and (6) modifying the enclosures in Ketris to "plac[e] the vents in the front and back of the metal enclosure . . ." (*id.* at ¶ 111).

None of these six modifications is disclosed in the Initial Invalidity Report. *Compare* Ex. B at ¶ 243 *with* Ex. C at ¶¶ 108, 109, 111. Therefore, paragraphs 108, 109, and 111 of the Rebuttal Invalidity Report are previously undisclosed invalidity theories that should be stricken.

### 4.2.3. *Paragraphs 140-141 of the Rebuttal Invalidity Report point to previously uncited structures as being the recited "caddies" of claim 3.*

In his Initial Invalidity Report, Dr. Michalson points to "power supply units" of the Orbiter HotDock system as allegedly constituting the claimed "caddies providing air flow from the front to the rear of the chassis" recited in claim 3. Specifically, Dr. Michalson's Initial Invalidity Report alleges that "the *power supply units* configured for use in the Orbiter HotDock chassis are carriers for a module."[4] Ex. B at ¶ 251 (emphasis added). Further confirming that Dr. Michalson is pointing to the power supply units, as a whole, as constituting the claimed caddies, the Initial Invalidity Report alleges that "the RLX chassis and *power supply units* with metal enclosures, handles, and air vents meet the claim 3 limitation of a chassis comprising carriers for a module providing air flow from the front to the rear of the chassis." *Id* at ¶ 252.

However, Dr. Michalson's Rebuttal Invalidity Report abandons his original invalidity theory and points to a different structure as allegedly constituting the claimed caddies. Specifically, instead of pointing to the power supply units as a whole, Dr. Michalson's Rebuttal Invalidity Report identifies only the *enclosures* of

---

[4] The Court construed the claim term "caddies" as "carriers for a module." Doc. 182 at 34.

the power supply units as constituting the claimed caddies. Ex. C at ¶¶ 140-141 ("Thus, in my opinion, *the metal enclosure* for the power supply is a carrier for a module that provides air flow from the front to the rear of the chassis as recited in claim 3." (emphasis added)). This invalidity theory is new and was not disclosed in the Initial Invalidity Report.

Dr. Michalson claims that his Initial Invalidity Report asserts that the enclosure of the power supply unit constitutes the claimed caddy. *Id.* at ¶ 140. Dr. Michalson is incorrect, as he unambiguously and repeatedly identifies the power supply unit—not merely the enclosure—as corresponding to the claimed caddy. *See* Ex. B at ¶ 251 ("[T]he power supply *units* configured for use in the Orbiter HotDock chassis are carriers for a module providing air flow from the front to the rear of the chassis." (emphasis added)); *id.* at ¶ 252 ("In my opinion, the RLX chassis and power supply *units* with metal enclosures, handles, and air vents meet the claim 3 limitation of a chassis comprising carriers for a module providing air flow from the front to the rear of the chassis." (emphasis added)).

Therefore, the argument that power supply enclosures constitute the claimed caddies was not raised in Dr. Michalson's Initial Invalidity Report. *Compare* Ex. B at ¶¶ 251-252 *with* Ex. C at 140-141. Thus, paragraphs 140-141 of the Rebuttal Invalidity Report is a previously undisclosed invalidity theory that should be stricken.

### 4.2.4. *Paragraph 153 of the Rebuttal Invalidity Report adds previously undisclosed modifications to the asserted prior art.*

In asserting that the combination of Ketris and Jackson render claim 3 obvious, Dr. Michalson's Initial Invalidity Report proposes combining Jackson's "blade carrier structures" with various components in Ketris. Ex. B at ¶¶ 260-263. Notably, Dr. Michalson's Initial Invalidity Report does not propose modifying Jackson's blade carrier structures in any way. *See id.*

However, Dr. Michalson's Rebuttal Invalidity Report changes the obviousness challenge originally asserted and proposes making "design modifications" to Jackson's blade carrier structures so that the blade carrier structures "align with and provide for the front to back air flow of the Ketris chassis, and that the blade carrier structures do not interfere with the guides and injector/ejector handles of the Ketris Server Blades and Switch Blades." Ex. C at ¶ 153. Dr. Michalson's Rebuttal Invalidity Report further argues that the discussion he provides in Section IV.B.2 of the Rebuttal Invalidity Report also shows that "there are obvious design options for adding carrier structures to the Ketris components so as not to interfere with guides and injector/ejector handles." *Id.* However, as discussed above, Dr. Michalson's proposed modifications to enclosures discussed in Section IV.B.2 of his Rebuttal Invalidity Report were never disclosed in his Initial Invalidity Report. *See supra* § 4.2.1.

