**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ACCELERON, LLC, | Civil Action File No. |
| Plaintiff, | 1:12-cv-04123-TCB |
| v. | |
| DELL INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**DELL INC.'S BRIEF IN SUPPORT OF THE MOTION FOR PARTIAL**
**SUMMARY JUDGMENT OF INVALIDITY AND NON-INFRINGEMENT**

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................................................1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ..............................2

III. LEGAL STANDARD ..............................................................................2

IV. ARGUMENT .........................................................................................4

    A.   Claim 17 Is Invalid as a Matter of Law Because It Fails
        to Add a Limitation Under 35 U.S.C. § 112 ¶ 4 .........................4

    B.   The VRTX System Does Not Infringe the Asserted
        Claims Because the VRTX IOMs Are Not "Hot-
        Swappable" ...............................................................................5

    C.   Under a Proper Claim Construction of "Caddies" and
        "Modules", the Accused Products Do Not Infringe
        Claim 3 ...................................................................................10

        1.  The Court Should Resolve the Parties' Dispute
            Regarding the Construction of "Caddies" in Claim 3 ........10

        2.  The Accused Products Do Not Infringe Asserted
            Claim 3 Because the Accused Products Do Not
            Include "Caddies" ...............................................................14

    D.   The MX7000 System Does Not Infringe the Backplane
        Limitation of Claims 3, 14–17, and 24 ....................................17

V.   CONCLUSION ....................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Altera Corp. v. PACT XPP Techs., AG,*
    No. 14-CV-02868-JD, 2015 WL 4999952 (N.D. Cal. Aug. 21,
    2015) ..............................................................................................7, 8

*Bayer AG v. Elan Pharm. Research Corp.,*
    212 F.3d 1241 (Fed. Cir. 2000) ..........................................................5

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)............................................................................3

*Jack Guttman, Inc. v. Kopykake Enters., Inc.,*
    302 F.3d 1352 (Fed. Cir. 2002) ..........................................................7

*Network Commerce, Inc. v. Microsoft Corp.,*
    422 F.3d 1353 (Fed. Cir. 2005) ..........................................................7

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.,*
    521 F.3d 1351 (Fed. Cir. 2008) ......................................6, 8, 9, 10, 11

*Pediatric Med. Dev., Inc. v. Ind. Mills & Mfg., Inc.,*
    984 F. Supp. 2d 1362 (N.D. Ga. 2013)................................................5

*Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n,*
    988 F.2d 1165 (Fed. Cir. 1993) ..........................................................4

*U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in
    Ala.,*
    941 F.2d 1428 (11th Cir. 1991) ..........................................................3

*Uniloc USA, Inc. v. Microsoft Corp.,*
    632 F.3d 1292 (Fed. Cir. 2011) ..........................................................5

*Walker v. Darby,*
    911 F.2d 1573 (11th Cir. 1990) ..........................................................3

**STATUTES**

35 U.S.C. § 112 ¶ 4 (2006) ........................................................................2, 3, 4, 20

**OTHER AUTHORITIES**

FED. R. CIV. P. 56(a).........................................................................................3

Local Rule 5.1 (C) and (D) ...............................................................................22

Rule 56 ...........................................................................................................2

## I.    INTRODUCTION

Dell Inc. ("Dell") moves for partial summary judgment of non-infringement and invalidity of Claims 3, 14–17, 20, 22, and 24 of U.S. Patent No. 6,948,021 (the "'021 Patent") asserted by Acceleron, LLC ("Acceleron"). The '021 Patent generally discloses a computer system that allows for "hot-swapping" of computer components. SUMF ¶ A8. "Hot-swapping" allows computer components, including central processing unit ("CPU") modules, ethernet switch modules, and power modules to be replaced while a system is operational and without powering down the system. SUMF ¶ A9. The system includes a passive backplane board that has hot swap connectors to allow the modules to be inserted into the computer network appliance. SUMF ¶ A10. Each of the modules resides in a "caddy" to ensure alignment with the hot-swap connectors. SUMF ¶ A11.

