**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ACCELERON, LLC, | Civil Action File No. |
| Plaintiff, | |
| | 1:12-cv-04123-TCB |
| v. | |
| DELL INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

## <u>DELL INC.'S BRIEF IN SUPPORT OF THE MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO PRE-SUIT DAMAGES AND NON-INFRINGEMENT</u>

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................1

II.  STATEMENT OF UNDISPUTED MATERIAL FACTS ..................................2

III. LEGAL STANDARD ...........................................................2

IV.  ARGUMENT .................................................................3

    A. Pre-Suit Damages Are Barred Under Section 287(a) ....................3

        1. Acceleron Did Not Provide Constructive Notice Because
           It Failed to Ensure Even a Single Product was Marked ...........3

        2. Acceleron Failed to Provide Actual Notice Because It Did
           Not Communicate a Specific Charge of Infringement .............4

    B. The Accused Products Do Not Infringe Claims 14–17, 22, and 24 ...........7

        1. Acceleron Has Presented No Evidence That the Accused
           Products Infringe Claims 14–17 ...............................7

        2. Acceleron Has Presented No Evidence That the Accused
           Products Infringe Claim 22 ...................................9

        3. Acceleron Presents No Evidence That the Accused
           Products Infringe Claim 24 ..................................11

        4. Acceleron Has Presented No Evidence to Support
           Infringement for Four of Its Doctrine of Equivalents
           Theories .....................................................12

    C. Acceleron's DOE Theories Related to "hot-swappable CPU
       modules" of Claim 1 Are Precluded by Its Disavowal ...............13

    D. The Accused Products Do Not Have a "Microcontroller Module"
       That "Poll[s] the CPU Module" as Required by Claims 20 and 22 ...........14

        1. Interrupt-Driven Communications ..............................15

ii

　　　　2.　Query-Based Communications..............................................17

　　　　3.　No Information Gathering ...................................................18

　　　　4.　Commands Implemented on Accused Server Blades..........................18

　　E.　Acceleron's DOE Theories Are Ensnared by the Prior Art .......................20

V.　CONCLUSION .................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adrea, LLC v. Barnes & Noble, Inc.*,
   No. 13-CV-4137 JSR, 2015 WL 4610465 (S.D.N.Y. July 24, 2015)
   ..............................................................................................................................6

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*,
   24 F.3d 178 (Fed. Cir. 1994) ...........................................................................4, 5

*Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*,
   876 F.3d 1350 (Fed. Cir. 2017) ......................................................................3, 4

*Arthur A. Collins, Inc. v. N. Telecom Ltd.*,
   216 F.3d 1042 (Fed. Cir. 2000) ..........................................................................12

*Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co.*,
   384 F.3d 1333 (Fed. Cir. 2004) ..........................................................................14

*Bayer AG v. Elan Pharm. Research Corp.*,
   212 F.3d 1241 (Fed. Cir. 2000) ............................................................................7

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...............................................................................................2

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   567 F.3d 1314 (Fed. Cir. 2009) ..................................................................20, 21

*Dunlap v. Schofield*,
   152 U.S. 244 (1894)...............................................................................................4

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ..................................................................10, 12

*G. David Jang, M.D. v. Bos. Sci. Corp.*,
   872 F.3d 1275 (Fed. Cir. 2017) ..........................................................................20

iv

*Gart v. Logitech, Inc.*,
  254 F.3d 1334 (Fed. Cir. 2001) ...................................................................3, 6

*Mass. Inst. of Tech. v. Abacus Software, Inc.*,
  No. CIV A 501-CV344, 2004 WL 5268125 (E.D. Tex. Sept. 29,
  2004) ................................................................................................................6

*Nazomi Commc'ns, Inc. v. Nokia Corp.*,
  739 F.3d 1339 (Fed. Cir. 2014) ...............................................................9, 10

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
  138 F.3d 1437 (Fed. Cir. 1998) ...................................................................3, 4

*Pediatric Medical Dev., Inc. v. Indiana Mills & Mfg., Inc.*,
  984 F. Supp. 2d 1362 (N.D. Ga. 2013) .............................................................7

*Streamfeeder, LLC v. Sure-Feed Sys., Inc.*,
  175 F.3d 974 (Fed. Cir. 1999) ................................................................20, 21

*U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys.in
  Ala.*,
  941 F.2d 1428 (11th Cir. 1991) ........................................................................2

*Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*,
  204 F.3d 1360 (Fed. Cir. 2000) .....................................................................20

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) .......................................................................7

*Walker v. Darby*,
  911 F.2d 1573 (11th Cir. 1990) ......................................................................2

