## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ACCELERON, LLC, | Civil Action File No. |
| Plaintiff, | 1:12-CV-04123-TCB |
| v. | |
| DELL, INC., | |
| Defendant. | |

## BRIEF IN SUPPORT OF ACCELERON'S
## MOTION FOR PARTIAL SUMMARY JUDGMENT ON INFRINGMENT

# TABLE OF CONTENTS

1.   BACKGROUND ...................................................................................1

2.   ARGUMENT .......................................................................................2

   2.1.   The M1000e Infringes the '021 Patent.....................................2

      2.1.1.   The M1000e Literally Infringes Claim 3 ....................................2

      2.1.2.   The M1000e Literally Infringes Claim 20 ...............................16

      2.1.3.   The M1000e Literally Infringes Claim 24 ...............................20

   2.2.   The FX2 Literally Infringes Claims 3, 20, and 24 ............................21

   2.3.   The VRTX Literally Infringes Claims 3, 20, and 24 .........................22

   2.4.   The MX7000 Literally Infringes Claims 3 and 24..............................23

# TABLE OF AUTHORITIES

### CASES

*Commil USA, LLC v. Cisco Sys.*,
  135 S. Ct. 1920 (2015) ..........................................................................21

*Gemtron Corp. v. Saint-Gobain Corp.*,
  572 F.3d 1371 (Fed. Cir. 2009) ...........................................................21

*New Hampshire v. Maine*,
  532 U.S. 742 (2001) ...............................................................................5

# TABLE OF EXHIBITS

Ex. A – Statement of Undisputed Material Facts

    Ex. A-1 – PowerEdge M1000e Technical Guide

    Ex. A-2 – PowerEdge FX2 and FX2s Enclosure Owner's Manual

    Ex. A-3 – PE M1000, VRTX, FX2 Modular Family

    Ex. A-4 – Expert Rebuttal Report of Dr. William Michalson Directed to Non-Infringement of the Asserted Claims of U.S. Patent No. 6,948,021

    Ex. A-5 – PowerEdge VRTX Enclosure Owner's Manual

    Ex. A-6 – Plasma PowerEdge VRTX Source Book

    Ex. A-7 – PowerEdge MX7000 Enclosure Technical Specifications

    Ex. A-8 – PowerEdge MX Networking Overview

    Ex. A-9 – Skylynx System Specification

    Ex. A-10 – U.S. Patent No. 6,948,021

    Ex. A-11 – Exhibit 1 of Plaintiff' Third Amended Infringement Contentions (for M1000e)

    Ex. A-12 – Exhibit 3 of Plaintiff's Third Amended Infringement Contentions (for FX2)

    Ex. A-13 – Exhibit 4 of Plaintiff's Third Amended Infringement Contentions (for VRTX)

    Ex. A-14 – Exhibit 5 of Plaintiff's Third Amended Infringement Contentions (for MX7000)

    Ex. A-15 – Dell Enterprise White Paper, PowerEdge M1000e Modular Enclosure Architecture

    Ex. A-16 – Exhibit A of Defendant's Third Amended Non-Infringement Contentions (for M1000e)

Ex. A-17 – Exhibit C of Defendant's Third Amended Non-Infringement Contentions (for FX2)

Ex. A-18 – Exhibit D of Defendant's Third Amended Non-Infringement Contentions (for VRTX)

Ex. A-19 – Exhibit E of Defendant's Third Amended Non-Infringement Contentions (for MX7000)

Ex. A-20 – Various Photos of Accused Products

Ex. A-21 – PowerEdge M620 Systems Owner's Manual

Ex. A-22 – Transcript of October 12, 2017 Deposition of Joel Shawn Dube

Ex. A-23 – M620/M620x Product Specification

Ex. A-24 – PowerEdge Modular Systems Hardware Owner's Manual

Ex. A-25 – Transcript of November 10, 2017 Deposition of Gregory Casey

Ex. A-26 – Transcript of July 18, 2018 Deposition of Stephen Rousset

Ex. A-27 – Rebuttal Expert Report of William O. Putnam Regarding Infringement of U.S. Patent No. 6,948,021

Ex. A-28 – Transcript of June 28, 2018 Deposition of Babu Chandrasekhar

Ex. A-29 – Dell Training PowerEdge M620

Ex. A-30 – Initial Expert Report of William O. Putnam Regarding Infringement of U.S. Patent No. 6,948,021

