**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ACCELERON, LLC, | Civil Action File No. |
| Plaintiff, | 1:12-cv-04123-TCB |
| v. | |
| DELL INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

**DELL INC.'S RESPONSE IN OPPOSITION TO ACCELERON, LLC'S
MOTION TO STRIKE PORTIONS OF DR. WILLIAM
MICHALSON'S INVALIDITY REPORTS**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................1

II.  ARGUMENT .....................................................................................2

   A.  Dell's Invalidity Contentions Provided Reasonable
       Notice of the Motivations to Combine Presented in the
       Invalidity Report .......................................................................2

       1.  Legal Standard ....................................................................3

       2.  The Invalidity Report Applies the Teachings of *KSR*
           Disclosed in the Invalidity Contentions ..............................5

       3.  The Invalidity Contentions Also Reference *KSR* for
           the Specific Combination of Ketris and Tavallaei ...............8

       4.  No Motivation to Combine Is Required for Ketris
           Alone ...................................................................................9

   B.  The Rebuttal Invalidity Report Discloses Permissible
       Rebuttal Opinions, Not New Theories .......................................9

       1.  Legal Standard ..................................................................10

       2.  The Proposed Modifications to Enclosures Around
           Certain Modules Respond to the Validity Report's
           Criticisms of Theories Set Forth in the Invalidity
           Report ...............................................................................11

       3.  The Invalidity Report and the Rebuttal Invalidity
           Report Both Identify the RLX Power Supply
           Enclosures as the "Caddies" of Claim 3 ............................14

       4.  The Disclosures of Ethernet Switch Polling at the
           Networld Interop Conference Are Not New Bases for
           Invalidity, But Rather Evidence for Implementation in
           the Ketris System ..............................................................15

i

5. The Rebuttal Invalidity Report Relies on the Transmeta Design Guide for Background, Not a New Combination ........................................................................... 18

6. Correcting a Typographical Error in a Cross-Referenced Claim Element Does Not Constitute a New Theory ........................................................................... 19

7. The Challenged Motivations to Combine Simply Restate or Summarize Opinions from the Invalidity Report ............................................................................... 21

8. Acceleron Has Suffered No Prejudice or Harm from the Challenged Disclosures of the Rebuttal Invalidity Report ............................................................................... 23

III. CONCLUSION ........................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

CASES                                                                    PAGE(S)

*Apple Inc. v. Samsung Elecs. Co.*,
    No. 5:12–cv–0630, 2014 WL 173409 (N.D. Cal. Jan. 9, 2014)......................3, 4

*Bayer Healthcare Pharm., Inc. v. River's Edge Pharm., LLC*,
    No. 1:11-CV-1634-HLM, 2015 WL 11142427 (N.D. Ga. May 21,
    2015), *adopted*, 2015 WL 11142424 (N.D. Ga. June 16, 2015) .....................4, 8

*Bearint v. Dorell Juvenile Grp., Inc.*,
    389 F.3d 1339 (11th Cir. 2004) .........................................................................24

*Cooper Notification, Inc. v. Twitter, Inc.*,
    867 F. Supp. 2d 485 (D. Del. 2012)..................................................................25

*Crowley v. Chait*,
    322 F. Supp. 2d 530 (D.N.J. 2004)..............................................................10, 11

*Digital Reg of Tex., LLC v. Adobe Sys. Inc.*,
    No. 12-cv-01971-KAW, 2014 WL 1653131 (N.D. Cal. Apr. 24, 2014) .........3, 4

*Donell v. Fid. Nat'l Title Agency*,
    No. 2:07-cv-00001-KJD-PAL, 2012 WL 170990 (D. Nev. Jan. 20, 2012) .......11

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
    No. 13-CV-03999-BLF, 2015 WL 3640694 (N.D. Cal. June 11, 2015)..........3, 4

*Finjan, Inc. v. Proofpoint, Inc.*,
    No. 13–cv–05808-HSG, 2016 WL 612907 (N.D. Cal. Feb. 16, 2016)...............4

*Fujifilm Corp. v Motorola Mobility LLC*,
    No. 12-cv-03587-WHO, 2015 WL 757575 (N.D. Cal. Feb. 20, 2015)..............18

*Genentech, Inc. v. Trustees of Univ. of Pa.*,
    No. C 10-2037 LHK PSG, 2012 WL 424985 (N.D. Cal. Feb. 9, 2012) .............4

*Glass Dimensions, Inc. Profit Sharing Plan & Tr. v. State St. Bank & Tr. Co.*,
    290 F.R.D. 11 (D. Mass. 2013)............................................................................10

*In re Disposable Contact Lens Antitrust*,
    329 F.R.D. 336 (M.D. Fla. 2018) ......................................................................10

*Integrated Liner Technologies, Inc. v. Specialty Silicone Products, Inc.*,
    No. 1:09-cv-1285 (DEP), 2012 WL 5389778 (N.D.N.Y. Nov. 2, 2012).....24, 25

*ITT Corp. v. Xylem Grp., LLC*,
    No. 1:11-CV-3669-WSD, 2012 WL 12871632 (N.D. Ga. Oct. 15, 2012) ..11, 24

*Kirola v. City & Cty. of San Francisco*,
    No. C-07-3685-SBA (EMC), 2010 WL 373817 (N.D. Cal. Jan. 29, 2010).......10

*KSR International Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007)...................................................................................5, 6

*McKesson Information Solutions LLC v. Epic Systems Corp.*,
    242 F.R.D. 689 (N.D. Ga. 2007) .........................................................................3

*Plantation Pipe Line Co. v. Associated Elec. & Gas Ins. Servs. Ltd.*,
    No. 1:09-CV-1260-SCJ, 2011 WL 13143562 (N.D. Ga. Nov. 10, 2011)....10, 13

*Realtime Data, LLC v. Iancu*,
    912 F.3d 1368 (Fed. Cir. 2019) .........................................................................9

*Sipco, LLC v. Control4 Corp.*,
    No. 1:11-CV-0612-JEC-ECS, 2012 WL 13008144 (N.D. Ga. Sept. 29, 2012)...3

