# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ACCELERON, LLC,

                Plaintiff,

    v.

DELL, INC.,

      Defendant.

Civil Action File No.

1:12-CV-04123-TCB

# ACCELERON'S RESPONSE IN OPPOSITION TO
# DELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT
# OF INVALIDITY AND NON-INFRINGEMENT

# TABLE OF CONTENTS

1.   Both Parties' Experts Agree that Dependent Claim 17 Adds Limitations to Further Limit Claim 15 ................................................................................. 1

2.   Dell's Non-Infringement Argument for VRTX Requires Altering The Court's Construction of "Hot Swappable … Module(s)" to Reinsert an "Operational Requirement" Already Rejected by the Court .......................... 3

3.   Dell's Non-Infringement Argument for "Caddies" Also Hinges on Altering The Court's Construction, Which Dell Has Previously Described as "Reasonable" and a "Perfectly Good Construction" that "Makes Sense" .................................................................................................................. 8

4.   The MX7000 System Infringes the Backplane Limitation Because it Interconnects and Enables the Modules to be Used as a Shared Resource by the CPU Modules ...................................................................................... 16

5.   Conclusion ....................................................................................... 25

ii

# TABLE OF AUTHORITIES

## CASES

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   805 F.3d 1368 (Fed. Cir. 2015) ............................................................9

*Dell Inc. v. Acceleron, LLC*,
   818 F.3d 1293 (Fed. Cir. 2016) ............................................................3

*Dell, Inc. v. Acceleron, LLC*,
   884 F.3d 1364 (Fed. Cir. 2018) ..........................................................10

*Hoffter v. Microsoft*,
   405 F.3d 1326 (Fed. Cir. 2005) .......................................................1, 3

*Hyatt v. Boone*,
   146 F.3d 1348 (Fed. Cir. 1998) ..........................................................14

*M2M Sols. LLC v. Motorola Sols., Inc.*, Civil Action No. 12-33-RGA,
   2016 U.S. Dist. LEXIS 872 (D. Del. Jan. 6, 2016) ............................25

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008) ............................................................5

*Summit 6, LLC v. Samsung Elecs. Co.*,
   802 F.3d 1283 (Fed. Cir. 2015) ..........................................................14

*Tex. Instru. v. U.S. Int'l Trade Comm'n*,
   988 F.2d 1165 (Fed. Cir. 1993) ............................................................1

*United States v. Sterling Footwear, Inc.*,
   279 F. Supp. 3d 1113 (Ct. Int'l Trade 2017) ........................................6

*Wilson Sporting Goods v. Hillerich & Bradsby*,
   442 F.3d (Fed. Cir. 2006) ...................................................................16

# TABLE OF EXHIBITS

Ex. A – U.S. Patent No. 6,948,021

Ex. B – Acceleron's Reponses to Dell's Statement of Material Facts– *unredacted version filed under seal*

  Ex. B-1 – VRTX Reference Document at Dell-ACC-0004020 (also at Doc. 264.5 & 270-1) – *filed under seal*

  Ex. B-2 – Rule 30(b)(6) Deposition Transcript of Dell by Designee, Shawn Dube (Feb. 25, 2019) – *filed under seal*

  Ex. B-3 – Rousset II Deposition Transcript (April 17, 2019) – *filed under seal*

  Ex. B-4 – September 14, 2007 Letter from Acceleron to Hewlett Packard Co.

  Ex. B-5 – October 5, 2007 Letter from Acceleron to Hewlett Packard Co.

  Ex. B-6 – Deposition Transcript of Robert Horst

  Ex. B-7 – Chassis Management Power Control Specification – *filed under seal*

  Ex. B-8 – Excerpts of the IPMI v2.0 Specification

  Ex. B-9 – Declaration of Wesley A. Roberts

  Ex. B-10 – Infringement Contentions for 1855/1955 – *filed under seal*

Ex. C – Acceleron's Statement of Additional Material Facts – *unredacted version filed under seal*

  Ex. C-1 – Rule 30(b)(6) Deposition Transcript of Dell by Designee, Michael Brown (Feb. 18, 2019) – *filed under seal*

