# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ACCELERON, LLC,

               Plaintiff,

   v.

DELL, INC.,

    Defendant.

Civil Action File No.

1:12-CV-04123-TCB

## ACCELERON'S RESPONSE IN OPPOSITION TO DELL'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO PRE-SUIT DAMAGES AND NON-INFRINGEMENT

# TABLE OF CONTENTS

1.   ACCELERON IS ENTITLED TO PRE-SUIT DAMAGES .........................1

    1.1.   Acceleron is entitled to damages from six-years prior to the filing of the complaint until November 11, 2009, regardless. ...................................1

    1.2.   Dell has not asserted that ▮▮▮▮ or any other entity has an unmarked product that practices the '021 Patent. ...................................................2

    1.3.   Dell received actual notice of its infringement of the '021 Patent. ......3

2.   THE   ACCUSED   "MICROCONTROLLER   MODULES"   ARE CONFIGURED TO "POLL THE CPU MODULE".......................................5

    2.1.   A poll that occurs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ .................................5

    2.2.   What Dell calls "query-based communications" are not "queries"— they are acts of polling. ........................................................................10

    2.3.   The CMCs poll the CPU modules ▮▮▮▮▮▮▮▮▮▮▮ ...........12

    2.4.   The accused microcontroller modules are configured to poll the CPU modules ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ............................12

3.   ACCELERON   IS   NOT   PRECLUDED   FROM   ASSERTING   ITS DOCTRINE   OF   EQUIVALENTS   CONTENTIONS   FOR   "HOT-SWAPPABLE CPU MODULES" ...............................................................14

4.   DELL FAILS TO CARRY ITS INITIAL BURDEN OF ESTABLISHING A *PRIMA FACIE* CASE OF ENSNAREMENT...............................................16

5.   EVIDENCE SHOWS THAT THE ACCUSED PRODUCTS INFRINGE CLAIMS 14-17, 22, AND 24 ........................................................................19

    5.1.   Acceleron Has Presented Evidence that the Accused Products Infringe Claims 14-17 .....................................................................................19

    5.2.   Dell's Documentation Shows that ▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ..........................21

5.3.    Evidence Shows that the Accused Products Infringe Claim 24..........23

5.4.    Acceleron's Has Presented Evidence to Support Infringement of Four of Its Doctrine of Equivalents Theories ..............................................24

# TABLE OF AUTHORITIES

### CASES

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
No. 14-CV-6544,
2018 U.S. Dist. LEXIS 51444 (E.D.N.Y. Mar. 27, 2018) .....................................1

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
876 F.3d 1350 (Fed. Cir. 2017) ..........................................................................2

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) .................................................................. 13, 20

*Hewlett-Packard Co. v. Acceleron LLC*,
587 F.3d 1358 (Fed. Cir. 2009) ..........................................................................4

*In re Elonex Phase II Power Mgmt. Litig.*,
Lead C.A. No.: 01-082 GMS,
2002 U.S. Dist. LEXIS 2591 (D. Del. Feb. 20, 2002) ........................................1

*Intendis GMBH v. Glenmark Pharm. Inc.*, *USA*,
822 F.3d 1355 (Fed. Cir. 2016) ........................................................................18

*Interactive Pictures Corp. v. Infinite Pictures, Inc.*,
274 F.3d 1371 (Fed. Cir. 2001) ........................................................................16

*Interface, Inc. v. J&J Indus.*,
No. 4:13-cv-47-WSD,
2013 U.S. Dist. LEXIS 158609 (N.D. Ga. Nov. 5, 2013).................................17

*Jang v. Bos. Sci. Corp.*,
872 F.3d 1275 (Fed. Cir. 2017) ........................................................................19

*Mylan Institutional LLC v. Aurobindo Pharma Ltd.*,
No. 2:16-CV-00491-RWS-RSP,
2016 U.S. Dist. LEXIS 180551 (E.D. Tex. Nov. 19, 2016)................................18

*SciMed Life Sys. v. Advanced Cardiovascular Sys.*,
242 F.3d 1337 (Fed. Cir. 2001) ........................................................................15

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
 127 F.3d 1462 (Fed. Cir. 1997) ............................................................................5

*Texas Digital Sys., Inc. v. Telegenix, Inc.*,
 308 F.3d 1193 (Fed. Cir. 2002) ............................................................................1

*WiAV Sols. LLC v. Motorola, Inc.*,
 732 F. Supp. 2d 634 (E.D. Va. 2010) ....................................................................1

**STATUTES**

28 U.S.C. § 2201 ....................................................................................................4

35 U.S.C. § 287 ..................................................................................................3, 4

# TABLE OF EXHIBITS

Ex. A – U.S. Patent No. 6,948,021

Ex. B – Acceleron's Reponses to Dell's Statement of Material Facts– *unredacted version filed under seal*

    Ex. B-1 – VRTX Reference Document at Dell-ACC-0004020 (also at Doc. 264.5 & 270-1) – *filed under seal*

    Ex. B-2 – Rule 30(b)(6) Deposition Transcript of Dell by Designee, Shawn Dube (Feb. 25, 2019) – *filed under seal*

    Ex. B-3 – Rousset II Deposition Transcript (April 17, 2019) – *filed under seal*

    Ex. B-4 – September 14, 2007 Letter from Acceleron to Hewlett Packard Co.

