# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ACCELERON, LLC, | Civil Action File No. |
| Plaintiff, | 1:12-cv-04123-TCB |
| v. | |
| DELL INC., | **JURY TRIAL DEMANDED** |
| Defendant. | |

### DELL INC.'S OPPOSITION TO ACCELERON'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF FINDING OF NO INVALIDITY ON DELL'S ANTICIPATION AND OBVIOUSNESS <u>INVALIDITY GROUNDS INVOLVING KETRIS AND RLX</u>

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................1

II.   FACTUAL BACKGROUND..................................................2

      A.   David Bottom and Bryn Forbes Testified That Ziatech's Ketris
           Prior Art System Was Publicly Available as of the N+I Show on
           May 9–11, 2000 ............................................................2

      B.   Mr. Forbes' Testimony and Contemporaneous Documents
           Confirm That Ketris Was Publicly Demonstrated ................5

      C.   RLX Was Publicly Available Before November 16, 2000..................6

III.  ACCELERON FAILS TO MEET ITS INITIAL BURDEN TO SHOW NO
      GENUINE DISPUTES OF MATERIAL FACT.............................7

IV.   MATERIAL ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT...9

      A.   The Rule of Reason Analysis Is a Highly Fact-Intensive Inquiry
           That Falls Squarely Within the Province of the Jury ..........................10

      B.   Acceleron's Element-by-Element Attack on the Sufficiency of
           the Evidence Is Incompatible with the Rule of Reason .....................12

      C.   Mr. Bottom's Testimony Is Corroborated by Mr. Forbes'
           Testimony in Addition to Ample Physical and Documentary
           Evidence ............................................................16

           1.   Mr. Forbes Sufficiently Corroborates Mr. Bottom's
                Testimony..........................................................17

           2.   Mr. Bottom's and Mr. Forbes' Testimony Corroborates
                That the Physical Ketris System in Evidence Accurately
                Reflects the Ketris System Shown at N+I ................19

      D.   Material Issues Regarding Witnesses' Bias, Credibility, and
           Level of Interest in the Outcome of the Case Preclude Summary
           Judgment ............................................................20

      E.   Material Issues Regarding the Existence of NDAs for Ketris

and RLX Preclude Summary Judgment..............................................23

V.    CONCLUSION.............................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Adenta GmbH v. OrthoArm, Inc.*,
  501 F. 3d 1364 (Fed. Cir. 2007) .................................................................10, 12

*Adickes v. S.H. Kress & Co.*,
  398 U.S. 144 (1970).......................................................................................25

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986).........................................................................................7

*Beckson Marine, Inc. v. NFM, Inc.*,
  292 F.3d 718 (Fed. Cir. 2002) .................................................................15, 16

*Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc.*,
  31 F.3d 1154 (Fed. Cir. 1994) ........................................................................23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).......................................................................................7, 8

*Clark v. Coats & Clark, Inc.*,
  929 F.2d 604 (11th Cir. 1991) ......................................................7, 8, 9, 25, 26

*Cooper v. Goldfarb*,
  154 F.3d 1321 (Fed. Cir. 1998) ......................................................................13

*Ecolab, Inc. v. Gardner Mfg. Co.*,
  No. CIV.98-2294(MJD/JGL), 2002 WL 31641260 (D. Minn. Nov.
  20, 2002) ........................................................................................................21

*Eisenberg v. Alimed*,
  2000 WL 1119743 (Fed. Cir. Aug. 8, 2000) ...................................................21

*Finnigan Corp. v. Int'l Trade Comm'n*,
  180 F.3d 1354 (Fed. Cir. 1999) .....................................................18, 20, 21, 22

*Good Tech. Corp. v. Mobileiron, Inc.*,
  No. 5:12-CV-05826-PSG, 2015 WL 4197554 (N.D. Cal. July 10,
  2015) ....................................................................................................... 19

*Lazare Kaplan Int'l v. Photoscribe Techs., Inc.*,
  628 F. 3d 1359 (2010).................................................................... 10, 14

*Lecat's Ventriloscope v. MT Tool & Mfg.*,
  351 F. Supp. 3d 1100 (N.D. Ill. 2018).................................................... 8

*Loral Fairchild Corp. v. Matsushita Elec.*,
  266 F.3d 1358 (Fed. Cir. 2001) .................................................... 18, 19

*Medtronic, Inc. v. Bos. Sci. Corp.*,
  No. CIV 99-1035, 2002 WL 34447587 (D. Minn. Aug. 8, 2002)...................... 22

*Meyer Intellectual Props. Ltd. v. Bodum, Inc.*,
  690 F.3d 1354 (Fed. Cir. 2012) .......................................................... 20

*Nintendo of Am. Inc. v. iLife Techs., Inc.*,
  717 F. App'x 996 (Fed. Cir. 2017) ...................................................... 23

*Nobel Biocare Servs. AG v. Instradent USA, Inc.*,
  903 F.3d 1365 (Fed. Cir. 2018) .................................................... 17, 18

*Ohio Willow Wood Co. v. Alps South*,
  735 F.3d 1333 (Fed. Cir. 2013) .......................................................... 13

*Price v. Symsek*,
  988 F. 2d 1187 (Fed. Cir. 1993) .......................................................... 13

*Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*,
  264 F.3d 1344 (Fed. Cir. 2001) .............................................. 18, 21, 23

*Sys. Mgmt. Arts Inc. v. Avesta Techs., Inc.*,
  160 F. Supp. 2d 580 (S.D.N.Y. 2001) .................................................. 23

