# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

ACCELERON, LLC,
     Plaintiff,
     v.

DELL, INC.,
     Defendant.

Civil Action File No.
1:12-CV-04123-TCB

# ACCELERON'S REPLY IN SUPPORT OF ITS
# MOTION FOR PARTIAL SUMMARY JUDGMENT ON INFRINGEMENT

# TABLE OF CONTENTS

1. DELL'S PASSTHROUGH I/O MODULES ARE "ETHERNET SWITCH MODULES" ................................................................................1

2. THE VRTX I/O MODULES ARE "HOT-SWAPPABLE" ...........................3

3. THE FIBRE CHANNEL AND INFINIBAND I/O MODULES ROUTE "NETWORK COMMUNICATIONS" ...........................................................4

4. THE MX7000 INFRASTRUCTURE BOARDS INTERCONNECT AND ENABLE THE FABRIC A/B I/O MODULES TO BE USED AS A SHARED RESOURCE BY THE CPU MODULES .....................................5

5. THE SYSTEM BOARDS ARE "HOT-SWAPPABLE" MODULES ...........6

6. THE SERVER BLADE'S HDDS ARE NOT PART OF THE CPU MODULE ................................................................................................8

7. THE SYSTEM BOARDS' CADDIES PROVIDE AIR FLOW FROM THE FRONT TO THE REAR OF THE CHASSIS ..............................................10

8. THE ACCUSED MICROCONTROLLER MODULES POLL THE CPU MODULES ..............................................................................................12

9. DELL WAIVED ITS NON-INFRINGEMENT ARGUMENTS FOR "FILTERS" ...............................................................................................15

# TABLE OF AUTHORIES

**Cases**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
  659 F.3d 1121 (Fed. Cir. 2011) ............................................................... 5

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  805 F.3d 1368 (Fed. Cir. 2015) ............................................................... 5

*Broadcom Corp. v. Qualcomm, Inc.*,
  543 F.3d 683 (Fed. Cir. 2008) ............................................................... 11

*Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1929 (2015) ........................... 15

*Graco Children's Prods. v. Kids II, Inc.*,
  No. 1:13-CV-1183-TWT, 2018 U.S. Dist. LEXIS 49865 (N.D. Ga. Mar. 22,
  2018) ............................................................................................... 6, 15

*Nuance Communs., Inc. v. ABBYY USA Software House, Inc.*,
  813 F.3d 1368 (Fed. Cir. 2016) ............................................................. 11

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) ............................................................. 11

## TABLE OF EXHIBITS

Ex. A – Acceleron's Responses to Dell's Statement of Additional Facts

Ex. B – Transcript of July 1, 2019 Deposition of William Putnam[1]

---

[1] Because Dell failed to comply with the Court's Order requiring the filing of "the *complete* transcript of each deposition referenced in the [summary judgment] brief," Doc. 05 at 16 (emphasis added), Acceleron has filed a complete copy of the transcript of Mr. Putnam's July 1, 2019 deposition.

1. **DELL'S PASSTHROUGH I/O MODULES ARE "ETHERNET SWITCH MODULES"**

Dell's argument for the passthrough I/O modules ("IOMs") ignores the Court's claim construction and advocates a construction that Dell abandoned during the claim construction process. Dell originally proposed construing "ethernet switch module" as meaning "a module that *selectively* routes network communications between network devices in the computer network appliance," but later scrapped that flawed construction in favor of "a module that directs network communications between multiple devices based on the addresses of the communications." Doc. 85-1 at 16;[2] Doc. 93 at 12. Despite having abandoned its "selectively routes" construction, Dell now argues an "ethernet switch module" "must route network communications by *selecting* between two or more available paths." Doc. 295 at 3. Because the Court's construction is "a module that [is] configured to *route* network communications between multiple devices," Dell has failed to create a dispute of material fact because its argument does not apply the Court's construction.

Dell further argues that "Acceleron's interpretation" (*i.e.*, the Court's construction) "reads out the concept of a 'switch,' which both party's experts agreed must route network communications by selecting between two or more available paths." Doc. 295 at 3 (citing Doc. 295-2 at B.44-45). Dell's assertion is not true. First, the cited testimony of Acceleron's expert does not support Dell's position. And, contrary to Dell's assertion, Acceleron's expert explained that ████████

---

[2] All emphases in this brief have been added, unless indicated otherwise.

