# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

ACCELERON, LLC,

                Plaintiff,

v.

DELL INC.,

            Defendant.

Civil Action File No.

1:12-cv-04123-TCB

**JURY TRIAL DEMANDED**

## DELL INC.'S REPLY IN SUPPORT OF ITS
## MOTION FOR PARTIAL SUMMARY JUDGMENT
## <u>OF INVALIDITY AND NON-INFRINGEMENT</u>

# TABLE OF CONTENTS

I.    CLAIM 17 IS INVALID AS A MATTER OF LAW BECAUSE IT FAILS
      TO ADD A LIMITATION UNDER 35 U.S.C. § 112 ¶ 4 ..............................1

II.   VRTX IOMS ARE NOT "HOT-SWAPPABLE" ███████████
      ████████████████████████████████████.......................3

III.  THE ACCUSED PRODUCTS DO NOT INFRINGE CLAIM 3 ..................6

      A.   The Modified Construction of "Caddies" Is Consistent with the
           Prosecution History ...............................................................6

      B.   ██████████████████████████████████...........8

IV.   THE MX7000 SYSTEM DOES NOT INFRINGE THE BACKPLANE
      LIMITATION OF CLAIMS 3, 14–17, AND 24..........................................10

V.    CONCLUSION..............................................................................15

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Dell, Inc. v. Acceleron, LLC,*
  818 F.3d 1293 (Fed. Cir. 2016) ........................................................................4

*Fonar Corp. v. Johnson & Johnson,*
  821 F.2d 627 (Fed. Cir. 1987) ........................................................................15

*Hoffer v. Microsoft,*
  405 F.3d 1326 (Fed. Cir. 2005) ........................................................................1

*Monsanto Co. v. David,*
  516 F. 3d 1009 (Fed. Cir. 2008) ......................................................................12

*UltimatePointer, L.L.C. v. Nintendo Co., Ltd.,*
  816 F.3d 816 (Fed. Cir. 2016) ..........................................................................6

OTHER AUTHORITIES

Fed. R. Civ. P. 56(a) ..........................................................................................1

Federal Rule of Evidence 703 ..........................................................................12

## I.   CLAIM 17 IS INVALID AS A MATTER OF LAW BECAUSE IT FAILS TO ADD A LIMITATION UNDER 35 U.S.C. § 112 ¶ 4

There is no genuine dispute that Claim 17 fails to further limit Claim 15 because it only contains a "wherein" clause that states the intended result of the lack of a local HDD from Claim 15. Dkt. 264 ("Mot.") at 4–5. Thus, Dell is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Acceleron relies on a portion of *Hoffer v. Microsoft* for the proposition that "wherein" clauses are limiting where they recite a "condition that is material to patentability." Dkt. 286 ("Opp.") at 1 (quoting *Hoffer v. Microsoft,* 405 F.3d 1326, 1329 (Fed. Cir. 2005)). Acceleron, however, leaves out key portions of the analysis. In *Hoffer*, the court analyzed the intrinsic record of a patent and found the "whereby" clause to be "an integral part of the invention" because it was added during prosecution with a specific disclaimer to overcome a rejection. *Hoffer*, 405 F.3d at 1330.

Likewise, in *Allergan Sales, LLC v. Sandoz, Inc.*, the court found a "wherein" clause to be limiting by looking to the intrinsic record where the examiner "explicitly relied on the 'wherein' clause[] in explaining why the claims of the Patent-in-Suit were 'novel and non-obvious over the prior art.'" No. 2018-2207, 2019 WL 4063570, at *4 (Fed. Cir. Aug. 29, 2019). *Allergan* expressly distinguishes cases where the disputed term was not relied on during prosecution, and therefore is non-limiting. *Id.* at *5 (citing to *Copaxone Consol. Cases*, 906 F.3d 1013, 1024 (Fed. Cir. 2018) (holding that the disputed terms were non-limiting because they were not

1

"necessary or relevant to the examiner's approval.")). Here, the "wherein" clause of Claim 17 was included when the application for the '021 Patent was filed and was not mentioned, either by the applicant or examiner, during prosecution. RSAF[1] ¶¶ A1–A2. Therefore, the clause was not relied on by the examiner or necessary to allowance of the claims. Thus, there is no genuine dispute that the "wherein" clause of Claim 17 is non-limiting and summary judgment is warranted.

