# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

ACCELERON, LLC,

     Plaintiff,

     v.

DELL, INC.,

     Defendant.

Civil Action File No.

1:12-CV-04123-TCB

# BRIEF IN SUPPORT OF ACCELERON, LLC'S MOTION TO EXCLUDE
# THE OPINIONS OF JEFF ANDRIEN

## TABLE OF CONTENTS

1.    Andrien's "Market Approach" Involves Faulty Methodology.........................1

  1.1   Mr. Andrien's "Market Approach" analysis related to the ███████████ is based on faulty methodology ................................................................................2

    1.1.1    Mr. Andrien's Analysis of the ██ Settlement Failed to Properly Address the Undervalue of the Settlement Due to Litigation Risk. ..................5

    1.1.2    Mr. Andrien relied upon improper "rule of thumb" assumptions about the presumptions of validity and infringement based on his own alleged experience instead of the facts pertinent to this case. ........................................8

    1.1.3    Mr. Andrien improperly discounted the value of the ████████████ based on non-asserted claims and used his faulty assumptions to offset the necessary upward adjustment due to litigation risks that he failed to even attempt to quantify. ........................................................................................10

    1.1.4    Mr. Andrien did not attempt to quantify his opinion that the value of the HP Agreement should be discounted due to non-asserted claims. ............20

  1.2   Mr. Andrien's Other "Market Approach" Conclusions are Equally Divorced from Economic Analysis............................................................................21

  1.3   All of Mr. Andrien's "Market Approach" opinions should be excluded....23

2.    Mr. Andrien's "Income Approach" is Fatally Flawed Because it Values Components of the Asserted Claims in Isolation and Assigns No Value to the Claimed Combination ................................................................................................23

# TABLE OF AUTHORITIES

## Cases

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312 (Fed. Cir. 2012)..................................................................1

*Adrea v. Barnes & Noble, Inc.*, 227 F. Supp. 3d 303 (S.D.N.Y. 2017) ....................................................................................8

*Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015) ............................................................................. passim

*AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139 (D. Del. 2013) ....................................................................................8

*Avocent Redmond Corp. v. Rose Elecs.*, No. C06-1711RSL, 2013 U.S. Dist. LEXIS 188286, 2013 WL 8844098 (W.D. Wash. Mar. 11, 2013) ...............................................................10

*Balt. Aircoil Co. v. SPX Cooling Techs.*, No. CCB-13-2053, 2016 U.S. Dist. LEXIS 111934 (D. Md. Aug. 22, 2016) ......................8

*Cincinnati Car Co. v. N.Y. Rapid Transit Corp.*, 66 F.2d 592 (2d Cir. 1933)............................................................................14

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) .............................................................................. 1, 21

*Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336 (Fed. Cir. 2013)..........................................................................9

*Douglas Dynamics, LLC v. Buyers Prods. Co.*, 76 F. Supp. 3d 806 (W.D. Wis. 2014)................................................... 19, 20

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332 (Fed. Cir. 2018) ........................................... 14, 15

*GE v. Joiner*, 522 U.S. 136 (1997) ........................................................21

*GPNE Corp. v. Apple, Inc.*, 12-cv-02885-LHK, 2014 U.S. Dist. LEXIS 53234, 2014 WL 1494247 (N.D. Cal. Apr. 16, 2014) ............................10

*Grober v. Mako Prods.*, 686 F.3d 1335 (Fed. Cir. 2012) ........................................11

*Hurlbut v. Schillinger*, 130 U.S. 456 (1889) ............................................................14

*i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010) ....................................................................................................1

*Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-cv-525, 2015 U.S. Dist. LEXIS 43042 (E.D. Va. Mar. 24, 2015) ....................................................................................................1

*Kolcraft Enters. v. Chicco USA, Inc.*, No. 09-CV-03339, 2019 U.S. Dist. LEXIS 151958 (N.D. Ill. Sep. 6, 2019) .............................11

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012) ..........................................................................5, 7

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ..................................................................................................23

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 U.S. Dist. LEXIS 111756 (N.D. Cal. July 3, 2019) ..................................................................................................18

*Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 U.S. Dist. LEXIS 33619 (N.D. Cal. Mar. 13, 2012) ...........................12

*Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360 (Fed. Cir. 2017) ................................................................................ 5, 6, 7

*Seymour v. Osborne*, 78 U.S. 516 (1870) ...............................................14

*ThinkOptics, Inc. v. Nintendo of Am., Inc.*, No. 6:11-CV-455, 2014 U.S. Dist. LEXIS 84530 (E.D. Tex. June 21, 2014) ........................... 18, 19

*Ultratec, Inc. v. Sorenson Communs., Inc.*, No. 13-cv-346-bbc, 2014 U.S. Dist. LEXIS 145956 (W.D. Wis. Oct. 8, 2014) ...............................11

*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011) ....................................................................................................9

*United States v. Bonds*, 12 F.3d 540 (6th Cir. 1993) ................................................1

*VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308 (Fed. Cir. 2014) ...................................10

*WesternGeco L.L.C. v. ION Geophysical Corp.*, 913 F.3d 1067 (Fed. Cir. 2019) ..................................................................................................16

*Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*,
225 U.S. 604 (1912)................................................................................14

*Wordtech Sys. v. Integrated Networks Sols., Inc.*, 609 F.3d
1308, 1320 (Fed. Cir. 2010)...................................................................23

*Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466 (D.
Del. 2019) ..............................................................................................8