None of the additional modifications to Jackson's blade carrier structures described in paragraph 153 of the Rebuttal Invalidity Report is disclosed in the Initial Invalidity Report. *Compare* Ex. B at ¶¶ 260-264 *with* Ex. C at ¶¶ 153. Therefore, paragraphs 260-264 of the Rebuttal Invalidity Report are previously undisclosed invalidity theories that should be stricken.

### 4.2.5. *Paragraphs 234-235 of the Rebuttal Invalidity Report add two previously undisclosed bases to challenge claim 20.*

In his Initial Invalidity Report, Dr. Michalson asserts that the "Ketris 9000, Ketris 2000, Ketris 2010, and Ketris 2020 *systems*" (which he defines collectively as "Ketris") constitute a prior art reference that anticipates claim 20. Ex. B at ¶ 106 (emphasis added); *see also id.* at ¶¶ 20 (chart summarizing invalidity arguments), 377 ("Ketris includes each and every limitation of Claim 20 of the '021 Patent."). Regarding the element of claim 20 that recites "a microcontroller module and a dedicated ethernet path, wherein the dedicated ethernet path . . . provides the microcontroller module with a connection to remotely poll the CPU module, the power module and the ethernet switch module," Dr. Michalson alleges in his Initial Invalidity Report that this element was present in a Ketris *system* that was in public use before the priority date of the '021 Patent. *Id.* at ¶ 385 ("In my opinion, the Ketris *system* discloses 'a microcontroller module with a connection to remotely poll the CPU module, the power module and the ethernet switch module.'" (emphasis added)).

However, Dr. Michalson's Rebuttal Invalidity Report asserts that two additional things—not the Ketris system—disclose the claimed microcontroller module and a dedicated ethernet path of claim 20. First, the Rebuttal Invalidity Report asserts that the claim element was disclosed at a Networld Interop conference when "everyone involved with the demonstration would have *told* customers at Networld Interop that the feature would appear in the next version [of the Ketris system]." Ex. C at ¶ 234 (emphasis added). In other words, Dr. Michalson asserts that people talking about a future version of Ketris—not the Ketris system itself—disclosed this claim element. This new theory of Dr. Michalson was not disclosed in his Initial Invalidity Report (or in Dell's Invalidity Contentions) and is therefore improper.

Second, Dr. Michalson asserts in his Rebuttal Invalidity Report that this claim element was disclosed in a "graph shown to customers at Networld Interop" and would have been "disclosed during . . . discussions at Networld Interop . . . ." *Id.* at ¶ 235. These theories that the claim element was disclosed in a "graph" and in "discussion[s]" were not disclosed in Dr. Michalson's Initial Invalidity Report (or Dell's Invalidity Contentions). *See* Ex. B at ¶ 385 ("In my opinion the Ketris system discloses 'a microcontroller module with a connection to remotely poll the CPU module, the power module and the ethernet switch module.'"). Accordingly, these belated opinions are also improper.

18

Therefore, the new bases for anticipation of claim 20 asserted in paragraphs 234-235 of the Rebuttal Invalidity Report are new, untimely opinions. *Compare* Ex. B at ¶¶ 385 *with* Ex. C at ¶¶ 234-235. As such, paragraphs 234-235 of the Rebuttal Invalidity Report are previously undisclosed invalidity theory that should be stricken.

### 4.2.6. *Paragraph 255 of the Rebuttal Invalidity Report relies upon a previously undisclosed combination of alleged prior art references that Dell is not permitted to assert.*

With respect to claim 20, the only obviousness challenges that the Court permitted Dell to raise are those shown below:

| Asserted Claim | Combinations |
|---|---|
| | * * * |
| Claim 20. | 1) Hipp '748 + Ketris<br>2) Hipp '748 + Starfire<br>3) Ketris<br>4) Ketris + Starfire<br>5) Ketris + Tavallaei<br>6) Ketris + Wallach |

Doc. 238 at Ex. B, 4; *see id.* at 1-2 ("The Court . . . accepts and adopts as part of its order Dell's proposal outlined in Exhibit B.").

Notably, Dell was not permitted to raise an obviousness challenge based on a combination of a Transmeta Design Guide document. But that is exactly what Dr.

Michalson does in his Rebuttal Invalidity Report. Specifically, Dr. Michalson challenges claim 20 as allegedly being obvious in view of Hipp + Starfire + the Transmeta Design Guide. Ex. C at ¶ 255 ("Based on my review of a Transmeta design guide dated October 13, 2000, the Transmeta TM 3200 and TM 5400 processors had JTAG connectors and capability."). Making Dell's disregard of the Court's Order even more egregious is the fact that Dell had failed to identify or produce the Transmeta Design Guide during discovery. Instead, the Transmeta Design Guide was not identified until it was attached to Dr. Michalson's Rebuttal Report as an exhibit. *See id.* at Ex. B. Thus, paragraph 255 is an obviousness challenge based on a combination of references that Dell is not permitted to raise in this case.