Acceleron alleges that the Dell PowerEdge 1855 ("1855"), PowerEdge 1955 ("1955"), PowerEdge M1000e ("M1000e"), PowerEdge VRTX ("VRTX"), and PowerEdge FX2 ("FX2") Systems infringe Claims 3, 14–17, 20, 22, and 24 of the '021 Patent ("Asserted Claims"). SUMF ¶¶ A2–A6. Additionally, Acceleron alleges that the PowerEdge MX7000 System ("MX7000") (collectively, with products above, the "Accused Products") infringes Claims 3, 14–17, and 24 of the '021 Patent. SUMF ¶ A7.

But, as discussed further below, Acceleron cannot meet its burden to prove infringement and validity without rewriting the Court's claim construction decision.

Accordingly, Dell respectfully requests that the Court enter partial summary judgment in its favor on the limited set of issues below:

- Claim 17 is invalid as a matter of law because, though it depends from Claim 15, it fails to add further limitations to Claim 15 as required under 35 U.S.C. § 112 ¶ 4 (2006). *See infra* Section III.A.

- The VRTX system does not infringe the Asserted Claims because it must be power cycled—turned off and back on—for the VRTX Input/Output Modules to be "added to" the system and therefore cannot meet the "hot-swappable ethernet switch module" limitation. *See infra* Section III.B.

- Under the proper construction of "caddies" and "modules" the "Accused Products" cannot infringe Claim 3. Acceleron should not be allowed to continually add so-called "notions" to the construction of "caddies" and offer shifting opinions on what qualifies as a "module" in an attempt to preserve the validity of the '021 Patent. *See infra* Section III.C.

- The MX7000 system does not infringe Claims 3, 14–17, and 24 because it does not have a backplane board that interconnects the CPU module and ethernet switch module. *See infra* Section III.D.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

Dell's Statement of Undisputed Material Facts ("SUMF") has been filed concurrently with this Motion. The undisputed material facts set forth in the arguments below cite to that Statement using "SUMF ¶ X" notation.

## III.   LEGAL STANDARD

Pursuant to Rule 56, summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant's initial burden is to negate an essential element of the

non-movant's case or to show that there is no evidence to prove a fact necessary to the non-moving party's case. *U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in Ala.*, 941 F.2d 1428, 1437–38 (11th Cir. 1991). The burden then shifts to the non-movant, who must present "significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* at 1438 (citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the non-movant fails to present a genuine issue of material fact, the moving party is entitled to summary judgment. *Four Parcels*, 941 F.2d at 1438.

To prove direct infringement, a patentee bears the burden to show the presence of every claim limitation in an accused product. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011). If any claim limitation is absent, there is no infringement as a matter of law. *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). Summary judgment of non-infringement is appropriate when a reasonable jury "could reach only one conclusion about infringement," or "where the patent owner's proof is deficient in meeting an essential part of the legal standard of infringement, since such failure will render all other facts immaterial." *Pediatric Med. Dev., Inc. v. Ind. Mills & Mfg., Inc.*, 984 F. Supp. 2d 1362, 1365 (N.D. Ga. 2013).

3

## IV.   ARGUMENT

### A.   Claim 17 Is Invalid as a Matter of Law Because It Fails to Add a Limitation Under 35 U.S.C. § 112 ¶ 4

The Court should grant summary judgment that dependent Claim 17 is invalid as a matter of law because it fails to further limit dependent Claim 15. Section 112 requires dependent claims to "specify a further limitation of the subject matter claimed." 35 U.S.C. § 112 ¶ 4 (2006). Claim 17 of the '021 Patent only contains a "wherein" clause that states the result of the limitations in Claim 15 and thus provides no patentable weight.

Claim 15 recites, in relevant part: "wherein the computer network appliance *is free of a local hard disk drive (HDD)*." SUMF ¶ B1 (emphasis added). Claim 17 recites: "The computer network appliance of claim 15, *wherein effects of a lack of a local HDD* include increased mean time between failure (MTBF) and decreased mean time to repair (MTTR) of the computer network appliance." SUMF ¶ B2 (emphasis added).