*WiAV Sols. LLC v. Motorola, Inc.*,
  732 F. Supp. 2d 634 (E.D. Va. 2010) ...............................................................6

*Zelinski v. Brunswick Corp.*,
  185 F.3d 1311 (Fed. Cir. 1999) ................................................................12, 13

## STATUTES

35 U.S.C. § 287 ......................................................................................................6

35 U.S.C. § 287(a) ................................................................1, 3, 4, 6, 25

**OTHER AUTHORITIES**

FED. R. CIV. P. 56(a).................................................................................2

Local Rule 5.1 (C) and (D) ....................................................................27

Rule 56 .......................................................................................................2

## I.     INTRODUCTION

Dell Inc. ("Dell") moves for partial summary judgment of non-infringement of Claims 3, 14–17, 20, 22 and 24 of U.S. Patent No. 6,948,021 (the "'021 Patent") and summary judgment of no pre-suit damages.

Acceleron alleges that the Dell PowerEdge 1855 ("1855"), PowerEdge 1955 ("1955"), PowerEdge M1000e ("M1000e"), PowerEdge VRTX ("VRTX"), and PowerEdge FX2 ("FX2") Systems infringe Claims 3, 14–17, 20, 22, and 24 of the '021 Patent ("Asserted Claims"). SUMF ¶¶ A3–A6. Additionally, Acceleron alleges that the PowerEdge MX7000 System ("MX7000") (collectively, with products above, the "Accused Products") infringes Claims 3, 14–17, and 24 of the '021 Patent. SUMF ¶ A7.

Dell respectfully requests that the Court enter partial summary judgment on the limited set of issues below:

- Acceleron is barred from recovering pre-suit damages under 35 U.S.C. § 287(a) because Acceleron failed to provide constructive and actual notice of infringement of the '021 Patent. *See infra* Section III.A.

- Dell is entitled to summary judgment of non-infringement as a matter of law because Acceleron presents no evidence that the Accused Products infringe Claims 14–17, 22, and 24 literally or under the doctrine of equivalents ("DOE"). *See infra* Section III.B.

- Acceleron's DOE theory related to "hot-swappable CPU modules" of Claim 1 is precluded by disavowal. *See infra* Section III.C.

- Dell does not infringe Claims 20 and 22 literally or under the DOE because Acceleron fails to prove that the Accused Products have a "microcontroller module" that "poll[s] the CPU module." Acceleron accuses communications

1

that are interrupt or query-driven, which directly contradict the Court's Claim Construction Order that polls cannot "encompass[ ] queries and interrupts." *See infra* Section III.D.

- The Accused Products do not infringe as a matter of law because Acceleron's doctrine of equivalent infringement theories ensnare the prior art. *See infra* Section III.E.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

Dell's Statement of Undisputed Material Facts ("SUMF") has been filed concurrently with this Motion. The undisputed material facts set forth in the arguments below cite to that Statement using "SUMF ¶ X" notation.

## III.   LEGAL STANDARD

Pursuant to Rule 56, summary judgment is appropriate when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The movant's initial burden is to negate an essential element of the non-movant's case or show that there is no evidence to prove a fact necessary to the non-movant's case. *U.S. v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys.in Ala.,* 941 F.2d 1428, 1437–38 (11th Cir. 1991). The burden then shifts to the non-movant, who must present "significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* at 1438 (citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the non-movant fails to present a

genuine issue of material fact, the moving party is entitled to summary judgment. *Four Parcels*, 941 F.2d at 1438.

## IV.   ARGUMENT

### A.   **Pre-Suit Damages Are Barred Under Section 287(a)**

Under 35 U.S.C. § 287(a), pre-suit damages are limited to those acts of patent infringement that occurred after notice, either constructive or actual, is given to the accused infringer. *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001). Because Acceleron failed to provide constructive or actual notice under 35 U.S.C. § 287(a), Acceleron is barred from obtaining pre-suit damages as a matter of law.

> 1.   Acceleron Did Not Provide Constructive Notice Because It Failed to Ensure Even a Single Product was Marked

Acceleron cannot meet its burden to show constructive notice under 35 U.S.C. § 287(a) because it presented no evidence that the licensees marked the licensed products. *Arctic Cat Inc. v. Bombardier Recreational Prod. Inc.*, 876 F.3d 1350, 1366 (Fed. Cir. 2017). A patentee must show that it made "reasonable efforts" to ensure its licensees mark "substantially all" licensed products. *Id.*; *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).[1] Here, Acceleron did not plead constructive notice. *See* SUMF ¶ F1. ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[1] An accused infringer bears a "low bar" in its "initial burden of production to articulate the products it believes are unmarked." *Arctic Cat,* 876 F.3d at 1368.