Ex. A-31 – Exhibit 9 of the Deposition of Babu Chandrasekhar

Ex. A-32 – Dell 10Gb Ethernet Pass Through –k for M1000e

Ex. A-33 – Expert Report of William Michalson, Ph.D on the Invalidity of the Asserted Claims of U.S. Patent No. 6,948,021

Ex. A-34 – Dell Blade Certification Program

Ex. A-35 – PowerEdge M620 Thermal-Acoustical Messaging Documentation

Ex. A-36 – Transcript of February 25, 2019 30(b)(6) Deposition of Dell, Inc. (Dube)

Ex. A-37 – Initial Expert Report of William O. Putnam Regarding Validity of U.S. Patent No. 6,948,021

Ex. A-38 – Dell's Responses to Plaintiff Acceleron, LLC's Fourth Requests for Admission [Nos. 117-376]

Ex. A-39 – Transcript of February 18, 2019 30(b)(6) Deposition of Dell, Inc. (Brown)

Ex. A-40 – IPMI Flow Between CMC and IMC

Ex. A-41 – IPMI Interface for IMC

Ex. A-42 – TDM Shifty Bus Specification

Ex. A-43 – Dell Source Code

Ex. A-44 – Blade Server Overview Key Differences

Ex. A-45 – IPMI Specification

Ex. A-46 – Petition for IPR (IPR2013-440)

Ex. A-47 – Technician Training for PowerEdge FC630

Ex. A-48 – PowerEdge FC630 Owner's Manual

Ex. A-49 – FC640 CAD Drawing

Ex. A-50 – Stomp System Specification

Ex. A-51 – VRTX Training

Ex. A-52 – M630 Reference Guide

Ex. A-53 – PowerEdge MX7000 Enclosure Installation and Service Manual

Ex. A-54 – PowerEdge MX740c Installation and Service Manual

Ex. B – August 7, 2019 Declaration of William O. Putnam

Acceleron respectfully moves for partial summary judgment as to Dell's infringement of U.S. Patent No. 6,984,021 ("the '021 Patent") with respect to the M1000e, FX2, VRTX, and MX7000 products. Specifically, Acceleron moves for summary judgment that the M1000e, FX2, and VRTX literally infringe claims 3, 20, and 24 and that the MX7000 literally infringes claims 3 and 24.

## 1. BACKGROUND

The '021 Patent is directed towards computer network appliances having hot swappable modules that are interconnected through a backplane board. Ex. A-10 at 1:60-2:5. The modules can reside in individual caddies that, among other things, ensure that hot swap connectors are properly aligned when the modules are inserted into the chassis. *Id.* at 3:32-34. The computer network appliances of the '021 Patent can also include a microcontroller module that polls other modules in the appliance to, for example, monitor and control those components. *Id.* at 7:62-8:15.

Dell's M1000e product is a blade server system that supports up to 32 server blades of various sizes. Ex. A-1 at ACC-0093447. The server blades insert into the front of the M1000e chassis, while the rear of the chassis holds power supply modules, management modules, and input/output ("I/O") modules. *Id.* at ACC-0093454.

1

████████████    The FX2 can support up to eight server blades of various sizes, while

the VRTX can support up to four server blades. Ex. A-5 at DELL-ACC-0060783;

Ex. A-6 at DELL-ACC-00123964.

████████████████████████████████████████



████████████████████████████████████████

████████████████████████████████████████

████████████████████████████    The photographs below, from left to right, show

the M1000e, FX2, VRTX, and MX7000 systems:

   

## 2. ARGUMENT

### 2.1. The M1000e Infringes the '021 Patent

#### 2.1.1. The M1000e Literally Infringes Claim 3

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████  As discussed below, Acceleron is entitled to summary judgment as to the M1000e's infringement of claim 3.

### 2.1.1.1. *"a plurality of hot-swappable CPU modules"*

A representative server blade for the M1000e is shown to the right. Each M1000e server blade includes a caddy (Dell calls them "enclosures" and



*Ex. A-20 at ACC-0084199*

"trays") that contains *inter alia* a "system board" (Dell also calls them "system board assemblies," "motherboards," "planars," and "printed circuit board assemblies"). *See*, *e.g.*, Ex. A-22 at 70:13; Ex. A-23 at DELL-ACC-00280216.

Acceleron asserts that the system boards of the server blades constitute the claimed "hot-swappable CPU modules." Examples of M1000e CPU modules removed from their caddies are shown below:



Ex. A-21 at ACC-0093814; Ex. A-20 at ACC-0084207.