*Teledyne Instruments, Inc. v. Cairns*,
    No. 6:12-CV-854-ORL-28, 2013 WL 5781274 (M.D. Fla. Oct. 25, 2013).......11

*Withrow v. Spears*,
    967 F. Supp. 2d 982 (D. Del. 2013)............................................................10, 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a)(2)(B)(i) ..................................................................................3

Fed. R. Civ. P. 26(a)(2)(D)(ii) .............................................................................10

Fed. R. Civ. P. 37(c)(1) .........................................................................................21

## I.   INTRODUCTION

Acceleron's Motion to Strike Portions of Dr. William Michalson's Invalidity Reports (Dkt. 251-1) ("Motion") is wholly without merit. Contrary to the allegations made therein, Dell's Invalidity Contentions[1] placed Acceleron on reasonable notice of the motivations to combine discussed in the Invalidity Report,[2] and the Rebuttal Invalidity Report[3] properly discloses opinions and evidence to rebut Acceleron's validity expert, not to introduce new invalidity theories. Thus, for the reasons set forth herein, Dell respectfully requests that the Court deny Acceleron's Motion.

Acceleron takes a willfully obtuse view of the expert reports of Dell's invalidity expert, Dr. Michalson, as well as Dell's Invalidity Contentions, in an effort to frame Dell as an untrustworthy party that goes back on its representations to the Court and conceals its invalidity theories. But Acceleron is the party that has played tactical games. Dell served Dr. Michalson's Invalidity Report on April 1, 2019, and his Rebuttal Invalidity Report on June 7, 2019. Acceleron took Dr. Michalson's deposition on June 20, 2019, dedicating almost eight hours to invalidity.[4] At no point

---

[1] "Invalidity Contentions" as used herein refers to Defendant Dell Inc.'s Second Amended Invalidity Contentions, served on December 14, 2018. *See* Dkt. 208-1.

[2] "Invalidity Report" as used herein refers to the Expert Report of William Michalson, Ph.D. on the Invalidity of the Asserted Claims of U.S. Patent No. 6,948,021, served on April 1, 2019 (attached as Ex. B to Acceleron's Motion).

[3] "Rebuttal Invalidity Report" as used herein refers to the Expert Rebuttal Report of William Michalson, Ph.D. on the Invalidity of the Asserted Claims of U.S. Patent No. 6,948,021, served on June 7, 2019 (attached as Ex. C to Acceleron's Motion).

[4] Dr. Michalson also submitted a non-infringement report concerning Acceleron's allegations that Dell infringes the '021 Patent on May 24, 2019.

did Acceleron raise any of the alleged untimeliness issues it now claims are so prejudicial that they warrant the Court striking significant portions of Dell's defenses. If Acceleron's complaints are legitimate, it could have alerted the Court or sought to confer with Dell to resolve the issues, but it did not. Perhaps recognizing the weakness of its validity position, Acceleron instead seeks to avoid the merits entirely by knocking out Dell's invalidity case through procedural tactics.

Earlier this year, the Court denied Acceleron's attempt to "cut[ Dell] off at the knees" with respect to its invalidity case. *See* Dkt. 222-17 at 24:13–14; Dkt. 238 at 1–2 (denying motion to strike Dell's obviousness-based invalidity contentions and adopting Dell's proposal). Acceleron has now filed at least five motions seeking to block Dell from having a fair opportunity to present its invalidity case to a jury, including three motions here at the summary judgment stage comprising 75 pages of briefing. *See* Dkts. 251, 254, 258. After remaining silent throughout expert discovery, Acceleron now seeks to strike portions of the invalidity expert reports. The Court should not condone such litigation tactics.

## II.   ARGUMENT

### A.   Dell's Invalidity Contentions Provided Reasonable Notice of the Motivations to Combine Presented in the Invalidity Report

Dell's Invalidity Contentions reasonably notify Acceleron with sufficient specificity of all of Dell's motivations to combine the prior art. Acceleron contends that the Invalidity Contentions fail to disclose certain motivations to combine, demanding a word for word recitation of all the motivations to combine, which is

without merit, untenable, and contrary to law. *See* Motion § 4.1 & Ex. G. Thus, the Court should deny Acceleron's request to strike paragraphs 243–44, 253, 255, 261–63, 269, 440, 452–53, 478–79, and 499–501 of the Invalidity Report.

## 1.    Legal Standard

"The scope of contentions and expert reports are not . . . coextensive." *Apple Inc. v. Samsung Elecs. Co.*, No. 5:12–cv–0630 (LHK/PSG), 2014 WL 173409, at *1 (N.D. Cal. Jan. 9, 2014).[5] "In patent litigation, expert reports are expected to provide more information than . . . contentions." *Digital Reg of Tex., LLC v. Adobe Sys. Inc.*, No. 12-cv-01971-KAW, 2014 WL 1653131, at *5 (N.D. Cal. Apr. 24, 2014). Thus, the standard of disclosure for contentions is "reasonable notice." *See Sipco, LLC v. Control4 Corp.*, No. 1:11-CV-0612-JEC-ECS, 2012 WL 13008144, at *2 (N.D. Ga. Sept. 29, 2012); *Finjan, Inc. v. Blue Coat Sys., Inc.*, No. 13-CV-03999-BLF, 2015 WL 3640694, at *2 (N.D. Cal. June 11, 2015). In contrast, expert reports must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). Concerning the disclosure of motivations to combine in invalidity contentions, this Court has explained:

The Patent Local Rules are not to be read to require a word for word

---

[5] "This Court's patent rules are based in part on the local patent rules from the Northern District of California; thus, cases from that district may be considered as persuasive authority when considering local patent rules issues." *Sipco, LLC v. Control4 Corp.*, No. 1:11-CV-0612-JEC-ECS, 2012 WL 13008144, at *2 n.1 (N.D. Ga. Sept. 29, 2012) (citing *McKesson Information Solutions LLC v. Epic Systems Corp.*, 242 F.R.D. 689, 695 n.1 (N.D. Ga. 2007)).