1.   **BOTH PARTIES' EXPERTS AGREE THAT DEPENDENT CLAIM 17 ADDS LIMITATIONS TO FURTHER LIMIT CLAIM 15**

Dell argues that claim 17's "wherein" clause "adds nothing to the patentability or substance of the claim," thus rendering the claim invalid under § 112, ¶ 4. *See* Doc. 264 (citing *Tex. Instru. v. U.S. Int'l Trade Comm'n*, 988 F.2d 1165, 1172 (Fed. Cir. 1993)). To be clear, claim 15 includes the clause, "wherein the computer network appliance is free of a local hard disk drive (HDD)." Ex. A, '021 Patent at col. 10, ll. 3-4. Claim 17 depends from claim 15 and adds the limitation, "wherein the effects of a lack of a local HDD include increased mean time between failure (MTBF) and decreased mean time to repair (MTTR) of the computer network appliance." *Id.* at col. 10, lines 8-11. In making this argument, Dell overlooks that both parties' experts contemplate situations in which claim 17 adds limitations to claim 15 and, thus, "states a condition that is material to patentability, [which] cannot be ignored…." *Hoffter v. Microsoft,* 405 F.3d 1326, 1329-30 (Fed. Cir. 2005).

Dell's expert, Dr. Michalson, cites ██████████████████████ ███████████████████████████████████████████████████████ █████████████████████████████. Doc. 264-3 at ¶ 301; *see also* Ex. C, Acceleron's Statement of Additional Material Facts at ¶ 1. Dr. Michalson also ███████████████████████████████████████████████, which led him to conclude that: ████████████████████████████████████████████████████████

1

████████ Doc. 264-3 at ¶ 301; Ex. C at ¶ 2. In response, Acceleron's expert, Mr. Putnam, recognized in his Rebuttal Report on Infringement, that ███████████

████████████████████████████████████████████████████████████████

████ Doc. 264-4 at ¶ 157; Ex. C at ¶ 3. Thus, both parties' experts agree that removal of certain types of HDDs, particularly higher-grade HDDs, from a CPU module (as contemplated in claim 15), would not always result in an increased MTBF when replaced by a lower-grade SSD. In such situations, while claim 15 might be infringed, claim 17 would not necessarily be infringed.

Likewise, Dr. Michalson states in his Invalidity Report that the MTBF could *decrease* due to the absence of a HDD (as required in claim 15), since, in his example, "additional complexity will be required for the computer network appliance because it will increase the number of components in the system by adding connectors, cables, power supplies, network adapters…." Doc. 257-19 at ¶ 365; Ex. C at ¶ 4. In his Response Report on Validity, Mr. Putnam, agrees that ███████████

████████████████████████████████████████████████████████████████

████████████████████████████ Doc. 264-12 at ¶ 261 (emphasis added); Ex. C at ¶ 5. Such a situation could also, like above, result in claim 15, but not claim 17, being infringed, due to these structural differences. Thus, these facts show that claim 17's "wherein" clause does not merely state the results of the limitations in claim 15

2

but instead "states a condition that is material to patentability," which "cannot be ignored." *Hoffter,* 405 F.3d at 1329-30.

**2.     DELL'S NON-INFRINGEMENT ARGUMENT FOR VRTX REQUIRES ALTERING THE COURT'S CONSTRUCTION OF "HOT SWAPPABLE ... MODULE(S)" TO REINSERT AN "OPERATIONAL REQUIREMENT" ALREADY REJECTED BY THE COURT**

Dell's request for summary judgment of non-infringement for the VRTX Input/Output Module ("IOM") is based entirely on Dell's attempt to re-argue and narrow the Court's construction of "hot swappable ... module(s)" to what Dell calls "the *proper* construction of that term." *See* Doc. 264 at 5 (emphasis added). Yet the Court's construction that Dell seeks to discard is the result of the Court's detailed analysis of the intrinsic and extrinsic record, as well as the Special Master's own extensive analysis, which is based in part on the Federal Circuit's evaluation of this claim term. *See Dell Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1295 (Fed. Cir. 2016) ("The '021 patent discloses a computer-network appliance containing a number of *hot-swappable* components, meaning that those components *can be removed and replaced without turning off or resetting the computer system as a whole.*") (emphasis added); *see also* Doc. 119, Special Master's R&R on Claim Construction at 26-29 (finding that "hot swappable ... module(s)" has its plain and ordinary meaning).

More specifically, after a detailed analysis, the Court indicated in its Claim

Construction Order that it largely agreed with the Special Master's analysis while also concluding that intrinsic evidence warranted a slightly different, and broader, construction for the term "hot swappable … module(s)." Doc. 182 at 9-14. That is, the Court clarified that the plain and ordinary meaning of "hot swappable … module(s)" means "a self-contained electronic component capable of being added to or removed from the computer network appliance while the computer network appliance is powered on or operational." Doc. 182 at 9-14.