    Ex. B-5 – October 5, 2007 Letter from Acceleron to Hewlett Packard Co.

    Ex. B-6 – Deposition Transcript of Dr. Robert Horst, PhD

    Ex. B-7 – Chassis Management Power Control Specification – *filed under seal*

    Ex. B-8 – Excerpts of the IPMI v2.0 Specification

    Ex. B-9 – Declaration of Wesley A. Roberts

    Ex. B-10 – Infringement Contentions for 1855/1955 – *filed under seal*

Ex. C – Acceleron's Statement of Additional Material Facts – *unredacted version filed under seal*

    Ex. C-1 – Rule 30(b)(6) Deposition Transcript of Dell by Designee, Michael Brown (Feb. 18, 2019) – *filed under seal*

1.    **ACCELERON IS ENTITLED TO PRE-SUIT DAMAGES**

   1.1.    **Acceleron is entitled to damages from six-years prior to the filing of the complaint until November 11, 2009, regardless.**

Dell does not contend that Acceleron had any products practicing the '021 Patent, or any licensees authorized to practice the '021 Patent, prior to November 11, 2009. The weight of authority holds that "[t]he [marking] statute is only triggered when articles that practice a patent are actually sold into the marketplace, and does not limit damages where a patent holder (or licensee) does not actually sell products practicing the relevant patent into the marketplace." *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, No. 14-CV-6544, 2018 U.S. Dist. LEXIS 51444, at *12 (E.D.N.Y. Mar. 27, 2018) (citing *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1220 (Fed. Cir. 2002)). Accordingly, "a patentee is not precluded from collecting damages for a period in which marking was not required even if the requirements of the marking statute were later triggered and the patentee failed to comply. This conclusion is most consistent with the purpose of the statute." *WiAV Sols. LLC v. Motorola, Inc.*, 732 F. Supp. 2d 634, 639-40 (E.D. Va. 2010); *see also In re Elonex Phase II Power Mgmt. Litig.*, Lead C.A. No.: 01-082 GMS, 2002 U.S. Dist. LEXIS 2591, at *10 (D. Del. Feb. 20, 2002) ("The court concludes that, if the patentee or its licensee neither sells, nor manufactures, the patented product, Section 287(a)'s

notice provisions do not apply."). Accordingly, there can be no limitation of damages prior to November 11, 2009. [1]

### 1.2. Dell has not asserted that ███ or any other entity has an unmarked product that practices the '021 Patent.

While Dell claims that Acceleron previously accused a ███ product of infringement, Dell does not affirmatively assert that *any* ███ product practices the '021 Patent. *See* Dell's SUMF, F5-F6. Accordingly, Dell has failed to meet its burden of identifying an unmarked product that practices the '021 Patent. *See Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017) ("The alleged infringer need only put the patentee on notice that he or his authorized licensees sold specific unmarked products which *the alleged infringer believes* practice the patent."[2]).

Additionally, the agreement between Acceleron and ███ requires ███ to make a "good faith judgment" and "mark all products which would otherwise infringe the '021 patent . . . ." Doc. 264-23, § 12.5. Accordingly, to the extent that

---

[1] The single case Dell cites in a footnote reaching the opposite conclusion fails to address the weight of authority holding otherwise, including the Federal Circuit case relied on by *Am. Tech. Ceramics Corp.* The perfunctory reasoning in *Adrea, LLC v. Barnes & Noble, Inc.*, is therefore unconvincing. No. 13-cv-4137, 2015 U.S. Dist. LEXIS 100312, at *7 (S.D.N.Y. July 23, 2015).

[2] Emphases in this response are added, unless noted otherwise.

███ has not marked a product, ███ is required to have made a good faith determination that the product does not practice the '021 Patent. As Dell does not allege that there is a licensed ███ product that practices the '021 Patent (or that ███ breached the agreement), Dell has failed to establish that § 287 limits pre-suit damages. *See In re NeuroGrafix ('360) Patent Litigation*, Case No. 1-13-md-02432 (Stearns, J.) (Minute Entry August 1, 2016) ("Because defendants have not met their burden of production in showing that there are licensed products practicing the patented technology that should be marked, their motion for summary judgment on this ground will be denied.").