*TransWeb LLC v. 3M Innovative Prop. Co.*,
  812 F.3d 1295 (2016)................................................... 10, 13, 14, 15

*Woodland Trust v. Flowertree Nursery, Inc.*,
    148 F.3d 1368 (Fed. Cir. 1998) .......................................................10, 11, 12, 18

**STATUTES**

35 U.S.C. § 102 ...............................................................................................15

35 U.S.C. § 102(a) ..........................................................................................16

35 U.S.C. § 102(g) ..........................................................................................16

35 U.S.C. § 103 ...............................................................................................15

**OTHER AUTHORITIES**

FED. R. CIV. P. 56 ..............................................................................................7

## I.    INTRODUCTION

The public availability of the asserted Ketris[1] and RLX prior art systems is supported by substantial evidence, including (1) the testimony of Mr. David Bottom, who testified that Ziatech Corp.'s Ketris system was publicly known at least as of the May 9–11, 2000, Networld Interop show ("N+I Show"); (2) the corroborating testimony of Mr. Bryn Forbes, who marketed the Ketris system on multiple sales trips before the priority date of the '021 Patent; (3) contemporaneous receipts and flight records corroborating those sales trips; (4) testimonial evidence related to the RLX system; (5) physical evidence of the Ketris 9000 and RLX systems; and (6) scores of contemporaneous technical manuals and specifications. To prevail on its Motion for Partial Summary Judgment of No Invalidity (Dkt. 258), Acceleron must prove there are no genuine issues of material fact as to whether that evidence corroborates the public availability of the prior art systems before the priority date of the '021 Patent. Acceleron has not even tried to address, much less meet, its burden, and its Motion must be denied for this reason alone.

Acceleron's Motion must also be denied because numerous genuine disputes of material fact preclude summary judgment.

- First, the "rule of reason" analysis to determine whether evidence is sufficiently corroborative is a highly fact-intensive inquiry that falls

---

[1] Dell is asserting the Ketris prior art as pre-AIA, 35 U.S.C. §102(a) prior art, and is not asserting that Ketris is pre-AIA, 35 U.S.C. §102(b) prior art. *See* Mot. 15; *see* Dkt. 260-86 at ¶ 106.

squarely within the province of the jury. *See infra* Section IV.A.

- Second, the parties dispute whether circumstantial evidence corroborates that the prior art meets every claim limitation. *See infra* Section IV.B.

- Third, the parties dispute whether the record evidence sufficiently corroborates the public availability of the prior art before the priority date of the '021 Patent. *See infra* Section IV.C.

- Fourth, the parties dispute the witnesses' credibility, bias, and the level of interest they have in the outcome of the case. *See infra* Section IV.D.

- Fifth, the parties dispute the existence of NDAs related to Ketris and RLX. *See infra* Section IV.E.

Because reasonable inferences must be drawn in Dell's favor on all of these disputes, summary judgment must be denied.[2]

## II.   FACTUAL BACKGROUND

### A. David Bottom and Bryn Forbes Testified That Ziatech's Ketris Prior Art System Was Publicly Available as of the N+I Show on May 9–11, 2000

The Ketris system is invalidating art and the testimony of David Bottom and Bryn Forbes (plus ample other evidence) confirms the public availability of Ketris and its functionality. ██████████████████████████████

---

[2] Earlier this year, the Court denied Acceleron's attempt to "cut[ Dell] off at the knees" with respect to its invalidity case. *See* Dkt. 222-17 at 24:13–14; Dkt. 238 at 1–2. Acceleron has now filed at least five motions (including the present motion) to block Dell from having a fair opportunity to present its invalidity case to a jury. *See* Dkts. 108, 155, 251, 254, 258.



SAF ¶ 1.[3] ██████████████████████████████████████

██████████████████████████████ SAF ¶ 2. █████████████████

██████████████████████████████ SAF ¶ 3. ████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████ SAF

¶ 4. ████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████ SAF ¶¶ 5–6. █████████████

██████████████████████████████████████████████████████

███████████████ SAF ¶ 7. ██████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████ SAF ¶ 8. ██████████████████████

███████████████████████████████████████████████████████

███ SAF ¶ 9. ███████████████████████████████████████████

██████████████████████████████████████████████████████

████████ SAF ¶¶ 10–12. █████████████████████████████████

██████████████████████████████ SAF ¶ 11. ███████████████

████████████████████████████████████████ SAF ¶ 12. █████

██████████████████████████████████████████ SAF ¶¶ 13–

---

[3] All citations to "SAF" refer to Dell's contemporaneously filed Statement of Additional Undisputed Material Facts.

14. 

SAF ¶ 15.

SAF ¶ 16.

At the N+I Show, Mr. Bottom publicly displayed and demonstrated the hot-swappability of the different components, including the hot-swappability of the Ethernet switch blades. SAF ¶ 17. Mr. Bottom also displayed software at N+I, including the Ketris Active Manager software used to check the status (via polling) of the server blades, power supplies, and fans. SAF ¶ 18.

(SAF ¶ 19),[4] Mr. Forbes' testimony corroborates that the Ketris software shown at N+I polled the Ethernet switch blades (SAF ¶¶ 20–21). Mr. Forbes, a sales engineer for Ziatech at the time, testified that

SAF ¶¶ 20–21.

---

[4] Acceleron disingenuously cites to testimony                              *See* Mot. 9, 22. The
document describes                                                            Mr. Bottom testified

SAF ¶ 55.