███████████████████████████████████████

████████████" Ex. B at 74:1-75:14. Moreover, Dell's assertion is further undermined by the fact that Dell's documentation refers to passthrough IOMs as "switch[es]." *See*, *e.g.*, Doc. 262-34 at DELL-ACC-00039390.

In a footnote, Dell tries to distance itself from the invalidity report of its expert, Dr. Michalson, where he opined that a passthrough is "a hot-swappable ethernet switch module as construed in this litigation, namely redundant network interface cards that are configured to *route* network communications … ." Doc. 260-86 at ¶¶ 175-76; Doc. 295 at 3, n.1. However, Dell cannot escape the opinion of its expert, as Dr. Michalson's invalidity report explicitly applied the Court's construction. Doc. 260-86 at ¶ 176 ("Hipp discloses a hot-swappable ethernet switch module *as construed in this litigation*, namely … network interface cards that are *configured to route network communications* … ."[3]). Dr. Michalson's non-infringement report, on the other hand, deviated from the Court's construction: "I conclude that 'route' … requires a *selection* of a path for the communication." Doc. 264-3 at ¶ 111. Therefore, when applying the Court's claim construction, there is no

---

[3] Dr. Michalson's invalidity report also states: "I have applied [the Court's] constructions in reaching my opinions" and "I have based my opinions on the Court's claim constructions and my understanding of the Asserted Claims from the perspective of one of ordinary skill in the art at the time of the alleged invention … in light of the specification and prosecution history of the '021 Patent." Doc. 260-86 at ¶¶ 19, 101. Dr. Michalson's invalidity report never states that he is merely applying Acceleron's interpretation for this element.

genuine dispute that Dell's passthrough IOMs are "ethernet switch modules."

## 2.   THE VRTX I/O MODULES ARE "HOT-SWAPPABLE"

Dell argues that the VRTX IOMs are not "hot swappable" because ████████ ████████████████████████████████████████████████████████████████ ████████. Doc. 295 at 4-6. However, Dell cannot defeat summary judgment even if its unsupported factual assertion is correct, because the Court's construction is "a self-contained electronic component capable of being added to *or removed* from the computer network appliance while the computer network appliance is powered on or operational." Doc. 182 at 9-14. Dell does not dispute that ████████████ ████████████████████████████████████████████████████████████████ ████████████. *See* Doc. 295. With no material factual dispute as to this issue, summary judgment is appropriate. *See* Doc. 264-2, ¶ 548 (explaining that ████████ ████████████████████████████████████████████████████████████████ ████████████████████████████).

Additionally, Dell has failed to create a material factual dispute even under its rewritten claim construction requiring a module to be capable of being removed *and* added while the system is powered on *and* operational, because Dell does not cite to any evidence to show that the ████████████████████████████████████ ████████████████████████s. *See* Doc. 295-2 (Dell's Additional Material Facts), ¶ 56. Instead, Dell's citations show that merely ████████████████████████ ████████████████████████. *Id.* But Dell fails to cite to any evidence as to the effect of ████████████████████████ and instead makes a factually

unsupported leap in logic that an ██████████████████████████████

██████. Therefore, Mr. Putnam's testimony is unrebutted and summary

judgment is appropriate.

**3.     THE FIBRE CHANNEL AND INFINIBAND I/O MODULES ROUTE "NETWORK COMMUNICATIONS"**

Dell argues that the accused Fibre Channel and InfiniBand IOMS do not route

"network communications" because Fibre Channel and InfiniBand are not the

specific network communications protocols "disclosed" in the '021 Patent. Doc. 295

at 6.[4] However, the Court adopted the Special Master's construction of "ethernet

switch module" as meaning "a module [] configured to route *network*

*communications* between multiple devices" without limitation as to the specific

protocol of "network communications." Doc. 182 at 25. Dell is attempting to re-

construe the term to limit "network communications" to only network

communications that comply with the IEEE 802 standard. *See* Doc. 295 at SAF B.38

(quoting Dr. Michalson's opinion that "I conclude that by the term 'ethernet' the

inventors specifically teach the use of *IEEE 802-based Ethernet* … ."). Therefore,

there is no genuine dispute as to a material fact, because Dell's argument fails to