Acceleron's infringement allegations further demonstrate that even Acceleron does not believe Claim 17 is limiting. Acceleron relies solely on its infringement allegations for Claim 15 in its expert report to assert that the Accused Products also infringe Claim 17. Opp. at 1–2. Mr. Putnam did not perform any MTBF or MTTR analysis of the Accused Products and did not cite to any evidence of MTBF or MTTR for any Accused Product.[2] Dkt. 267 at 7–9; Dkt. 264-2 at ¶¶ 255–263, Dkt. 264-4 at ¶¶ 156–160.

Acceleron relies on extrinsic evidence to save Claim 17. In particular, Acceleron alleges that Claim 17 is limiting because the parties' experts discuss two hypothetical scenarios (i.e., "higher grade" hard disk drives (HDDs) or whether "additional complexity will be required") in their respective expert reports. Opp. at 1–2. Both hypotheticals relate to reliability differences between an HDD and a solid-

---

[1] Dell's Statement of Additional Material Facts ("RSAF") has been filed concurrently with this Reply.

[2] Notably, if Claim 17 is limiting, Acceleron's infringement allegations fail as a matter of law because Acceleron has presented no evidence of infringement. Dkt. 264-1 ("SUMF") ¶¶ B4–B5.

state drive (SSD), yet Claim 17 does not mention SSDs. *Id.*; *see also* Dkt. 264-4 at ¶¶ 157, 159. These hypotheticals are therefore irrelevant to the legal analysis of invalidity under Section 112 ¶ 4 and should not be considered. *Wi-Lan*, 811 F.3d at 462. Accordingly, the "wherein" clause of Claim 17 is non-limiting and Dell's motion for summary judgment of invalidity of Claim 17 must be granted.

## II.   VRTX IOMS ARE NOT "HOT-SWAPPABLE" BECAUSE ███████ ████████████████████████████████████████

Dell's proposed clarification of the Court's construction of "hot-swappable . . . module" to require the ability to functionally add an operational component "while the computer network appliance is powered on or operational" is consistent with the current construction and with the '021 Patent's express definition of "hot swap technology." SUMF ¶¶ C2, C15–C18. As explained in Dell's Motion, the specification emphasizes "*replacement* of components *without turning off the power or resetting the computer system* as a whole," while criticizing when "each process of component insertion and/or removal requires a complete shutdown of the entire system" due to the "serious consequences" of downtime. Mot. at 7; SUMF ¶¶ C15–C17 (emphases added). Acceleron's argument that a module that is non-operational upon insertion into a powered-on system is "hot-swappable" is inconsistent with the '021 Patent. If the Court accepts Acceleron's argument, adding a hot-swappable module to a system would *require* downtime—exactly what the '021 Patent seeks to avoid. *See* Mot. at 7–8; SUMF ¶¶ C7, C15–C17.

Additionally, Acceleron disregards the term "swap" in arguing that a module

3

capable only of being removed (but not added) while the system is powered on is "hot-swappable." Opp. at 7–8. As counsel for Acceleron asserted at the *Markman* hearing, "hot-swappable" means "I am able to take this one out, put it or another one in, and keep on trucking." SUMF ¶ C19. Further, during that same hearing, Acceleron's counsel quoted the Federal Circuit's characterization of "hot-swappable" based on the '021 Patent as "meaning that those components can be ***removed and replaced*** without turning off or resetting the computer system as a whole," and stated, "I'll take that [construction] right now and I'd be willing to walk away." RSAF ¶ B3 (quoting *Dell, Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1295 (Fed. Cir. 2016)) (emphasis added). Likewise, as the Court stated in the *Markman* order, "the patent references ***at all times*** the ***requirement*** that the component be ***swapped*** while the power to the computer network appliance is on." RSAF ¶ B2 (emphases added). Thus, in the proper context, the "added to or removed from" language in the construction requires that to be "hot-swappable," a module must be capable of both, without the system having to be powered down or reset. *See* SUMF ¶ C2.

Because the patent requires that a "hot-swappable . . . module" be capable of being functionally added as an operational component[3] "while the computer network

---

[3] Acceleron contends that Dell is rearguing an operational requirement rejected by the Court. Opp. at 3–5. But Dell's proposed construction related to the "normal operation of the network ***appliance***," not the ***module***, and the Court held that there was no "operational *requirement*" in terms of the ***appliance***. RSAF ¶¶ B1–B2. (bold emphasis added). The Court, however, did hold that it was appropriate to include when the appliance is "operational" within the construction. SUMF ¶ C2; RSAF ¶ B2. Acceleron's argument that the term "operational" lacks clarity is thus likewise

appliance is powered on or operational," the VRTX IOM is not "hot-swappable."