**Exhibit List**

Exhibit A – Rebuttal Report of Jeff Andrien (May 24, 2019)

Exhibit B – Deposition of Jeffrey Scott Andrien (June 21, 2019)

Exhibit C – Horst Invalidity Chart based on RLX/Hipp from HP Litigation

Exhibit D – Horst Invalidity Chart based on Hipp from Dell IPR

Exhibit E – Excerpts from the Deposition of Dell, Inc. representative Shawn Dube
(February 25, 2019)

Mr. Andrien's "Market" and "Income" approaches to damages contain methodological flaws and are divorced from economic reasoning. The Court should therefore exclude those opinions on damages under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). "The assessment of the validity and reliability of the conclusions drawn by the expert is a jury question; the judge may only examine whether the principles and methodology are scientifically valid and generally accepted." *United States v. Bonds*, 12 F.3d 540, 563 (6th Cir. 1993).

## 1.  ANDRIEN'S "MARKET APPROACH" INVOLVES FAULTY METHODOLOGY

For his "Market Approach" analysis, Mr. Andrien first reviews agreements specifically involving the '021 Patent. Ex. A (Andrien Report), ¶¶ 89-141. Of the agreements involving the '021 Patent, Mr. Andrien concludes that "███████ ███████████████████████████████████" (¶ 136) and deems the other agreements "███████████████████████████████ *Id.*, ¶¶ 111, 115, 122, 125.[1] Mr.

---

[1] Despite deeming the other agreements involving the '021 Patent "not comparable," Mr. Andrien nevertheless used those non-comparable agreements in his analysis. *See, e.g.*, Ex. A, ¶¶ 229, 231, 242. This is another reason why Mr. Andrien's "Market Approach" fails to meet the standards for admissibility under *Daubert* and should be excluded. *See, e.g., Intelligent Verification Sys., LLC v. Microsoft Corp.*, No. 2:12-cv-525, 2015 U.S. Dist. LEXIS 43042, at *6-7 (E.D. Va. Mar. 24, 2015) ("[T]he district court must exercise its gatekeeping function to bar non-comparable licenses when the license does not meet the baseline of comparability test, which considers whether 'the methodology is sound' and whether 'the evidence relied upon [is] sufficiently related to the case at hand.'") (quoting *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1333 (Fed. Cir. 2012), and *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 852 (Fed. Cir. 2010)).

1

Andrien next analyzes license agreements executed by Dell. *Id.*, ¶¶ 142-171. Mr. Andrien concludes that Dell's settlement agreements with "██████████████ ████████████████████████████████████████████." *Id.*, ¶ 165. Mr. Andrien's methodologies for analyzing both types of agreements are fundamentally flawed, and his conclusions are divorced from any economic reasoning. Therefore, his opinions relating to the ████████████ agreements should be excluded.

## 1.1    Mr. Andrien's "Market Approach" analysis related to the ██ ████████ is based on faulty methodology

For agreements involving the '021 Patent, Mr. Andrien opines that Acceleron's litigation settlement with ████████████████████████████ ██████████████████████████." *Id.*, ¶ 136. He testified that he gave ██ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████" Ex. B (Andrien Deposition Transcript), 163:4-164:2.

In opining on the appropriate measure of damages, Mr. Andrien adjusts the payment amount in the ████████████ to account for the relative market shares of ██ and Dell. Ex. A, ¶ 137. Mr. Andrien performs an adjustment to the payment amount indicated by the relative market shares of ██ and Dell, and then discounts the payment to the time of the hypothetical negotiation. *Id.*, ¶ 138. Mr. Andrien makes no other adjustments and fails to adjust the suggested payment at *all* for the presumption of validity and infringement in the hypothetical negotiation. *Id.*, ¶ 140. Instead, Mr. Andrien concludes that any upward adjustment required by the

2

presumptions of validity and infringement would be offset by the value of the claims invalidated during IPR. *Id.*, ¶¶ 139-140. Mr. Andrien has absolutely no economic basis or analysis for *either* the value of the invalidated claims *or* the premium for the presumption of validity and infringement; instead, he relies solely on platitudes and his experience in the field. *Id.*, ¶ 140 (" ███████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████ .").

    Mr. Andrien's flawed methodology results in Dell receiving an improper discount based on the risk of an invalidity finding in the prior ██ litigation. In the IPR, here, Dell relied on the same expert, Dr. Horst, and one of the same references that ██ relied on during its litigation with Acceleron. *Compare* Ex. C (Invalidity chart from Dr. Horst in ██ litigation based on RLX[2] and *Hipp*) *with* Ex. D, 31-55 (Invalidity chart from Dr. Horst in Dell IPR based on *Hipp*). Because Mr. Andrien did no analysis of the ██ litigation or of the ██ products accused of infringing the '021 Patent, he has no basis to conclude that the claims invalidated in the IPR would have affected the monetary component of the ██████████ . *See, e.g.*, Ex. B, 190:7-192:17. Mr. Andrien compounds his methodological error by assuming, without any

---

[2] Dell's technical expert concedes that RLX is the embodiment of the *Hipp* patent.

evidentiary or economic analysis, that the invalidated claims retained *all* of their value (and were the most valuable claims overall) during settlement and *offsetting* that unsupported value against the necessary upward adjustment of the settlement value in the current hypothetical negotiation required by Federal Circuit precedent for the presumptions of validity and infringement. Ex. A, ¶¶ 140, 172 ("████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ █████████████████████████████████.").