Also, Dr. Michalson's opinions in paragraph 255 of his Rebuttal Invalidity Report based on the Transmeta Design Guide are improper because they were not disclosed in his Initial Report. *See* Ex. B at ¶¶ 431-441. As noted above, the Transmeta Design Guide was not identified or produced by Dell or Dr. Michalson until it was attached as an exhibit to the Rebuttal Invalidity Report. *See* Ex. C at Ex. B.

Therefore, the opinions in paragraph 255 of the Rebuttal Invalidity Report are untimely and rely on a combination of references that Dell is not permitted to assert. As such, paragraph 255 of the Rebuttal Invalidity Report should be stricken.

### 4.2.7. *Paragraphs 315, 317, 324, 329, 334, 340, 346, 351, and 356 raise new theories for claim element 24[e].*

Claim element 24[e] recites, "wherein each of the CPU module, the power module and the ethernet switch module includes a hot swap connector for connecting with a specific hot swap mating connector of the backplane board." Ex. E at cl. 24. In his Initial Invalidity Report, Dr. Michalson opines that claim element 24[e] is disclosed in the asserted references for the same reasons that he provides for claim element 1[e]. *See*, *e.g.*, Ex. B at ¶¶ 564, 580, 593, 612, 629, 647, 659, 678, 696 (asserting the same opinions from claim element 1[e] for 24[e]).

After Acceleron's expert responded to the opinions in Dr. Michalson's Initial Invalidity Report by explaining that there are differences between claim elements 1[e] and 24[e] and that Dr. Michalson did not address those differences (*see*, *e.g.*, Ex. D at ¶¶ 408-409), Dr. Michalson raised new, previously undisclosed opinions in his Rebuttal Invalidity Report. Specifically, Dr. Michalson's Rebuttal Report contends that the comparisons that he made between claim elements 1[e] and 24[e] were a "typographical error" and that "[m]y analysis should have referred back to the analysis in Claim limitation 20[f], rather than referring back to Claim limitation 1[e]." Ex. C at ¶ 313. Dr. Michalson's claim that he just made a mistake in referring to claim element 1[e] is dubious, especially given that (1) his Initial Invalidity Report points to the analysis of claim element 1[e] for 24[e] no fewer than *nine* times (*see*,

21

*e.g.*, Ex. B at ¶¶ 564, 580, 593, 612, 629, 647, 659, 678, 696); (2) typing both "1" and "[e]" instead of "20" and "[f]" being merely a typographical error seems unlikely; (3) claim elements 1[e] and 24[e] both contain some similarities, such as the notion of connecting modules; and (4) Dr. Michalson testified that Dell's counsel worked extensively with Dr. Michalson in drafting and reviewing sections of his reports. *See*, *e.g.*, Ex. F at 17:17-18:18, 20:4-21-14.

Even if Dr. Michalson's references to claim 1[e] instead of 20[f] was a mistake, that does not change the fact that Acceleron's expert considered and responded to the opinions raised in Dr. Michalson's Initial Invalidity Report and is denied opportunity to respond to his Rebuttal Invalidity Report. As discussed above, claim element 1[e] contains similarities to claim element 24[e]. So, even if Dr. Michalson intended to refer to claim element 20[f], it was not reasonably apparent to Acceleron's expert, and Acceleron would be severely prejudiced if Dr. Michalson is allowed to change his invalidity theory for claim 24.

Therefore, Dr. Michalson's new reliance on the analysis he provides for claim element 24[e] in paragraphs 315, 317, 324, 329, 334, 340, 346, 351, and 356 of the Rebuttal Invalidity Report raises new, untimely opinions. *Compare* Ex. B at ¶¶ 564, 580, 593, 612, 629, 647, 659, 678, 696 *with* Ex. C at ¶¶ 315, 317, 324, 329, 334, 340, 346, 351, and 356. As such, paragraphs 315, 317, 324, 329, 334, 340, 346, 351,

and 356 of the Rebuttal Invalidity Report constitute a previously undisclosed invalidity theory that should be stricken.