The Federal Circuit has held that "wherein" or "whereby" clauses in claims have no patentable weight if they "merely state the result of the limitations in the claim" because such a clause "adds nothing to the patentability or substance of the claim." *Tex. Instruments Inc. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1172 (Fed. Cir. 1993). Claim 17 falls squarely within this Federal Circuit precedent because it merely claims the effects (*i.e.*, results) of a lack of a local HDD. SUMF at ¶ B3.

Acceleron's infringement allegations further confirm that Claim 17 adds

nothing to the patentability or substance of the claim. Acceleron and its expert, Mr. William Putnam, do not identify any additional support for the alleged infringement of Claim 17 beyond that cited for Claim 15. SUMF ¶ B4. Instead, Mr. Putnam concludes that the limitations of Claim 17 would necessarily result from the lack of a local hard disk drive. SUMF ¶ B5. Accordingly, Claim 17 is invalid under Section 112 ¶ 4 for failing to specify a further subject matter limitation, and the Court should grant summary judgment.

### B. The VRTX System Does Not Infringe the Asserted Claims Because the VRTX IOMs Are Not "Hot-Swappable"

The Court should grant summary judgment that the accused VRTX system does not infringe the Asserted Claims as a matter of law because the VRTX Input/Output Modules ("IOMs") are not "hot swappable . . . modules" under the proper construction of that term. Each of the Asserted Claims requires "a hot-swappable ethernet switch module." SUMF ¶ C1. Acceleron accuses the IOM in the VRTX system of satisfying this element. SUMF ¶ C3. The Court construed "hot-swappable . . . module(s)" as "a self-contained electronic component capable of being added to or removed from the computer network appliance while the computer network appliance is powered on or operational." SUMF ¶ C2. Over the course of expert discovery, however, a fundamental dispute between the parties regarding the scope of the Court's construction of the term has crystalized, which is dispositive as to non-infringement by the VRTX system. Specifically, because the VRTX must be power cycled—turned off and back on—to make a replacement IOM operational,

5

the dispute centers on whether "being added to . . . the computer network appliance while the computer network appliance is powered on or operational" requires no more than mere physical addition to the appliance, as Acceleron contends (SUMF ¶ C4), or whether the construction requires a functional addition such that the IOM becomes an operational part of the appliance, as Dell contends. Because the '021 Patent consistently describes the use of "hot swap" technology to avoid downtime, the Court should clarify its construction of "hot-swappable . . . module" to require that a swapped (*i.e.*, replacement) module must become operational in order to be "added to" the system, without needing to power down the system.[1] With such a clarified construction, the Court should hold that the VRTX does not infringe the Asserted Claims as a matter of law.

"When the parties present a fundamental dispute regarding the scope of a claim term, it is the court's duty to resolve it." *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008). Even after a court has construed the meaning of a claim term, "[e]xpert discovery and motion practice may later reveal a 'fundamental dispute' between the parties regarding claim scope,

---

[1] Should Acceleron argue that the Court's construction of "hot-swappable . . . module(s)" could be satisfied by a component only "capable of being . . . removed from"—but not added to—"the computer network appliance while the computer network appliance is powered on or operational," Dell contends that the plain and ordinary meaning of "swap" and the disclosure of the '021 Patent preclude such an illogical application of the Court's construction. Indeed, the patent's definition of "hot swap technology" refers to "***replacement*** of components," not mere removal. SUMF ¶ C15.

obliging the [c]ourt to clarify the meaning of the term." *Altera Corp. v. PACT XPP Techs., AG*, No. 14-CV-02868-JD, 2015 WL 4999952, at *8 (N.D. Cal. Aug. 21, 2015); *see Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms . . . ."). Thus, where the parties raise a dispute over claim scope during summary judgment, it is the court's duty to resolve that dispute. *See, e.g.*, *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1358 n.4 (Fed. Cir. 2005).