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████ Acceleron cannot meet its burden to show "reasonable efforts" to ensure that "substantially all" of its licensed products were marked. *See Arctic Cat*, 876 F.3d at 1366; *Nike*, 138 F.3d at 1446. Accordingly, the Court should grant summary judgment of no constructive notice under § 287(a).

> ### 2. Acceleron Failed to Provide Actual Notice Because It Did Not Communicate a Specific Charge of Infringement

Acceleron also cannot meet its burden to prove actual notice because its pre-suit communications failed to charge Dell with infringement. *See Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). To serve as actual notice, a letter to an alleged infringer must provide notice "of the infringement, not merely notice of the patent's existence or ownership." *Id.* (internal marks omitted). The letter must provide "the affirmative communication of a ***specific charge of infringement*** by a ***specific accused product***." *Id.* (emphases added).

████████████████████████████████████ █████

████████████████████ ████████████████████████████

---

[2] Acceleron has the burden of proof on this issue. *See Dunlap v. Schofield*, 152 U.S. 244, 248 (1894) (addressing predecessor statute).

[3] ████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

therefore does not provide the specificity needed to provide actual notice of a specific charge of infringement as a matter of law. *Amsted* 24 F.3d at 187 (Fed. Cir. 1994) (holding that letter "notif[ying] the whole industry" only of ownership of the patent and "generally advis[ing] companies not to infringe" did not constitute actual notice).

████████████████   ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

number is 6,948,021). SUMF ¶ F16.

[4] ████████████████████████████████████████████████

█████████████████ *see Amstead*, 24 F.3d at 187.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████████████████ *See Gart,* 254 F.3d at 1346–47. Indeed, courts have granted summary judgment of no actual notice when letters merely reference the "relevance" of a patent to products. *Mass. Inst. of Tech. v. Abacus Software, Inc.*, No. CIV A 501-CV344, 2004 WL 5268125, at *6–7 (E.D. Tex. Sept. 29, 2004) (granting summary judgment of no actual notice even when letter encouraged defendant to "consider [the patent's] ***relevance to your products*** and the value of licensing this important technology.") (emphasis added). Thus, as a matter of law, Acceleron failed to provide actual notice under 35 U.S.C. § 287.[5]

In sum, because there is no issue of material fact that Acceleron failed to provide constructive or actual notice under § 287(a), the Court should grant summary judgment and bar Acceleron from recovering pre-suit damages.[6]

---

[5] ██████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
███████████████████████████████

[6] Courts are split as to whether a failure to comply with § 287 forfeits all damages before actual notice (before and after products were licensed) or forfeits only damages for the time-period in which the patentee was required to mark (after products were licensed). *Compare Adrea, LLC v. Barnes & Noble, Inc.*, No. 13-CV-4137 JSR, 2015 WL 4610465, at *3 (S.D.N.Y. July 24, 2015) *with WiAV Sols. LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 640 (E.D. Va. 2010)). The holding in *Adrea* should be adopted because the explicit language of § 287 unambiguously limits the

**B.    The Accused Products Do Not Infringe Claims 14–17, 22, and 24**

Dell is entitled to summary judgment of non-infringement of Claims 14–17, 22, and 24 because Acceleron has failed to produce evidence to meet its burden of establishing infringement. To prove direct infringement, a patentee bears the burden to show the presence of every claim limitation in an accused product. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011). If any claim limitation is absent, there is no infringement as a matter of law. *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1247 (Fed. Cir. 2000). Summary judgment of non-infringement is appropriate when a reasonable jury "could reach only one conclusion about infringement," or "where the patent owner's proof is deficient in meeting an essential part of the legal standard of infringement, since such failure will render all other facts immaterial." *Pediatric Medical Dev., Inc. v. Indiana Mills & Mfg., Inc.*, 984 F. Supp. 2d 1362, 1365 (N.D. Ga. 2013).

1.    Acceleron Has Presented No Evidence That the Accused Products Infringe Claims 14–17

Claims 14–17 require a network attached storage ("NAS") for booting. SUMF ¶ G1–G3. Acceleron has produced no evidence that the Accused Products are configured to use a NAS during the boot process in the manner accused of infringement.

Acceleron alleges that the Accused Products infringe Claims 14–17 because they are "capable of remote booting using the Preboot eXecution Environment

---

period of time for damages: "damages may be recovered only for infringement occurring ***after such notice***."