███████████████████████████████████

███████████████████████████████████

3



Dell's argument fails to apply the Court's claim construction, as it appends a requirement that the CPU module be hot swappable both with and without a caddy. There is nothing in the Court's construction or the claim language that imposes such limitations. Instead, the Court's construction of "hot swappable . . . modules" is simply "a [module] capable of being added to or removed from the computer network appliance while the computer network appliance is powered on or operational," regardless of the presence of a caddy. Doc. 182 at 13-14. Because there is no dispute that each system board is capable of being added to or removed from the M1000e while the M1000e is powered on or operational *at least* when the system board is within its caddy, there is no genuine dispute that the M1000e system boards are "hot swappable . . . modules" under the Court's claim construction.

---

[1] ████████████████████████████████████████████████████████ This argument is a straw man, as Acceleron contends that the system board, not the entire server blade, constitutes the claimed CPU module.

Next, there is no genuine dispute that each M1000e system board constitutes a claimed "CPU module," which the Court construed as "a module that has a central processing unit but lacks a hard disk drive." Doc. 182 at 24. ███████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████.[2] Ex. A-4 at ¶163-71.

Before addressing Dell's argument, it is important to understand the design of the server blades. First, the blades are designed to operate in a "diskless configuration," making HDDs entirely optional. Ex. A-24 at ACC-0094029. If HDDs are used, they must be installed in "special hot-swappable drive carriers that fit in the drive bays" located at the front of the caddy. Ex. A-21 at ACC-0093809. ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████ A hot-

---

[2] Because Dell argued at the *Markman* hearing that the phrase "lacks a hard disk drive" *excludes* lacking a SSD, Doc. 105-1 at 49:19-50:25, Dell is judicially estopped from now asserting that a SSD is a HDD or that a SSD includes a hard disk. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . ."). As such, Acceleron addresses only the issue of HDDs, and not SSDs, in this briefing.

swappable drive carrier and the location of the drive bays are shown below:



Ex. A-21 at ACC-0093811; Ex. A-30 at ¶ 99.

When HDDs are installed in a caddy, they do not at-
tach to the system boards. Rather, "[a]ll drives connect to
the blade system board through [a] hard-drive/SSD back-
plane board." Ex. A-21 at ACC-0093809. An example of a
hard-drive/SSD backplane is shown to the right.



*Ex. A-21 at ACC-*
*0093812*

As set forth in the Statement of Undisputed Material Facts, the M1000e server
blades are designed such that: (1) the system board does not include any HDDs; (2)
the system board is separated from HDDs by a backplane; (3) HDDs are optional;
(4) the system board is operable independently from the HDDs; (5) the HDDs are
hot-swappable from the blade and can be added or removed without shutting down
the blade; (6) the HDDs require "special hot-swappable drive carriers" in order to be
compatible with the blades; and (7) the HDDs insert into drive bays located at the
front of the blade caddy, while the system board resides outside of the bays at the

6

rear of the caddy. Ex. A at Nos. 30-42. Therefore, there is no genuine dispute that each system board "lacks a hard disk drive," as required under the Court's construction. ████████████████████

████████████████████████████████

████████████████████████████████████



*Ex. A-31 at ACC-0093814*

████████████████████████████████████████

██████████████████████████████████

██████████████████████████████

████████████████████████████████████

████████████████████████████████████

Ex. A-16 at 2-3. Dell is incorrect.

First, it is undisputed that the HDDs do not couple directly to the system board. As explained in Dell's documentation for the M1000e, "[a]ll drives connect to the blade system board *through the hard-drive/SSD backplane board*." Ex. A-21 at ACC-0093809 (emphasis added). Thus, even if Dell were correct in asserting that "any components coupled directly to the system board . . . are part of the system board assembly," the HDDs are not part of the system board because they do not directly couple to it.

Additionally, the hard-drive/SSD backplane is not an "extension" of the system board. ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███ Ex. A-4 at ¶¶ 175-180. Because the hard-drive/SSD backplane couples *to* the system board, it is obviously not part *of* the system board.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████ Ex. A-22 at 79:8-11 (emphasis added). ███████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████ *Id.* at 79:12-15. █████████████████████████

████████████████████████████████████████████████████████████████

████████████████ *Id.* at 79:8-11 (emphasis added).

████████████████████████████████████████████████████

████████████████████████████████████████ *See* Ex. A-23 at

DELL-ACC-00280237 (listing HDDs, keyboards, and mice all as blade "periph-erals"). 