> recitation of the motivation to combine; rather the rule requires a fair notification of sufficient specificity as to what the Defendants intend to allege is the motivation of a person of skill to combine the reference to arrive at the inventions.

*Bayer Healthcare Pharm., Inc. v. River's Edge Pharm., LLC*, No. 1:11-CV-1634-HLM, 2015 WL 11142427, at *10 (N.D. Ga. May 21, 2015), *adopted*, 2015 WL 11142424 (N.D. Ga. June 16, 2015).

"The threshold question in deciding whether to strike an expert report is whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether." *Digital Reg of Texas, LLC v. Adobe Sys. Inc.*, No. 12–cv–01971 (CW/KAW), 2014 WL 1653131, at *2 (N.D. Cal. Apr. 24, 2014). If a theory was previously disclosed, "the expert's further explanation [of that theory] is proper as elaboration on the previously disclosed theory." *Finjan, Inc. v. Proofpoint, Inc.*, No. 13–cv–05808-HSG, 2016 WL 612907, at *4 (N.D. Cal. Feb. 16, 2016) (citing *Apple*, 2014 WL 173409, at *2). "The dispositive inquiry in a motion to strike is thus whether the allegedly undisclosed 'theory' is in fact a new theory . . . , or whether the 'theory' is instead the identification of additional evidentiary proof [supporting the original theory]." *Finjan v. Blue Coat*, 2015 WL 3640694, at *2; *see Genentech, Inc. v. Trustees of Univ. of Pa.*, No. C 10-2037 LHK PSG, 2012 WL 424985, at *2 (N.D. Cal. Feb. 9, 2012) ("Here, the court similarly looks to the nature and scope of the theory of invalidity disclosed and whether the challenged report section merely provides an evidentiary example or complementary proof in support thereof, or itself advances a

new or alternate means by which the jury could find the claim at issue invalid.").

### 2. The Invalidity Report Applies the Teachings of *KSR* Disclosed in the Invalidity Contentions

The Court should deny Acceleron's motion to strike the allegedly undisclosed motivations to combine in the Invalidity Report because Dell's Invalidity Contentions provided reasonable notice to Acceleron concerning why one of skill in the art would combine the prior art references. In the Motivation/Reasons to Combine section of the Invalidity Contentions, Dell explained in detail its intention to rely on the Supreme Court's decision in *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398 (2007), to show why one of skill in the art would have been motivated to combine prior art references. *See* Dkt. 208-1 at 48–50. Dell also provided a "roadmap" to Acceleron for the disclosed obviousness combinations and motivations to combine, which reinforced Dell's intention to rely on the *KSR* motivations for all combinations of prior art. *See* Motion Ex. I at 1 n.1. Acceleron was thus on notice that Dell intended to incorporate the specific teachings of *KSR* into the motivations to combine. Acceleron's request to strike should be denied.

At the outset of the Motivation/Reasons to Combine section of the Invalidity Contentions, Dell explicitly identified its intention to rely on the motivations to combine identified in *KSR* for all of the disclosed prior art combinations, as these motivations to combine do not rely on specific teachings from the prior art, but rather common sense. *See* Dkt. 208-1 at 48–50. *KSR* explains that "[a] person of ordinary skill is also a person of ordinary creativity, not an automaton." 550 U.S. at 421.

Accordingly, the Court identified several common-sense reasons that one of skill in the art would pursue "the simple substitution of one known element for another or the mere application of a known technique to a piece of prior art ready for the improvement." *Id.* at 417. For example, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than ***yield predictable results***." *Id.* at 416 (emphasis added). Also, "if a technique has been used to improve one device, and a person of ordinary skill in the art would recognize that it would ***improve similar devices in the same way***, using the technique is obvious." *Id.* at 417 (emphasis added). In addition, "the fact that a combination was ***obvious to try*** might show that it was obvious." *Id.* at 421 (emphasis added). These principles "take account of the inferences and creative steps that a person of ordinary skill in the art would employ," rather than requiring "precise teachings directed to the specific subject matter of the challenged claim." *Id.* at 418.

The Invalidity Report takes these previously disclosed theories concerning common-sense motivations to combine and restates them to explain their application to previously disclosed combinations of prior art. As is evident from Exhibit G to Acceleron's Motion, the challenged paragraphs of the Invalidity Report recite the *KSR* factors in the context of the prior art references and claim elements.[6] Acceleron

---

[6] Paragraph 253 of the Invalidity Report concerning combination of Hipp and RLX—provided at the bottom of page 2 of Exhibit G to Acceleron's Motion—also states that one of skill would have been motivated to combine the references because the RLX system is the embodiment of the Hipp patent. This fact was disclosed in the

cannot claim surprise or prejudice, as the Invalidity Report applies the *KSR* theories, as set forth in the Invalidity Contentions, to explain the prior art combinations.

Although Acceleron was on notice that Dell would rely on the common-sense principles of *KSR* as motivations to combine the prior art, Acceleron now contends that Dell failed to disclose the motivations to combine and falsely represented that the "roadmap" to the Invalidity Contentions "quite literally identifie[s] the page number where the combination and motivation to combine were previously disclosed." Motion at 9. Relying on its own incomplete exhibit, Acceleron states that "a simple comparison of the each [sic] motivation-to-combine identified in Exhibit G to the actual pages cited in Dell's roadmap . . . reveals that none of the identified motivations-to-combine were disclosed in Dell's invalidity contentions." *Id.* However, Acceleron ignores and excludes from Exhibit G the nearly half-page footnote 1 from Dell's roadmap, explicitly referencing the discussion of *KSR* in the Invalidity Contentions and expressing Dell's intent to rely on *KSR*. *See* Motion Ex. I at 1 n.1. The position of that footnote furthermore indicates its applicability to all combinations of prior art. *See id.* at 1. Acceleron's contention that Dell's roadmap fails to cite these motivations is thus wrong.