In adopting its construction, the Court rejected Dell's argument that a module could be "hot swappable" only if it could be inserted or removed "without disrupting the normal operation of the network appliance." Doc. 182 at 10. For one, the Court found "normal operation" to be unclear. *Id.* at 10. Also, while the Court acknowledged that the disjunctive phrase "active *or* operational" from the '021 Patent's specification (at col. 1, lines 29-31) did support "that the construction of the term sweeps in an operational *component*, the Court [did] not find that the term sweeps in an operational *requirement*." *Id.* at 11-12 (emphasis added).

Despite the Court's rejection of there being an "operational requirement" in the construction, Dell nevertheless seeks to reinsert one back into the construction under the guise that a "fundamental dispute" has arisen between the parties on the

4

"scope of the Court's construction."[1] Dell argues that the "proper construction" of "hot swappable … module(s)" should also "*require* that 'being added to … the computer network appliance' involves a functional addition, wherein the module becomes an *operational* part of the appliance while the appliance is powered on or operational, and thus without the need for a power cycle," that is, "without needing to power down the system." Doc. 264 at 8 (emphasis added). However, Dell's proposed alteration to the Court's construction merely seeks to add back an operational *requirement* that the Court already considered and rejected. Plus, it again seeks to introduce the same lack of clarity that the Court found when it rejected Dell's prior proposed construction as to what does or does not constitute "operational" (as discussed below). *See* Doc. 182 at 10 ("Dell's argument does not clarify what would constitute a 'disruption' of the 'normal' operations of a system.").

As an example of this lack of clarity around "operational," Dell represents that it is undisputed that a VRTX IOM inserted into a VRTX system "results in a *down*, *non-operational* IOM until the VRTX system is power cycled." Doc. 264 at 9 (emphasis added). Elsewhere Dell states that "the VRTX must be power cycled—

---

[1] There is no "fundamental dispute" between the parties on the scope of this claim term. Plus, *O2 Micro*, which Dell cites, pertains to a dispute regarding the "scope of a *claim term*" and not to the "scope of the *Court's construction* of the [claim] term," as Dell argues. *Compare O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) (emphasis added) *with* Doc. 264 at 5.

turned off and back on—to make a replacement IOM *operational.*" *Id.* at 5 (emphasis added). However, material facts from both Dell's own documents and testimony from its engineers confirm that the VRTX IOM is, in fact, hot swappable.

Specifically, when asked if ███████████████████████, Dell's engineer, Babu Chandrasekhar, testified, ████████████████████████████ ██████████████████████Doc. 263-19, Chandrasekhar Dep. Tr. at 293:3-6, Errata Sheet Addendum at 5; Ex. C at ¶ 6. Similarly, Dell's Reference Document for VRTX contains the following statement about the VRTX IOM: ██████████ ██████████████ Ex. B-1, VRTX Reference Document at Dell-ACC-0004020 (also at Doc. 264.5); Ex. C at ¶ 7. This same VRTX Reference Document reiterates that ████████████████████████████████████ *Id.*; Ex. C at ¶ 8. Although Dell discounts Mr. Chandrasekhar's testimony by pointing to another Dell employee who disagrees with Mr. Chandrasekhar and who further claims ████████ █████████████████████████████████████████████, these material facts cannot properly be ignored as Dell might like them to be. *See United States v. Sterling Footwear, Inc.*, 279 F. Supp. 3d 1113, 1134 (Ct. Int'l Trade 2017) (finding that conflicting witness testimony regarding material facts "precludes entry of summary judgment").

Dell also doubles down in citing to the very same VRTX Reference Document

that states ███████████████████████ in arguing that the IOM is supposedly "non-operational" and "down" upon insertion until the VRTX is power cycled. *See* Doc. 264 at 9. Yet nothing in the following statement that Dell cites from the VRTX Reference Document actually states that the IOM is "non-operational" or "down" upon insertion into the VRTX system: █████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████ Ex. B-1. While this statement indicates that █████████████████ ████████████████████, that does not mean nor does it state that the IOM is "non-operational" or "down" in whole or in part, which is especially true in that the IOM is described as ████████████████ on the same page. *Id.*; Ex. C at ¶ 9. Plus, nothing in the VRTX Reference Document's removal or insertion procedures for the IOM instructs a user to "power cycle" the IOM after insertion. *See id.* at Dell-ACC-0004020 – 4023; Ex. C at ¶ 10. Thus, contrary to Dell's argument that the IOM is "non-operational" or "down" upon insertion, the VRTX Reference Document confirms that the IOM is ████████████ *Id.* at Dell-ACC-0004023; Ex. C at ¶ 10.