### 1.3.    Dell received actual notice of its infringement of the '021 Patent.

Actual notice of infringement is a substitute for constructive notice by marking. 35 U.S.C. § 287. Dell argues that the two separate letters it received from Acceleron in 2007 regarding the '021 Patent and Dell's blade server products are insufficient to constitute actual notice under § 287. Doc. 287 at 4-7. However, the Federal Circuit has already considered nearly identical letters from Acceleron and determined they were sufficient to create an "actual case or controversy" such that declaratory judgment jurisdiction was appropriate. Because the threshold to create an "actual case or controversy" is lower than the threshold to provide actual notice of infringement, Acceleron's letters to Dell satisfy the actual notice requirement.

3

"In patent cases, declaratory judgment jurisdiction exists where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license." *Hewlett-Packard Co. v. Acceleron LLC*, 587 F.3d 1358, 1361 (Fed. Cir. 2009) ("*HP*") (quotation omitted). In *HP*, Acceleron sent HP two letters that are nearly identical in content to the letters it sent Dell. *Compare id.* at 1361-62 (Exs. B-4 & 5) *with* Docs. 264-35 & 36. The Federal Circuit held that under "the totality of the circumstances, . . . it was not unreasonable for HP to interpret Acceleron's letters as implicitly asserting its rights under the '021 patent." *HP*, 587 F.3d at 1363. The Federal Circuit concluded that the objective facts showed that "Acceleron took the affirmative step of twice contacting HP directly, making an implied assertion of its rights under the '021 patent against HP's Blade Server products, and HP disagreed." *Id.* at 1364.

Here, Acceleron made the same implied assertion of actual infringement against Dell with respect to Dell's blade server products. *See* Docs. 264-35 & 36. Because the Federal Circuit has already found that Acceleron's implied assertion of HP's infringement was sufficient to constitute an "actual case or controversy" under 28 U.S.C. § 2201, Acceleron's implied assertion of Dell's infringement is sufficient to satisfy the lower actual notice requirement of 35 U.S.C. § 287. *Cf. SRI Int'l, Inc.*

*v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1469-70 (Fed. Cir. 1997) ("Actual notice may be achieved without creating a case of actual controversy in terms of 28 U.S.C. § 2201."). Therefore, Dell's motion should be denied as to this issue.

**2.    THE ACCUSED "MICROCONTROLLER MODULES" ARE CONFIGURED TO "POLL THE CPU MODULE"**

Dell's characterizations of the Court's Claim Construction Order, the Special Master's Report & Recommendation on Claim Construction, and the manner in which the microcontroller modules[3] of the Accused Products actively gather information are inaccurate. The Court and Special Master adopted Acceleron's proposed construction of "poll(s)" as meaning simply "actively gathers information" without limitation on the way that the active gathering must be initiated or whether it is precluded from following any type of event. Doc. 182 at 36; Doc. 119 at 42. Dell's portrayal of the polling by the DRAC/MCs and CMCs as "interrupt-*driven*" and "query-*based*" conflates the polling performed by the accused microcontroller modules with interrupts and "queries" in a transparent attempt to manufacture a non-infringement argument.

**2.1.    A poll that occurs ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.**

In construing "polls" as "actively gathers information," the Court noted that

---

[3] The accused microcontroller modules include the "CMC" modules of the M1000e, VRTX, and FX2 products and the "DRAC/MC" modules of the 1855 products.

"the Special Master . . . concluded that a person of ordinary skill in the art would not believe that polls also encompassed . . . interrupts." Doc. 193 at 1-2. An interrupt, as explained by Dell's expert from the IPR, "is where the [CPU] module itself forces the information to be sent to the receiving [microcontroller] module as opposed to the [microcontroller] module requesting it and polling for the information." Ex. B-6 at 128:4-11. At the *Markman* hearing, Dell provided an animated slide (shown to the right) depicting an interrupt, in which a CPU module communicates an interrupt (information saying "Hello, I'm over-heated") to the microcontroller module *without the microcontroller module requesting the information*. *See* Doc. 264-4, Rebuttal Infringement Report, at ¶ 171 (annotated excerpts of Dell's demonstrative).



Importantly, the Court and the Special Master did not find that instances of polling that occur *after* an interrupt (*i.e.*, what Dell calls "interrupt-*driven* communications") are excluded from the Court's construction. Doc. 119 at 40-42 (Report and Recommendation); Doc. 182 at 34-36 (Claim Construction Order)*.* Dell's assertion that a poll cannot follow an interrupt and that "interrupt-*driven* communications" are excluded are misinterpretations of the Court's Claim Construction Order.