4

The binder of documents prepared and shown at N+I further corroborates the functionality of the Ketris as of May 9–11, 2000. The binder included the "Ketris Demo Network," and listed "Networld+Interop May 9, 10, 11th, 2000" on the cover. SAF ¶¶ 22–23. The Ketris documents describe the hot-swappable server blades, power supplies, and Ethernet switch blades. SAF ¶ 24. The documents also describe the Ketris Active Manager software for polling. SAF ¶ 25.

Dell has also produced physical specimens of the Ketris 9000 to corroborate the functionality of Ketris at N+I. SAF ¶ 26. Though Mr. Forbes did not attend N+I, he prepared the Ketris systems demonstrated at N+I. SAF ¶¶ 27–28. Additionally, Mr. Forbes produced a piece of hard-case luggage used to send Ketris equipment to N+I, as evidenced by the shipping label. SAF ¶ 28. Both Mr. Bottom and Mr. Forbes testified that ████████████████████████████████████████████████ ██████████████████████████████████ SAF ¶¶ 29–30.

## B. Mr. Forbes' Testimony and Contemporaneous Documents Confirm That Ketris Was Publicly Demonstrated

After N+I, a team of Field Application Engineers, including Mr. Forbes, began conducting "show and tell" sales demonstrations of the Ketris system across the U.S. to convince companies to buy from Ziatech. SAF ¶ 31. Between July 5 and August 25, 2000, Mr. Forbes visited customers in at least nine cities across the country. SAF ¶ 32. These trips are corroborated by contemporaneous photos and documents, including flight and hotel statements. SAF ¶ 33. At his first deposition, Mr. Forbes demonstrated a typical "show and tell" using the Ketris systems

produced by Dell in this case. SAF ¶ 30. He testified that █████████████

███████████████████████████████████████████████

███████████   *Id*. He also testified that ███████████████████████

█████████████████████████████████   SAF ¶ 34. Mr.

Forbes further testified that █████████████████████████████

███████████████████████████████████████████████

████████████   SAF ¶ 35.

### C. RLX Was Publicly Available Before November 16, 2000

RLX began designing the Orbiter HotDock in January 2000, formed RocketLogix, Inc. in March 2000, and developed the first working prototypes of the Orbiter HotDock in July 2000, which eventually became the RLX System. SAF ¶ 43. Between August to October 2000, RLX demonstrated the Orbiter HotDock to various investors to secure funding, as well as to Compaq. SAF ¶ 44. The Orbiter HotDock chassis holds a plurality of hot-swappable web server processing cards, hot-swappable power supplies, hot-swappable network interface cards, and a backplane that shares power and Ethernet resources. SAF ¶ 44. Dell has produced a physical Orbiter Hotdock to corroborate that the system was reduced to practice by at least October 2000. SAF ¶ 46. Stephen Rousset, a former RLX employee, testified that ███████████████████████████████████████████

███████████████████████████████████████. SAF ¶ 48.

## III.   ACCELERON FAILS TO MEET ITS INITIAL BURDEN TO SHOW NO GENUINE DISPUTES OF MATERIAL FACT

Acceleron's Motion should be denied because it fails to prove that no genuine disputes of material fact can go to the jury. Summary judgment is only appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56. In determining whether a genuine issue of material fact exists, the trial court must assume that the evidence presented by the non-movant is credible and draw all reasonable inferences in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Importantly, Acceleron bears the burden to prove that no genuine issues of material fact should be decided by a jury. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Only then does the burden shift to Dell to show that there is a material issue of fact that precludes summary judgment. *Id.* Acceleron, however, incorrectly suggests that Dell has the initial burden to prove its case by clear and convincing evidence, selectively quoting *Clark v. Coats & Clark, Inc.* for the proposition that, where a non-movant has the burden at trial, "the movant may meet its burden by 'point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden.'" Mot. 12 (quoting *Clark*, 929 F.3d at 608). Acceleron's quote neglects to provide the full text from *Clark*, which reveals that this standard applies only under limited circumstances, such as where the non-movant presents no evidence for an essential element of a claim or defense. *See Clark*, 929 F.3d at 607–8. In distinguishing *Celotex Corp. v.*

*Catrett*, 477 U.S. 317 (1986), the Eleventh Circuit explained that:

> *Celotex* simply holds that **under certain circumstances** the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that **under such circumstances** it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. ***Even after Celotex, it is never enough simply to state that the non-moving party cannot meet its burden at trial.***

Clark, 929 F.3d at 607–08. (emphases added). The Eleventh Circuit vacated summary judgment because the district court did not consider "whether [defendant] met its burden as the moving party" to show no factual disputes, choosing instead to focus "only [on] what burden [non-movant] had and why they did not meet it." *Id.*

Relying on *Eli Lilly & Co. v. Barr Laboratories, Inc.*, Acceleron argues that a patentee seeking to hold a patent not invalid at summary judgment "must show that the nonmoving party, who bears the burden of proof at trial, failed to produce clear and convincing evidence on an essential element of a defense upon which a reasonable jury could invalidate the patent." 251 F.3d 955, 962 (Fed. Cir. 2001). *Eli Lilly* nonetheless holds that the movant has the initial burden to show "an absence of evidence to support the non-moving party's case."[5] *Id.* at 962, 971.

---

[5] *See also Lecat's Ventriloscope v. MT Tool & Mfg.*, 351 F. Supp. 3d 1100, 1108–09 (N.D. Ill. 2018) ("A patentee moving for summary judgment on an accused infringer's invalidity defense cannot … merely stand on the presumption of validity and demand that the accused infringer put forth all its evidence of invalidity; the patentee must go further and "identify[ ] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact.") (quoting *Celotex*, 477 U.S. at 323).