---

[4] Dell's argument that IEEE 802-based Ethernet (capital "E") is the only type of network communications disclosed is incorrect. *See*, *e.g.* Doc. 285-1 at cl. 21 (dependent claim reciting that the "dedicated *ethernet* path" is an I2C bus—which is not IEEE 802-based Ethernet); *see also* Doc. 239-6 (Dell's counsel stating: "An I[2]C bus is not an Ethernet connection under the Ethernet standard. However, … we know from the '021 patent that, as defined, the dedicated [e]thernet path is an I[2]C bus.").

apply the Court's construction.[5]

## 4.   THE MX7000 INFRASTRUCTURE BOARDS INTERCONNECT AND ENABLE THE FABRIC A/B I/O MODULES TO BE USED AS A SHARED RESOURCE BY THE CPU MODULES

As shown in Acceleron's opening brief, the MX7000 infrastructure boards (which include a main distribution board coupled to a vertical distribution board) interconnect each of the blades' system boards to the Fabric A/B I/O modules at least because: ████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████. *See* Doc. 263 at 24-25.

Dell's response does not address points # 1-2 identified above. *See* Doc. 295 at 7-8.

Instead, Dell argues that the ████████████████████████, despite

---

[5] The Court should not entertain Dell's transparent attempt to change the Court's construction, when Dell itself advocated that the "network communications" language was proper during claim construction and did not object to the Special Master's construction based on the "network communications" phrase. *See Akamai Techs., Inc. v. Limelight Networks, Inc.*, 805 F.3d 1368, 1373 (Fed. Cir. 2015) (explaining that a party who stipulates to a limitation during claim construction is "bound by that stipulation"); *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1130 (Fed. Cir. 2011) (finding waiver of claim construction arguments for failure to timely object to a special master's R&R).

Dell's Rule 30(b)(6) designee testifying that 

. *Id.* at 8; Doc. 263-28 at 150:6-9

. But even if                                          , Dell does not

dispute that

.

Dell argues, instead, that these connections "cannot satisfy the claim limitation requiring that the backplane board interconnect the CPU modules and the ethernet switch modules" because "the purpose of the ethernet switch module is to 'route network communications.'" Doc. 295 at 8. However, the plain language of claims 1 and 24 simply does not require the backplane board to "route network communications," as Dell argues. *See* Doc. 262-12 at 9:8-15 (claim 1); *id.* at 10:46-52 (claim 24). Therefore, there is no genuine dispute of material fact, and Acceleron is entitled to summary judgment as to this issue.

## 5.   THE SYSTEM BOARDS ARE "HOT-SWAPPABLE" MODULES

Dell argues[6] that the accused system boards are not "hot-swappable CPU modules" because they are supposedly not "hot-swappable" without their blade

---

[6] Dell's Patent L.R. 6.1 non-infringement contentions never denied that the system boards were "hot-swappable." *See* Doc. 263-10 at 2-5 (M1000e); Doc. 263-11 at 2-4 (FX2); Doc. 263-12 at 2-4 (VRTX); Doc. 263-13 at 1-4 (MX7000). Therefore, Dell's argument that system boards are not hot swappable was waived. *See Graco Children's Prods. v. Kids II, Inc.*, No. 1:13-CV-1183-TWT, 2018 U.S. Dist. LEXIS 49865, at *10 (N.D. Ga. Mar. 22, 2018).

enclosures (*i.e.*, caddies) "because they ***may*** be damaged during the swap [without the blade enclosure] due to electrical shorts, physical interference with the chassis, and bending." Doc. 295 at 10. First, there is no genuine material dispute here because it is undisputed that the system boards can be added to or removed from the system *at least* while they are in their caddies. *See* Doc. 263-3 at ¶ 158 (The server blades and compute sleds ... are hot-swappable."). Additionally, Dell's argument fails because the construction is "a [module] *capable* of being added to or removed from the computer network appliance with the computer network appliance is powered on or operational." Doc. 182 at 14. Thus, even if there is a risk that a system board "may be" damaged during the swap, this does not change the fact that it is still *capable* of being added to or removed from the computer network appliance with the computer network appliance is powered on or operational.

Indeed, the background section of the '021 Patent explains that a "drawback" of hot swapping a module without a caddy "is it requires trained personnel to insert and/or remove components from a computer system to minimize damages cause by pitting connectors of the components against connectors of the computer system." Doc. 262-12 at 1:39-43. The '021 Patent teaches that the caddy solves this problem because "the caddy ensures that the hot swap connectors are aligned," thereby reducing the risk of damage. *Id.* at 3:33-34. Thus, even if there is a risk that Dell's system boards "may be" damaged when hot-swapped, this does not mean that they are not "hot-swappable" but is instead consistent with the teachings of the '021

Patent that the caddy reduces the risk of damage that may occur during swapping.