Acceleron selectively ignores the statement that

Opp. at 7. In context, it is clear that the document tells

Nevertheless, Acceleron attempts to manufacture an issue of material fact by citing portions of the VRTX document and the testimony of a Dell software engineer labeling the IOM as hot swappable. Opp. at 6.

SUMF ¶¶ C10–C11. Regardless, these statements do not change the undisputed facts concerning the requirements for swapping a VRTX IOM,

---

without merit, as the term appears in the construction. Opp. at 5.

[4]

SUMF ¶ C6.

There is also no evidence that either the document or the software engineer used "hot swappable" in the same manner as the term is used in the '021 Patent or as the Court has defined it. *See UltimatePointer, L.L.C. v. Nintendo Co., Ltd.*, 816 F.3d 816, 825 (Fed. Cir. 2016) ("[T]he manner in which [a defendant] referred to the [accused product] in its technical documents does not mean that the [accused product] performs [a patent term] as that term is defined within the [asserted patent].").

For these reasons and those stated in Dell's Motion, the Court should clarify its construction and hold that "hot-swappable . . . module(s)" requires the ability to functionally add an operational component "while the computer network appliance is powered on or operational," and then grant summary judgment that the accused VRTX products do not infringe the Asserted Claims as a matter of law.

## III.   THE ACCUSED PRODUCTS DO NOT INFRINGE CLAIM 3

It is appropriate for the Court to modify its construction of "caddies" based on the dispute between the parties. Additionally, Acceleron does not dispute the underlying facts in Dell's motion confirming that summary judgment of non-infringement of Claim 3 is appropriate.

### A. The Modified Construction of "Caddies" Is Consistent with the Prosecution History

During the oral hearing in the IPR, Dell agreed to Acceleron's proposed construction of "caddy"—"carrier for a module"[5]—under the broadest reasonable

---

[5] Acceleron misleadingly states that "carrier for a module" is "Dell's own proposed construction." Opp. at 9. Acceleron—not Dell—proposed this construction during the IPR in its Patent Owner Response. RSAF ¶ C2. Despite proposing this broad

interpretation standard applied by the PTAB. RSAF ¶ C1. To preserve validity of Claim 3, Acceleron asserted later in the hearing that the claimed caddy must carry a module of Claim 1. Mot. at 13. The only modules of Claim 1 are hot-swappable modules, so under Acceleron's own logic, the caddy ***must*** carry a ***hot-swappable*** module. *Id*. This is exactly what Dell requests of the clarified construction—that a "caddy" is a "carrier for a hot-swappable module." Mot. at 10–13.

Since the Court issued its claim construction Order adopting Acceleron's construction, a fundamental dispute over the scope of "caddies" has arisen. This dispute is of Acceleron's own making. Acceleron's infringement contentions in 2013, prior to the IPR, identified the accused server blades as the "CPU modules" of Claim 1. RSAF ¶ C3. As the server blades are hot-swappable modules, Acceleron's contentions were consistent with the prosecution history of the '021 Patent. When the case re-opened in May 2017 after the IPR, Acceleron updated its contentions but continued to identify the server blades as the "CPU modules." RSAF ¶ C4. Only after the Court issued the Claim Construction Order did Acceleron retreat from its original position and accuse the system boards contained within the server blades of being "CPU modules."[6] RSAF ¶ C6. ███████████████████ ████████████████████████████████████████ (SUMF ¶ D25), thus broadening its interpretation of the module being carried to be inconsistent with

---

construction, Acceleron has continuously modified the scope of the construction to fit its infringement and validity arguments. Mot. at 10–12.

[6] Acceleron also amended its contentions in October 2018 but again accused the server blades of being the "CPU module." RSAF ¶ C5.

the intrinsic evidence, creating this dispute over the construction of "caddies." Acceleron cannot be allowed to apply a claim interpretation that conflicts with the prosecution history, thus the Court must clarify its construction.

**B.** ███████████████████████████████████

There is no factual dispute that the ████████████████████████████████
███████████████████████████ Mot. at 14–16. Acceleron does not refute this fact. Instead, Acceleron attempts to manufacture a dispute by relying on a strained interpretation of Greg Casey's[7] testimony to argue that ████████████████████
████████████████████████████ Opp. at 15. Mr. Casey testified about a single blade server (M620) for a single Accused Product (M1000e). RSAF ¶ C7. ███████████████████████████



████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

---

[7] ████████████████████████████████████████
████████████████████████████████ RSAF ¶ C9.

 Acceleron has therefore offered

no evidence that the ███████ are hot-swappable modules.