At his deposition, Mr. Andrien tried to backfill his lack of evidence or analysis for his discount associated with the subsequently invalidated claims. In assigning value to what he characterizes as the "████████████████████████████" (Ex. B, 202:23-24), Mr. Andrien did no specific economic analysis of the products at issue in the ███ litigation to determine how many ███ products, if any, practice only the invalidated claims without also practicing the claims asserted in this litigation. If none of ███ products (like Dell's, as discussed below) practiced only the subsequently invalidated claims without also practicing the dependent claims asserted in this litigation, the invalidated independent claims would have had no value to ███ separate from the value of the dependent claims.

But since Mr. Andrien did no analysis of the underlying ███ litigation, the accused ███ products, or the value assigned to any subsequently invalidated claims in the ███ litigation or in the ████████, his assumption that ███ assigned value

4

to claims 1 and 2 independently, as well as his use of that alleged value to offset the necessary upward adjustment of the settlement value due to the risk of invalidity and/or noninfringement, amounts to nothing more than an *ipse dixit* conclusion based on pure speculation.

### 1.1.1 *Mr. Andrien's Analysis of the* ██████████ *Failed to Properly Address the Undervalue of the Settlement Due to Litigation Risk.*

Because he failed to properly account for the substantial litigation risks faced by Acceleron at the time of the ██████████, Mr. Andrien's opinions regarding the ██████████ are unreliable, and he should be precluded from offering them to the jury under *Daubert* as well as Federal Rule of Evidence 403.

The hypothetical negotiation assumes that the patent-in-suit is both valid and infringed. *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1371 (Fed. Cir. 2017). Thus, in order to rely on a comparable license resulting from settlement of a prior case, an expert's methodology must account for the risks associated with the underlying litigation. For example, in *Astrazeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015), the Court held that a settlement license closely mirrored the hypothetical negotiation because the settlement was reached "only after the district court had held the patents valid and had made a finding of infringement." *Id*. at 1337. Conversely, in *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51 (Fed. Cir. 2012), the Court held that the district court abused its discretion by admitting into evidence a settlement entered into on the eve of trial, when one of parties was "at a severe legal and procedural disadvantage." *Id*. at 77-78.

5

Of particular relevance here, in order to rely on the ████████████, Mr. Andrien was required account for the fact, using sound economic reasoning and methodology, that the ██████████ was entered shortly before trial under circumstances that "tend[ed] to undervalue the technology [because] it reflects a discount for the probability of losing." *Prism Techs.*, 849 F.3d at 1371. As Mr. Andrien acknowledged, the ██████████ was agreed to "████████████████ ████████████." Ex. A, ¶ 93. While Mr. Andrien notes that being close to trial means "████████████████████████████████████," he conducts *no analysis* regarding what the information on their positions tended to indicate about Acceleron's likelihood of success on the merits. Ex. A, ¶ 105.

Further, when the case settled, ██ had a pending motion for summary judgment of noninfringement. Ex. B, 192. Mr. Andrien admitted that the summary judgment motion could have "████████████████████████████████ ████" *Id.* ("It's possible."). Nevertheless, Mr. Andrien admitted that ██████ ████████████████████████████████████████████ ██████████. *Id.* at 191-196 ("████████████████████████ ████████████████████████████." ). He even admitted that he did not review the summary judgment briefing, and "████████████████████ ██████" HP's likelihood of success in obtaining a summary judgment of noninfringement. *Id.* at 194. He likewise admitted that he did not review the claim construction arguments in the HP case, or compare them to the claim construction

arguments made by Dell or this Court's constructions. *Id*. at 167-171. The failure to conduct any economic analysis on the merits of the litigation is contrary to precedent, which acknowledges that "the earlier suit's settlement figure may be too low to the extent that it was lowered by the patent owner's discounting of value by a probability of losing on validity or infringement." *Prism Techs.*, 849 F.3d at 137.

Mr. Andrien also admitted that a sweeping adverse discovery ruling that precluded Acceleron from obtaining evidence necessary to pursue its claim for indirect infringement against HP could have had "██████████████████ ██████████████." Ex. B, 192. Again, however, his opinion does not attempt to quantify, from an economic perspective, the adverse effect on the ██ ██████ attributable to Acceleron's inability to seek damages for indirect infringement at trial in that case.

Mr. Andrien's repeated admissions that he made no attempt to conduct specific analysis of the litigation leading to the ██████████ or otherwise evaluate Acceleron's risk of an adverse ruling on validity and/or infringement means he necessarily undervalued the settlement in the context of the hypothetical negotiation analysis. *Prism Techs.*, 849 F.3d at 1371; *see generally* Ex. B, 191-196. Mr. Andrien's failure to analyze and account for the litigation risks attendant to the ██ ██████ renders his reliance on that settlement in his "Market Approach" fatally unreliable. Accordingly, his opinions and testimony based on the ███████████ must be excluded. *See LaserDynamics*, 694 F.3d at 77 (district court abused its

discretion in admitting BenQ settlement entered into on eve of trial because BenQ was at severe litigation disadvantage); *see also Zimmer Surgical, Inc. v. Stryker Corp.*, 365 F. Supp. 3d 466, 496 (D. Del. 2019) (precluding reliance on settlement license in absence of analysis of how underlying litigation may have affected royalty rate); *Adrea v. Barnes & Noble, Inc.*, 227 F. Supp. 3d 303, 310 (S.D.N.Y. 2017) (accused infringer not entitled to litigation risk discount obtained by previous licensee due to settlement); *Balt. Aircoil Co. v. SPX Cooling Techs.*, No. CCB-13-2053, 2016 U.S. Dist. LEXIS 111934, at *78-82 (D. Md. Aug. 22, 2016) (Analysis of underlying litigation is a "necessary threshold that must be satisfied for an expert's reliance on a [settlement] license to survive a *Daubert* motion."); *AVM Techs., LLC v. Intel Corp.*, 927 F. Supp. 2d 139, 143 (D. Del. 2013) (damages opinion based on settlement agreement "is completely speculative without, at a minimum, some analysis of the litigation that led to the settlement. Without analysis of the litigation, the conclusion cannot be based on 'sound economic and factual predicates.'").