### 4.2.8. *Paragraphs 127, 155, 250-251, 257-258, 274, 330, 336, and 341 add new motivations to combine the asserted prior art.*

The Court should strike paragraphs 127, 155, 250-251, 257-258, 274, 330, 336, and 341 of Dr. Michalson's Rebuttal Invalidity Report for raising motivations-to-combine that were not disclosed in his Initial Rebuttal Report. *See ITT Corp.*, No. 1:11-cv-3669-WSD, 2012 U.S. Dist. LEXIS 197312, at * 8 (explaining that a rebuttal report is "not the proper place for presenting new arguments"); *STS Software Sys.*, No. 1:04-CV-2111-RWS, 2008 U.S. Dist. LEXIS 17667, at *6 (explaining that a rebuttal report is not the proper place "to introduce new legal theories").

The table in Exhibit H quotes the new motivations-to-combine that are raised in paragraphs 127, 155, 250-251, 257-258, 274, 330, 336, and 341 of Dr. Michalson's Rebuttal Report. Plus, the table in Exhibit H identifies the corresponding paragraphs of Dr. Michalson's Initial Invalidity Report where he addresses motivation-to-combine issues. A simple comparison of each motivation-to-combine identified in Exhibit H to the identified paragraphs of the Initial Invalidity Report reveals that none of the new motivations-to-combine were raised in the Initial Invalidity Report. Therefore, paragraphs 127, 155, 250-251, 257-258, 274, 330, 336, and 341 of the Rebuttal Invalidity Report are new, untimely opinions that should be stricken.

### 4.3.   The Opinions First Disclosed in the Rebuttal Invalidity Report Could Have Been Disclosed in the Initial Report and Result in Severe Prejudice to Acceleron

"Because of the complexity of the issues often present in patent cases, amendments or supplementation to expert reports after the deadlines provided [in the Court's Rules] are presumptively prejudicial and *shall not* be allowed unless (a) [Dell] shows cause that the amendment or supplementation could not reasonably have been made earlier and (b) all reasonable steps are made to ameliorate the prejudice to [Acceleron]." Patent L.R. 7.3 (emphasis added).

Here, there is no reason that Dr. Michalson could not have reasonably made all of the new opinions raised in his Rebuttal Validity Report in his Initial Validity Report (assuming the references and motivations-to-combine were permitted to be raised by the Court's Order adopting Dell's proposal (Doc. 238)). If Dell is permitted to rely upon the untimely disclosures in Dr. Michalson's Rebuttal Invalidity Report, Acceleron would be severely prejudiced at least because Acceleron's expert has been denied the opportunity to respond to the untimely opinions.

Moreover, this Court has already informed the parties that "we are going to resolve this case in 2019 . . . whether by summary judgement or by a jury trial this case will be resolved this year." Ex. A at 32:2-5. And given the fact that the Court has already found that "Dell did not comply with the local patent rule [regarding the

24

timely disclosure of invalidity contentions] at all in what they provided," it would be incredibly unjust it the Court were to reopen discovery, again, for Dell to attempt to cure its repeated failures to comply with the Rules—especially since this case has already been pending since 2012.

**5.   CONCLUSION**

For the foregoing reasons, this Court should grant Plaintiff Acceleron's present Motion and strike the portions of Dr. Michalson's Initial and Rebuttal Invalidity Reports which introduce untimely theories of invalidity.

Respectfully submitted this 5th day of August, 2019.

/s/ Robert D. Gravois

N. Andrew Crain
Georgia Bar No. 193081
andrew.crain@thomashorstemeyer.com
Dan R. Gresham
Georgia Bar No. 310280
dan.gresham@thomashorstemeyer.com
Eric Maurer
Georgia Bar No. 478199
eric.maurer@thomashorstemeyer.com
Robert D. Gravois
Georgia Bar No. 600183
robert.gravois@thomashorstemeyer.com
Wesley A. Roberts
Georgia Bar No. 867277
wesley.roberts@thomashorstemeyer.com
**THOMAS | HORSTEMEYER, LLP**
3200 Windy Hill Rd SE
Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Plaintiff Acceleron, LLC*

## **LOCAL RULE 7.1D CERTIFICATION**

The undersigned hereby certifies that the foregoing was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

/s/ Robert D. Gravois

Robert D. Gravois
Georgia Bar No. 600183
*Attorney for Plaintiff Acceleron, LLC*

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ACCELERON, LLC,<br><br>　　　　　Plaintiff,<br>　v.<br><br>DELL, INC.,<br><br>　　Defendant. | Civil Action File No.<br><br>1:12-CV-04123-TCB |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2019, the foregoing was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

　　　　　　　　　　　　　　　　*/s/ Robert D. Gravois*
　　　　　　　　　　　　　　　　Robert D. Gravois
　　　　　　　　　　　　　　　　Georgia Bar No. 600183
　　　　　　　　　　　　　　　　*Attorney for Plaintiff Acceleron, LLC*