The description of "hot swap" technology in the '021 Patent strongly supports a clarified construction that requires a functional addition, where the module becomes an operational part of the appliance, rather than the physical addition of a non-operational component. The patent explains that "'[h]ot swap' technology allows the ***replacement*** of components without turning off the power or resetting the computer system as a whole." SUMF ¶ C15 (emphasis added). It criticizes systems in which "each process of component insertion and/or removal requires a complete shutdown of the entire system" because "[i]n time critical systems . . . , system downtime is both a financial problem as well as a service quality problem." SUMF ¶ C16. The patent thus states that "[t]he present invention is directed to a hot swapping computer network appliance operating in mission critical applications where any computer downtime can result in serious consequences." SUMF ¶ C17; *see also* SUMF ¶ C18 (Court citing definition of "hot swappable" emphasizing

"maximum uptime"). As Acceleron stated during the *Markman* hearing, "I don't have to reset the whole thing . . . . I am able to take this one out, put it or another one in, and keep on trucking." SUMF ¶ C19.

Construing "hot-swappable . . . module(s)" to include the physical addition of components that are not operational without cycling system power would be the antithesis of the patent's purpose. Swapping-in a non-operational component would invariably lead to downtime—either while the system is down as it is being power cycled or as a result of a non-operational component—***exacerbating the exact problem*** that the patent relies on "hot swap" technology to avoid. SUMF ¶ C7. The only way to clarify the Court's construction in a manner consistent with the '021 Patent is to require that "being added to . . . the computer network appliance" involves a functional addition, wherein the module becomes an operational part of the appliance while the appliance is powered on or operational, and thus without the need for a power cycle. This dispute over claim scope is dispositive as to non-infringement by the VRTX system, and "the court, not the jury, must resolve that dispute." *O2 Micro*, 521 F.3d at 1360.

Applying this clarified construction, there is no dispute of material fact that the VRTX system does not have the claimed "hot-swappable ethernet switch module." Acceleron alleges that the VRTX IOM alone is the required "hot-swappable ethernet switch module." SUMF ¶ C3. ███████████████

██████████████████████████████████████████████ However,

8

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

Based on these undisputed facts, a reasonable jury could only find that the VRTX IOM is not a "hot-swappable . . . module" under a clarified construction.

Acceleron may argue that a single Dell document and testimony from a Dell software engineer referring to the VRTX IOM as "hot swappable" raise a genuine issue of material fact that precludes summary judgment (*see* SUMF ¶¶ C8, C12), but these sources are incorrect (SUMF ¶ 11).[2] Regardless, the undisputed facts are that the VRTX IOM can be physically replaced while the VRTX system is powered on, but doing so results in a down, non-operational IOM until the VRTX system is power cycled. Because this raises a dispute as to the scope of the claims, the Court should clarify its construction of "hot-swappable . . . module(s)" to require that "being added to . . . the computer network appliance" involves a functional addition of an operational component, rather than merely the physical addition of a non-operational

---

[2] ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████.

component. The Court should then grant summary judgment that the accused VRTX products do not infringe the Asserted Claims as a matter of law.

### C.    Under a Proper Claim Construction of "Caddies," the Accused Products Do Not Infringe Claim 3

The parties dispute the scope of Claim 3 and "the court, not the jury, must resolve that dispute." *O2 Micro*, 521 F.3d at 1360. Claim 3 requires "wherein the chassis comprises caddies providing air flow from the front to the rear of the chassis." SUMF ¶ D2. After substantial argument and briefing, the Court adopted Acceleron's proposed construction of "caddies" as "carriers for a module." SUMF ¶¶ D3–4. Yet Acceleron now seeks to narrow the construction to preserve the validity of Claim 3, while relying on the full breadth of the construction for infringement.

### 1.    The Court Should Resolve the Parties' Dispute Regarding the Construction of "Caddies" in Claim 3

Throughout this litigation and during the *inter partes* review ("IPR") challenging the patentability of the '021 Patent, Acceleron has consistently added several "notions" to its proffered construction of "caddies" to preserve the validity of Claim 3.[3] SUMF ¶ D22. These "notions" introduce new and ever-changing requirements to what constitutes a "cadd[y]"—having no basis in the Court's construction—to serve Acceleron's needs in any given argument. Because of these

---

[3] "[N]otions" is Acceleron's word, not the Court's and not Dell's. SUMF ¶ D22. The idea that the Court's construction could be changed substantively by a party unilaterally identifying and applying "notions" as additional narrowing limitations is exactly what *O2 Micro* says is impermissible.