7

(PXE) protocol." *See* SUMF ¶ G4. According to Acceleron, the PXE protocol "enables a PXE client system to locate an operating system boot file stored on a remote PXE boot server" where the "PXE server *is* a network attached storage (NAS) device connected to the client system." SUMF ¶ G5 (emphasis added).



Acceleron, however, has not established that this document describing one product reflects the functionality of all Accused Products.

Acceleron also has produced no evidence that the PXE boot server used by any of the Accused Products is a NAS as it alleges, much less "a storage device external to the computer network appliance that recognizes and processes file-level data" as the term NAS has been construed by the Court. *See* SUMF ¶ G8–G9.

███████████████████████████████████████████████

████████████████████████████ Acceleron has failed to establish

infringement of Claims 14–17. *See Nazomi Commc'ns, Inc. v. Nokia Corp.*, 739 F.3d

1339, 1345 (Fed. Cir. 2014) (affirming summary judgment of non-infringement

because the accused products "do not infringe without modification—the

modification of installing the required software.").

### 2. Acceleron Has Presented No Evidence That the Accused Products Infringe Claim 22

Acceleron lacks evidence that any of the Accused Products practice the

optional portion of the Intelligent Platform Management Interface ("IPMI")

specification upon which it relies on for alleged infringement. Claim 22 requires that

the "microcontroller module poll[] the CPU module on the status of an OS." SUMF

¶ G11. Citing the IPMI specification, Acceleron asserts that the Accused Products

"can poll the CPU module on the status of an operating system" based on "the

presence of IPMI watchdog timer commands." SUMF ¶ G12. Acceleron contends

that setting the "timer use" field for "SMS 'OS Watchdog' timeout" indicates that

the timer is being used as an OS watchdog timer. SUMF ¶ G13. Acceleron then

asserts that "[b]y issuing a 'Get Watchdog Timer' IPMI command to the CPU

module, the CMC module can actively gather the status of the operating system of

the CPU module." SUMF ¶ G14.[7]

---

[7] ████████████████████████████████████████████
███████████████████████████████████████████████

Acceleron, however, lacks evidence that the Accused Products implement the Get Watchdog Timer command in the manner accused. *See* SUMF ¶ G16–G18. Specifically, there is no evidence that any component of the Accused Products is configured to issue the Get Watchdog Timer command. *Id.* Further, Acceleron lacks evidence that a CMC module of the Accused Products is configured to issue the Get Watchdog Timer command to actively gather the status of the operating system of the CPU module as asserted. *Id.* Put simply, Acceleron has failed to establish that the cited portions of the IPMI specification reflect the functionality of the Accused Products.

Acceleron cannot rely on the Accused Product's compliance with the IPMI specification alone as evidence of infringement. The IPMI specification indicates that implementation of most functions is optional. SUMF ¶ G19. Acceleron lacks evidence that Get Watchdog Timer command is required, or as noted above, that the Accused Products implement or are configured to implement this optional function from the specification. Accordingly, Acceleron's reliance on the IPMI specification does not establish infringement of Claim 22. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327–28 (Fed. Cir. 2010) (affirming summary judgment of non-infringement because standards compliance alone would not establish that the accused infringer chooses to implement the optional section [of the standard]").

---

███████████████████████████████████████████████████████
██████████████████████████

### 3. Acceleron Presents No Evidence That the Accused Products Infringe Claim 24

Claim 24 requires that "the ethernet switch module filters communications," but Acceleron has produced no evidence that the Accused Products filter communications. Acceleron contends that the switch Input/Output Modules ("IOMs") in the Accused Products filter communications by either selectively routing communication packets based on information in the packet or choosing whether to forward or discard a packet to prevent collisions. SUMF ¶ G20. Specifically, Acceleron asserts that "[a] switch I/O module selectively routes communication packets between devices," by using information contained in or derived from the communication packets "to determine where to forward each individual packet." SUMF ¶ G21. Acceleron also contends that "a switch I/O module can be configured to choose whether to forward or discard the packet," such that "unwanted traffic from internal network communications can be filtered out and prevented from causing collisions" on internal and external networks. SUMF ¶ G22.

Acceleron, however, fails to present any evidence that the IOMs in the Accused Products are capable of performing either form of alleged filtering. *See* SUMF ¶ G23–G24. That is, Acceleron cites to no evidence that the IOMs in the Accused Products selectively route communications or choose whether to forward or discard a packet. *Id.* Acceleron also provides no evidence that all switch I/O modules necessarily implement one of the alleged forms of filtering such that each of the Accused Products filter communications as required by Claim 24. *Id.* Absent

such evidence, Acceleron cannot establish that the Accused Products infringe Claim 24.