. *Compare id.* at DELL-ACC-00280208 (

) *with id.* at DELL-ACC-00280209 (

). In fact, HDDs are even *further* removed from the system board than keyboards and mice, because keyboards and mice couple directly to the system board through a USB port instead of using a backplane. Ex. A-21 at ACC-0093770.

Furthermore, Dell's argument that the hard-drive/SSD backplane board is an "extension" of the system board resulting in the HDDs becoming part of the system board creates absurd results. For example, Dell's logic would incorrectly result in all of the M1000e's six I/O modules, two CMC modules, nine fan modules, six power supply modules, iKVM module, and LCD panel (plus even more compo-nents) being part of the system board because they all are interconnected through a backplane. *See* Ex. A-15 at ACC-0093429 (illustrating backplane interconnection). Dell's logic would also incorrectly mean that the power modules, I/O module, ether-net switch module, and microcontroller module described in the '021 Patent are all part of the disclosed CPU modules because they are also interconnected through a backplane. *See* Ex. A-10 at cl. 1 ("the at least one backplane board interconnects . .

9

.".) Because Dell's argument creates results that are obviously preposterous, it cannot be correct.

Therefore, there is no genuine dispute of material fact as to how the HDDs connect to the system board via the hard-drive/SSD backplane, which makes them separate from and not a part of the system board. As such, there is no genuine dispute that the system boards are "hot-swappable CPU modules," as required by claim 3.

### 2.1.1.2. *"ethernet switch module"*

Acceleron asserts that all M1000e I/O modules, which are modules that provide network connectivity for the server blades, constitute the claimed "ethernet switch module."[3] ███████████████████████████

███████████████████████████████████████████████

███████████████████████████████████. Ex. A-4 at ¶¶ 87-126.

████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████. *Id.* at 106. However, Dell's argument is merely an

---

[3] Notably, the '021 Patent uses the word "ethernet" (no capitalized "E"), *not* "Ethernet."

improper attempt to change the Court's claim construction.[4] The Court's construction of "ethernet switch module" encompasses *all* "network communications," not just IEEE 802-based network communications. *See* Doc. 182 at 25. Because it is undisputed that Fibre Channel and InfiniBand communications are types of network communications, *see* Ex. A at Nos. 55-58, there is no genuine dispute that the Fibre Channel and InfiniBand I/O modules constitute an "ethernet switch module" under the Court's construction.

Next,  Ex. A-4 at ¶¶ 111, 119, 122. However, under the clear language of the Court's Claim Construction Order, an "ethernet switch module" is simply a module configured to "route[] network communications between multiple devices."

---

[4] Dell never attempted to limit "network communications" to only IEEE 802-based network communications during claim construction *See* Doc. 85-1 at 16 (Dell's initial construction including "network communications"); *see also* Doc. 119 at 19 (Dell's changed construction including "network communications"). Dell also did not object to the Special Master's recommended construction on the basis of the "network communications" language. *See* Doc. 126 at 17-19.

Doc. 182 at 25. None of the additional requirements Dell seeks to import into the Court's claim construction are required. Therefore, Dell's arguments are another improper attempt to change the Court's claim construction after claim construction is complete.

Moreover, the Special Master and the Court have already rejected Dell's proposed construction requiring the ethernet switch module to direct network communications "based on the addresses of the communications." Doc. 119 at 21; Doc. 182 at 25. And during claim construction, Dell abandoned its original construction that required the ethernet switch module to "*selectively* route[]" communications. Ex. Doc. 85-1 at 16 (emphasis added). Therefore, Dell's attempt to change the Court's construction of this term to require "selective routing" and routing "based on addresses" is not only improper, it has already been rejected by the Court or abandoned by Dell.

Finally, Dell's passthrough argument is completely undermined by the fact that ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████. Specifically, ███████████████████████████████████████ ███████████████████████████████████████████████████████████



█████. Ex. A-33 at ¶ 176; *see* Ex. A-26 at 130:1-4 (████████

███████████). Therefore, there is no genuine dispute that the passthrough versions of the accused I/O modules constitute a claimed "ethernet switch module."

### 2.1.1.3. *"caddies providing air flow from the front to the rear of the chassis"*

Acceleron asserts that the server blades' metal enclosures that carry the system boards are the claimed caddies. Dell contends that ██████████

████████████████████████████████

█████████████████████. Ex. A-4 at ¶¶ 222-244.

There is no genuine dispute that the enclosures for the server blades are carriers for the system boards. ██████████████████████████

████████████████████████████████

████████████. Ex. A-28 at 162:21-22.  Similarly, █████████████

████████████████████████████████

████████████████████████████████

███████████████. Ex. A-26 at 153:9-20.