Acceleron also alleges as an example that "there is no discussion of why a POSITA would be motivated to combine Hipp's '748 patent with 'Ketris' on any of the cited pages in Dell's roadmap." Motion at 9. But by expecting the Invalidity

---

Invalidity Contentions. *See* Dkt. 208-1 at 55.

Contentions to spell out detailed, word for word reasons for the *KSR* motivations for each combination, Acceleron seeks to establish a standard of disclosure that has previously been rejected by this Court:

> The Patent Local Rules are not to be read to require a word for word recitation of the motivation to combine; rather the rule requires a fair notification of sufficient specificity as to what the Defendants intend to allege is the motivation of a person of skill to combine the reference to arrive at the inventions.

*Bayer Healthcare*, 2015 WL 11142427, at *10, *adopted*, 2015 WL 11142424. The Invalidity Contentions explicitly state, just prior to walking through the *KSR* factors, that "***each combination of art*** would have no unexpected results, and at most would simply represent a known alternative to one of skill in the art." Dkt. 208-1 at 48 (emphasis added) (citing *KSR*). Likewise, as previously noted, Dell's roadmap clearly indicates that the *KSR* footnote applied to all combinations. *See* Motion Ex. I at 1 & n.1. Dell thus satisfied its obligation under the Patent Local Rules to give Acceleron "fair notification of sufficient specificity" that Dell intended to allege motivations to combine based on *KSR* for the prior art combinations.

### 3. The Invalidity Contentions Also Reference *KSR* for the Specific Combination of Ketris and Tavallaei

In explaining the Ketris and Tavallaei combination in the Invalidity Contentions, Dell explicitly relies on the motivations to combine laid out in *KSR*. *See* Dkt. 208-1 at 117–18, 128 ("A person of ordinary skill in the art would have been motivated to make such a combination for the reasons stated above in Section

III.E [identifying the *KSR* motivations]."). Yet Acceleron seeks to strike two sets of motivations to combine from the Invalidity Report for this very combination. *See* Motion Ex. G at 5–6, 8. For the reasons stated in the previous section, and because the *KSR* motivations were also explicitly identified for this combination, Acceleron had reasonable notice of the motivations to combine Ketris and Tavallaei.

### 4.    No Motivation to Combine Is Required for Ketris Alone

Acceleron also seeks to strike the motivations to modify the Ketris system disclosed in the Invalidity Report. *See* Motion Ex. G at 7–8. However, because invalidity is based on Ketris alone, there is no combination. As such, no motivation to combine is required. *See Realtime Data, LLC v. Iancu*, 912 F.3d 1368, 1373 (Fed. Cir. 2019) ("We conclude that, in this case, the Board was not required to make any finding regarding a motivation to combine given its reliance on O'Brien alone."); Patent L.R. 4.3(a)(2) (requiring motivations to combine only for "a combination of items of prior art"). Thus, there is no basis to strike the disclosed motivation to modify Ketris. Acceleron's requests to strike portions of the Invalidity Report should therefore be denied.

### B.    The Rebuttal Invalidity Report Discloses Permissible Rebuttal Opinions, Not New Theories

The Rebuttal Invalidity Report properly addresses and rebuts the opinions of Acceleron's validity expert concerning the theories previously set forth in the Invalidity Report. Acceleron contends that portions of the Rebuttal Invalidity Report disclose new opinions that should have appeared in the Invalidity Report and must

be stricken. *See* Motion § 4.2. But as discussed below, in each case the Rebuttal Invalidity Report merely responds to Acceleron's expert. What Acceleron seeks is to prevent Dell from presenting any rebuttal evidence and, in effect, a rebuttal report altogether, despite being permitted by the local rules to do so. The Court should reject Acceleron's request to strike portions of the Rebuttal Invalidity Report.

### 1.   Legal Standard

Rebuttal expert reports are "intended solely to contradict or rebut evidence on the same subject matter identified by another party." *See* Fed. R. Civ. P. 26(a)(2)(D)(ii). "Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." *Plantation Pipe Line Co. v. Associated Elec. & Gas Ins. Servs. Ltd.*, No. 1:09-CV-1260-SCJ, 2011 WL 13143562, at *2 (N.D. Ga. Nov. 10, 2011) (quoting *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004)). Thus, rebuttal reports "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert." *Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013) (quoting *Glass Dimensions, Inc. Profit Sharing Plan & Tr. v. State St. Bank & Tr. Co.*, 290 F.R.D. 11, 16 (D. Mass. 2013)); *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 396 (M.D. Fla. 2018).

Further, a "[r]ebuttal disclosure is not automatically excluded solely because it includes evidence that was absent in the original expert disclosure." *Kirola v. City & Cty. of San Francisco*, No. C-07-3685-SBA (EMC), 2010 WL 373817, at *2 (N.D.

Cal. Jan. 29, 2010). A rule to the contrary "would lead to the inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing the relevant material." *Teledyne Instruments, Inc. v. Cairns*, No. 6:12-CV-854-ORL-28, 2013 WL 5781274, at *17 (M.D. Fla. Oct. 25, 2013) (quoting *Crowley*, 322 F. Supp. 2d at 551). Thus, "the fact that testimony would have been more proper for the case-in-chief does not preclude the testimony if it is proper both in the case-in-chief and in rebuttal." *ITT Corp. v. Xylem Grp., LLC*, No. 1:11-CV-3669-WSD, 2012 WL 12871632, at *4 (N.D. Ga. Oct. 15, 2012) (quoting *Donell v. Fid. Nat'l Title Agency*, No. 2:07-cv-00001-KJD-PAL, 2012 WL 170990, at *5 (D. Nev. Jan. 20, 2012)) (quotation marks omitted).