Finally, it should further be noted that the Court's construction for "hot swappable … module(s)" does not require *both* removal and insertion of a module into the computer network appliance as a single operation. For example, a situation

7

may occur whereby a module is removed and replaced with a blank plate for a period of time. *See e.g.,* Ex. B-2, Dell Rule 30(b)(6) Dep. Tr. by Designee Shawn Dube at 52:15 – 54:19 (explaining how and why ███████████████████████ ███████████████). Thus, the Court's construction of this claim term is in the disjunctive with respect to both: (1) modules being "added *or* removed"; and (2) while the computer network appliance is "powered on *or* operational." Thus, removal of a VRTX IOM from the VRTX system while the VRTX remains powered on satisfies this claim term, as properly construed by the Court and as contemplated by the '021 Patent. *See* Doc. 262.12 at col. 1, ll. 29-31("Hot swap enables the insertion and/*or* removal of components in a computer system while it is still active *or* operational.") (emphasis added).

3. **DELL'S NON-INFRINGEMENT ARGUMENT FOR "CADDIES" ALSO HINGES ON ALTERING THE COURT'S CONSTRUCTION, WHICH DELL HAS PREVIOUSLY DESCRIBED AS "REASONABLE" AND A "PERFECTLY GOOD CONSTRUCTION" THAT "MAKES SENSE"**

Dell goes to the *O2 Micro* well yet again in another attempt to re-argue the agreed construction of "caddies." Dell seeks to narrow the agreed construction— which has previously been affirmed by this Court, the Special Master, and the Federal Circuit—so that it can then argue non-infringement based on what it brazenly calls the "*proper* construction." *See* Doc. 264 at 10 (emphasis added). Yet there is actually no fundamental dispute for this claim term because its construction

is one that the parties previously agreed-upon, which is that a "caddy" (singular) means "a carrier for a module." Moreover, both the Court's Claim Construction Order, and the Special Master's R&R, reference the parties' prior agreed-upon construction. *See infra.* Thus, Dell cannot now rightfully withdraw its agreement and then call that a "fundamental dispute" in order to get the Court to adopt a new claim construction, all so that Dell can assert a new non-infringement argument. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1376 (Fed. Cir. 2015) (party bound by agreed construction; *O2 Micro* "inapposite").

Indeed, both the Court's and the Special Master's constructions of "caddy" as "a carrier for a module" were based in part on Dell's own proposed construction in the IPR, as evidenced by the following colloquy between Dell's counsel and PTAB Judge Trenton Ward:

> JUDGE WARD: Well, Mr. Meek, you said that a caddy provides air flow and helps to align a module. Is that your proposed construction for that term?
>
> MR. MEEK: No, sir.
>
> JUDGE WARD: What is your proposed construction?
>
> MR. MEEK: Our proposed construction is on [demonstrative] slide 28. ***Mr. Putnam, the expert from Acceleron, gave a perfectly good construction of caddy as a carrier for a module.***
>
> ***We think that is reasonable. We think it is consistent with the claim and the specification.*** The most important thing about it is that it is from their expert. It is in their response, stated as the construction.

> ***It is reasonable.*** It is the broadest construction presented to the Board to date. And under Rule 42.100(b), the broadest reasonable construction is the one the Board should adopt.
>
> ***It is not overly broad, though. It makes sense. A caddy carries a module is fine. Everything we know from the specification is consistent with that.***

Doc. 94-15 at 17:11-18:5 (emphasis added).

Later, Dell twice reiterated this agreed-construction in briefing to the Federal Circuit,[2] which thereafter acknowledged the agreed construction in its subsequent opinion. *See Dell, Inc. v. Acceleron, LLC,* 884 F.3d 1364, 1368 n.2 (Fed. Cir. 2018) (recognizing that Dell and Acceleron had an "agreed-upon construction of 'caddy'" as meaning "a carrier for a module.").

Although Dell did try to abandon its agreement to this construction during claim construction proceedings, the Court stated in its Claim Construction Order that "Dell has not provided a convincing reason as to why the construction of 'caddies' in the present action should be different from the construction approved by Dell in

---

[2] *See* Doc. 94-16, Dell's Aug. 28, 2015 CAFC Reply Brief, Case No. 15-1513, at 20 ("[T]here is no dispute the construction of the term 'caddies' in claim 3 as 'carriers for modules'"); Doc. 94-17, Dell's Apr. 25, 2017 CAFC Reply Brief, Case No. 17-1101, at 2 ("The proper construction of 'caddy' is what the parties agreed and it is what the Board adopted in the Final Written Decision: 'a carrier for a module'— nothing more, nothing less"); *Id.* at 15 ("The proper construction of 'caddy' is simply what the parties agreed to and the Board adopted: 'a carrier for a module,' without any added notions or limitations").