6

Knowing that its "interrupt-driven communications" argument is not persuasive, Dell further argues that ████████████████████████████████████████ ████████████████████████████████████. But Dell's argument is contradicted by the evidence of record. For example, Dell's Rule 30(b)(6) designee repeatedly and consistently testified that ████████████████████████████████ ████████████████████████████████. *See*, *e.g.*, Doc. 263-28 at 87:11-14 ("████████████████████████████████████████ ████████████████████"), 84:19-22 ("████████████████ ████████████████████"), 85:24-86:1 ("████████████ ████████████████████████████████████████████████ ████████████████████████████████████████"). Dell's engineer, Babu Chandrasekhar, also testified that ████████████ ████████████████████████████████. Doc. 263-19 at 223:14-17 ("█ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████"). 

Additionally, Dell's own documentation confirms that ████████████ ████████████████████. For example, Dell documentation states that ████████████████████████████████████████████████



██████████████████████████████████" Doc. 263-30, IPMI Interface for IMC, at

DELL-ACC-00007089. Furthermore, a document that ████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████" Doc.

263-31, Shifty Bus Specification, at DELL-ACC-00217311. Similarly, Dell's ████████

████████████████████████████████████████████████████████

██████████████████████████████████" Doc. 264-44 at DELL-ACC-SRC-

00103, ll. 1033.

    Additionally, Dell's own technical expert acknowledges in his non-infringe-

ment report that ██████████████████████████████████. For example, Dr.

Michalson's non-infringement report states that "█████████████████████████

████████████████████████████████████████████████████████████"

Doc. 264-3 at ¶ 367. Dell's expert further states: "█████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████" *Id.* By definition, ████████████

████████████████████████████████████.

    Furthermore, Dell has already admitted in responses to Requests for Admis-

sion and through the testimony of its Rule 30(b)(6) designee that ████████████████

█████████████████████████████████████████████████████

██████. Specifically, when Dell's Rule 30(b)(6) designee was asked why Dell admitted in responses to Requests for Admission that ██████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████. Doc. 263-28 at 36:23-37:2, 37:18-38:1, 38:18-24, 46:18-47:20, 49:12-22, 50:11-19; *see* Doc. 262-40 at RFAs 224-25 (██████████████████████████████████████

████). Because Dell's Rule 30(b)(6) designee testified that ████████████████

█████████████████████████████████████████████████████

█████████████████████████. Doc. 263-28 at 80:19-81:9.

Dell alleges that Acceleron's technical expert "████████████████████████

████████████████████████" and that "██████████████████████████

██████████████████████" Doc. 267 at 17. Acceleron's expert never made such a statement, and the citations Dell provides do not support Dell's assertion. *See* Doc. 260-80 at 224:13-225:9. Instead, the report of Acceleron's expert unequivocally states: "████████████████████████████████████████████

██████████████████████." Doc. 264-2, Initial Infringement Report, at ¶ 302 (emphasis in original). Thus, Dell's characterization of Mr. Puntam's opinions is inaccurate.

Finally, Dell fails to mention the important fact that that ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████. Doc. 264-3,

Non-infringement Report, at ¶ 349; Doc. 264-4, Infringement Report, at ¶ 198; Doc.

263-31, ████████████, at DELL-ACC-00217311. The fact that ████████

████████████████████████████████████████████████████

██████████████████████████. *Id.*

## 2.2. What Dell calls "query-based communications" are not "queries"—they are acts of polling.

At the technology tutorial and *Markman* hearing, Dell argued that a "query"

is one of three "modalities of getting information" and defined a "query" as "some

external force"—*not* the microcontroller module—requesting information. Doc.

105-1 at 200:17-18.[4] To illustrate Dell's definition of a "query," Dell presented an

---

[4] As shown by the testimony of Dell's technical expert, Dell's Rule 30(b) designee, and Acceleron's technical expert, Dell's definition of "query" during claim construction is actually much different than what this word actually means in the computer industry. *See* Doc. 106-2 at 150:11-13 (Michalson testifying: "████████████████ ████████████████████████"); Doc. 263-28 at 52:11-54:5; Doc. 264-4 at ¶¶ 174-78.

animated slide, shown to the right, depicting a user terminal (the "external force")

transmitting a "query" ("What is the 
Processor Temp?") to a microcontroller

module, which then relays the request

to a CPU module. *See* Doc. 264-4, Re-

buttal Infringement Report, at ¶ 173

(excerpts of Dell's presentation).