Acceleron's Motion focuses entirely on the perceived insufficiency of Dell's evidence, merely reiterating its flawed belief that Dell cannot meet its burden at trial.[6] But "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark*, 929 F.2d at 608. Rather, summary judgment must focus on what ***the moving party*** has shown. *Id.* at 609. To that end, Acceleron pays only lip service to its initial burden (Mot. 12), and is otherwise silent as to any showing that no genuine factual disputes exist. Based on this reason alone, Acceleron's Motion must be denied. *See Clark*, 929 F.2d at 610.

## IV.   MATERIAL ISSUES OF FACT PRECLUDE SUMMARY JUDGMENT

Acceleron's Motion should also be denied because there are genuine disputes of material fact that must foreclose summary judgment, including (1) issues related to the requisite ***rule of reason*** analysis for corroborating evidence; (2) whether circumstantial evidence corroborates a finding that the prior art ***meets every claim limitation***; (3) whether the record evidence ***sufficiently corroborates*** the public availability of the prior art under the rule of reason; (4) the ***alleged bias, credibility, and level of interest*** that the non-party witnesses have in the outcome of the case; and (5) ***whether any NDAs exist*** related to Ketrix and RLX. Because reasonable inferences can be drawn in Dell's favor on all of these disputes, summary judgment must be denied.

---

[6] For example, Acceleron alleges "Dell has not shown by clear and convincing evidence," *inter alia*, that Ketris had a hot swappable ethernet switch module (Mot. 8), Ketris had polling capabilities (*id.*), Ketris was not subject to an NDA (*id.* at 10), Mr. Bottom's testimony supports invalidity (*id.* at 20), etc.

### A. The Rule of Reason Analysis Is a Highly Fact-Intensive Inquiry That Falls Squarely Within the Province of the Jury

The parties' dispute regarding the sufficiency of Dell's corroborating evidence of public availability precludes summary judgment. While Dell has offered an abundance of testimonial, documentary, and physical evidence to corroborate the public availability of the asserted prior art systems, Acceleron alleges that Dell relies entirely upon "uncorroborated oral testimony." *See, e.g.*, Mot. 1.

"Corroboration of oral evidence of prior invention is the general rule in patent disputes." *Woodland Trust v. Flowertree Nursery, Inc.*, 148 F.3d 1368, 1371 (Fed. Cir. 1998). In assessing corroboration, the Federal Circuit uses a "rule of reason" analysis that involves an assessment of the totality of the circumstances after evaluating eight heavily fact-intensive inquiries. *Id.* Acceleron's Motion mentions the "eight criteria" in a parenthetical (Mot. 18), but fails to enumerate the exact criteria involved in the rule of reason analysis, which include, among other things, the relationship between the corroborating witness and the alleged prior user, the interest of the corroborating witness in the subject matter in suit, contradiction/impeachment of the witness' testimony, the details of the corroborating testimony, and the witness' familiarity with the subject matter of the patented invention and the prior use. *Woodland*, 148 F.3d at 1371.

The Federal Circuit is clear that the assessment of corroborating evidence under the rule of reason test "is a jury question." *Adenta GmbH v. OrthoArm, Inc.*, 501 F. 3d 1364, 1372 (Fed. Cir. 2007); *TransWeb LLC v. 3M Innovative Prop. Co.*,

812 F.3d 1295, 1299 (2016) (allowing jury to assess evidence of public use); *Lazare Kaplan Int'l v. Photoscribe Techs., Inc.*, 628 F. 3d 1359, 1363 (2010) (affirming-in-part appeal of JMOL regarding public use). Acceleron fails to explain why an evaluation of corroborating evidence under the rule of reason is not a jury question. The cases cited in Acceleron's Motion do not hold otherwise. Acceleron cites several cases to suggest that the issue of corroboration can be decided as a matter of law, but in those cases the corroborating evidence was found to be either non-existent or deficient as a matter of law.

In *Martek Biosciences Corp. v. Nutrinova, Inc.*, the Federal Circuit held that a district court did not abuse its discretion in granting a motion to exclude an abandoned patent application as corroborating evidence because the application failed to show a reduction to practice, and was therefore deficient as a matter of law. 579 F. 3d 1363, 1375–76 (Fed. Cir. 2009) (*see* Mot. 13). Unlike in *Martek*, Mr. Bottom's and Mr. Forbes' testimony, as well as the contemporaneous documentary evidence, corroborates a reduction to practice for a fully operational Ketris system before the priority date of the '021 Patent. SAF at ¶¶ 29–30.

In *Procter & Gamble, Co. v. Teva Pharmaceuticals USA*, P&G sought to exclude a prior art patent by submitting inventor testimony that P&G had previously reduced the compound-at-issue to practice. 566 F.3d 991, 991–99 (Fed. Cir. 2009) (*see* Mot.13). To corroborate the inventor's testimony, the only evidence P&G submitted was a portion of the inventor's notebook, but "this entry was unwitnessed"

and "not corroborated by any other evidence." *Id.* at 991. The Federal Circuit held that the inventor's notebook was thus deficient for purposes of corroborating the same inventor's oral testimony. *Id.*

In *Woodland*, the Federal Circuit recognized that the sufficiency of corroboration is an issue of fact to be tried by a fact-finder. *Woodland*, 148 F.3d at 1371 (acknowledging district court's role as the fact finder and noting that its credibility assessments would normally be granted "great respect"). The Court nonetheless reversed a bench trial judgment because, "despite the asserted many years of [prior] commercial and public use, we take note of the absence of any physical record to support the oral evidence." *Id.* at 1373. That is not the case here.