Moreover, Dell has failed to offer even a scintilla of evidence showing that the system boards are not *capable* of being added to or removed from the computer network appliance with the computer network appliance is powered on or operational. Dell asserts that "the system board alone cannot survive a swap," but it cites to only the testimony of its expert, which does not support Dell's assertion. Doc. 295 at 11. At most, Dell's expert opines that "██████████████████████ ███████████████████████████." Doc. 263-3 at ¶ 161. And the testimony of Mr. Casey, which is cited by Dell's expert for his opinion, shows that ████████ ████████████████████████████████" Doc. 263-16 at 233:22-234:8. Therefore, there is no genuine dispute of material fact here.

**6.    THE SERVER BLADE'S HDDS ARE NOT PART OF THE CPU MODULE**

Dell argues that summary judgment is precluded by a factual dispute regarding whether HDDs—which are optional, hot-swappable, installed in a special hot-swap carrier, and couple to the system board through a distinct backplane—are part of the CPU module. However, the evidence on which Dell relies shows that there actually is no genuine dispute. Dell asserts that a figure depicting "enumerated" connectors for the CPU module shows the connectors for components that become part of the CPU module. Doc. 295 at 12-13. While that figure shows a "hard-drive *backplane* connector," indicating that the "hard-drive backplane" can be connected to the CPU module, it *does not* include any connectors for HDDs. Accordingly, under Dell's own rationale, an HDD would *not* be part of the CPU module. *See also*

Doc. 263-14 at 79:8-11 █████████████████████████████████
████████████████████████████" and that "██████████████████
███████████████████████"). Indeed, while Dell's expert's
declaration asserts ████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████," it does *not* assert that ██████████████
█████████████. Doc. 295-7 at ¶ 14. Additionally, the M620 Owner's Manual
explicitly calls out the USB ports on the same diagram. Doc. 262-23 at ACC-
0093825-26. However, Dell asserts that treating anything connected via the USB
ports as part of the system board is "ridiculous" in an attempt to distinguish USB
peripherals from HDD peripherals. Doc. 295 at 14. And Dell apparently forgets that
the accused products also have an internal USB port either on the hard-drive
backplane or on the system board. *See* Doc. 262-26 at 232-233 ("USB memory key
connector on system board (PowerEdge M915, M915, and M910) or backplane
(PowerEdge M710HD, M610, and M610x"); *see also* Doc. 263-21, ¶ 95 (photograph
of hard drive backplane with internal USB port).

Dell also argues that one cannot meaningfully distinguish between, for
example, the processors and the HDDs. Doc. 295 at 12. However, processors,
memory, and the like are fundamental elements necessary for operation of the CPU
module, and they are accessible only if: (1) the CPU module is powered-down and
taken out of the chassis; (2) the enclosure cover is removed; and (3) the individual

components are removed from their locking sockets after being allowed to cool down. *See* Doc. 264-2, ¶ 98. The HDDs, on the other hand, are accessible from the front of the blade and can be hot-swapped while server blade is installed in the system chassis and the CPU module is operating. *Id.* at ¶ 101. The HDDs are akin to a flash drive, keyboard or mouse that can be added to server blades via either the front or internal USB port—components that Dell acknowledges would be "ridiculous" to consider part of the CPU module. Therefore, Dell has failed to create a material factual dispute, and summary judgment is appropriate as to this issue.

**7.   THE SYSTEM BOARDS' CADDIES PROVIDE AIR FLOW FROM THE FRONT TO THE REAR OF THE CHASSIS**

Dell argues that the phrase "providing air flow" means only "***actively*** providing air flow" because the only embodiment allegedly disclosed in the '021 Patent has caddies with fans on them. Doc. 295 at 14 (emphasis by Dell). Dell's argument is another attempt to offer an untimely, erroneous construction.[7]

As a preliminary matter, the Court should deny Dell's attempt to now engage in claim construction of this phrase, as Dell never identified it as a phrase requiring construction pursuant the Patent Local Rules. *See* LPR 6.1. By failing to identify this phrase as requiring construction, Dell implicitly conceded that the meaning of "providing air flow" is clear and not in need of construction. *See Nuance Communs.,*

---

[7] By arguing that "providing air flow" should be interpreted as "*actively* providing air flow," Dell implicitly concedes that the plain and ordinary meaning of "providing air flow" is broad enough to encompass means of providing air flow other than only *actively* providing air flow.