Instead, Acceleron asserts that a module "does not require any specific structure" to be hot swappable because "neither 'caddies' nor 'hot swap connectors of the modules' is an express limitation of claim 1." Opp. at 14.[8] This is irrelevant to Dell's Motion. Dell does not argue that "caddies" are required in Claim 1. Rather, Dell asserts that *there are no caddies* because ████████████████████ ████████████████████████████████████ Mot. at 14– 17. While Acceleron initially agreed that the entire server blade was a hot-swappable module, it has since retreated from that position. *See* Section III.A, *supra*. Further, Dell does not argue that a "hot swap connector" is required in Claim 1 and its presence or lack thereof is irrelevant to Dell's Motion. *Id*. at 15–16.

---

[8] Acceleron argues in the Opposition that hot-swap connectors are not required for a module to be hot-swappable. Opp. at 14. The '021 Patent describes a hot swap connector on all modules. Dkt. 286-8 at ¶¶ 12–15. Acceleron's expert also relies on the presence of a hot-swap connector to opine that the accused system boards are hot-swappable. RSAF ¶ C10. Without the connector, a module could not be hot swapped because it could not mate with the backplane board to be added to the system. RSAF ¶ C11. Acceleron, again, draws arbitrary lines around what is and is not part of the module to suit its infringement read. Dkt. 295 at 11–14.

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████ Mot. at 14–17. As there is no

separate carrier, the Accused Products do not include "caddies," and the Court

should grant Dell's motion for summary judgment of non-infringement of Claim 3.

## IV.   THE MX7000 SYSTEM DOES NOT INFRINGE THE BACKPLANE LIMITATION OF CLAIMS 3, 14–17, AND 24

Dell's motion for summary judgment of non-infringement by the MX7000 of

Claims 3, 14–17, and 24 should be granted because any MX7000 system with only

████████████████████████████████████████████

██████████████████. Mot. at 17–19; SUMF ¶ E1–10. Indeed, █████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████.

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

SUMF ¶ E10; *see also* RSAF ¶ D1; *id.* at ¶ D2 ███████████████

███████████████████████████████████████████████████

███████████████████████████ ). Acceleron's Opposition fails to address ████████

████████ because it is indisputable—even Acceleron's own expert agrees there is

████████████████████████. Opp. 16–25; Mot. at 19; SUMF ¶ E9.

Therefore, the MX7000 cannot infringe Claims 3, 14–17, and 24, and Dell is entitled

to summary judgment of non-infringement.[9] Mot. at 17–19; Dkt. 295 at 7–8.

Despite clear non-infringement, Acceleron asserts that the MX7000

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████ █ ██

---

[9] The parties have competing motions regarding Acceleron's MX7000 infringement
contentions. *See* Dkt. Nos. 260, 263.
[10] Acceleron's Opposition also relies on connections provided by █████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████, but supplying
power has no relation to providing a path for network communications as required
by the claims and the Court's construction.

But, as addressed in Dell's response to Acceleron's Motion for Summary Judgment of Infringement, ████████████████████████████████████ ██████████████████████████████████████████████████. Dkt. 295 at 7–8. First, ██████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████  ██████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

---

[11] Federal Rule of Evidence 703 authorizes the admission of expert opinion that is based on "facts or data" that themselves are inadmissible as hearsay, as long as the evidence is "of a type reasonably relied upon by experts in the particular field in forming opinions." *Monsanto Co. v. David*, 516 F. 3d 1009, 1016 (Fed. Cir. 2008).

████████████████████████████████████████████████████

████████████████████████

Second, ███████████████████████████████████████, they cannot satisfy the claim limitation requiring that the backplane board interconnect the CPU modules and the ethernet switch modules. Dkt. 295 at 8; SUMF ¶¶ E1–E3; RSAF ¶¶ D7–D13. The type of connection matters. As construed by the Court, the purpose of the ethernet switch module is to "route **network communications**" such that the ethernet switch module can be used by the CPU modules as a "shared resource"[12] to communicate with each other and with devices outside of the computer network appliance. Dkt. 182 at 24–25; SUMF ¶¶ E2–E3; RSAF ¶¶ D7–D10 ("[T]he ethernet switch module 110 . . . connects to the passive backplane board 104 via the hot swap connector 124(*h*) to derive power, establish ground **and establish all ethernet connections within the computer network appliance**.") (emphasis added). The ethernet switch module requires not just **any** interconnection, but one that provides a path for **network communications**. Dkt. 182 at 24–25; RSAF ¶¶ D7–D10.