> ### 1.1.2  Mr. Andrien relied upon improper "rule of thumb" assumptions about the presumptions of validity and infringement based on his own alleged experience instead of the facts pertinent to this case.

Instead of analyzing the underlying ▓ litigation to address the risks associated with a potential finding of invalidity and/or noninfringement, Mr. Andrien instead relied improperly only upon his own general experience and involvement in **other cases** to address the litigation risks. When questioned about his lack of analysis of ▓ likelihood of prevailing on its motion for summary

judgment of noninfringement, he admitted that he did not have any specific knowledge as to that issue and that he did not review the briefing:



Ex. B, 191-194.

By purporting to rely on his own general experience in lieu of analyzing the specific litigation risks associated with the underlying ▬ litigation, Mr. Andrien committed a clear methodological error. In *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011), the Court held "as a matter of Federal Circuit law that the 25 percent rule of thumb is a fundamentally flawed tool for determining a baseline royalty rate in a hypothetical negotiation. Evidence relying on the 25 percent rule of thumb is thus inadmissible under *Daubert* and the Federal Rules of Evidence, because it fails to tie a reasonable royalty base to the facts of the case at issue." *Id*. at 1315; *see also Douglas Dynamics, LLC v. Buyers Prods. Co.,* 717 F.3d 1336, 1346 (Fed. Cir. 2013) (district court abuses its discretion by applying "the

infamous 25% rule of thumb"); *VirnetX, Inc. v. Cisco Sys.*, 767 F.3d 1308, 1333-34 (Fed. Cir. 2014) (use of Nash Bargaining Solution "is insufficiently tied to the facts of the case, and cannot be supported").

In *Avocent Redmond Corp. v. Rose Elecs.*, No. C06-1711RSL, 2013 U.S. Dist. LEXIS 188286, 2013 WL 8844098, at *5 (W.D. Wash. Mar. 11, 2013), the district court excluded the testimony of a damages expert regarding an adjustment to the value of a settlement agreement based on his own purported experience and statistics based on other cases. The court noted that the "fact that patent holders are successful in only 33% of cases nationwide tells us nothing about the actual or perceived strength of [plaintiff]'s claims as it was negotiating the settlement with" defendant.

Similarly, because Mr. Andrien's opinion is based solely on his purported experience in other cases and not on the required analysis of the case-specific facts underlying the ▮▮▮▮▮▮, it is improper and should be excluded. *See also GPNE Corp. v. Apple, Inc*., 12-cv-02885-LHK, 2014 U.S. Dist. LEXIS 53234, 2014 WL 1494247, at *6 (N.D. Cal. Apr. 16, 2014) ("Apple cannot cross-examine Mr. Dansky on his assertions, all of which fundamentally reduce to taking his opinion based on 30 years of experience for granted.").

### 1.1.3 *Mr. Andrien improperly discounted the value of the ▮▮▮▮▮▮ based on non-asserted claims and used his faulty assumptions to offset the necessary upward adjustment due to litigation risks that he failed to even attempt to quantify.*

Mr. Andrien committed another methodological error in simply concluding that the necessary upward adjustment of the ▮▮▮▮▮▮ values due to litigation

10

risks[3] (which he failed even to attempt to quantify) would be offset because █████ licensed the entire '021 Patent, whereas not all claims of the '021 Patent are asserted against Dell. Mr. Andrien stated that ████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████████████████████████████ " Ex. A, ¶ 172 & ¶ 139 (opining that ████ ████████████████████████████████████████████ ██████ ").

Mr. Andrien cites no authority supporting this methodology. In fact, courts typically exclude evidence regarding unasserted claims. *See, e.g., Kolcraft Enters. v. Chicco USA, Inc.*, No. 09-CV-03339, 2019 U.S. Dist. LEXIS 151958, at *41-42 (N.D. Ill. Sep. 6, 2019) (evidence regarding unasserted claims excluded); *Ultratec, Inc. v. Sorenson Communs., Inc.*, No. 13-cv-346-bbc, 2014 U.S. Dist. LEXIS 145956, at *7-9 (W.D. Wis. Oct. 8, 2014) ("[D]efendants may not rely on evidence of the IPR proceedings during the damages phase to argue that the patents are entitled to diminished value."). Mr. Andrien's focus on the unasserted claims is also contrary to basic principles of patent law. Federal Circuit "precedent is clear: a patent is infringed if a single claim is infringed." *Grober v. Mako Prods.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012). Mr. Andrien even admitted that he was not aware of any license agreements that did not license an entire patent, as opposed to certain claims.

---

[3] To be clear, both parties to the ████████████ made no representations regarding the validity or enforceability of the '021 patent.