"notions," Dell alerted the Court that adopting Acceleron's construction of the term would not resolve the parties' dispute. SUMF ¶ D11. Since the Court issued its claim construction order, the construction of this term has continued to be a moving target—borne out by how Acceleron's "notions" change. During the expert phase of the litigation, Acceleron continued to add notions to the construction of "caddies," and Dell again asks that the Court explicitly reject these notions. The "notions" will continue to change until the case is presented to the jury unless the Court stops Acceleron as mandated by *O2 Micro*. 521 F.3d 1362–63. This dispute over the scope of the construction of "caddies" is dispositive for non-infringement and relevant to invalidity of Claim 3.

Acceleron's position on the scope of the word "carriers" in the construction of "caddies" shifts depending on whether Acceleron is asserting infringement or defending validity of Claim 3. For example, Acceleron alleges that modules attached to the caddies via multiple screws are infringing. SUMF ¶ D6. However, for validity, Acceleron contends that the module must be easily removed from the caddy such that having to remove "several screws" means that the prior art does not disclose a caddy. SUMF ¶ D7. As another example, Acceleron asserts certain components of the prior art are not caddies because they remain fixed in the chassis when the module is removed. SUMF ¶¶ D27–28.

But contrary to these inconsistent positions taken by Acceleron, the specification and prosecution history of the '021 Patent are devoid of any support

that the claimed caddies must carry the module in a certain way, or that the difficulty of removing the module or the removability of the caddy impacts whether the caddy is a carrier for that module. The specification merely states that "[e]ach module resides in a caddy 152 of the chassis such that when the module is inserted into the chassis the caddy ensures that the hot swap connectors are aligned," but it is silent on how the module is removed from or carried by the caddy. SUMF ¶ D26. Thus, Acceleron's notion that the module must be easily removable is wholly unsupported, and there is no basis to import such a requirement into the scope of the Court's construction.

As another example of Acceleron's "notions," Acceleron also seeks to read into the construction of "caddies" that air must flow from the front to the rear of the caddy. SUMF ¶ D8. Acceleron thus contends that modules in the prior art are not "caddies" because of the direction of the air flow relative to the caddy. *Id*. This concept of air flow with respect to the ***caddy*** has no basis in the specification much less the language of Claim 3. Instead, Claim 3 recites that "caddies provid[e] air flow from the front to the rear of the ***chassis***." SUMF ¶ D2 (emphasis added). Additionally, the specification only describes the direction of air flow with respect to the chassis, not the caddy. SUMF ¶ D10. The Court should thus expressly reject Acceleron's attempt to require that air must flow through the caddy from the front to the rear.

In addition, the parties also dispute what type of "module" may be carried by the caddy. Specifically, the dispute centers on whether "carriers for a module" requires that the "module" be a "hot-swappable . . . module" that is then carried by the caddy, as Dell contends (SUMF ¶ D23), or whether the hot-swappability of the module can result from the caddy, as Acceleron contends (SUMF ¶ D24). In other words, the parties' dispute is whether a caddy carries a module that is hot-swappable separate from the caddy, or whether the caddy may impart the hot-swappability. The prosecution history is clear that the "module" carried by the caddy must be a module recited in Claim 1. Specifically, Acceleron argued during the IPR of the '021 Patent that the caddy recited in Claim 3 must carry one of the modules recited in Claim 1. SUMF ¶ D5. The only modules recited in Claim 1 are "hot-swappable CPU modules," "a hot-swappable power module," and "a hot-swappable ethernet switch module." SUMF ¶ D1. Because all modules recited in Claim 1 are "hot-swappable," the module that the caddy carries must itself be hot-swappable independent of the caddy. The only way to clarify the Court's construction in a manner consistent with the prosecution history of the '021 Patent is to require that the "caddies" carry "hot-swappable modules."