For all the above reasons, Dell respectfully requests summary judgment of non-infringement on Claims 14-17, 22, and 24.

        4.      Acceleron Has Presented No Evidence to Support Infringement for Four of Its Doctrine of Equivalents Theories

Four of Acceleron's six infringement claims under the doctrine of equivalents ("DOE") fail because Acceleron because, contrary to the law, Acceleron relies on conclusory expert testimony. "Whether a claim is infringed under the doctrine of equivalents may be decided on summary judgment if no reasonable jury could determine that the limitation and the element at issue are equivalent." *Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1317 (Fed. Cir. 1999). Conclusory expert testimony "fails to provide the necessary evidentiary basis to support a claim that there is a genuine issue of material fact on equivalence." *Id.*; *see also Arthur A. Collins, Inc. v. N. Telecom Ltd.*, 216 F.3d 1042, 1046 (Fed. Cir. 2000) ("[A]n expert's unsupported conclusion on the ultimate issue of infringement is insufficient to raise a genuine issue of material fact.")

Acceleron asserts infringement under the DOE for limitations found in unasserted Claim 1 and asserted Claims 20 and 24. Specifically, Acceleron contends a passthrough I/O module, Fibre Channel switch module, and InfiniBand switch module in the Accused Products meet the ethernet switch module limitation of Claims 1, 20 and 24 under DOE. SUMF ¶ G25–G26. Acceleron also asserts that

caddies without fans meet the "caddies" limitation recited in Claim 3. SUMF ¶ G27.

For each DOE theory, Acceleron's expert merely parrots the legal analysis applicable for establishing DOE in concluding any difference between the alleged equivalents and the claim limitations would be insubstantial as shown in the exemplary paragraph below:

> 151.  However, if I were to assume that the Court's construction included the notion of the ethernet switch module having the ability to change routes, then I conclude that the differences between such an ethernet switch module and the passthrough I/O modules would be insubstantial.  Both devices would perform the same function (the transfer of data between devices), in substantially the same way (by receiving input data, processing/converting the data, and outputting the data), to obtain the same result (enabling network communications).

SUMF ¶ G28. These conclusory opinions, however, are not supported by citation to any record evidence or reasoned analysis.

Because Acceleron's DOE claims are premised on conclusory, unsupported expert testimony that fails to create a genuine issue of material fact on equivalence, Dell is entitled to summary judgment on these claims. *See Zelinski*, 185 F.3d at 1317.

### C.  Acceleron's DOE Theories Related to "hot-swappable CPU modules" of Claim 1 Are Precluded by Its Disavowal

The Court's Claim Construction Order states that Acceleron "disavowed the use of a local hard disk drive ('HDD') in the '021 Patent's term 'CPU module(s).'" SUMF ¶ H1. Thus, the Court construed "CPU module(s)" as "a module that has a central processing unit but lacks a hard disk drive." SUMF ¶ H2. Acceleron now

seeks to use DOE to pursue Accused Products that have server blades **with** hard disk drives contrary to the Court's express construction. SUMF ¶ H3. DOE, however, cannot be used to reclaim disavowed claim scope. *See Astrazeneca AB, Aktiebolaget Hassle, KBI-E, Inc. v. Mut. Pharm. Co*., 384 F.3d 1333, 1342 (Fed. Cir. 2004) ("specification's clear disavowal of [scope] precludes the application of the doctrine of equivalents to recapture the disavowed [scope]"). Accordingly, Dell is entitled to summary judgment on Acceleron's DOE infringement claims against Accused Products having hard disk drives.

### D.   The Accused Products Do Not Have a "Microcontroller Module" That "Poll[s] the CPU Module" as Required by Claims 20 and 22

Acceleron has failed to prove that the Accused Products have a "microcontroller module" that "poll[s] the CPU module," as required by Claims 20 and 22 of the '021 Patent. SUMF ¶ I1. Here, the Court construed "poll(s)" as "actively gathers information." SUMF ¶ I2. However, the Special Master and the Court determined that interrupts, queries, and polls are three distinct "modalities of getting information." SUMF ¶¶ I6–I7. In fact, the Court explained that "a person of ordinary skill in the art would ***not*** believe that polls also encompassed queries and interrupts." SUMF ¶ I8 (emphasis added). Acceleron's infringement theories rely on interrupts and queries contrary to the Court's ruling. Therefore, these theories fail as a matter of law, and Dell is entitled to summary judgment of non-infringement of Claims 20 and 22.