Ex. A-4 at ¶ 230. A simple comparison of the

*Ex. A-30 at ¶ 40*

Racemi prototype caddy shown above to Dell's blade enclosures shown below re-

veals that Dell's blade enclosures are essentially the same:



Ex. A-20 at ACC-0099429; ACC-0084207. Therefore, there is no genuine dispute

that the M1000e server blade enclosures constitute the claimed "caddies."

Next, there is also no genuine dispute that the M1000e blade caddies

"provid[e] air flow from the front to the rear of the chassis," as recited in claim 3.

The M1000e chassis contains fans that generate air movement within the chassis,

with fresh air entering the front of the chassis through air inlets in the front of the

blade's caddies. Ex. A-15 at ACC-0093430-431.

Ex. A-25 at 229:14-20.

The design of the M1000e's caddies provides air flow from the front to the

rear of the chassis. *See* Ex. A at Nos. 76-84. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████ Ex. A-4

at ¶ 229 (emphasis added).

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████

      Furthermore, Dell's argument is completely under-

mined by the invalidity report of its expert, because ██████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



" Ex. A-33 at ¶¶ 19, 250. Therefore, even Dell's expert

Furthermore,

Ex. A-36 at

43:14-17 (emphasis added). Accordingly, there is no genuine dispute that the

M1000e's server blade enclosures constitute the claimed "caddies providing air flow

from the front to the rear of the chassis."

Dell does not dispute the presence of the other elements required by claim 3.

*See* Ex. A at 11-18. Therefore, Acceleron is entitled to summary judgment as to the

M1000e's infringement of claim 3.

### 2.1.2. *The M1000e Literally Infringes Claim 20*

*See* Ex. A-4 at ¶ 310-11. As such, Acceleron is entitled to sum-

mary judgment as to these issues for the same reasons discussed above.

16



*Id.* at ¶¶ 333-70. Dell is incorrect.

*See* Ex. A at 102-125.

Ex. A-4 at ¶¶ 344-70.

████████████████████████████████████████

████████████████████████████████████████

████████████████████████   *Id.* at ¶ 314 (emphasis added). Dell's argument, however,

is just another improper attempt to re-construe the claim, as the Court's construction

unambiguously does not require the microcontroller module to initiate the process

of actively gathering information. Instead, the Court's construction merely requires

the microcontroller module to "actively gather information" irrespective of what

caused the active gathering to take place. Doc. 182 at 36.

Moreover, Dell's argument is undermined by the testimony of its Rule

30(b)(6) designee, ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████   Ex. A-39 at 36:15-37:9, 38:18-24.   ████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████   *Id.* at

46:18-47:17, 50:11-19.   ██████████████████████████████



Ex. A-42 at DELL-ACC-00217311

(emphasis added). Similarly, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A-43

at ll. 1032-34. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. A-39 at 166:24-167:13 (emphasis

added). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ At the *Markman* hearing, Dell explained that a "query"

is an event where "some external force" (such as user terminal) requests information

and the microcontroller module simply relays the request. Doc. 105-1 at 200:17-23.

An interrupt, as Dell argued in the technology tutorial before the *Markman* hearing,

is when a component provides information to the microcontroller module without

the microcontroller module seeking it. *See* Ex. A-27 at ¶ 171(Dell's presentation illustrating "Hello, I'm overheated" being pushed to the management module without a request).

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████ Ex. A-44 at DELL-ACC-00133286. ████████████████████████████████████

███████████████████████████████████████

Ex. A-4 at ¶ 363. However, Dell's argument is inapplicable, as the purpose of the active gathering of information is not relevant under the claim language or the Court's claim construction.

Therefore, there is no genuine dispute that the M1000e's CMC is configured to poll the CPU module, as required by claim 20. As such, Acceleron is entitled to summary judgement in its favor as to this issue.

### 2.1.3. The M1000e Literally Infringes Claim 24

███████████████████████████████████████

███████████████████████████████████████

████████████████ Ex. A-4 at 384-85. As such, Acceleron is entitled to summary judgment as to these issues for the same reasons discussed above. *See supra* § 2.1.1.



Ex A-11 at 179.

Ex. A-16 at 60 (alteration by Dell).

Dell's reliance on an invalidity argument to assert non-infringement is misplaced. It is well-established that "invalidity is not a defense to infringement, it is a defense to liability." *Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1929 (2015). Courts routinely enter summary judgment concerning infringement, saving questions of validity for trial. *See*, *e.g.*, *Gemtron Corp. v. Saint-Gobain Corp.*, 572 F.3d 1371, 1376 (Fed. Cir. 2009).