### 2. The Proposed Modifications to Enclosures Around Certain Modules Respond to the Validity Report's Criticisms of Theories Set Forth in the Invalidity Report

The Rebuttal Invalidity Report identifies a number of possible modifications that one of skill in the art could make to prior art enclosures when used in combination with prior art modules, in direct response to criticisms in the Validity Report.[7] Acceleron now seeks to strike those portions of the Rebuttal Invalidity Report disclosing the proposed enclosure modifications, arguing that the disclosures

---

[7] "Validity Report" as used herein refers to the Initial Expert Report of William O. Putnam Regarding Validity of U.S. Patent No. 6,948,021, served on May 24, 2019 (attached as Ex. D to Acceleron's Motion).

are untimely for failing to appear in the Invalidity Report. *See* Motion §§ 4.2.1, 4.2.2, 4.2.4. However, because these modifications to prior art enclosures are "offered to directly contradict or rebut the opposing party's expert," *Withrow*, 967 F. Supp. 2d at 1002, they constitute permissible rebuttal evidence, and Acceleron's request should be rejected.

For example, Acceleron seeks to strike paragraphs 86–87 of the Rebuttal Invalidity Report concerning modifications that could have been made to an enclosure such as the one used with the Ketris power supplies to work with the Ketris Server Blades. *See* Motion § 4.2.1. The Invalidity Report discloses:

> It would have been obvious to place a metal enclosure around the [*Ketris*] Server Blades. Enclosures were well known in the art . . . and were, in fact, used in *Ketris* for its power supplies. . . . For these reasons, adding a ventilated enclosure, as was commonly done in the art, to the *Ketris* Server Blade would have been a use of a known technique to improve similar devices in the same way.

Invalidity Report ¶ 232. Acceleron's expert argues in the Validity Report that he does not see a way to place an enclosure around the Ketris Server Blade "that would allow the ejector/injector handles to rotate and allow the pins to be able to insert into their receptacles," and allow "the boards of the Server Blades [to] interface with the guides." Validity Report ¶¶ 125, 128. The Rebuttal Invalidity Report identifies these criticisms from the Validity Report and rebuts them by offering several "obvious implementation options" directed to solving the issues—the modifications that Acceleron now seeks to strike. Rebuttal Invalidity Report ¶¶ 85–87. Because the

modifications are a direct rebuttal to criticisms from Acceleron's expert concerning previously disclosed obviousness theories, paragraphs 86–87 of the Rebuttal Invalidity Report constitute valid rebuttal evidence that should not be stricken.

The disclosures challenged in Sections 4.2.2 and 4.2.4 of the Motion follow an identical pattern as above. In each case, the Invalidity Report discusses a prior art combination involving the use of an enclosure disclosed in one piece of prior art with modules disclosed in another. *See* Invalidity Report ¶¶ 243–44 (combination of Hipp and Ketris), 260–63 (combination of Ketris and Jackson). The Validity Report then argues that the proposed enclosures cannot be compatible with the modules. *See* Validity Report ¶¶ 143–44 (criticizing Hipp and Ketris), 194–95 (criticizing Ketris and Jackson). The Rebuttal Invalidity Report counters the criticisms in the Validity Report by reciting each criticism and rebutting them through "obvious implementation options." *See* Rebuttal Invalidity Report ¶¶ 107–11 (rebutting criticisms of Hipp and Ketris), 152–53 (rebutting criticisms of Ketris and Jackson).

By seeking to strike these portions of the Rebuttal Invalidity Report, Acceleron advances a position that would effectively bar Dell's expert from responding to ***any*** criticism, which is both untenable and contrary to law. *See Plantation Pipe*, 2011 WL 13143562, at *2. Because the proposed modifications to the prior art enclosures disclosed in the Rebuttal Invalidity Report were in direct response to the Validity Report's criticisms of previously disclosed obviousness combinations, the proposed modifications are permissible rebuttal evidence.

3.     **The Invalidity Report and the Rebuttal Invalidity Report Both Identify the RLX Power Supply Enclosures as the "Caddies" of Claim 3**

Dell disclosed that the RLX power supply enclosures constitute the recited "caddies" of Claim 3 in both the Invalidity Report and the Rebuttal Invalidity Report. Acceleron ignores the portions of the Invalidity Report that clearly identify the enclosure to advance the meritless argument that Dell attempts to change theories because the Invalidity Report points to the power supply unit as a whole, while the Rebuttal Invalidity Report points only to the enclosure for the power supply unit. *See* Motion § 4.2.3. But even Acceleron's validity expert understood that the Invalidity Report relied on the enclosures and responded to that argument. The Court should thus reject Acceleron's request to strike paragraphs 140–41 of the Rebuttal Invalidity Report.

In asserting that the Invalidity Report relies on the power supply units as the "caddies," Acceleron focuses on one sentence that, when read out of context, appears to state that the power supply units are "carriers for a module" (*i.e.*, the Court's construction of "caddies"), and misinterprets another discussing multiple components. *See* Motion at 14–15. However, in context, it is clear that the Invalidity Report identifies the ***enclosures*** of the power supply units as the claimed "caddies providing air flow from the front to the rear of the chassis." The report includes photos that "show the *RLX* power supply unit and its ***metal enclosure with holes in the metal enclosure to provide air flow***."  Invalidity Report ¶ 251 (emphasis added). Dr. Michalson, Dell's invalidity expert, examined the prior art RLX system and

states in the report that "[b]ased on my inspection, the *RLX* power supply units each have a ***metal enclosure with a handle and holes in the enclosure to provide air flow***." *Id.* (emphasis added). Contrary to Acceleron's selective reading, the Invalidity Report identifies the "metal enclosure with holes in the metal enclosure to provide air flow" as disclosing the claimed "caddies providing air flow." As such, the Rebuttal Invalidity Report does not disclose a new theory concerning what RLX component is the caddy.

Indeed, Acceleron's own expert understood that the Invalidity Report intended to point to the enclosures because he specifically addresses the idea that "the enclosures of the power supply units constitute the claimed caddies." Validity Report ¶ 182. He even argues that "one of ordinary skill in the art would know that the enclosures of power supplies are not caddies." *Id.* ¶ 183. If Acceleron's expert had more to say on the point, he had an opportunity to do so in his Validity Report, but he did not. Instead, Acceleron has chosen to play willfully ignorant. Given that the Validity Report also addresses enclosures, even if the Rebuttal Invalidity Report's disclosure was untimely, which it was not, Acceleron was not prejudiced.