10

the IPR proceeding." Doc. 182 at 33-34. The Court's ruling was an adoption of the Special Master's recommendation that also found no reason to reward Dell's attempt to abandon its agreement in stating: "There has been no explanation by Dell as to why, under the *Phillips* standard employed by federal courts, there would be a claim construction of 'caddies' in this action that would be inconsistent with the claim construction approved by Dell in the IPR proceeding." Doc. 119 at 38.

What was true then remains true now. And as the Court noted in its Claim Construction Order (Doc. 182 at 33-34), Dell has done nothing to support variance from the construction of "caddies" as "carrier for a module" that Dell itself has characterized as (1) "a perfectly good construction of caddy;" (2) "reasonable;" (3) "consistent with the claim and the specification;" (4) "not overly broad;" (5) "make[ing] sense;" (6) "fine;" and (7) "[e]verything we know from the specification is consistent with that [construction]." *See infra* at p. 9; Doc. 94-15 at 17:11-18:5. Thus, as stated above, there is no actual dispute in this construction that could reasonably or properly warrant revisiting it yet again. Therefore, the Court should again reject Dell's attempt to change the construction of "caddies" that not only it agreed to, but that the Special Master, the Court, and even the Federal Circuit also all adopted in finding that "caddies" means "a carrier for a module." *See supra.*

As stated above, Dell does not argue non-infringement based on the

11

construction of "caddy" (singular) as "carrier for a module." Dell instead improperly imports the claim term "hot swappable … module(s)" from claim 1 into claim 3 to make a "caddy" a "carrier for a *hot swappable* module," which Dell contends "requires any module carried by the [newly construed] caddy be hot-swappable independent of the caddy itself." *See* Doc. 264 at § IV(C)(2). Dell then argues that because the metal enclosure structure of a blade server, which Acceleron contends is the "caddy," is what allegedly allows the system board (the "CPU module" of claim 1) to be hot swappable, that means that "both the system board and the blade enclosure" structure are what "must be the 'hot-swappable CPU module'" of claim 1. *Id.* Thus, under Dell's argument, the metal blade enclosure structure cannot also be the claimed "caddy" of claim 3, thus enabling Dell to argue non-infringement of claim 3 under this newly-contrived claim construction. *See id.*

However, notwithstanding the reasons above why the term "caddies" should not be re-construed, Dell is also, yet again, reconstruing the claim term "hot swappable … module(s)" as well, by reading out the word, "capable," from the Court's construction. *See* Doc. 182 at 13-14 ("Therefore, the construction of 'hot swappable … modules' is 'a self-contained electronic component *capable* of being added to or removed from the computer network appliance ….'") (emphasis added). That is, under the Court's construction, a "module" need only be *capable* of being

"added to or removed from the computer network appliance while the computer network appliance is powered on or operational." *Id.*

Clearly, the '021 Patent supports this construction in describing that each of the four types of modules (*i.e.,* CPU module 102 at FIG. 3 & 4/25-33; ethernet switch module 110 at FIG. 3 & 6/1-6; power module 106 at FIG. 4 & 6/53-57; and microcontroller module 108 at FIG. 5 & 7/40-50) is at least *capable* of hot swapping irrespective of the presence or absence of a caddy. Ex. C at ¶ 11. Indeed, the '021 Patent states that *"[e]ach* module is *designed* to be hot swapped from the chassis" and that each module includes a hot swap connector that is coupled to a hot swap mating connector on the backplane board 104 so that "power is supplied directly to a module as soon as it is inserted." Ex. A, '021 Patent at col. 3, ll. 58-65 (emphasis added); *see also* col. 4, line 32 (hot swap connector 212 on CPU module 102), col. 6, line 5 (hot swap connector 312 on ethernet switch module 110), col. 6, ll. 56-57 (hot swap connector 404 on power module 106), and col. 7, line 50 (hot swap connector 510 on microcontroller module 108); Ex. C at ¶¶ 11-15. The '021 Patent further describes how the "hot swap connector of a module comprises groups of pins … of different length that allow the pins to make connections in a prearranged pattern" to supply power to the module. *Id.* at col. 4, lines 5-8. None of this disclosure requires the presence or absence of a caddy in order for the four module types to at