Now, Dell seeks to re-define a "query" to cover the situation where ███████

███████████████████████████████████. Doc.

267-1 at 17. As explained by Acceleron's technical expert, what Dell calls ███████

████████████████████████████████████████

███████████████████████. Doc. 264-4, Rebuttal Infringe-

ment Report, at ¶¶ 177, 179, 181-82. Additionally, Dell's argument that "███████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████" Ex. B-7, █████████████

███████████████████, at DELL-ACC-00126141. Thus, Dell's argument is

contradicted by the evidence in this case.

**2.3.    The CMCs poll the CPU modules to** ██████████████ .

Dell's expert acknowledges that ████████████████████████

███████████████████████████████████████████████████████

██████ . Doc. 264-3 at ¶ 362. Dell argues, however, that "████████████

███████████████████████████████████████ . Doc. 267 at 18.

However, Dell's argument is contrary to the IPMI specification, which explains ██

███████████████████████████████████████████████████████

██████████████████████████████████████ " Doc. 263-34

at HPE08029. Dell's Rule 30(b)(6) designee also testified that t████████████

███████████████████████████████████ . Doc. 263-28 at 114:16-

24. Furthermore, the ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████ . Doc. 264-48 at DELL-ACC-SRC-00218, l. 411. Therefore, Dell's ar-

gument that the CMCs do not poll the CPU modules to █████████████████

████████████████████████ .

**2.4.    The accused microcontroller modules are configured to** ████████

████████████████████████████████████████ .

Dell argues that "neither the CMC nor the DRAC/MC *send* the accused ██

12

█████████████████████████████████████████████████████████

██████████████████████████████████." Doc. 267 at 19. However, Dell's

argument fails to apply the Court's claim construction of the phrase "wherein the

dedicated ethernet path . . . provides the microcontroller module with a connection

to remotely poll the CPU module . . .," which is "the microcontroller module being

*configured for* remote polling via a communication path." Doc. 182 at 30. Under the

Court's construction, the actual sending of ████████ is unnecessary, as long as

the accused microcontroller module is *configured* to send ████████. *See Finjan,*

*Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1205 (Fed. Cir. 2010) (explaining

that "software for performing the claimed functions existed in the products when

sold—in the same way that an automobile engine for propulsion exists in a car even

when the car is turned off").

Dell's documentation for the CMC's firmware states ████████████

███████████████" Doc. 263-30, IPMI Interface, at DELL-ACC-00007093.

Version 2.0 of the IPMI specification includes ██████████████████████.

Ex. B-8 at DELL-ACC-00034896. Additionally, Dell's documentation for the 1855

product states that █████████████████████████████████████

██████████████████████ Doc. 264-21, █████████████, at DELL-ACC-

00291826; *see* Doc. 263-34, IPMI v1.0, at HPE08048 (██████████████

██████████████████████████████). Therefore, evidence of record also

shows that the accused CMCs and DRAC/MCs are configured to ██████████

████████████████████.

Dell also argues that "████████████████████████████████████████

██████████████████████████████████████████" and there is

"█████████████████████████████████████████████████████████

██████████████████████████████████" Doc. 267 at 19. Dell for-

gets about its own document for the CMC firmware explicitly stating that ███████

█████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

██████████████████████. Doc. 263-30, IPMI Interface, at DELL-ACC-

00007093; Doc. 263-28 at 115:20-116:8. And, as noted above, documentation for

the 1855 explicitly states that ████████████████████████████████

███████. Doc. 264-21, █████████████████, at DELL-ACC-00291826. Therefore,

record evidence contradicts Dell's argument, and summary judgment should be de-

nied as to this issue.

**3.    ACCELERON IS NOT PRECLUDED FROM ASSERTING ITS DOCTRINE OF EQUIVALENTS CONTENTIONS FOR "HOT-SWAPPABLE CPU MODULES"**

In order to accuse Acceleron of attempting to recapture disavowed subject

matter with respect to the "CPU module(s)" element, Dell inaccurately characterizes Acceleron's equivalency contentions. Specifically, Dell portrays Acceleron's doctrine of equivalents allegations as "seek[ing] to use DOE to pursue Accused Products that have *server blades with hard disk drives* contrary to the Court's express construction." Doc. 267 at 13-14 (emphasis added and omitted).

In contrast to Dell's misleading characterization, Acceleron contends that a system board of a server blade (not the server blade itself) merely in communication with a separate, optional, and hot-swappable HDD that is a peripheral for the server blade is an equivalent to a "CPU module" (to the extent that such a system board is not literally a "CPU module"). *E.g.*, Doc. 263-6 at 21-22 (contentions for M1000e). Because Dell's argument fails to address the doctrine of equivalents contentions that Acceleron actually asserts, Dell's argument fails for this reason alone.