Whether the mountain of physical, documentary, testimonial, and circumstantial (*e.g.*, photos, airline and hotel receipts) evidence (SAF ¶ 36) sufficiently corroborates the testimony of Mr. Bottom, is a question that requires at least an assessment of credibility, a determination of the level of interest of the witnesses in the subject matter, and an assessment of the extent of the details of the corroborating testimony. *See infra* Section IV.D. These determinations made under the rule of reason are squarely within the province of a jury and inappropriate for summary judgment. *Adenta*, 501 F. 3d at 1372.

### B. Acceleron's Element-by-Element Attack on the Sufficiency of the Evidence Is Incompatible with the Rule of Reason

Dell has provided substantial evidence that the Ketris system shown at N+I was a complete, operational system with a hot-swappable Ethernet switch.

Acceleron is wrong that Dell must provide corroborating evidence for the hot-swappable Ethernet switch and polling limitations. At a minimum, there are material issues of fact regarding the sufficiency of Dell's evidence for corroborating a finding that the prior art meets every claim limitation, precluding summary judgment.

Acceleron's argument regarding independent corroboration of every claim limitation has been specifically and repeatedly rejected as improper by the Federal Circuit. *TransWeb*, 812 F.3d at 1302 (noting that the Federal Circuit has "repeatedly rejected an element-wise attack on [the] corroboration of oral testimony."). Rather, the rule of reason requires an evaluation of "all pertinent evidence" so that a "sound determination of the credibility of [the witness] may be reached." *Price v. Symsek*, 988 F. 2d 1187, 1195 (Fed. Cir. 1993). The rule of reason "does not require that every detail of the testimony be independently and conclusively supported" by the corroborating evidence. *Ohio Willow Wood Co. v. Alps South*, 735 F.3d 1333, 1348 (Fed. Cir. 2013). Such a requirement would indeed be "the antithesis of the rule of reason." *Cooper v. Goldfarb*, 154 F.3d 1321, 1331 (Fed. Cir. 1998). Yet, Acceleron cites no authority to explain why every claim limitation must be independently corroborated under the rule of reason.

In *TransWeb*, the question was whether sufficient corroborating evidence supported a finding of a public prior use by TransWeb. 812 F.3d 1295, 1302–03 (Fed. Cir. 2016). TransWeb's founder, Mr. Ogale, testified that he distributed samples of a "plasma-fluorinated" filtration material at an industry expo before the

key priority date. *Id.* at 1300. 3M argued that, as a legal matter, TransWeb must independently corroborate "all material facts" of the purported invalidating public use, and, as a factual matter, TransWeb failed to provide corroborating evidence for one claim limitation: whether the material distributed at the expo was "plasma-fluorinated." *Id.* at 1302–03. The Federal Circuit held that 3M's legal conclusion was one that the Court had "repeatedly rejected." *Id.* at 1302. "[O]ur rule of reason analysis requires that independent evidence, taken as a whole, makes credible Mr. Ogale's testimony that he distributed the plasma-fluorinated material at the expo." *Id.*

The Federal Circuit also found that 3M's factual argument that TransWeb provided no corroborating evidence was incorrect. In particular, third-party correspondence demonstrated that the plasma-fluorinated material was available at least three months before the expo and that samples were sent shortly after the expo. *Id.* at 1302–03. The Federal Circuit was not concerned that this correspondence did not demonstrate that the samples contained the specific "plasma-fluorinated" material at issue; it was sufficient "that Mr. Ogale was sending out other samples of filter material that may have been plasma-fluorinated." *Id.* at 1303. This evidence sufficiently corroborated Mr. Ogale's claim that he publicly distributed the plasma-fluorinated material at the expo. *Id.*; *see also Lazare Kaplan Int'l*, 628 F. 3d at 1374 (refusing to "impose[ ] an impossible standard of 'independence' on corroborative evidence by requiring that every point . . . be corroborated by evidence having a source totally independent of the [witness]," and finding that a contemporaneous

14

contract and technical manual corroborated the inventors' testimony).

As in *TransWeb*, Acceleron's flawed argument can be summed up as follows: as a legal matter, Dell must independently evidence all material facts of the purported invalidating public use; and, as a factual matter, Dell provides *no* corroborating evidence as to two claim elements: a hot-swappable Ethernet switch and polling capabilities. But there is no requirement to corroborate on an element-by-element basis that the Ketris system shown at N+I meets every limitation of the asserted claims. Like the third-party correspondence deemed sufficiently corroborative in *TransWeb*, the contemporaneous technical documents, photos, receipts, and flight records here provide more than ample circumstantial evidence that a Ketris system with a hot-swappable Ethernet switch module and polling capabilities existed at the time of N+I. SAF ¶¶ 29–30, 36.

Furthermore, even if an element-by-element analysis must be performed for the corroborating evidence—which the Federal Circuit has repeatedly held that it does not—the inquiry would only be relevant to anticipation under 35 U.S.C. § 102. A prior art reference does not have to anticipate or infringe a patent claim—by evidencing every claim limitation—to be considered prior art. *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d 718, 727 (Fed. Cir. 2002) (holding that district court erred by excluding an item as prior art on grounds that product did not infringe patent). While anticipation under 35 U.S.C. § 102 requires that a single prior art reference disclose every limitation of a claim, there is no such requirement for obviousness under 35

U.S.C. § 103 where prior art can be combined with other prior art to disclose every element. Here, Dell not only relies on Ketris as §102 prior art, but also as §103 prior art, combining it with the Hipp reference for invalidity purposes.[7] SAF ¶¶ 37–41. Acceleron, however, contends without citation to any authority that if Ketris does not evidence every claim limitation to anticipate the asserted claims, it cannot be prior art. Dkt. 258-21. Acceleron is wrong and fails to address Ketris as a § 103 reference. Ketris is still "relevant in the obviousness assessment." *Beckson*, 292 F.3d at 727. Acceleron's attempt to eliminate Ketris as anticipatory and obviousness prior art based on an element-by-element attack must be denied.