*Inc. v. ABBYY USA Software House, Inc.*, 813 F.3d 1368, 1373 (Fed. Cir. 2016) (holding that the district court "properly denied" an attempt to construe a term before trial after the parties had agreed that the term did not require construction); *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 694 (Fed. Cir. 2008) ("[W]e hold that Qualcomm has waived its right to request a construction of 'networks' and that Qualcomm has thereby implicitly conceded that the meanings of 'networks' is clear and not in need of construction.").

Additionally, Dell's argument that "providing air flow" should be limited because the '021 Patent discloses only caddies having fans is incorrect. First, the '021 Patent discloses at least one embodiment of a caddy passively providing air flow in the chassis. For example, the microcontroller module illustrated in Figures 1 and 5 does not have a fan on the module itself or in its caddy. *See* Doc. 285-1 at FIG. 1 (no fan for microcontroller module); *id.* at FIG. 5 (same); *id.* at 3:32; *id.* at 2:6. But even if Dell was correct in arguing that only *actively* providing air flow was disclosed (it is not), Dell's argument fails as a matter of law, as the Federal Circuit "ha[s] expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005).

Dell further argues that, even if the phrase is not limited to only *actively* providing air flow, a factual dispute exists because "███████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████.” Doc. 295

at 15. Dell's argument, however, is based on re-writing the claim to say that the caddies are the *only* component providing air flow in the specified direction. Because no such limitation exists, there is no genuine factual dispute here.

**8.   THE ACCUSED MICROCONTROLLER MODULES POLL THE CPU MODULES**

The Court's construction of "poll(s)" is clear: "actively gathers information." Doc. 182 at 36. Nevertheless, Dell, again, attempts to add non-existent limitations to the construction. Here, Dell asserts that (1) a "poll" has to be "initiated" by the microcontroller; and (2) cannot take place after an interrupt. Doc. 295 at 16. To impose the additional limitations on the Court's construction, Dell relies on the Special Master's summary and rejection of the pure attorney argument regarding alleged "modalities of communication" that Dell raised at the *Markman* hearing. *See* Doc. 119 at 42. However, the limitations Dell seeks to impose are simply not present in the Special Master's discussion. *See id.* Moreover, Dell ignores the fact that, while the Court's clarification to the Claim Construction Order states that "[t]he special master similarly concluded that a person of ordinary skill in the art would not believe that polls also encompassed queries and interrupts," there is no statement by the Court that imposes the limitations Dell is arguing. Indeed, the Court stated: "The construction of 'polls' remains 'actively gathers information.'" Doc. 193 at 2.

Dell further argues that a question of fact exists because its expert "opined that an interrupt between two devices initiates an interrupt process, which involves one device receiving and handling an interrupt, including the response following the

interrupt, as an overall interrupt-driven process."[8] Doc. 295 at 17-18. However, again, there is nothing in the Special Master's R&R or the Court's Claim Construction Order that says a poll that occurs *after* or *in response* to an interrupt (what Dell has coined "interrupt-*driven* communications") are outside of the scope of the Court's construction. Dell's own briefing acknowledges that the accused communications in which the microcontroller module ███████████████

███████████████████████████████████████████

██████████. Doc. 295 at 16; *see id.* at 18 (███████████████████████

███████████████████████"). Similarly, Dell's expert referred to the microcontroller modules ████████████████████████████████

███████████ Doc. 263-3 at ¶ 344; *see id.* at ¶ 344 ("Mr. Putnam acknowledges that

████████████████████████████████████████████

████*t.*'" (emphasis by Dr. Michalson)). Additionally, there is no dispute that Dell's own documentation states that ████████████████████████████

███████████████" Doc. 263-31 at DELL-ACC-00217311..

Dell also argues that its Rule 30(b)(6) designee testified that ██████████

█████████████████████████. Doc. 295 at 19. The transcript proves otherwise. When asked ████████████████████████████████████

---

[8] The convolution of this quoted statement demonstrates the mental gymnastics that must be performed in order to conflate a poll (*i.e.* active gathering of information) with a passive interrupt. *See also* Doc. 93 at 33 (Dell's opening claim construction brief acknowledging that "[t]he '021 Patent clearly discloses … using *active* polling rather than *passive* interrupts.").