████████████████████████████████████████████████

████████████████████████████████[13] The '021 Patent distinguishes

---

[12] Acceleron acknowledges that the backplane board must "enable[ ] the [████████ ███] Modules to be used as a shared resource by the CPU modules," Opp. at 16, but ignores what it means to be used as such a shared resource.

[13] Acceleron admits that ████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████

Opp. at 21. Mr. Brown stated that the SuperShifty interconnect bus is connected to

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████ Acceleron  understands  this

difference.  In  a  separate  context, ████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████.[14]  RSAF

¶ D13. Claim 20 requires the "dedicated ethernet path" to be separate from the "fast

ethernet connection." RSAF ¶¶ D15–D17. The "fast ethernet connection" is the

connection used by the ethernet switch module to carry "network data I/O" (*i.e.*,

network communications)[15] to the CPU modules. RSAF ¶¶ D11, D16–D17. ████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████

███████████████████████████████████████████████ RSAF ¶ D5.

[14] *See* RSAF ¶ D16 ('021 Patent stating that dedicated ethernet path is used for in-band management communications, such as "remotely poll[ing] the health" of other modules, "gather[ing] status information," and "log[ging] the results and provide[ ] the log to the management software").

[15] The backplane board must provide a path for network communications so that the ethernet switch module can "operate[ ] as a traffic cop for ***data communications*** in the computer network appliance, allowing each CPU module to communicate with other CPU modules in the same chassis." RSAF ¶ D8 (emphasis added).

 therefore cannot result in

the infrastructure boards being the "backplane board" of Claims 3, 14–17, and 24

such that summary judgment of non-infringement by the MX7000 is appropriate.

## V.    CONCLUSION

For the foregoing reasons, Dell's Motion for Partial Summary Judgment of

Invalidity and Non-Infringement (Dkt. 264) should be granted.

---

[16] Notably, every independent claim of the '021 Patent identifies an ethernet switch module. The "ethernet switch module of Claim 20 should be construed consistently in the patent to require that the "fast ethernet connection" be separate from the "dedicated ethernet switch." *See Fonar Corp. v. Johnson & Johnson*, 821 F.2d 627 (Fed. Cir. 1987) (holding that the meaning of a claim term should be defined in a manner consistent with its appearance in other claims in the same patent).

Dated: September 11, 2019   Respectfully submitted,

           */s/ Paula D. Heyman*
           Paula D. Heyman

           Scott E. Taylor (Georgia Bar No. 785596)
           Andrew B. Flake (Georgia Bar No. 262425)
           Anuj Desai (Georgia Bar No. 193889)
           **ARNALL GOLDEN GREGORY LLP**
           171 17th Street Northwest, Suite 2100
           Atlanta, Georgia 30363
           Telephone: (404) 873-8728
           Facsimile: (404) 873-8729
           scott.taylor@agg.com
           andrew.flake@agg.com
           anuj.desai@agg.com

           *Of Counsel:*

           Kevin J. Meek (admitted *pro hac vice*)
           Paula D. Heyman (admitted *pro hac vice*)
           Nick Schuneman (admitted *pro hac vice*)
           Jennifer L. Nall (admitted *pro hac vice*)
           Valerie K. Barker (admitted *pro hac vice*)
           Bailey P. Morgan (admitted *pro hac vice*)
           Ryan Clark *(*admitted *pro hac vice*)
           **BAKER BOTTS L.L.P.**
           98 San Jacinto Boulevard, Suite 1500
           Austin, Texas 78701-4078
           Telephone: (512) 322-2500
           Facsimile: (512) 322-2501
           kevin.meek@bakerbotts.com
           paula.heyman@bakerbotts.com
           nick.schuneman@bakerbotts.com
           jennifer.nall@bakerbotts.com
           valerie.barker@bakerbotts.com
           **bailey.watkins@bakerbotts.com**
           ryan.clark@bakerbotts.com

Roger Fulghum (admitted *pro hac vice*)
**BAKER BOTTS L.L.P.**
One Shell Plaza
910 Louisiana Street
Houston, Texas 77002-4995
Telephone: (713) 229-1234
Facsimile: (713) 229-1522
roger.fulghum@bakerbotts.com

***ATTORNEYS FOR DEFENDANT/
COUNTERCLAIMANT, DELL INC.***

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned counsel hereby certifies that the foregoing Motion was prepared using 14-point Times New Roman font and a top margin of 1½ inches in accordance with Northern District of Georgia Local Rule 5.1 (C) and (D).

Dated: September 11, 2019.

*/s/ Paula D. Heyman*
Paula D. Heyman