Ex. B, 165 ("███████████████████████████████████

████████████████████████").

In the context of calculating a reasonable royalty based on a hypothetical negotiation, the court in *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2012 U.S. Dist. LEXIS 33619 (N.D. Cal. Mar. 13, 2012), stated the law succinctly:

> The reasonable royalty statute requires that the patentee is awarded 'a reasonable royalty for the use made of the *invention* by the infringer.' 35 U.S.C. 284 (emphasis added). Under current USPTO guidelines, there is a presumption that each issued patent contains only one independent and distinct invention. MPEP 802; *see* 35 U.S.C. 121, 37 C.F.R. 1.141. If each patent covers only one invention, then each claim represents merely different shades of the same invention and it is reasonable to require — in the hypothetical negotiation — that the infringer license the entire patent.

2012 U.S. Dist. LEXIS 33619, at *21-22.

Mr. Andrien also improperly limits the value attributable to a dependent claim solely to the alleged "patented feature" recited in the dependent claim, and excludes all value derived from use of that feature in combination with the elements of the independent claims from which it depends. For example, Mr. Andrien opines as follows regarding claim 3:



12

 *rtion of the additional order-level profit due to the blade enclosures*.

Ex. A, ¶¶ 54-55 (emphasis added). At deposition, Mr. Andrien reiterated this opinion, stating:



Ex. B at 128 (emphasis added). Mr. Andrien also testified that:



*Id.* at 167.

Mr. Andrien's opinion is based on his misunderstanding of apportionment in the reasonable royalty analysis. He admits that dependent claim 3 includes all of the elements of claims 1 and 2 (Ex. A, ¶ 54), but then categorically excludes any value associated with those elements in combination with the additional element recited in claim 3. His opinion that the so-called "conventional elements" of claim 3 are entitled to no weight in his analysis is contrary to established law.

Like the claims at issue in *Astrazeneca,* the asserted claims of the '021 Patent, including claim 3, cover Dell's accused products as a whole and "recite both conventional elements and unconventional elements." 782 F.3d at 1338. Under these circumstances, Mr. Andrien's opinion that the conventional elements of the asserted

claims are entitled to no value in the hypothetical negotiation analysis is incorrect as a matter of law.  As stated by the Federal Circuit:

> In practice, "all inventions are for improvements; all involve the use of earlier knowledge; all stand upon accumulated stores of the past." *Cincinnati Car Co. v. N.Y. Rapid Transit Corp.*, 66 F.2d 592, 593 (2d Cir. 1933). ***Yet it has long been recognized that a patent that combines "old elements" may "give[] the entire value to the combination" if the combination itself constitutes a completely new and marketable article***. *Westinghouse Elec. & Mfg. Co. v. Wagner Elec. & Mfg. Co.*, 225 U.S. 604, 614, 32 S. Ct. 691, 56 L. Ed. 1222, 1912 Dec. Comm'r Pat. 641 (1912) (citing *Hurlbut v. Schillinger*, 130 U.S. 456, 472, 9 S. Ct. 584, 32 L. Ed. 1011, 1889 Dec. Comm'r Pat. 459 (1889)); *see also Seymour v. Osborne*, 78 U.S. 516, 542, 20 L. Ed. 33 (1870) ("Improvements in machines protected by letters patent may also be mentioned, of a much more numerous class, where all the ingredients of the invention are old, and where the invention consists entirely in a new combination of the old ingredients, whereby a new and useful result is obtained, and many of them are of great utility and value, and are just as much entitled to protection as those of any other class.").
>
> ***It is not the case that the value of all conventional elements must be subtracted from the value of the patented invention as a whole when assessing damages***. For a patent that combines 'old elements,' removing the value of all of those elements would mean that nothing would remain. In such cases, ***the question is how much new value is created by the novel combination, beyond the value conferred by the conventional elements alone***.

*Id*. at 1338-1339 (emphasis added).

In *Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp, LLC*, 879 F.3d 1332, 1348-49 (Fed. Cir. 2018), the Court addressed a claim involving an accused lawn mower. Although the alleged novelty of the patent was an improved baffle,  the Court noted that:

14

the asserted claim is, in fact, directed to the lawn mower as a whole…. **It is not the baffle that infringes the claim, but rather the entire accused mower. Thus, claim 1 covers the infringing product as whole, not a single component of a multi-component product**. There is no unpatented or non-infringing feature of the product. Nonetheless, "[w]hen a patent covers the infringing product as a whole, and the claims recite both conventional elements and unconventional elements, the court must determine how to account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone." *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) (citing *Ericsson*, 773 F.3d at 1233). We hold that such apportionment can be done in this case through a thorough and reliable analysis to apportion the royalty rate. We have recognized that one possible way to do this is through a proper analysis of the *Georgia-Pacific* factors. *See id; see also Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970). As we have explained, "the standard *Georgia-Pacific* reasonable royalty analysis takes account of the importance of the inventive contribution in determining the royalty rate that would have emerged from the hypothetical negotiation." *AstraZeneca*, 782 F.3d at 1338.

*Id*. at 1338-39 (emphasis added).