Therefore, the Court should clarify its construction that a "cadd[y]" is a "carrier for a hot-swappable module" and expressly prohibit Acceleron from adding its ever-changing "notions" to the construction of "caddies."

> 2. The Accused Products Do Not Infringe Asserted Claim 3 Because the Accused Products Do Not Include "Caddies"

As discussed above, the correct construction of "cadd[y]" is a "carrier for a hot-swappable module." *See* Section IV.C.1, *supra*. This construction requires that any module carried by the caddy be hot-swappable independent of the caddy itself. Acceleron alleges that the system board in each server blade[4] is the claimed "hot-swappable CPU module," and that the "cadd[y]" for each of those system boards is the enclosure of the server blade. SUMF ¶¶ D12–D13. However, the undisputed evidence is that the system boards are not hot-swappable without the server blade enclosure. In other words, the blade enclosure allows the server blade to be hot-swappable. Therefore, the entire server blade—comprising both the system board and the blade enclosure—must be the "hot-swappable CPU module." Because the blade enclosure must be a part of the module carried by the caddy, the blade enclosure cannot itself be the caddy—it cannot carry itself. Thus, the Accused Products do not have "caddies" and do not infringe Claim 3 as a matter of law.



---

[4] Dell's technical documents use the terms "server blade" and "compute sled" interchangeably. For simplicity, Dell uses the term "server blade" in this motion to include any component referred to as a "server blade" or "compute sled" compatible for use with the Accused Products.



The enclosure of each accused server blade allows the server blade to be hot-

swappable. SUMF ¶ D19.

---

[5] Dell maintains that each server blade compatible with the Accused Products is unique and that Acceleron must independently prove infringement using each server blade. However, to avoid burdening the Court with discussion of multiple products, Dell relies on one server blade that is sufficiently representative for the purpose of this motion only. To the extent that differences between server blades are relevant to this motion, Dell has identified those differences.

████████████████████████████████████████

████████████████████████████   In fact, without the blade enclosure, the system board may be damaged during a hot swap due to electrical shorts, physical interference, and bending. SUMF ¶ D21.

As explained in Section IV.C.1 above, the proper construction of "cadd[y]" is "a carrier for a hot-swappable module." Acceleron's expert admits that the system board cannot be hot-swapped (*i.e.*, removed and replaced) from the blade enclosure. SUMF ¶ D25. If the system board cannot be hot-swapped from the blade enclosure, then the system board alone is not a "hot-swappable CPU module," and the blade enclosure is ***required*** to make the system board hot-swappable. SUMF ¶¶ D19–D21. Therefore, the blade enclosure must be a part of the "hot-swappable CPU module," and cannot be a separate carrier for the hot-swappable module. In other words, the blade enclosure, as part of the module, cannot be a carrier for itself. Therefore, under the proper construction, the accused blade enclosures cannot be the claimed "caddies" and thus none of the Accused Products infringe Claim 3.

Acceleron may argue that competing opinions between the parties' technical experts regarding whether the system board within a server blade of the Accused Products is hot-swappable without the blade enclosure raises a genuine issue of material fact that precludes summary judgment. *See* SUMF ¶ D23–D24. However, Acceleron would be wrong because, as shown above, it is in fact undisputed that the system board is not hot-swappable without the blade enclosure and the prosecution

16

history is clear that a caddy must carry a hot-swappable module. Because this raises a dispute as to the scope of the claims, the Court should clarify its construction of "caddies" to require that the carried "module" be a "hot-swappable . . . module" of Claim 1, rather than any module, hot-swappable or not. In view of such a clarified construction, the Court should grant summary judgment that the Accused Products do not infringe Claim 3 as a matter of law because the Accused Products do not include "caddies."