        1.     Interrupt-Driven Communications

Acceleron's expert Mr. Putnam ignores the Court's exclusion of interrupt-driven communications from the scope of "poll(s)." Acceleron alleges that the following communications constitute "poll[ing]"as found in Claim 20:



████████████████████████████████████████████████

████████████████████████████████████████████████

██████   ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

Mr. Putnam's position is not only inconsistent with the claim construction order, but is also inconsistent with his own testimony. In fact, Mr. Putnam testified during claim construction that in an interrupt-driven system, "a device that wants attention can generate an interrupt, which is a way of one device sending a signal to another device or component to say, hey, come – come [ask] me something or come pick something up or let me do something or I need a resource." SUMF ¶ I22. Here,

---

[8] Acceleron equates the server blades of the FX2 with the CPU module of the '021 Patent. SUMF ¶ I5. The server blades of the FX2 are also referred to as "compute sleds" in Dell's specifications and documentations for the FX2.

Mr. Putnam conceded that a response to an interrupt is still a part of the interrupt. However, Mr. Putnam now contends that the communication following the interrupt is a poll. █████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

According to Mr. Putnam's sworn testimony, a request for information after receipt of an interrupt is a part of an interrupt. *See* SUMF ¶ I22. Thus, each of the interrupt-driven communications that Acceleron alleges to be "poll[ing]" of the "CPU module" involves the server blades initiating the communication by sending an interrupt and the CMC gathering information only in response to that interrupt. These interrupt-driven communications cannot satisfy the "poll" limitation under the Court's construction. Thus, the Court should grant summary judgment that any interrupt-driven communication does not infringe Claim 20 as a matter of law.

> 2. Query-Based Communications

Acceleron also improperly accuses query-based communications of satisfying the "poll[ing]" limitation of Claim 20. SUMF ¶¶ I14, I23. █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

 thus, is a query under both Dell's and Acceleron's definitions. *Id*. As there is no dispute that this communication is initiated by a user action resulting in a query, this query-driven communication also cannot satisfy the "poll" limitation. Thus, the Court should grant summary judgment that any query-driven communication does not infringe Claim 20 as a matter of law.

### 3.    No Information Gathering

The construction of "poll(s)" requires that information be gathered, and the undisputed facts show that this process does not gather information. Thus, the Court should grant summary judgment that any communication that does not gather information does not infringe Claim 20 as a matter of law.

### 4.    Commands Implemented on Accused Server Blades

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████   The construction of "poll(s)" requires that the "microcontroller module" actively gathers information, and the undisputed facts show that this accused process is implemented by the accused CPU modules, not the accused microcontroller module. Thus, the Court should grant summary judgment that any communication implemented on the server blades, and not the CMC or DRAC/MC, does not infringe Claims 20 or 22 as a matter of law.

For the foregoing reasons, Dell respectfully requests summary judgment of non-infringement on Claims 20 and 22.

### E.   Acceleron's DOE Theories Are Ensnared by the Prior Art

DOE may not be used to ensnare what is in the prior art. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009). Yet Acceleron has done exactly that in proposing a total of 76 DOE allegations (that fall within six DOE theories) for Claims 3, 20, and 24 of the '021 Patent. SUMF ¶ J39; *see also id.* ¶¶ J1–J38.

Ensnarement is a question of law that is appropriate for summary judgment. *DePuy,* 567 F.3d at 1324. The alleged infringer bears the initial burden of showing that prior art encompasses the asserted equivalents, *Streamfeeder, LLC v. Sure-Feed Sys., Inc.*, 175 F.3d 974, 983 (Fed. Cir. 1999), but "the burden of persuasion is on the patentee to establish . . . that the asserted scope of equivalency would not ensnare the prior art." *Depuy,* 567 F.3d at 1323–24. "A helpful first step in an ensnarement analysis is to construct a hypothetical claim that literally covers the accused device."[9] *Depuy*, 567 F.3d at 1324. "Under a hypothetical claim analysis, a patentee proposes a hypothetical claim that is sufficiently broad in scope to literally encompass the accused product or process." *Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204

---

[9] The Federal Circuit has held that a "hypothetical claim analysis is not the only method in which a district court can assess whether a doctrine of equivalents theory ensnares the prior art," but there no guidance on an alternative analysis. *See G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275, 1285 n.4 (Fed. Cir. 2017).

F.3d 1360, 1364 (Fed. Cir. 2000). "Next, the district court must assess the prior art introduced by the accused infringer and determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is patentable over the prior art." *Depuy*, 567 F.3d at 1325.