Acceleron is also entitled to summary judgment as to this issue.

## 2.2. The FX2 Literally Infringes Claims 3, 20, and 24

Dell's non-infringement arguments regarding the FX2 for claims 3, 20, and

24 are the same as those asserted for the M1000e. *See* Ex. A-4 at ¶¶ 116-26, 174-84, 223-44, 333-70 (arguing FX2 and M1000e together). Dell's arguments fail for the same reasons—namely, the system boards are hot-swappable, the system boards lack a HDD, the blade enclosures are carriers for the system boards and provide front-to-rear airflow, all I/O modules route network communications, and the CMC polls the system boards. *See supra* §§ 2.1.1-3. Because Dell has argued the issues for FX2 and M1000e jointly, and has not articulated a basis as to why the FX2 would require different analysis or conclusions, summary judgment of infringement as to the FX2 is appropriate.

### 2.3. The VRTX Literally Infringes Claims 3, 20, and 24

██████████████████████████████████████████████████

████████████████████████████████████████ *See* Ex. A-4 at ¶¶ 116-26, 174-84, 223-44, 333-70 (arguing VRTX and M1000e together). As Dell has not articulated a reason why the conclusions for VRTX should be any different, Dell's arguments fail for the same reasons. *See supra* §§ 2.1.1-3.

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████ Ex. A-4 at ¶ 76. Dell is incorrect.



*Id.* at ¶ 81. However, the Court's construction of "hot-swappable . . . modules" is "a [module] *capable* of being added to or removed from the computer network appliance while the computer network appliance is powered on *or* operational." Doc. 182 at 13-14 (emphasis added).

Thus, there is no genuine dispute that the I/O modules are "hot swappable" under the Court's construction. Therefore, Acceleron is entitled to summary judgment on VRTX's infringement of claims 3, 20, and 24.

## 2.4.  The MX7000 Literally Infringes Claims 3 and 24

*See* Ex. A-4 at ¶¶ 106-26, 174-84, and 223-44 (arguing MX7000 and M1000e together). Dell's arguments fail for the same reasons—namely, the system boards are hot-swappable, the system boards lack a HDD, the blade enclosures are carriers for the system boards and provide front-to-

rear airflow, all I/O modules route network communications, and the CMC polls the system boards—and Dell does not articulate a basis supporting any different conclusions for the MX7000. *See supra* §§ 2.1.1-3. Therefore, Acceleron is entitled to summary judgment as to claim 24.

In addition to the same arguments it asserts with respect to the M1000e, for claim 3 (which incorporates the elements of claim 1), ███████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Ex. A-4 at § VIII.A.4. Dell is incorrect.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



*See* Ex. A at Nos. 231-245.

Instead, the claim requires simply that "the at least one backplane board interconnects each of the CPU modules with . . . the at least one ethernet switch module, such that . . . the at least one ethernet switch module can be used as a shared resource by the plurality of CPU modules." Ex. A-10 at cl. 1.

Therefore, Acceleron is also entitled to summary judgement as to the MX7000's of claim 3.

_____

[5]

*See* Ex. A-4 at ¶¶ 204-11.

Respectfully submitted this 7th day of August, 2019.

/s/ N. Andrew Crain
N. Andrew Crain
Georgia Bar No. 193081
andrew.crain@thomashorstemeyer.com
Dan R. Gresham
Georgia Bar No. 310280
dan.gresham@thomashorstemeyer.com
Eric Maurer
Georgia Bar No. 478199
eric.maurer@thomashorstemeyer.com
Robert D. Gravois
Georgia Bar No. 600183
robert.gravois@thomashorstemeyer.com
**THOMAS | HORSTEMEYER, LLP**
3200 Windy Hill Rd SE
Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Plaintiff Acceleron, LLC*

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

The undersigned hereby certifies that the foregoing was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

*/s/ N. Andrew Crain*
N. Andrew Crain
Georgia Bar No. 193081
*Attorney for Plaintiff Acceleron, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ACCELERON, LLC, | |
| Plaintiff, | Civil Action File No. |
| v. | 1:12-CV-04123-TCB |
| DELL, INC., | |
| Defendant. | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2019, the foregoing was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

/s/ N. Andrew Crain
N. Andrew Crain
Georgia Bar No. 193081
*Attorney for Plaintiff Acceleron, LLC*