The Court should therefore reject Acceleron's effort to strike paragraphs 140–41 of the Rebuttal Invalidity Report.

### 4. The Disclosures of Ethernet Switch Polling at the Networld Interop Conference Are Not New Bases for Invalidity, But Rather Evidence for Implementation in the Ketris System

The Ketris prior art system was displayed publicly and demonstrated at the

May 9–11, 2000 Networld Interop conference held in Las Vegas, Nevada, and was also presented and used in sales demonstrations that occurred in nine cities across the United States between July 5, 2000 and August 25, 2000—all of which occurred prior to the '021 Patent's priority date in November 2000. *See* Invalidity Report ¶¶ 106–13. In response to criticism in the Validity Report concerning whether Ketris was capable of polling the ethernet switch module at the conference, the Rebuttal Invalidity Report describes the public disclosures at the conference to show that, regardless of whether the capability was already present at the conference, it would have at least been implemented by the time Ketris was used in the July and August 2000 sales demonstrations. *See* Rebuttal Invalidity Report ¶¶ 234–35, 239. Although the cited Networld Interop conference evidence is intended to show the capabilities of Ketris during the subsequent sales demonstrations, Acceleron seeks to strike paragraphs 234–35 of the Rebuttal Invalidity Report for allegedly disclosing two new bases for arguing that polling of an ethernet switch module was known in the prior art. *See* Motion § 4.2.5. Acceleron thus misrepresents the purpose of the Networld Interop conference evidence, and the Court should deny Acceleron's attempt to strike paragraphs 234–35 of the Rebuttal Invalidity Report.

Contrary to Acceleron's claims, the Rebuttal Invalidity Report does not rely on disclosures relating to the ethernet switch polling feature of Ketris made at the May 2000 Networld Interop conference as new bases for invalidity. Instead, the statements in paragraphs 234–35—which Acceleron takes out of context—are

portions of a longer rebuttal to the Validity Report's contention that the Ketris system shown at the Networld Interop conference was not capable of polling the ethernet switch module. *See* Validity Report ¶¶ 286–88; Rebuttal Invalidity Report ¶¶ 229–39. In response to that criticism, the Rebuttal Invalidity Report first presents evidence that the Ketris system shown at the conference was in fact capable of polling the ethernet switch module. Rebuttal Invalidity Report ¶¶ 229, 231, 236–38. The Rebuttal Invalidity Report then discusses additional evidence—including the Networld Interop disclosures challenged by Acceleron—showing that even if the Ketris system from the conference did not yet have ethernet switch polling, "the feature would appear in the next version." *Id.* ¶ 234; *see id.* ¶ 235 (document identifying "Switch Manager" as a "Feature[] to be released"). Based on this evidence, Dr. Michalson concludes that "regardless of whether the Active Manager software shown at Networld Interop implemented polling of the Switch Blade, I understand that polling of the Switch Blade feature of the Active Manager was to be implemented, and actually was implemented, prior to October 2000, as well as being publicly demonstrated by Mr. Forbes from May 2000 to August 2000." *Id.* ¶ 239.

Thus, rather than presenting new bases for invalidity, the Rebuttal Invalidity Report simply presents evidence indicating that the developers of Ketris were at the very least planning to introduce polling of the ethernet switch module soon after the conference, ahead of the sales demonstrations. The Networld Interop disclosures discussed in paragraphs 234–35 of the Rebuttal Invalidity Report are therefore not

untimely disclosures of new bases for invalidity, and Acceleron's request to strike these paragraphs should be denied.

### 5. The Rebuttal Invalidity Report Relies on the Transmeta Design Guide for Background, Not a New Combination

In response to criticism in the Validity Report concerning the capabilities of the prior art Hipp reference, the Rebuttal Invalidity Report relies on a Transmeta Design Guide to provide background information regarding capabilities of the Transmeta CPUs expressly disclosed in Hipp. *See* Rebuttal Invalidity Report ¶ 255. Acceleron once again misrepresents the purpose of the disclosure and asks the Court to strike paragraph 255 of the Rebuttal Invalidity Report for allegedly disclosing a new obviousness combination. *See* Motion § 4.2.6. The Rebuttal Invalidity Report does not rely on the Transmeta Design Guide for any prior art combinations. The design guide is not used to satisfy a missing limitation in a combination, and Acceleron has not alleged to the contrary. Courts permit parties to use undisclosed references to show the background of the art or the knowledge of one of ordinary skill in the art. *See Fujifilm Corp. v Motorola Mobility LLC*, No. 12-cv-03587-WHO, 2015 WL 757575, at *30 (N.D. Cal. Feb. 20, 2015). Because the Rebuttal Invalidity Report merely uses the Transmeta Design Guide for background on the CPUs disclosed in Hipp, and not to satisfy a claim limitation as part of a new combination, use of the Transmeta Design Guide is permissible.

Acceleron also contends that the Transmeta Design Guide should have been disclosed in the Invalidity Report, rather than on rebuttal. But as with the sections

above, the Rebuttal Invalidity Report relies on the design guide to respond to criticisms by Acceleron's expert. The Invalidity Report explains how a combination of Hipp and the Starfire system, which included system monitoring software called SyMON, renders Claim 20 of the '021 Patent obvious. Invalidity Report ¶¶ 424–44. The Validity Report criticizes that combination, alleging that the Invalidity Report "does not explain how SNMP get requests could be implemented over the I2C bus in Hipp or the JTAG bus in [Starfire]." Validity Report ¶ 312. The Rebuttal Invalidity Report addresses this criticism by explaining how "[i]t would have been a routine matter of software engineering to implement a JTAG-compatible interface with the single board computer disclosed by *Hipp* to actively gather status information on modules using SyMON functionality." Rebuttal Invalidity Report ¶ 255. The report explains that this was possible because Hipp discloses the use of CPUs manufactured by Transmeta, which according to the Transmeta Design Guide had JTAG connectors and capabilities. *Id.*

Thus, because the Transmeta Design Guide is used only for background regarding Transmeta CPUs disclosed in Hipp, and to rebut criticisms in the Validity Report leveled at the combination of Hipp and Starfire, the design guide is proper rebuttal evidence. As such, Acceleron's bid to strike paragraph 255 of the Rebuttal Invalidity Report should be denied.