13

least be *capable* of hot swapping.[3]

Plus, Dell ignores claim 4 of the '021 Patent and its impact on the hot swappability of modules in claim 1. Claim 4, like claim 3, depends directly from claim 2, which itself depends from claim 1. See Ex. A at col. 9, lines 1-26. Just as "caddies" is recited in claim 3 but not claim 1, the same is true with "hot swap connectors of the modules," which is recited in claim 4 but not in claim 1. Thus, neither "caddies" nor "hot swap connectors of the modules" is an express limitation of claim 1 with respect to "hot swappable … module(s)." *See Summit 6, LLC v. Samsung Elecs. Co.*, 802 F.3d 1283, 1290 (Fed. Cir. 2015) ("[T]he doctrine of claim differentiation disfavors reading a limitation from a dependent claim into an independent claim."). As such, the claim term "hot swappable … module(s)" in claim 1 does not require any specific structure, but instead must only, as the Court construed the term, be a module "*capable* of being added to or removed from the

---

[3] When the patentee of the '021 Patent wanted to be explicit about a requirement, the patentee knew how to do so. *See e.g.,* '021 Patent: col. 3, ll. 37-39 ("For normal operation, the chassis *must* be equipped with at least one CPU module, the power module and the ethernet switch module.") (emphasis added). Likewise, in one embodiment, the microcontroller module may be hot swappable (*see e.g., id.* at 3/58 & 7/50), and in another (claim 20) it may or may not be hot swappable, thus confirming the patentee appreciated that modules may or may not be hot swappable. *See id.* at col. 10, ll. 24-29; Ex. C at ¶ 16; *see also Hyatt v. Boone*, 146 F.3d 1348, 1352 (Fed. Cir. 1998) ("The claims as filed are part of the specification…").

computer network appliance while the computer network appliance is powered on or operational." Doc. 182 at 13-14 (emphasis added).

Second, testimonial evidence confirms that the system boards of the Accused products are at least *capable* of hot swapping. When asked, "████████████████ ████████████████████████████████████████████████?" Dell's employee, Greg Casey, the Design Manager on the M1000e[4] testified in response, "████████████████████." Doc. 263-16, Greg Casey Nov. 10, 2017 Dep. Tr. at 233/22 – 234/2; *see also id.* at 227/8 – 233/2 ████████████████████ ██████); Ex. C at ¶ 17. Although Mr. Casey went on to ████████████████, his acknowledgment that ████████████████████████ ████████████████████████████████████████ indicates that the system board is *capable* of being hot swapped without a caddy.

Finally, Dell's motivation for jettisoning the agreed-upon construction of "caddy" and then ignoring that "hot swappable … module(s)" only need be capable of hot swapping is to then argue non-infringement under what it calls "the proper/correct construction." Doc. 264 at 10, 14 & 16. Yet not only does Dell fail in

---

[4] Mr. Casey testified ████████████████████████████████████ ████████████████████ Doc. 236-16 at 99/4-12; Ex. C at ¶ 17 n.1. Mr. Casey testified that ████████████████████████████████████████████ ████████████████████████████████████████████ ██████ *Id.* at 40/17-18; Ex. C at ¶ 17 n.1.

this tortured claim *re*-construction exercise, as explained above, but Dell also violates a fundamental claim construction principle (even though claim construction proceedings are long since complete) that "forbids biasing the claim construction process to exclude … specific features of the accused product." *See Wilson Sporting Goods v. Hillerich & Bradsby*, 442 F.3d, 1330-31 (Fed. Cir. 2006) (Although awareness of the accused product is not totally prohibited, it may be used only "to supply the parameters and scope of the infringement analysis." Courts, however, are forbidden "from tailoring a claim construction to fit the dimensions of the accused product … to reach a preconceived judgment of infringement or noninfringement."). Thus, for any of the above reasons, the Court should reject Dell's attempt to improperly reconstrue the term "caddies" to what is calls the "proper construction" and should deny Dell's request for partial summary judgment on Claim 3.

**4.   THE MX7000 SYSTEM INFRINGES THE BACKPLANE LIMITATION BECAUSE IT INTERCONNECTS AND ENABLES THE MODULES TO BE USED AS A SHARED RESOURCE BY THE CPU MODULES**

Dell is incorrect in its claim that the Dell PowerEdge MX7000 System lacks a "backplane board" that interconnects the ethernet switch module with the CPU module on the assertion that ███████████████████████████████████████

███████████████████████████████████████████████████

███████ Doc. 264 at 17. Dell's argument fails because it is contradicted by both

16

Dell's own MX7000 documents and

by Acceleron's expert, Mr. Putnam,

whose opinions are based on those

MX7000 documents.