Dell's argument also fails because Acceleron is not attempting to recapture the particular feature that was found to have been disavowed. *See SciMed Life Sys. v. Advanced Cardiovascular Sys.,* 242 F.3d 1337, 1345 (Fed. Cir. 2001) ("A *particular structure* can be deemed outside the reach of the doctrine of equivalents because *that structure* is clearly excluded from the claims whether the exclusion is express or implied."). The Special Master found that the specification of the '021 Patent "indicates that the CPU module does not *include* a HDD," Doc. 119 at 18, and the

Court referred to the disavowal as "the absence of a hard disk drive *on* the CPU module." Doc. 182 at 20-21. But neither the Court nor the Special Master found disavowal of a CPU module simply *in communication with* a separate, optional, hot-swappable HDD that is merely a peripheral for a server blade. Therefore, Acceleron is not attempting to recapture scope found to have been disavowed, and Dell's argument fails.

**4.   DELL FAILS TO CARRY ITS INITIAL BURDEN OF ESTABLISHING A *PRIMA FACIE* CASE OF ENSNAREMENT**

It is well-established that the party asserting ensnarement bears the burden of demonstrating a *prima facie* case of ensnarement through evidence. *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001) ("the burden of producing *evidence* of prior art to challenge a hypothetical claim rests with an accused infringer"). In attempting to show ensnarement, Dell relies solely on previously undisclosed "ensnarement charts." *See* Doc. 260-68 through 260-73. The opinions in the ensnarement charts were not disclosed in Dell's expert reports or by any witness Dell has identified. *See* Doc. 264-3; Ex. B-9, Roberts Dec., at ¶¶ 3-10. Furthermore, the ensnarement charts rely on at least one prior art reference that was not even produced until the day the summary judgement filings were due. Ex. B-9 at ¶¶ 5-6. Accordingly, Dell's ensnarement charts are nothing more than inadmissi-

ble attorney argument that cannot satisfy Dell's burden of coming forward with *evidence* to demonstrate a *prima facie* case of ensnarement. *See Interface, Inc. v. J&J Indus.*, No. 4:13-cv-47-WSD, 2013 U.S. Dist. LEXIS 158609, at *8 (N.D. Ga. Nov. 5, 2013) ("The Claim Chart is not accompanied by, or incorporated into, any affidavits or other evidence to establish the Claim Chart's accuracy or truthfulness. *The Claim Chart is not evidence*, and the Court does not consider it.").

Even if the Court is willing to give evidentiary weight to the "ensnarement charts," they fail as a matter of law to establish a *prima facie* case of ensnarement. First, Dell's charts fail to articulate specific combinations of the references, but instead group a primary reference and various buckets of secondary references, making it impossible to ascertain the specific combination(s) Dell is asserting. *See* Doc. 260-68 through 260-73. Dell's bucket approach to its ensnarement charts is surprising in view of the Court previously finding that "Dell did not comply with the local patent rule at all in what they provided" when it used the same bucket approach in its invalidity contentions. Doc. 272 at 19:16-18, 19:16-22 ("I especially take umbrage with statements such as, you know, these [combinations] are just exemplary, and if we really want to we can come back and mix whatever permutations and combinations we can think of."), 24:12 ("I don't like the way Dell handled this[.]").

Dell also relies on various combinations of references to allege ensnarement

for each asserted equivalent. *See* Doc. 260-68 through 260-73. However, Dell completely fails to articulate a motivation to combine the various references. *See* Ex. B-9, ¶ 8; *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, No. 2:16-CV-00491-RWS-RSP, 2016 U.S. Dist. LEXIS 180551, at *17-18 (E.D. Tex. Nov. 19, 2016) ("An obvious analysis under the ensnarement doctrine is no different than an ordinary obvious analysis. *See Intendis GMBH v. Glenmark Pharm. Inc.*, *USA*, 822 F.3d 1355, 1363-64 (Fed. Cir. 2016). It is not sufficient to identify numerous references that disclose various [elements] without explaining through expert testimony or otherwise how a person of ordinary skill in the art would have arrived at the claimed invention.") adopted by 2017 U.S. Dist. LEXIS 16797 (E.D. Tex. Feb. 7, 2017). Therefore, Dell's ensnarement theories fail as a matter of law.