### C. Mr. Bottom's Testimony Is Corroborated by Mr. Forbes' Testimony in Addition to Ample Physical and Documentary Evidence

There is also a genuine dispute of material fact as to ***what*** evidence constitutes corroborating evidence. While Acceleron alleges that Dell relies only upon "uncorroborated" oral testimony (Mot. 1), the testimony by Mr. Bottom—a non-party—is corroborated by consistent oral testimony from other non-party witnesses, as well as physical and documentary evidence. In fact, Acceleron's own Motion to Strike acknowledges no less than 22 "Corroborating References" to establish the functionality of Ketris system and no less than 23 "Corroborating References" to establish the functionality of RLX. *See* Dkt. 254 at 17–21.

To show that the Ketris system is prior art, Dell relies on the public display

---

[7] The PTAB determined Hipp invalidated Claim 1, which includes the hot-swappable CPU, ethernet switch, and power module claim limitations, as well as the backplane limitations of asserted claims 20 and 24. Dkt. 260-66 at 26.

and demonstration of the Ketris system at N+I, as well as corroborated evidence of public knowledge and use from sales demonstrations of the system that occurred in nine cities across the United States between July 5 to August 25, 2000. SAF ¶¶ 29–36. Dell corroborates this evidence with an operational Ketris 9000 machine that operates in the same way as the system that was publicly displayed between May and August 2000. *Id*. Dell's corroboration of the Ketris system further includes the testimony of Bryn Forbes and David Bottom (SAF ¶¶ 29–30), 22 Corroborating References that describe the functionality of the Ketris system publicly available on May 9, 2000 (SAF ¶ 36), and hotel and airline statements related to the sales demonstrations (*id.*). Similarly, for the RLX system, Dell relies on corroborating evidence, including the Hipp patent that describes the RLX system, RLX technical documents, and deposition testimony about RLX sales demonstrations between August–October 2000. SAF ¶ 49.

1.   *Mr. Forbes Sufficiently Corroborates Mr. Bottom's Testimony*

Oral testimony from Mr. Bottom and Mr. Forbes sufficiently corroborates the public availability of the Ketris system. *See Nobel Biocare Servs. AG v. Instradent USA, Inc.*, 903 F.3d 1365, 1378–80 (Fed. Cir. 2018) ("[T]he testimony of one witness may corroborate the testimony of another witness."). There are "no hard and fast rules as to what constitutes sufficient corroboration, and ***each case must be decided on its own facts***." *Id*. (emphasis added). In *Nobel Biocare*, the Federal Circuit rejected the credibility attacks on the alleged interest of certain witnesses,

and distinguished cases where witness testimony was deemed not sufficiently corroborating. *Id.* The Court distinguished *The Barbed-Wire Patent* case where "inconsistent and insufficient testimony" was provided; the *Woodland* case where there was an "absence of any physical record to support the oral evidence" "despite the asserted many years of commercial and public use;" and *Finnigan* where the "completely uncorroborated testimony of one witness . . . was insufficient as a matter of law." *Id*. In this case, where the testimony of multiple witnesses is consistent and corroborated by ample documentary evidence, is similarly distinguishable. *See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.*, 264 F.3d 1344, 1350–51 (Fed. Cir. 2001) ("Documentary or physical evidence that is made contemporaneously with the inventive process provides the most reliable proof that the inventor's testimony has been corroborated.").

Finally, even though Mr. Forbes did not attend the N+I Show, his testimony is strong circumstantial evidence that the system shown at N+I was fully operational. *See Loral Fairchild Corp. v. Matsushita Elec.*, 266 F.3d 1358, 1363–65 (Fed. Cir. 2001) ("[T]o corroborate a reduction to practice, ***it is not necessary to produce an actual over-the-shoulder observer***. Rather, sufficient circumstantial evidence of an independent nature can satisfy the corroboration requirement.") (emphasis added).

2. *Mr. Bottom's and Mr. Forbes' Testimony Corroborates That the Physical Ketris System in Evidence Accurately Reflects the Ketris System Shown at N+I*

The operational Ketris system also provides strong circumstantial evidence of reduction to practice even if it was not the actual N+I system. Acceleron incorrectly suggests, without citing to any authority, that Dell must have a physical system that pre-dates the '021 Patent to rely on the system as prior art. *See* Mot. 6–8, 15–16, 18. But a physical prior art system that predates the priority date of the challenged patent is not required to invalidate a claim. *See Good Tech. Corp. v. Mobileiron, Inc.*, No. 5:12-CV-05826, 2015 WL 4197554, at *5–6 (N.D. Cal. July 10, 2015) (relying on documents and deposition testimony and rejecting argument that defendant "fails to show that the system ever existed, and even if it did, he bases his conclusion on a collection of documents that cannot properly constitute a prior art system").