████████████████████████████████, Dell's designee explained ████████████████████████████████████████. Doc. 263-28 at 36:15-37:9, 38:18-24, 46:18-47:17, 50:11-19. Dell's designee then explained ████████████ ████████████████████████████████. *Id.* at 8-:23-24, 87:6-13 ██ ████████████████████████████████ ██████████).

After testifying on ████████████████████████ ████████ discussed above, Dell's designee was asked ████████████. *Id.* at 165:19-20. Dell's designee explained that ██████████████ ████████████████████████████████." *Id.* at 166-18-23. He further explained that in the MX7000, ██████████████████ ██████████████" *Id.* at 166:24-167:4. Thus, by saying that there was ██ ██████████," he was freely characterizing ████████████ ██████████████" *Id.* Indeed, Dell's designee was immediately asked, ████████████████████████████ ██████████ *Id.* at 167:4-7. Therefore, Dell's accusation that Acceleron misrepresented this testimony is unwarranted, and what Dell calls Acceleron's "most

14

egregious mischaracterization" is not a mischaracterization at all.[9]

## 9.   DELL WAIVED ITS NON-INFRINGEMENT ARGUMENTS FOR "FILTERS"

Dell glosses over the fact that its third amended non-infringement contentions denied that the switch versions of the accused I/O modules "filter[] communications" solely on the basis that the claim is invalid. Doc. 263-10 at 60 (M1000e); Doc. 263-11 at 49 (FX2); Doc. 263-12 at 51 (VRTX); Doc. 263-13 at 47 (MX7000).[10] As previously explained by this Court, a party's non-infringement contentions are binding. *Graco Children's Prods. v. Kids II, Inc.*, 2018 U.S. Dist. LEXIS 49865, at *10. Therefore, Dell is precluded from raising a non-infringement defense it did not indicate it would raise in its contentions. And because it is well-established that "invalidity is not a defense to infringement," Acceleron is entitled to summary judgment as to this issue. *Commil USA, LLC v. Cisco Sys.*, 135 S. Ct. 1920, 1929 (2015).

---

[9] Dell also argues that the accused microcontroller modules do not gather information by ███████████████████████. Doc. 295 at 23. However, as set forth in Acceleron's earlier briefing, Dell's Rule 30(b)(6) designee testified that ███████████████████████. *See* Doc. 289 at § 2.3.

[10] Consistent with Dell's third-amended non-infringement contentions, Dell's second amended contentions also did not dispute that the switch versions of the I/O modules infringed, but asserted that only the passthrough versions did not infringe. *E.g.*, Doc. 222-12 at 56-57. The passthrough versions of Dell's I/O modules are not accused of infringing the "filters communications" element.

Respectfully submitted this 11th day of September, 2019.

                         *s/ N. Andrew Crain*
                         N. Andrew Crain
                         Georgia Bar No. 193081
                         *andrew.crain@thomashorstemeyer.com*
                         Dan R. Gresham
                         Georgia Bar No. 310280
                         *dan.gresham@thomashorstemeyer.com*
                         Eric Maurer
                         Georgia Bar No. 478199
                         *eric.maurer@thomashorstemeyer.com*
                         Robert D. Gravois
                         Georgia Bar No. 600183
                         *robert.gravois@thomashorstemeyer.com*
                         Wesley A. Roberts
                         Georgia Bar No. 867277
                         *wesley.roberts@thomashorstemeyer.com*
                         **THOMAS | HORSTEMEYER, LLP**
                         3200 Windy Hill Rd SE
                         Suite 1600E
                         Atlanta, Georgia 30339
                         Telephone:  770.933.9500
                         Facsimile:  770.951.0933

                         *Attorneys for Plaintiff Acceleron, LLC*

# LOCAL RULE 7.1D CERTIFICATION

The undersigned hereby certifies that the foregoing was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

> *s/ N. Andrew Crain*
> ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
> N. Andrew Crain
> Georgia Bar No. 193081
> *Attorney for Plaintiff Acceleron, LLC*

17

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ACCELERON, LLC,<br>            Plaintiff,<br>    v.<br><br>DELL, INC.,<br>                Defendant. | Civil Action File No.<br>1:12-CV-04123-TCB |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 11, 2019, the foregoing was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

                                            *s/ N. Andrew Crain*
                                            N. Andrew Crain
                                            Georgia Bar No. 193081
                                            *Attorney for Plaintiff Acceleron, LLC*