Additionally, Mr. Andrien commits a fatal error of methodology by categorically assigning no value to the conventional elements of the asserted claims because "it is improper to assume that a conventional element cannot be rendered more valuable by its use in combination with an invention." *Astrazeneca, 782* F.3d at 1338. Instead, "the question is how much new value is created by the novel **combination**, beyond the value conferred by the conventional elements alone." *Id*. at 1339 (emphasis added). Courts have uniformly rejected damages opinions, such as Mr. Andrien's, that mechanically disregard conventional elements of a novel

combination and attempt to limit damages solely to the alleged "patented feature" or inventive concept of the claim. For example, in *WesternGeco L.L.C. v. ION Geophysical Corp.*, 913 F.3d 1067 (Fed. Cir. 2019), the Federal Circuit addressed damages on a remand from the Supreme Court. While the case was pending before the Supreme Court, the Federal Circuit, in another case, affirmed a PTAB decision invalidating four of the five asserted claims. *Id*. at 1071. The surviving claim was dependent on an invalidated claim, but the Federal Circuit held that a new trial on damages would *not* be required if the surviving claim "covers technology necessary" for the accused products, notwithstanding the invalidated claims. *Id*. at 1073-1075.

Finally, in attributing value between the asserted and unasserted claims, Mr. Andrien also fails to provide any economic analysis on the value of any particular claim to ███ Mr. Andrien asserts that claims 1 and 2 are the most technically important claims, but cites to no evidence of record that ███ considered those claims to be the most technically important or that any of the licensed ███ products practice only claims 1 and 2, but not claim 3. Additionally, as discussed above, Mr. Andrien conducted no analysis of the underlying litigation to try and determine what value, if any, was assigned to claims 1 and 2 alone in view of any invalidity allegations during the ███ litigation and resulting ████████. It is entirely possible that the parties assigned *no* value to claims 1 and 2 standing alone during the negotiation of the agreement—Mr. Andrien, having conducted no analysis on this point, would not know—and that Mr. Andrien is relying on claims that had no value during settlement

16

discussions to offset the premiums for the presumption of validity and infringement in the hypothetical negotiation. Mr. Andrien fails to provide any economic reasoning for his conclusions. Indeed, because ▮ had developed invalidity evidence that was almost identical to that developed by Dell in the IPR (each using the same expert, after all), it is more likely than not that little, if any, monetary compensation was based on the now invalidated claims. *Compare* Ex. C *with* Ex. D.

Mr. Andrien did no analysis of the facts and circumstances underlying the ▮ litigation and settlement and failed to conduct *any* analysis regarding how ▮ valued the various claims of the '021 Patent. Even though he opined that claims 1 and 2 are more valuable than the other claims, he did no analysis to determine whether any of ▮ licensed products practiced only the elements of claims 1 and 2, without also practicing claim 3.[4] There is therefore no "factual predicate" for his conclusion regarding the relative value of the claims of the '021 Patent in the context of the ▮ ▮. Because Mr. Andrien's methodology is fundamentally flawed and inconsistent with clear precedent, his opinions should be excluded under *Daubert*.

Numerous district court cases have excluded damages opinions like Mr. Andrien's that purport to diminish the value of previous licenses to the patent-in-suit due to the later invalidation or narrowing of the claims, particularly in the absence

---

[4] When confronted at deposition with the omission of any analysis of ▮ use of the '021 Patent in his Report, Mr. Andrien attempted to explain himself with reference to a summary of ***Dell's*** margins. Ex. B, 172-174 (referencing Ex. A, Schedule 4.2).

of any assessment of whether the previous licenses would have been affected by the narrowing. For example, *MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-cv-03657-SI, 2019 U.S. Dist. LEXIS 111756 (N.D. Cal. July 3, 2019), the district court granted a *Daubert* motion directed to testimony that previous licenses to the patent-in-suit were rendered less valuable by a subsequent reexamination and claim construction that narrowed the scope of the claims.[5] The court granted the motion, holding that the expert:

> may not testify that the '571 patent is less valuable now than at the time the Hynix, Toshiba and Samsung licenses were entered into because, as far as the Court is aware, there is no factual predicate regarding what Hynix, Toshiba and Samsung (or any other licensee) understood about the scope of the '571 patent (or any other patent in the licensed portfolio), nor is there any evidence about the actual products that were covered by the licenses, including whether any products [would have been outside the scope of the claims due to the narrowed claim construction].

2019 U.S. Dist. LEXIS 111756, at *3-5.

Similarly, in *ThinkOptics, Inc. v. Nintendo of Am., Inc.*, No. 6:11-CV-455, 2014 U.S. Dist. LEXIS 84530, at *3-4, *7-9 (E.D. Tex. June 21, 2014), the court granted a *Daubert* motion to exclude a damages report submitted by the defendant that, like Mr. Andrien's report, did not attribute any value to claim elements that the expert opined were outside the "inventive aspect" of the asserted patents. The

---

[5] Mr. Andrien failed to—and did not even attempt to—assess the claim constructions applied in the ▮▮▮ litigation, or the resulting scope of the claims, deeming them "▮▮ ▮▮▮▮ to his analysis. *See* Ex. B at 166-172.

defendant argued that "the royalty base should only include products accused of infringing the 'inventive' aspects of the asserted patents [and that the expert's] report properly excludes revenue associated with components alleged to infringe claimed elements that the patentee did not invent." 2014 U.S. Dist. LEXIS 84530, at *7. The court deemed that position unsupported and excluded the report:

> Since the royalty base in [the] report excludes the value of claimed elements, it does not 'carefully tie proof of damages to the claimed invention's footprint in the market place.' *See LaserDynamics*, 694 F.3d at 67. Nor does it attempt to 'award the claimant damages adequate to compensate for infringement . . . for the use made of the invention by infringer . . . .' *See* 35 U.S.C. § 284. In order to do so, [the] royalty base must include the value of all claimed elements.