### D. The MX7000 System Does Not Infringe the Backplane Limitation of Claims 3, 14–17, and 24

Acceleron has failed to prove that the Dell PowerEdge MX7000 System ("MX7000") has a "backplane board" that interconnects the ethernet switch module with the CPU module, as required by all Asserted Claims of the '021 Patent. █

████████████████████████████████████████████████████

██████████████ █ ████████████████████████████████████

███████████████████████████████

Claims 3, 14–17, and 24 require a backplane board that interconnects the ethernet switch module with the CPU modules. SUMF ¶¶ E1–E5. Independent Claim 1, from which asserted Claims 3 and 14–17 depend, recites a backplane board that "***interconnects***" each of the CPU modules with at least one ethernet switch module so that the ethernet switch module can be used as a "shared resource" by the

---

[6] This motion for summary judgment focuses only on the Fabric A and B IOMs, and not the Fabric C IOMs.

CPU modules. SUMF ¶ E2 (emphasis added). Claim 24 recites "wherein each of the CPU module, the power module, and the ethernet switch module includes a hot swap connector for **connecting with a specific hot swap mating connector of the backplane board**." SUMF ¶ E3 (emphasis added). As shown below, Fig. 1 of the '021 Patent discloses that backplane board 104 interconnects ethernet switch module 110 with each of CPU modules 102(a)–(e). SUMF ¶ E5.



FIG.1

███████████████████████████████████████    ████████████████

████████████████████████████    ██████████████████████████████████

---

[7] In alleging infringement, Acceleron equates the Fabrics A and B IOMs of the MX7000 with the ethernet switch module of the '021 Patent. SUMF ¶ E6.

[8] Acceleron equates the server blades of the MX7000 with the CPU module of the '021 Patent. SUMF ¶ E7. The server blades of the MX7000 are also referred to as "compute sleds" in Dell's specifications and documentations for the MX7000. *Id.*



Because the MX7000 infrastructure boards do not have a backplane board that interconnects the ethernet switch module with the CPU module, the Court should grant summary judgment that the MX7000 does not infringe Claims 3, 14–17, and 24, either literally or under the doctrine of equivalents.

## V.    CONCLUSION

For the foregoing reasons, Dell respectfully requests that the Court grant summary judgment as a matter of law that (1) Claim 17 is invalid under 35 U.S.C.

§ 112 ¶ 4; (2) the VRTX system does not infringe the Asserted Claims; (3) the Accused Products do not infringe Claim 3; and (4) the MX7000 does not infringe Claims 3, 14–17, and 24.

Dated: August 7, 2019

Respectfully submitted,

*/s/ Kevin J. Meek*
Kevin J. Meek

Scott E. Taylor (Georgia Bar No. 785596)
Andrew B. Flake (Georgia Bar No. 262425)
Anuj Desai (Georgia Bar No. 193889)
**ARNALL GOLDEN GREGORY LLP**
171 17th Street Northwest, Suite 2100
Atlanta, Georgia 30363
Telephone: (404) 873-8728
Facsimile: (404) 873-8729
scott.taylor@agg.com
andrew.flake@agg.com
anuj.desai@agg.com

*Of Counsel:*

Kevin J. Meek (admitted *pro hac vice*)
Paula D. Heyman (admitted *pro hac vice*)
Nick Schuneman (admitted *pro hac vice*)
Jennifer L. Nall (admitted *pro hac vice*)
Valerie K. Barker (admitted *pro hac vice*)
Bailey P. Morgan (admitted *pro hac vice*)
Ryan Clark *(*admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701-4078
Telephone: (512) 322-2500
Facsimile: (512) 322-2501
kevin.meek@bakerbotts.com
paula.heyman@bakerbotts.com
nick.schuneman@bakerbotts.com
jennifer.nall@bakerbotts.com
valerie.barker@bakerbotts.com
**bailey.watkins@bakerbotts.com**
ryan.clark@bakerbotts.com

Roger Fulghum (admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-1522
roger.fulghum@bakerbotts.com

*ATTORNEYS FOR DEFENDANT/*
*COUNTERCLAIMANT, DELL INC.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned counsel hereby certifies that the foregoing Motion was prepared using 14-point Times New Roman font and a top margin of 1½ inches in accordance with Northern District of Georgia Local Rule 5.1 (C) and (D).

Dated: August 7, 2019

*/s/ Paula D. Heyman*
Paula D. Heyman