Acceleron thus bears the burden of proving that its DOE theories do not ensnare the prior art. *Streamfeeder*, 175 F.3d at 983. Acceleron may satisfy that burden by proposing a hypothetical claim for each of its DOE theories that would literally encompass the Accused Products and then proving that the hypothetical claim would have been allowed by the Patent Office. *DePuy*, 567 F.3d at 1323–24. Here, Acceleron has not only failed to meet its burden to propose a hypothetical claim, but, as discussed further below, any hypothetical claim it could propose would ensnare the prior art. The Court should thus grant summary judgment as a matter of law that the Accused Products cannot infringe any asserted claim of the '021 Patent under Acceleron's DOE theories because they ensnare the prior art.

Acceleron asserts the following five DOE theories for Claims 3, 20, and 24: the (1) CPU-HDD equivalent, (2) Pass-through equivalent, (3) Fibre Channel equivalent, (4) Infiniband equivalent, and (5) Backplane equivalent. SUMF ¶¶ J4–J31, J35–J38. Acceleron asserts a sixth DOE theory for Claim 3: the Fans-In-Chassis equivalent. SUMF ¶¶ J32–J34. The ensnarement charts[10] show, on a limitation-by-limitation basis, prior art disclosure that would be ensnared by Acceleron's DOE

---

[10] Dell reserves the right to modify its ensnarement charts and/or respond to any hypothetical claims should Acceleron ever propose such hypothetical claims.

theories. SUMF ¶¶ J40–J82.

- CPU-HDD equivalent would ensnare the following prior art (Ex. 66):
    o Claim 3: Hipp, Jackson, and Gasparik
    o Claim 20: Hipp, SyMON, and Gasparik
    o Claim 24: Hipp, Feuerstraeter, and Gasparik
- Pass-through equivalent would ensnare the following prior art (Ex. 67):
    o Claim 3: Hipp; Hipp and Jackson
    o Claim 20: Hipp and SyMON
    o Claim 24: Hipp and Feuerstraeter
- Fibre Channel equivalent would ensnare the following prior art (Ex. 68):
    o Claim 3: Hipp and Jackson
    o Claim 20: Hipp, Jackson and SyMON
    o Claim 24: Hipp, Jackson, and Feuerstraeter
- Infiniband equivalent would ensnare the following prior art (Ex. 69):
    o Claim 3: Hipp and Carvey; Hipp, Carvey and Jackson
    o Claim 20: Hipp, SyMON, and Carvey
    o Claim 24: Hipp, Carvey, and Feuerstraeter
- Backplane equivalent would ensnare the following prior art (Ex. 71):
    o Claim 3: Hipp, Jackson, and Tavallaei
    o Claim 24: Hipp, Feuerstrater and Tavallaei
- Fans-In-Chassis equivalent would ensnare the following prior art (Ex. 70):
    o Claim 3: Hipp; Hipp and Jackson

Exs. 66-71. Acceleron alleges that each of its six equivalents are insubstantially different from the express claim limitation. Yet, as shown in the ensnarement charts and further described below, the asserted equivalents are disclosed in the prior art.

*CPU-HDD Equivalent:* Acceleron alleges that a CPU module with a hot-swappable HDD is equivalent to a CPU module that lacks a HDD. SUMF ¶ J4. Gasparik discloses the asserted HDD equivalent. Specifically, Figure 1 of Gasparik

discloses a "data processing system 100" including a hot-swappable "hard disk drive 116" via a "system bus 106," a "SCSI bus bridge 112," and a "SCSI bus 114." SUMF ¶¶ J55-J57; Ex. 66.

*Pass-through Equivalent:* Acceleron alleges that a pass-through module, which is not a "switch," nevertheless satisfies the "ethernet switch module" element under DOE. SUMF ¶ 11. Hipp discloses the asserted equivalent of a pass-through module, shown as the network interface card 40 illustrated in Figs. 1 and 4. SUMF at ¶¶ J61–J62; Ex. 67.

*Fibre Channel Equivalent:* Acceleron alleges that a Fibre-Channel switch module, which is not "ethernet," satisfies the "ethernet switch module" limitation under DOE. SUMF ¶ 18. Jackson teaches the asserted equivalent: that a Fibre Channel switch routes network communications. SUMF ¶¶ J65–J66; Ex. 68.