### 6.   Correcting a Typographical Error in a Cross-Referenced Claim Element Does Not Constitute a New Theory

For claim element 24[e], the Invalidity Report relied on a cross reference to

claim element 1[e], indicating that the evidence for finding 24[e] in the prior art was the same as that for 1[e]. *See, e.g.*, Invalidity Report ¶ 564. However, this was a typographical error, which Dr. Michalson corrected in the Rebuttal Invalidity Report, explaining: "The reference to Claim limitation 1[e] in the Claim 24 analysis in my previous Invalidity Report was a typographical error. My Claim 24 analysis should have referred back to the analysis in Claim limitation 20[f], rather than referring back to Claim limitation 1[e]." Rebuttal Invalidity Report ¶ 313. That the correct cross reference is to claim element 20[f] makes sense, as claim elements 20[f] and 24[e] are ***word-for-word identical***. Yet Acceleron now seeks to strike paragraphs 315, 317, 324, 329, 334, 340, 346, 351, and 356 of the Rebuttal Invalidity Report for allegedly raising a new theory for claim element 24[e]. *See* Motion § 4.2.7. Although the error in the Invalidity Report is regrettable, it was harmless and Acceleron was not prejudiced. Therefore, the Court should deny Acceleron's attempt to strike the aforementioned paragraphs from the Rebuttal Invalidity Report.

Once again, Acceleron vastly overstates the issue, seeking to generate controversy where none should exist. First, Dell takes issue with Acceleron's statement that "Dr. Michalson's claim that he just made a mistake in referring to claim element 1[e] is dubious," as well as any implication of impropriety that accompanies that statement. *See* Motion at 21. It is a fact that the cross reference to element 1[e] instead of 20[f] was a mistake, as explained in the Rebuttal Invalidity Report. *See* Rebuttal Invalidity Report ¶ 313. This is demonstrated conclusively by

the Invalidity Contentions, which indeed cross reference element 20[f], instead of 1[e], for element 24[e]. *See* Dkt. 208-6 at 184 (Ketris); Dkt. 208-10 at 363 (Ketris combinations); Dkt. 208-14 at 296 (Hipp '748 combinations).

Furthermore, while Acceleron claims that it would be "severely prejudiced" if the cross reference to element 20[f] for element 24[e] is allowed to stand, Acceleron does not explain how it would be prejudiced as a result. *See* Motion at 22. Acceleron took Dr. Michalson's deposition on June 20, 2019, and did not ask him a single question regarding this issue. Furthermore, as noted, claim elements 20[f] and 24[e] are identical, and given Dr. Michalson's reliance on only the cross reference for element 24[e], no aspect of element 24[e] would be lacking from 20[f], and any criticism of element 20[f] would also apply equally to 24[e]. Because Acceleron's validity expert had a full and fair opportunity to respond to the opinions in the Invalidity Report concerning element 20[f], the error was harmless and there is no prejudice to Acceleron resulting from the mistake in the cross reference for element 24[e]. *See* Fed. R. Civ. P. 37(c)(1) (permitting use of untimely disclosures if "the failure was substantially justified or is harmless"). Therefore, the Court should deny Acceleron's request to strike paragraphs 315, 317, 324, 329, 334, 340, 346, 351, and 356 of the Rebuttal Invalidity Report.

### 7. The Challenged Motivations to Combine Simply Restate or Summarize Opinions from the Invalidity Report

Dell's motivations to combine in paragraphs 127, 155, 250–51, 257–58, 274, 330, 336, and 341 of the Rebuttal Invalidity Report are restatements, summaries, or

characterizations of opinions disclosed in the Invalidity Report. As the table in the accompanying Exhibit 1 shows, there is ample support in the Invalidity Report for the challenged statements. As such, Acceleron's assertion that the motivations to combine in the aforementioned paragraphs are new and undisclosed is incorrect (*see* Motion § 4.2.8), and the Court should deny Acceleron's request to strike these paragraphs.

For example, Acceleron seeks to strike paragraph 127 from the Rebuttal Invalidity Report because, Acceleron contends, the Invalidity Report allegedly does not disclose that benefits of the prior art would motivate one of ordinary skill to combine Hipp and Ketris to render Claim 3 obvious. *See* Motion Ex. H at 1. But as cited in paragraph 127, the Invalidity Report "sets forth the benefits [of] the module enclosures with air vents (Michalson Invalidity Report at ¶ 232), module rails (*id.* At ¶ 224), and module face plates and handles (*id.* at ¶¶ 225-26)" of the prior art Ketris system. *See* Rebuttal Invalidity Report ¶ 127. As shown in Exhibit 1, the Invalidity Report identifies in paragraphs 243–44 motivations to combine the caddies from the Ketris system with the modules disclosed in Hipp. Those motivations—including the "use of known methods . . . to yield predictable results," the "use of known functions . . . in the same way," and "a reasonable expectation of success since many then-existing systems used these techniques successfully"— logically include the benefits of the prior art because they disclose a motivation to achieve similar results as the prior art. *See* Invalidity Report ¶¶ 243–44; Ex. 1 at 1–

2. The fact that the same ideas are restated using different words does not make them new and untimely disclosures.

Likewise, regarding Acceleron's challenge to paragraphs 250 and 257 of the Rebuttal Invalidity Report, only Acceleron's overly narrow reading of the Invalidity Report would support the conclusion that it fails to disclose a motivation to combine the polling of Ketris or Starfire with Hipp "to achieve a more comprehensive . . . way to monitor status information for components in the server system." *See* Motion Ex. H at 3, 5. The Invalidity Report discloses numerous motivations to combine Ketris or Starfire with Hipp, and the "more comprehensive" label used in the Rebuttal Invalidity Report is just a characterization of the previously disclosed upgrade from the remote monitoring of Hipp to the polling of Ketris or Starfire. *See* Invalidity Report ¶¶ 415, 417, 432, 435, 440; Ex. 1 at 3–5, 6–8. Exhibit 1 demonstrates that the other seven paragraphs that Acceleron seeks to strike are also well-supported by the Invalidity Report.