Specifically, as Mr. Putnam explained in his Initial Expert Report on

Infringement [Doc. 263-21], the MX7000's ███████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████. Doc. 263-21 at ¶ 755; Ex. C at ¶ 18.

According to Mr. Putnam, the ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████. *Id.* at 756; Ex. C at ¶ 19. Top and bottom images of the ██████

██████████ are as follows:

17

*Id.* Mr. Putnam concludes that ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████ *Id.* at ¶ 757; Ex. C at

¶ 20. These facts meet the claim element of a "backplane board having a plurality of

hot swap mating connectors" in claim 1 of the '021 Patent.

Mr. Putnam goes on to explain that ████

████████████████████████████

████████████████████████████

████████████████████████████

████████████████████████ *Id.*

at ¶ 759; Ex. C at ¶ 21. As such, Mr. Putnam states that ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████ *Id.* at ¶ 760; Ex. C at ¶ 22.

Thus, Mr. Putnam also finds that ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████ . *See id.* at ¶ 761; Ex. C at ¶ 23.

Thereafter in his report, Mr. Putnam goes on to explain how and why the

MX7000 ███████ █████

███████████████████

███████████████████

███████████████████

█████████████████████████████████████

█████████████████████████████████████

████. *See id.* at ¶¶ 768-786. Specifically, Mr. Putnam explains that ████████

█████████████████████████████████████

████████. *Id.* at ¶¶ 770-771; Ex. C at ¶¶ 24-25. According to Mr. Putnam's

report, the █████████████████████████████

█████████████████████████████████████

█████████████████████████████████████

████████████ *Id.* Thus, Mr. Putnam concludes that "[o]ne of ordinary skill in the

art would understand that this means that ████████████████

█████████████████████████████████████

██████████████████████████ *Id.*

Mr. Putnam then shows how ██████████████████

█████████████████████████████████████

████████████████. After referencing ████████ in ¶ 772 of his Report



(shown right), Mr. Putnam explains that ▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ ▮▮▮ ▮▮▮ ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮ *Id.* at ¶ 773; Ex. C at ¶¶ 26-27. Mr. Putnam concludes that based on the image ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ "[o]ne of ordinary skill in the art would understand that this means that ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

Mr. Putnam does not stop there; he also cites ▮▮▮▮▮▮▮▮▮▮▮ and explains that the ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ ▮▮▮ ▮ ▮ ▮ ▮▮▮▮▮▮▮▮▮▮ *Id.* at ¶¶ 774-775; Ex. C at ¶¶ 28-29. Mr. Putnam further states that "the ▮▮▮ ▮ ▮ ▮▮ ▮▮ ▮

████████████████████████████████████████████████

████████████████████████████████████████████████

*Id.* at ¶ 775; Ex. C at ¶ 29. As such, Mr. Putnam concludes that "[o]ne of ordinary

skill in the art would understand that this means that the ██████████████████

████████████████████████████████████████████████

██████████ *Id.* Mr. Putnam even cites to Dell's Rule 30(b)(6) deponent, Michael

Brown, who confirmed that ██████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████

       Q.    ████████████████████████████████

                █████████████████████

         ████    ██████

*Id.* at ¶ 785; Doc. 264-5, Putnam Rebuttal Report on Infringement at ¶ 104; Ex. C-

1, Dell 30(b)(6) (Michael Brown) Dep. Tr. at 150:6-9; Ex. C at ¶ 30.[5]

---

[5] Dell's expert, Dr. Michalson, tries to assert that ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████ Doc. 264-3 at ¶ 206. However, Dr. Michalson fails to identify any supporting
documents and fails to refute Mr. Brown's testimony that the ██████████████

████████████████████████████████████████████████

██████████████ Ex. C-1 at 150:2-3. At a minimum, this is a dispute of fact.



In   addition   to   the   many

███████████████ ██████ ██████ ████

██████████████████████████████

██████████████████████████████, Mr. Putnam cites to yet another such

████████████ That is, Mr. Putnam's Report depicts the ████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████. *Id.* at ¶ 777; Ex. C at ¶ 31-

32. As such, Mr. Putnam concludes that "[o]ne of ordinary skill in the art would

understand that this means that the ███████████████████████████████████

███████████████████████████████████████████." *Id.*

Based on all these ██████████████████████, Mr. Putnam finds that

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████ *Id.* at ¶ 778; Ex.