If the Court does not outright reject Dell's untimely and woefully deficient ensnarement charts, the Court should defer ruling and give Acceleron the opportunity to present expert testimony on the issue. Despite Dell being aware of Acceleron's doctrine of equivalents contentions since at least February 12, 2019, Dell first disclosed its 500-plus pages of ensnarement charts when it filed the present motion, after expert discovery had been closed. *See* Doc. 264-3; Ex. B-9, ¶ 7. Dell also failed to produce or identify at least one of the references upon which relies until *the day it filed the present motion*. Ex. B-9, ¶¶ 5-6. Thus, to the extent that the Court is

willing to entertain Dell's ensnarement charts, the Court should defer ruling until Acceleron has been afforded the opportunity to provide expert testimony on them. Additionally, because Dell's ensnarement defense would be relevant only if the jury finds infringement under the doctrine of equivalents while simultaneously finding no literal infringement, the Court can preserve judicial and party resources by deferring the ruling and Acceleron's additional limited expert discovery until after trial. *See Jang v. Bos. Sci. Corp.*, 872 F.3d 1275, 1281 (Fed. Cir. 2017) (discussing a "post-trial ensnarement hearing")

### 5. EVIDENCE SHOWS THAT THE ACCUSED PRODUCTS INFRINGE CLAIMS 14-17, 22, AND 24

#### 5.1. Acceleron Has Presented Evidence that the Accused Products Infringe Claims 14-17

Dell's arguments with respect to claims 14-17 are based on a misinterpretation of these claims. Dell argues that "[c]laims 14-17 require a network attached storage ('NAS') for booting" and that Acceleron "███████████████████████████ ██████████████████████████████████████████" Doc. 267 at 7-8 (emphasis added). However, claim 14 recites "hardware BIOS *for . . . instructing* a network attached storage (NAS) to locate an operating system (OS) from which to boot," and claim 15 recites "a CPU module . . . *configured to* boot remotely from an OS located in an NAS[.]" Doc. 262-12 at cl. 14-15 (emphasis added); *see id.* at

cl. 16-17 (depending from claim 15). Because the claim language is drawn to capability (and is not a method claim), claim 14 merely requires the hardware BIOS to have the *capability* to instruct a NAS to locate an OS, and claim 15 merely requires the CPU module to have the *capability* boot remotely from an OS in a NAS. *See Finjan*, 626 F.3d at 1204-05 (Fed. Cir. 2010) (finding that "a logical engine *for preventing* execution," "a communications engine *for obtaining* a Downloadable," and "a linking engine . . . *for forming* a sandbox package" cover capability and "does not require that the program code be 'active,' only that it be written 'for causing' [a component] to perform certain steps" (emphasis in original)). Accordingly, Acceleron is not required to show a NAS being used as a PXE boot server. Because Dell does not address the actual requirements of the claims, its arguments fail for this reason alone.

Dell further argues that its document stating that  Doc. 267 at 8. However, Dell fails to appreciate that this document states that Doc. 264-21, , at DELL-ACC-00291827. Evidence of record shows that . *See, e.g.*, Doc. 264-2 at ¶¶ 239, 449, 601, 814, 985.

Because Dell's own documentation shows that ███████████████████

███████████████████████████████████ there is ample evidence

to support Acceleron's assertion that all Accused Products infringe claims 14-17.

Dell also argues ███████████████████████████████████

████████████████████████." Doc. 267 at 8. However, Acceleron's

technical expert, Mr. Putnam, ████████████████. Specifically, Mr. Putnam

opines that ███████████████████████████████████████

███████████████████████. Doc. 264-4 at ¶ 143. Because

there is at least a factual dispute as to whether the Accused Products require modifi-

cation in order to satisfy these disputed elements, summary judgment as to this issue

is not appropriate.

### 5.2.   Dell's Documentation Shows that ███████████████

Dell argues that "███████████████████████████████

████████████████████████████." Doc. 267 at 10.

Contrary to Dell's assertion, Dell's own documentation states that ████████████

███████████████████████████████ Doc. 263-30, IPMI

Interface for IMC, at DELL-ACC-00007093; *see* Ex. B-8 at DELL-ACC-00034892

(████████████████████████). Dell's Rule 30(b)(6) designee tes-

tified that █████████████████████████████████████

21

██████████ Doc. 263-28 at 115:20-116:8. Moreover, Dell's documentation states

that ████████████████████████████████████████████████████

██. Doc. 264-21, ████████████████, at DELL-ACC-00291826. Therefore, evidence of record shows that the CMCs and DRAC/MCs of the Accused Products are

████████████████████████████████████.

Dell also argues that "Acceleron lacks evidence that a CMC module of the

Accused Products is configured to issue ████████████████████

████████████████████████████████" and that Acceleron cannot rely on ██████████████████████████

████████████████████████████████." Doc. 267

at 10. However, as noted above, Dell's documentation states that ████████████

████████████████████. Doc. 263-30, IPMI Interface, at DELL-ACC-00007093. Moreover, the IMPI specification states that ████████████████

████████████████████████████████████████████████

████████████████. Ex. B-8, IPMI v2.0, at DELL-ACC-00034547 ("M" indicating mandatory); *id.* at DELL-ACC-00034892 ("M" indicating mandatory).