In *Loral Fairchild*, the district court gave little credit to later-produced lithographic masks that were proffered as evidence of reduction to practice, finding that the masks failed to show that the patented process "would work for its intended purpose." 266 F.3d at 1363–65. The Federal Circuit disagreed, finding that, while the masks do not prove when a reduction to practice occurred, they were necessary for a reduction to practice and corroborated the inventors' testimony of the timing of events related to the reduction to practice. *Id.* The Court also held that, at a minimum, the masks give "rise to a reasonable inference, which must be made in favor of non-movant Loral," that Loral had begun production efforts using the claimed process before the key priority date. *Id.* at 1364. The physical Ketris system

here in combination with the corroborating testimony of Mr. Bottom, Mr. Forbes, and the documentary evidence, give rise to a reasonable inference, which must be made in Dell's favor, that a fully operational Ketris system was publicly available as of the N+I Show. *See Meyer Intellectual Props. Ltd. v. Bodum, Inc.*, 690 F.3d 1354, 1376 (Fed. Cir. 2012) (holding that oral testimony can corroborate that the version of the Bodum French press proffered as physical evidence accurately reflected the product as it existed before the priority date of the patents-in-suit).

### D. Material Issues Regarding Witnesses' Bias, Credibility, and Level of Interest in the Outcome of the Case Preclude Summary Judgment

The oral testimony of the Ziatech and RLX witnesses is credible and corroborated by each other and the documentary record. To the extent Acceleron disagrees, any credibility issues present a genuine dispute of fact that must be evaluated by the jury. For example, the rule of reason requires consideration of the interest of a corroborating witness in the suit. *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1369 (Fed. Cir. 1999). In *Thomson, S.A. v. Quixote Corp.*, the Federal Circuit held that witness testimony from non-party inventors who have no interest in the case need not be corroborated. 166 F.3d 1172, 1174 (Fed. Cir. 1999). There, the patentee argued that the inventors' testimony required corroboration and was insufficient to invalidate the patents. *Id*. Rejecting this argument, the Federal Circuit acknowledged previous cases expressing skepticism over uncorroborated inventor testimony directed to establishing priority over an opponent's patent claim, but suggested that the inventors in those cases were "self-interested in the outcome of

the trial and [were] thereby tempted to 'remember' facts favorable to his or her case." *Id*. at 1174, 1176. The Federal Circuit noted that no court has ever directly held that "the corroboration rule must be applied to testimony by non-party inventors that is directed to establishing their invention as anticipating the claims at issue." *Id*. at 1176. Recognizing that "the corroboration rule is needed only to counterbalance the self-interest of a testifying inventor against the patentee," the Court held that,

> [C]orroboration is required only when the testifying inventor is asserting a claim of derivation or priority of his or her invention and is a named party, an employee of or assignor to a named party, or otherwise is in a position where he or she stands to directly and substantially gain by his or her invention being found to have priority over the patent claims at issue.

*Id*.[8] Like the two inventors in *Thomson*, Messrs. Bottom and Forbes are non-parties who are knowledgeable about the prior art systems and who have no vested interest in the outcome of this case (SAF ¶¶ 50–52); and, any reasonable inferences about their level of interest must be drawn in Dell's favor.

*Thomson* is discussed in the *Finnigan* case cited at pages 13–14 of the Motion, but is ignored by Acceleron. *Finnigan*, 180 F.3d at 1368–69. In *Finnigan*, the Federal Circuit reversed a finding by the International Trade Commission that

---

[8] *See also*, *Eisenberg v. Alimed*, 2000 WL 1119743, at *4 (Fed. Cir. Aug. 8, 2000) (affirming decision finding invalidity of patents based solely on testimony of a single non-party witness); *Ecolab, Inc. v. Gardner Mfg. Co.*, No. CIV.98-2294(MJD/JGL), 2002 WL 31641260, at *1–2 (D. Minn. Nov. 20, 2002) (finding testimony of two non-interested non-parties sufficient to meet corroboration requirement); *Sandt*, 264 F.3d at 1352 (unrebutted testimony from third-party with no interest in lawsuit and who was knowledgeable about technology is corroborating).

certain patent claims were invalid as anticipated by a previously published article. The Commission relied on the testimony of the author of the prior publication to conclude that his use was sufficiently public and the claims at issue were invalid. *Id.* at 1360–61. The Federal Circuit reversed the invalidity determination and rejected the argument that no additional evidence would be needed to corroborate the testimony of a disinterested third-party. The Court distinguished *Thomson*'s holding that the testimony of disinterested third-parties need not be corroborated, by reasoning that *Thomson* "did not involve uncorroborated testimony of a single witness." *Id*. The Court also explained that *Thomson* did not go to the need for corroboration, but rather the sufficiency of corroboration. *Id.* Additionally, in examining *Thomson* and *Finnegan*, at least one court held that the sufficiency of corroboration and a witness's level of interest is a fact issue for the jury. *See Medtronic, Inc. v. Bos. Sci. Corp.*, No. CIV 99-1035, 2002 WL 34447587, at *33–35 (D. Minn. Aug. 8, 2002) (denying motion in limine to exclude testimony of non-parties and holding that sufficiency of corroboration "will be evaluated at trial.").

This case is on all fours with *Thomson*, and distinguishable from *Finnigan*. Dell has presented evidence that goes beyond the uncorroborated single-witness testimony deemed insufficient in *Finnigan.* As in *Thomson*, the evidence presented here includes the testimony of two non-party witnesses with no vested interest in the outcome of this litigation,[9] an expert's report and portions of his deposition

---

[9] █████████████████████████████████████████████████████
████████████████████████████████ both are non-party witnesses with no vested

testimony, the expert's exhibits, and documents that the expert reviewed in forming his opinions. SAF ¶ 53. Dell has also produced contemporaneous technical manuals of the Ketris 9000 system and circumstantial evidence of photos and hotel and flight records—evidence beyond what was deemed sufficient in *Thomson*.