*Id*. at *7-9.

Likewise, in *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 76 F. Supp. 3d 806 (W.D. Wis. 2014), the court cited *ThinkOptics* in rejecting the defendant's attempt to isolate damages for a claimed snowplow assembly only to one part of the claim (the linkage mechanism), which the defendant characterized as the "heart of the invention."  In rejecting the defendant's argument, the court stated:

> Whether or not the linkage mechanism is the 'heart of the invention,' the '700 patent is not *only* directed at that mechanism. On the contrary, the patent protects a snowplow assembly that is not only easy to attach and detach, but also retains other desirable characteristics by virtue of the arrangement of its other parts. For instance, the entirety of the assembly can be removed as a single unit, leaving nothing behind on the vehicle, and the A-frame remains upwardly pivotable to allow the user to stack snow. (*See* '700 patent, 1:16-2:27.) The linkage mechanism, *combined* with the rest of the assembly in a particular way,

19

creates an improved snowplow assembly -- and it is Buyers' improved snowplow assemblies, as a whole, that infringe the claims.

*Id*. at 817-18.

All of the asserted claims of the '021 Patent are directed to an entire "computer network appliance" and Mr. Andrien's exclusion of any value associated with claim elements that he deems conventional does not comport with precedent. Because Mr. Andrien's methodology for discounting the value of the ███████ due to unasserted claims is contrary to law and not supported by any economic reasoning, it cannot be used to offset his failure to assess the upward adjustment to the ██ ███████t mandated by the litigation risks. Methodological errors do not offset.

### 1.1.4  *Mr. Andrien did not attempt to quantify his opinion that the value of the ███████ should be discounted due to non-asserted claims.*

Although Mr. Andrien's assumption that the value of the ███████ should be discounted due to unasserted claims is legally incorrect, he made still another error by failing to even attempt to quantify the amount of such diminished value. Mr. Andrien opined that ██ paid more for the settlement because it included all claims of the '021 Patent, while only the asserted claims should be included in the hypothetical negotiation with Dell. But his report made no attempt to quantify the amount of the ███████ attributable to claims not asserted against Dell. Instead, he merely opined that the diminished value of the unasserted claims offset the increased value that should be attributed to the ███████ in the hypothetical negotiation due to his unquantified litigation risks. Ex. A, ¶¶ 140, 172.

Apparently realizing his mistake, he attempted to quantify the amount in his

deposition, but his testimony is not supported by any reference to the ▮ litigation. Instead, he attempts to justify his diminishment of the value of the ▮▮▮ with reference to an exhibit reflecting *Dell's* accused sales. Ex. B at 172-174 (referencing Ex. A, Schedule 4.8). But since Schedule 4.8 is, in fact, a schedule directed to *Dell's* accused sales, it is not applicable to the ▮▮▮ent. Thus, Mr. Andrien's discounting of the value of the ▮▮▮ based on unasserted claims 1 and 2 is not supported by any facts, evidence, or economic analysis whatsoever regarding the value that ▮ actually placed on claims 1 and 2.

With no evidence quantifying either the upward adjustment of the ▮ ▮▮▮ due to litigation risks, or the alleged downward adjustment of the value of the ▮▮▮ in the context of the Dell hypothetical negotiation due to non-asserted claims, Mr. Andrien offers a purely speculative conclusion that the two undetermined amounts at least offset each other. Ex. A, ¶ 172. Mr. Andrien's *ipse dixit* conclusion must be excluded. *See GE v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L. Ed. 2d 508 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."); *Daubert*, 509 U.S. at 593 ("a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be … tested").

## 1.2 Mr. Andrien's Other "Market Approach" Conclusions are Equally Divorced from Economic Analysis

Mr. Andrien's "Market Approach" conclusions regarding agreements that do

not involve the '021 Patent are equally flawed.

Mr. Andrien opines that the settlement between ██████████ for technology he characterizes as similar is a relevant data point, but again fails to calculate any adjustments to that agreement for the assumptions of validity and infringement. Ex., A, ¶¶ 149-151, 166. For the same general reasons set forth above, this opinion must be excluded for lack of sufficient economic connection to the hypothetical negotiation.

Mr. Andrien also opines that a ratio of ██████████ can be used to calculate the appropriate ratio of ██████████ related to the '021 Patent. Ex. A, ¶¶ 152-160, 166, 168-171. As above, Mr. Andrien performed absolutely no analysis of the underlying litigation leading to the ████ ████, performed no economic analysis of the value of the assumption of validity and infringement in the ████ litigation, and made no adjustments to ████ ████ with Acceleron to account for the assumption of validity and infringement prior to applying the settlement ratio suggested by the ██████. *Id.* Rather, he again improperly relies on his notion that the value of the assumptions of validity and infringement can be offset against the value of any invalidated claims. *Id.*, ¶ 171. Mr. Andrien also asserted that his analysis of the ██████ was "██████ ████████████████████████ ██" Ex. A, ¶ 140.