*Infiniband Equivalent:* Acceleron alleges that an Infiniband switch, which is not "ethernet," satisfies the "ethernet switch module" limitation under DOE. SUMF ¶ J25. Carvey teaches the asserted equivalent: that an Infiniband switch may be used to route network communications. SUMF ¶¶ J70–J71; Ex. 69. Carvey teaches that "[d]evices are coupled to the network through an Application Specific Module (ASM)," that "[e]xamples of ASMs include Infiniband (IBA), Gigabit Ethernet, [and others]" and that "the design and construction of ASMs are known to a person skilled in the art." *Id*. Carvey further incorporates by reference the "Infiniband™ Architecture Specification Volume 1 & 2, Release 1.0 COPYRIGHT © 1999." *Id.*

*Fans-In-Chassis Equivalent:* Acceleron also alleges that fans in the chassis, but not connected to the caddy, "provid[e] airflow from the from to the rear of the chassis" as recited in Claim 3 under DOE. SUMF ¶ 32. Hipp teaches the asserted equivalent: specifically, fans in *Hipp* are located in the chassis in an articulating door, as shown in Figure 10 below. SUMF ¶¶ J73–J74; Ex.70.



*Backplane Equivalent:* Acceleron also alleges that multiple backplanes connected via cabling satisfy the backplane limitation under DOE. SUMF ¶ J35. Tavallaei, as shown in Figure 1, teaches the asserted equivalent: namely, non-unitary backplane boards (i.e., a system board 108 and a power backplane 160) connected via cabling (i.e., sense cable 162 and power cables 156). SUMF ¶¶ J75-J76; Ex. 71.



Ex. 58 at Fig. 1 (annotated excerpt); *id.* at 7:18-20.

Acceleron has not proposed and cannot construct a hypothetical claim for its DOE theories that would cover the asserted equivalents and avoid the prior art. Accordingly, Dell is entitled to judgment as a matter of law that the Accused Products do not infringe any asserted claims under the above DOE theories.

## V.    CONCLUSION

For the foregoing reasons, Dell respectfully requests summary judgment that (1) Acceleron is barred from recovering pre-suit damages under 35 U.S.C. § 287(a) for failing to provide constructive and actual notice of infringement; (2) the Accused Products do not infringe Claims 14–17, 22, and 24 because Acceleron has presented no evidence of direct infringement or infringement under DOE; (3) Acceleron's DOE theories related to "hot swappable CPU modules" of Claim 1 are precluded as disavowed; (4) the Accused Products do not infringe Claims 20 and 22 because Acceleron cannot show that the Accused Products have a "microcontroller module" that "poll[s] the CPU module;" and (5) the Accused Products do not infringe under the doctrine of equivalents because Acceleron's doctrine of equivalents theories would ensnare the prior art.

Dated: August 7, 2019                    Respectfully submitted,

                                         */s/ Kevin J. Meek*
                                         Kevin J. Meek

                                         Scott E. Taylor (Georgia Bar No. 785596)
                                         Andrew B. Flake (Georgia Bar No. 262425)
                                         Anuj Desai (Georgia Bar No. 193889)
                                         **ARNALL GOLDEN GREGORY LLP**
                                         171 17th Street Northwest, Suite 2100
                                         Atlanta, Georgia 30363
                                         Telephone: (404) 873-8728
                                         Facsimile: (404) 873-8729
                                         scott.taylor@agg.com
                                         andrew.flake@agg.com
                                         anuj.desai@agg.com

                                         *Of Counsel:*

                                         Kevin J. Meek (admitted *pro hac vice*)
                                         Paula D. Heyman (admitted *pro hac vice*)
                                         Nick Schuneman (admitted *pro hac vice*)
                                         Jennifer L. Nall (admitted *pro hac vice*)
                                         Valerie K. Barker (admitted *pro hac vice*)
                                         Bailey P. Morgan (admitted *pro hac vice*)
                                         Ryan Clark *(*admitted *pro hac vice*)
                                         **BAKER BOTTS L.L.P.**
                                         98 San Jacinto Boulevard, Suite 1500
                                         Austin, Texas 78701-4078
                                         Telephone: (512) 322-2500
                                         Facsimile: (512) 322-2501
                                         kevin.meek@bakerbotts.com
                                         paula.heyman@bakerbotts.com
                                         nick.schuneman@bakerbotts.com
                                         jennifer.nall@bakerbotts.com
                                         valerie.barker@bakerbotts.com
                                         **bailey.watkins@bakerbotts.com**
                                         ryan.clark@bakerbotts.com

Roger Fulghum (admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-1522
roger.fulghum@bakerbotts.com

*ATTORNEYS FOR DEFENDANT/*
*COUNTERCLAIMANT, DELL INC.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned counsel hereby certifies that the foregoing Motion was prepared using 14-point Times New Roman font and a top margin of 1½ inches in accordance with Northern District of Georgia Local Rule 5.1 (C) and (D).

Dated:  August 7, 2019.

*/s/ Paula D. Heyman*
Paula D. Heyman