Because the Rebuttal Invalidity Report does not disclose new motivations to combine, the Court should deny Acceleron's request to strike paragraphs 127, 155, 250–51, 257–58, 274, 330, 336, and 341 from the Rebuttal Invalidity Report.

### 8. Acceleron Has Suffered No Prejudice or Harm from the Challenged Disclosures of the Rebuttal Invalidity Report

As discussed above, the disclosures in the Rebuttal Invalidity Report at issue in Acceleron's Motion constitute permissible rebuttal evidence for countering the criticisms in the Validity Report. Even if some of the disclosures could have

appeared in the Invalidity Report, "the fact that testimony would have been more proper for the case-in-chief does not preclude the testimony if it is proper both in the case-in-chief and in rebuttal." *ITT Corp.*, 2012 WL 12871632, at \*4.

In addition, Acceleron has not suffered any prejudice or harm from the disclosures of the Rebuttal Invalidity Report—its vague assertions to the contrary notwithstanding. Acceleron received the Rebuttal Invalidity Report on June 7, 2019, and failed to raise any issue concerning the report with either Dell or the Court until now—after the close of expert discovery. Acceleron could have asked the Court for leave to file a rebuttal report to the Rebuttal Invalidity Report. Instead, it sat on its hands, even taking Dr. Michalson's deposition on June 20 without a mention of any of the untimeliness issues raised in the Motion.

Applying very similar facts and a similar standard for harmlessness found in this Circuit,[8] the court in *Integrated Liner Technologies, Inc. v. Specialty Silicone Products, Inc.*, No. 1:09-cv-1285 (DEP), 2012 WL 5389778, at \*6–7 (N.D.N.Y. Nov. 2, 2012), denied a motion to strike despite "the fact that [the expert] included in his reply report a more comprehensive analysis which should rightly have been set forth in his earlier, principal report." There, the court "view[ed] the question of

---

[8] In deciding whether a failure to disclose is harmless, courts in this Circuit consider "(1) the importance of the testimony; (2) the reason for the [proponent's] failure to disclose . . . ; and (3) the prejudice to the opposing party if the witness had been allowed to testify." *Bearint v. Dorell Juvenile Grp., Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004).

prejudice to [the plaintiff] as a pivotal factor." *Id.* at *6. The court noted that the plaintiff had "failed to contact the court, prior to taking the expert's deposition, to request appropriate relief." *Id.* The *Integrated Linear* court thus concluded that the plaintiff's inaction belied its claims of prejudice, as "[Plaintiff's] silence and inaction after receiving Defendant's rebuttal expert reports undermines any claims by [plaintiff] of prejudice." *Id.* (quoting *Cooper Notification, Inc. v. Twitter, Inc.*, 867 F. Supp. 2d 485, 499 (D. Del. 2012)).

Here, Acceleron stayed silent and now brings this Motion in another attempt to avoid reaching the merits of Dell's invalidity case. Therefore, as in *Integrated Linear*, there is no prejudice or harm to Acceleron from the disclosures in the Rebuttal Invalidity Report. "Instead, the matters raised in [Acceleron's] motion can be fully aired through cross-examination and presentment of competing expert testimony in order to assist the jury in deciding the issue of invalidity." *Id.* at *7.

## III. CONCLUSION

For the foregoing reasons, Dell respectfully requests that the Court deny in full Acceleron's Motion to Strike Portions of Dr. William Michalson's Invalidity Reports.

Dated: August 19, 2019                    Respectfully submitted,

                                          _/s/ Paula D. Heyman_____
                                          Paula D. Heyman

                                          Scott E. Taylor (Georgia Bar No. 785596)
                                          Andrew B. Flake (Georgia Bar No. 262425)
                                          Anuj Desai (Georgia Bar No. 193889)
                                          **ARNALL GOLDEN GREGORY LLP**
                                          171 17th Street Northwest, Suite 2100
                                          Atlanta, Georgia 30363
                                          Telephone: (404) 873-8728
                                          Facsimile: (404) 873-8729
                                          scott.taylor@agg.com
                                          andrew.flake@agg.com
                                          anuj.desai@agg.com

                                          *Of Counsel:*

                                          Kevin J. Meek (admitted *pro hac vice*)
                                          Paula D. Heyman (admitted *pro hac vice*)
                                          Nick Schuneman (admitted *pro hac vice*)
                                          Jennifer L. Nall (admitted *pro hac vice*)
                                          Valerie K. Barker (admitted *pro hac vice*)
                                          Bailey P. Morgan (admitted *pro hac vice*)
                                          Ryan Clark *(*admitted *pro hac vice*)
                                          **BAKER BOTTS L.L.P.**
                                          98 San Jacinto Boulevard, Suite 1500
                                          Austin, Texas 78701-4078
                                          Telephone: (512) 322-2500
                                          Facsimile: (512) 322-2501
                                          kevin.meek@bakerbotts.com
                                          paula.heyman@bakerbotts.com
                                          nick.schuneman@bakerbotts.com
                                          jennifer.nall@bakerbotts.com
                                          valerie.barker@bakerbotts.com
                                          **bailey.watkins@bakerbotts.com**
                                          ryan.clark@bakerbotts.com

Roger Fulghum (admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-1522
roger.fulghum@bakerbotts.com

***ATTORNEYS FOR DEFENDANT/
COUNTERCLAIMANT DELL INC.***

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1</u>

The undersigned counsel hereby certifies that the foregoing Motion was prepared using 14-point Times New Roman font and a top margin of 1½ inches in accordance with Northern District of Georgia Local Rule 5.1 (C) and (D).

Dated: August 19, 2019                    */s/ Paula D. Heyman*
                                          Paula D. Heyman