C at ¶ 33. Mr. Putnam also concludes that "one of ordinary skill in the art would

understand that the ███████████████████████████████████████

██████████████████████████████████" *Id.* As such, he

explains that "the ███████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████ *Id.* at ¶ 779; Ex. C at ¶ 34; *see also* ¶ 783 ("[T]he ██████████

███████████████████████████████████████████████

█████████████████████████████████████ Ex. C at ¶ 35. As

such, Mr. Putnam states as his opinion based on these facts that the █████████

███████████████████████████████████████████████

███████████████████████████████████████████."

*Id.* at ¶ 786; Ex. C at ¶ 36.

Conspicuously, despite only using barely 20 of its 25 permitted pages of

briefing for its motion, Dell's motion fails to even mention how the █████████

███████████████████████████████████████████████

██████████████████████████████████

    (1) ████████ ███ ███████████████████████████████

---

[6] Although Dell does not make this argument in its motion, Dr. Michalson argues in
his report that the ████████████████████████████████████
███████████████████████████████████. *See* Doc. 264-3
at ¶¶ 212-215. However, as Mr. Putnam explains in his Rebuttal Report on
Infringement, the Court construed this term to mean "a module that [is] configured
to route network communications between multiple devices" and is not limited to



Based on one or more of these five factual points above, the undeniable conclusion is that the MX7000 meets the element of a "backplane board [that] interconnects each of the CPU modules with the at least one power module and the at least one ethernet switch module, such that the at least one power module and the at least one ethernet switch module can be used as a shared resource by the plurality of CPU modules," as recited in claim 1, from which claim 3 depends.  At a minimum,

_____

████████████████████████████████████████. Doc. 264-4 at ¶ 109.

[7] Like Dell, Dr. Michalson makes no mention of the ████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████

[8] Dell also does not mention the ████████████████████ in its summary judgment motion. And while Dr. Michalson does at least reference it in his report, he does not actually address it or explain why, in his opinion, it does not result in the MX7000 meeting the "backplane board" limitation of the '021 Patent's claims. It appears that Dr. Michalson tries to conflate it with the ████████████████████; however, Dr. Michalson fails to explain the images above ████████████ ████████████████████████████████████████).

Mr. Putnam's detailed expert testimony is itself sufficient to create genuine issues of material fact, making summary judgment inappropriate.  *See M2M Sols. LLC v. Motorola Sols., Inc.*, Civil Action No. 12-33-RGA, 2016 U.S. Dist. LEXIS 872, at *31 (D. Del. Jan. 6, 2016) (motion for summary judgment of non-infringement denied in view of conflicting expert testimony).

**5.   CONCLUSION**

For all these reasons, the Court should deny Dell's motion for partial summary judgement alleging that: (1) Claim 17 is invalid under 35 U.S.C. § 112, ¶ 4; (2) the VRTX system does not infringe the Asserted Claims; (3) the Accused Products do not infringe Claim 3 under Dell's "proper construction"; and (4) the MX7000 does not infringe Claims 3, 14-17, and 24.

Respectfully submitted this 28th day of August, 2019.

/s/ N. Andrew Crain

N. Andrew Crain
Georgia Bar No. 193081
andrew.crain@thomashorstemeyer.com
Dan R. Gresham
Georgia Bar No. 310280
dan.gresham@thomashorstemeyer.com
Eric Maurer
Georgia Bar No. 478199
eric.maurer@thomashorstemeyer.com
Robert D. Gravois
Georgia Bar No. 600183
robert.gravois@thomashorstemeyer.com
**THOMAS | HORSTEMEYER, LLP**
3200 Windy Hill Rd SE
Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933


*Attorneys for Plaintiff Acceleron, LLC*

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

The undersigned hereby certifies that the foregoing was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

*/s/ N. Andrew Crain*
N. Andrew Crain
Georgia Bar No. 193081
*Attorney for Plaintiff Acceleron, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ACCELERON, LLC,

               Plaintiff,

    v.

DELL, INC.,

      Defendant.

Civil Action File No.

1:12-CV-04123-TCB

## CERTIFICATE OF SERVICE

I hereby certify that on August 28, 2019, the foregoing was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

/s/ N. Andrew Crain
N. Andrew Crain
Georgia Bar No. 193081
*Attorney for Plaintiff Acceleron, LLC*

28