Therefore, record evidence contradicts Dell's assertion, and summary judgment

should be denied as to this issue.

### 5.3.    Evidence Shows that the Accused Products Infringe Claim 24

Dell argues that "Acceleron cites to no evidence that the IOMs in the Accused

Products ███████████████████████████████████████████████████████

████████" and that "Acceleron also provides no evidence that all switch I/O modules

████████████████████████████████████████████████████████████████

████████████████████████████ as required by Claim 24." Doc. 267 at 11.

However, Dell overlooks the extensive discussion that Acceleron's technical expert,

Mr. Putnam, provides in his infringement reports ██████████████████████████

████████████████████████████████████████████████████████████████

████████████████████. *See*, *e.g.*, Doc. 264-2 at ¶¶ 140-42, 349; Doc. 264-4 at ¶¶

223-227. For example, Mr. Putnam explains that ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████ Doc. 264-2 at ¶ 140.  Mr. Putnam further explains that

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████ Doc. 264-4 at ¶ 223.

Furthermore, Dell fails to mention the testimony of its engineer, Joel "Shawn"

Dube, who also explained that 

Doc. 263-14 at 73:8-22; *see also id.* at 152:5-22 (

). Dell also

forgets that

Doc. 262-48 at ACC-0076521. Therefore, not only does record evidence

establish that

. Thus, Dell's argument fails.

### 5.4. Acceleron's Has Presented Evidence to Support Infringement of Four of Its Doctrine of Equivalents Theories

Dell claims that it is entitled to summary judgment on Acceleron's doctrine

of equivalent allegations regarding the claimed "ethernet switch module[s]" and

"caddies" because Acceleron's expert, Mr. Putnam, allegedly "merely parrots the

legal analysis for the doctrine of equivalents . . . ." Doc. 267 at 12-13. Dell is incor-

rect.

Although Dell asserts that Acceleron has no evidence to support four of its

doctrine of equivalents theories, Dell addresses only a single paragraph of Mr. Putnam's infringement report. *See id.* at 13. With respect to the "ethernet switch module" element, Dell fails to address the preceding paragraphs of Mr. Putnam's report, where he provides an extensive discussion regarding the Ethernet (capital "E"), InfiniBand, and Fibre Channel protocols and how there is no meaningful difference between them from the perspective of the '021 Patent; how the switch and passthrough versions of Dell's I/O modules function; and how the passthrough I/O modules have no significant differences in regard to what is required by the claims. *See* Doc. 264-2 at ¶¶ 131-159. With respect to the "caddies" element, Dell does not address *any* portion of Mr. Putnam's reports and completely ignores the lengthy discussion he provides regarding the structure and function of Dell's server blade enclosures, the fans within the Accused Products, and how there is no meaningful difference between the Accused Products and what is required by the '021 Patent. *Id.* at ¶¶ 201-230. Dell's conclusory argument ignores over 50 paragraphs of opinions that Mr. Putnam provides on these issues. *See id.* at ¶¶ 131-59, 201-30. As such, Dell should be denied summary judgment as to this issue.

Respectfully submitted this 28th day of August, 2019.

/s/ N. Andrew Crain
N. Andrew Crain
Georgia Bar No. 193081
andrew.crain@thomashorstemeyer.com
Dan R. Gresham
Georgia Bar No. 310280
dan.gresham@thomashorstemeyer.com
Eric Maurer
Georgia Bar No. 478199
eric.maurer@thomashorstemeyer.com
Robert D. Gravois
Georgia Bar No. 600183
robert.gravois@thomashorstemeyer.com
**THOMAS | HORSTEMEYER, LLP**
3200 Windy Hill Rd SE
Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Plaintiff Acceleron, LLC*

## **LOCAL RULE 7.1D CERTIFICATION**

The undersigned hereby certifies that the foregoing was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

/s/ N. Andrew Crain
N. Andrew Crain
Georgia Bar No. 193081
*Attorney for Plaintiff Acceleron, LLC*

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ACCELERON, LLC,<br><br>          Plaintiff,<br><br>     v.<br><br>DELL, INC.,<br><br>     Defendant. | Civil Action File No.<br><br>1:12-CV-04123-TCB |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 28, 2019, the foregoing was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

> */s/ N. Andrew Crain*
> _____
> N. Andrew Crain
> Georgia Bar No. 193081
> *Attorney for Plaintiff Acceleron, LLC*

28