Moreover, the contention that a witness' testimony must be discredited as a matter of law unless the witness is disinterested is inconsistent with the rule of reason. *See Sys. Mgmt. Arts Inc. v. Avesta Techs., Inc.*, 160 F. Supp. 2d 580, 584–86 (S.D.N.Y. 2001). Assessing bias and credibility for corroboration purposes "is traditionally a matter for the finder of fact." *Id.* (citing *Beachcombers, Int'l, Inc. v. WildeWood Creative Prods., Inc.*, 31 F.3d 1154, 1160 (Fed. Cir. 1994)). Nor is the 19 years between the development of the Ketris system and the witness recollections here too long to be credible,[10] especially when that testimony is corroborated by contemporaneous documents. *Sandt*, 264 F.3d at 1351 ("Because documentary or physical evidence is created at the time of conception or reduction to practice, the risk of litigation-inspired fabrication or exaggeration is eliminated."). To the extent Acceleron alleges that the non-party witnesses are not credible or biased (Mot. 19), that assessment should be determined by a jury and not on summary judgment.

### E. Material Issues Regarding the Existence of NDAs for Ketris and RLX Preclude Summary Judgment

The record evidence supports that the public demonstrations of the Ketris and

---

interest in this case. *See* SAF ¶¶ 50–52; *Thomson*, 166 F.3d at 1175–76.

[10] *See Nintendo of Am. Inc. v. iLife Techs., Inc.*, 717 F. App'x 996, 1002–03 (Fed. Cir. 2017) (accepting testimony corroborating events from 19 years before).

RLX systems were conducted without NDAs. Mr. Rousset testified ███████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████ SAF ¶ 48. Mr. Bottom testified ██████████████████████████ ████████████████████████ SAF ¶ 12. Mr. Forbes corroborated that testimony ████ ████████████████████████████████████████████████████████████████ ████████████ SAF ¶ 35. Acceleron, nonetheless, selectively excerpts Mr. Forbes' testimony below to disingenuously conclude that "there were, in fact, NDAs, including mutual NDAs" and that the "undisputed facts are more than sufficient to defeat any notion that Dell can establish by clear and convincing evidence that Mr. Forbes' customer visits" were public. Mot. 23.

Dkt. 258-4 at 31:20-32:10. What Mr. Forbes actually said was ████████████
████████████████████████████████████████████████████████████████
████████████████████████████████ *Id.*

Despite years of discovery and ample opportunity to do so, Acceleron has ***not identified any NDAs*** related to Ketris or RLX. SAF ¶ 54. By failing to negate an element of Dell's invalidity defense, Acceleron fails to carry its burden to foreclose the possibility that at least one, if not all the demonstrations for Ketris and RLX, was not under an NDA. *See Clark*, 929 F.2d at 606–07 ("[Movant] had not 'carried its burden because of its failure to foreclose the possibility that there was a policeman in [its] store while [non-movant] was awaiting service, and that this policeman reached an understanding with [movant's] employee[s] that [non-movant] not be served.'") (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, (1970)). A genuine issue of material fact remains because a jury could decide, based on the record, that no NDA existed. *See Clark*, 929 F.2d at 606–7. At a minimum, an inference must be drawn in Dell's favor that no NDAs existed, and that every one of Mr. Forbes' demonstrations constitutes a public use by others in this country.

## V.    CONCLUSION

For the foregoing reasons, Acceleron's Motion for Partial Summary Judgment of No Invalidity (Dkt. 258) must be denied.

Dated: August 28, 2019

Respectfully submitted,

*/s/ Paula D. Heyman*
Paula D. Heyman

Scott E. Taylor (Georgia Bar No. 785596)
Andrew B. Flake (Georgia Bar No. 262425)
Anuj Desai (Georgia Bar No. 193889)
**ARNALL GOLDEN GREGORY LLP**
171 17th Street Northwest, Suite 2100
Atlanta, Georgia 30363
Telephone: (404) 873-8728
Facsimile: (404) 873-8729
scott.taylor@agg.com
andrew.flake@agg.com
anuj.desai@agg.com

*Of Counsel:*

Kevin J. Meek (admitted *pro hac vice*)
Paula D. Heyman (admitted *pro hac vice*)
Nick Schuneman (admitted *pro hac vice*)
Jennifer L. Nall (admitted *pro hac vice*)
Valerie K. Barker (admitted *pro hac vice*)
Bailey P. Morgan (admitted *pro hac vice*)
Ryan Clark *(*admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
98 San Jacinto Boulevard, Suite 1500
Austin, Texas 78701-4078
Telephone: (512) 322-2500
Facsimile: (512) 322-2501
kevin.meek@bakerbotts.com
paula.heyman@bakerbotts.com
nick.schuneman@bakerbotts.com
jennifer.nall@bakerbotts.com
valerie.barker@bakerbotts.com
**bailey.watkins@bakerbotts.com**
ryan.clark@bakerbotts.com

Roger Fulghum (admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-1522
roger.fulghum@bakerbotts.com

*ATTORNEYS FOR DEFENDANT/*
*COUNTERCLAIMANT, DELL INC.*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned counsel hereby certifies that the foregoing Motion was prepared using 14-point Times New Roman font and a top margin of 1½ inches in accordance with Northern District of Georgia Local Rule 5.1 (C) and (D).

Dated: August 28, 2019.

*/s/ Paula D. Heyman*
Paula D. Heyman