Finally, Mr. Andrien fails to consider the extent to which Dell has used the

technology licensed in the ███████████████████, nor can he, when Dell itself is unable to confirm which (if any) of its products make use of the inventions licensed in those agreements. The fact that the Federal Circuit has repeatedly rejected expert reliance on license agreements when there is no basis to compare the actual value of those licenses to the case at hand presents yet another reason to exclude Mr. Andrien's "Market Approach" analysis. *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009) (stating "some basis for comparison must exist in the evidence"); *Wordtech Sys. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (theory averaging prior licenses flawed if they "provide no basis for comparison with INSC's infringing sales"). Divorced from any evidence or economic analysis connected to the actual hypothetical negotiation, these opinions must also be excluded.

### 1.3    All of Mr. Andrien's "Market Approach" opinions should be excluded

For the reasons set forth above, all of the conclusions in Mr. Andrien's "Market Approach" are derived from improper methodologies and divorced from any reliable economic reasoning and must therefore be excluded.

### 2.    MR. ANDRIEN'S "INCOME APPROACH" IS FATALLY FLAWED BECAUSE IT VALUES COMPONENTS OF THE ASSERTED CLAIMS IN ISOLATION AND ASSIGNS NO VALUE TO THE CLAIMED COMBINATION

Mr. Andrien's analysis under his "Income Approach" mirrors the errors of methodology discussed above in the context of his "Market Approach." Instead of following the appropriate methodology to value the inventive contribution of the

asserted claims of the '021 Patent under *Georgia-Pacific*, Mr. Andrien simply excludes all conventional elements and isolates his analysis of the *Georgia-Pacific* factors to only what he characterizes as the "salable components"—*i.e.*, he assigns no value to the claimed **combination** as a whole, but instead simply excludes the value of the claimed conventional components of the combination from his analysis. *See* Ex. A, ¶¶ 183, 190 and Fig. 6.

But as in *Exmark*, the claims cover Dell's accused products as a whole, not isolated components, and there is no evidence of record that the individual "salable components" identified by Mr. Andrien are salable at all except for use in the patented combination of the asserted claims of the '021 Patent. *See, e.g.,* Ex. A, ¶ 194

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████."); *Exmark*, 879 F.3d at 1348-49.

For example, with respect to claim 3, Mr. Andrien assigns value solely to the blade enclosures (*i.e.*, caddies) and not to any other elements of the claim. *Id*. at Fig. 6. But there is no evidence that any of Dell's blade server products lack blade enclosures *(i.e.*, caddies), and Mr. Andrien's Report does not list any alleged Dell systems practicing only claims 1 and 2, but not claim 3, as alleged non-infringing alternatives. Ex. A, ¶ 177. To the contrary, the undisputed evidence of record illustrates that all of the Dell accused products include each element of claim 3, including but not limited to the "caddies providing air flow from the front to the rear

of the chassis." Dell's Rule 30(b)(6) deposition confirmed that ██████████ ██████████████████████████████████████████████████████ Ex. E, Dell Rule 30(b)(6) Depo. (Shawn Dube), February 25, 2019, 35-36. Because none of Dell's blade server products practice only claims 1 and 2, without also practicing claim 3, the invalidation of claims 1 and 2 in the IPR does not support Mr. Andrien's wholesale limitation of the value of claim 3 of the '021 Patent solely to the value of the caddies in isolation from the other elements of the claimed combination.

The same reasoning applies to each asserted claim: Mr. Andrien fails to identify *any* alleged non-infringing alternatives that include only the conventional elements of the claims but lack what he calls the "salable components" of the asserted claims. *Cf.* Ex. A, ¶ 177 (discussing alleged non-infringing alternatives).[6] His "Income Approach" is therefore based on fatally flawed methodology and must be excluded. *See Astrazeneca, 782* F.3d at 1338-39 ("[I]t is improper to assume that a conventional element cannot be rendered more valuable by its use in combination with an invention…. [T]he question is how much new value is created by the novel *combination*, beyond the value conferred by the conventional elements alone.") (emphasis added).

Because Mr. Andrien's "Income Approach" is based upon improper methodology, it should be excluded under *Daubert*.

---

[6] Notably, Mr. Andrien's discussion of alleged non-infringing alternatives in his "Cost Approach" does not cite any alleged alternative blade server products that omit any of his alleged "salable components." Ex. A, ¶ 177.

Respectfully submitted this 21st day of April, 2020.

*s/ Wesley A. Roberts*

N. Andrew Crain
Georgia Bar No. 193081
*andrew.crain@thomashorstemeyer.com*
Dan R. Gresham
Georgia Bar No. 310280
*dan.gresham@thomashorstemeyer.com*
Eric Maurer
Georgia Bar No. 478199
*eric.maurer@thomashorstemeyer.com*
Robert D. Gravois
Georgia Bar No. 600183
*robert.gravois@thomashorstemeyer.com*
Wesley A. Roberts
Georgia Bar No. 867277
*wesley.roberts@thomashorstemeyer.com*
**THOMAS | HORSTEMEYER, LLP**
3200 Windy Hill Rd SE
Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Plaintiff Acceleron, LLC*

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

The undersigned hereby certifies that the foregoing was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

*s/ Wesley A. Roberts*
Wesley A. Roberts
Georgia Bar No. 867277
*Attorney for Plaintiff Acceleron, LLC*

27

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ACCELERON, LLC, | Civil Action File No. |
|        Plaintiff, | 1:12-CV-04123-TCB |
|   v. | |
| DELL, INC., | |
|        Defendant. | |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21st, 2020, the foregoing was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

                           *s/ Wesley A. Roberts*
                           Wesley A. Roberts
                           Georgia Bar No. 867277
                           *Attorney for Plaintiff Acceleron, LLC*