# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| ACCELERON, LLC, | Civil Action File No. |
| Plaintiff, | 1:12-CV-04123-TCB |
| v. | |
| DELL, INC., | |
| Defendant. | |

## BRIEF IN SUPPORT OF ACCELERON, LLC'S MOTION TO EXCLUDE
## <u>SELECT OPINIONS OF DR. WILLIAM MICHALSON</u>

# TABLE OF CONTENTS

1.   APPLICABLE LEGAL PRINCIPLES ............................................................1

     1.1.   Opinions that Contradict or Disregard a Court's Claim
            Constructions are Inadmissible. ..........................................................2

     1.2.   Obviousness Opinions that Fail to Account for the Motivation-
            to-Combine/modify or Expectation-of-success Inquiries are
            Inadmissible.........................................................................................2

2.   CERTAIN INVALIDITY OPINIONS OF DR. MICHALSON ARE
     INADMISSIBLE ......................................................................................3

     2.1.   Dr. Michalson's Obviousness Opinions for Claim 3 that Fail to
            Account for the Motivation-to-Combine/Modify Requirement
            are Inadmissible...................................................................................3

            2.1.1.  Opinions on the combination of Hipp and Ketris rendering
                    obvious claim 3 are inadmissible because the Court has
                    already stricken related portions of Dr. Michalson's report. ......3

            2.1.2.  Opinions on the combination of Hipp and RLX rendering
                    obvious claim 3 are inadmissible because the Court has
                    already stricken related portions of Dr. Michalson's report. ......4

            2.1.3.  Opinions on the combination of Ketris and Tavallaei
                    rendering obvious claim 3 are inadmissible because the
                    Court has already stricken related portions of Dr.
                    Michalson's report. ...................................................................5

            2.1.4.  Opinions on the combination of Ketris and Jackson
                    rendering obvious claim 3 are inadmissible because the
                    Court has already stricken related portions of Dr.
                    Michalson's report. ...................................................................5

            2.1.5.  Opinions on Ketris alone rendering obvious claim 3 are
                    inadmissible for lack of any motivation-to-modify
                    analysis....................................................................................8

2.2.   Dr. Michalson's Obviousness Opinions for Claim 3 Are Also Inadmissible for Failing to Account for the Expectation-of-Success Requirement..........................................................................10

    2.2.1.  Opinions on Hipp and Ketris rendering obvious claim 3 are also inadmissible for lack of any expectation-of-success analysis.............................................................10

    2.2.2.  Opinions on Hipp and RLX rendering obvious claim 3 are also inadmissible for lack of any expectation-of-success analysis.............................................................11

    2.2.3.  Opinions on Ketris and Tavallaei rendering obvious claim 3 are also inadmissible for lack of any expectation-of-success analysis....................................................11

    2.2.4.  Opinions on Ketris and Jackson rendering obvious claim 3 are also inadmissible for lack of any expectation-of-success analysis.............................................................12

    2.2.5.  Opinions on Ketris alone rendering obvious claim 3 are also inadmissible for lack of any expectation-of-success analysis.............................................................12

2.3.   Dr. Michalson's Opinions on the Version of the Ketris Switch Blade Allegedly Demonstrated at the N+I Tradeshow Are Inadmissible for Being Unreliably Speculative. ................................13

2.4.   Dr. Michalson's Opinions on Airflow in the Ketris 9000 System Fail to Comply with his own Standard for Methodology. .................18

3.   CERTAIN NON-INFRINGEMENT OPINIONS OF DR. MICHALSON ARE INADMISSIBLE .......................................................................... 19

3.1.   Opinions regarding the MX7000 System Allegedly Lacking "at least one Backplane Board [that] Interconnects Each of the CPU Modules … such that … the at least one Ethernet Switch Module Can Be Used as a Shared Resource," as Recited in Claim 1, Are Inadmissible.......................................................................19

3.2. Opinions regarding the MX7000 Allegedly Lacking "a Backplane Board Having a Plurality of Hot Swap Mating Connectors," as Recited in Claim 24, Are Inadmissible....................20

3.3. Dr. Michalson's Opinions regarding the Accused Caddies Are Inadmissible............................................................................22

3.4. Dr. Michalson's Opinions regarding the Accused Filtering of Dell's Switch I/O Modules are Inadmissible. .....................................23

3.5. Dr. Michalson's Opinions regarding the Hot-Swappability of the VRTX System's I/O Modules Are Inadmissible. ...............................24

4. CONCLUSION.........................................................................25

# TABLE OF AUTHORITIES

## Cases

*Arctic Cat Inc. v. Bombardier Rec. Prods.*,
  876 F.3d 1350 (Fed. Cir. 2017)..........................................................................10

*Arendi S.A.R.L. v. Apple Inc.*,
  832 F.3d 1355 (Fed. Cir. 2016)............................................................................7

*Arista Records LLC v. Usenet.com, Inc.*,
  608 F. Supp. 2d 409 (S.D.N.Y. 2009)................................................................17

*Barry v. Medtronic, Inc.*,
  No. 1:14-cv-104, 2016 U.S. Dist. LEXIS 187030 (E.D. Tex. Aug. 5, 2016)........2

*Cytologix Corp. v. Ventana Med. Sys.*,
  424 F.3d 1168 (Fed. Cir. 2005)..........................................................................23

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ..................................................................................... 1, 16

*EMC Corp. v. Pure Storage, Inc.*,
  154 F. Supp. 3d 81 (D. Del. 2016)........................................................................2

*Endo Pharm., Inc. v. Actavis LLC*,
  922 F.3d 1365 (Fed. Cir. 2019)............................................................................2

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009)............................................................................2

*In re Stepan Co.*,
  868 F.3d 1342 (Fed. Cir. 2017)..........................................................................10

*In re Van Os*,
  844 F.3d 1359 (Fed. Cir. 2017)............................................................................7

*Innogenetics, N.V. v. Abbott Labs.*,

iv

512 F.3d 1363 (Fed. Cir. 2008)....................................................................3, 8

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*,
   821 F.3d 1359 (Fed. Cir. 2016)..............................................................10

*InTouch Techs., Inc. v. VGo Communs., Inc.*,
   751 F.3d 1327 (Fed. Cir. 2014)................................................................9

*KSR Int'l Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007) ......................................................................... 2, 7, 9

*Kuhmo Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) .................................................................................1

*Markman v. Westview Instruments*,
   517 U.S. 370 (1996) .................................................................................2

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995)..................................................................23

*Mintz v. Dietz & Watson*,
   679 F.3d 1372 (Fed. Cir. 2012)................................................................7

*Monsanto Tech. LLC v. E.I. DuPont De Nemours & Co.*,
   878 F.3d 1336 (Fed. Cir. 2018)................................................................8

*Orthoflex, Inc. v. ThermoTek, Inc.*,
   986 F. Supp. 2d 776 (N.D. Tex. 2013) ...................................................17

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..............................................................24

*Realtime Data, LLC v. Iancu*,
   912 F.3d 1368 (Fed. Cir. 2019)................................................................8

*United States v. Frazier*,
   387 F.3d 1244 (11th Cir. 2004) ...............................................................1

**Rules**

FED. R. CIV. P. 26 ............................................................................................ 9, 13

FED. R. CIV. P. 37 ................................................................................................. 4

FED. R. EVID. 702 ................................................................................................. 1

Certain opinions of Dell's technical expert, Dr. William Michalson, Ph.D., are inadmissible under *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702 for being based on unreliable methodology. For example, because the Court has already stricken portions of Dr. Michalson's non-obviousness reports for containing untimely motivations-to-combine opinions not previously disclosed in Dell's invalidity contentions, any such testimony related to those stricken opinions should also naturally be excluded at trial. As another example, non-infringement opinions of Dr. Michalson contradict the Court's claim constructions and the plain language in claim terms that were not explicitly construed. These examples along with other instances described below support the select exclusion of Dr. Michalson's testimony at trial.

## 1.   APPLICABLE LEGAL PRINCIPLES

District courts are tasked with the critical "gatekeeping" function concerning the admissibility of expert testimony. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert* and *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137 (1999)). This function requires the Court to conduct an "exacting analysis of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702." *Frazier*, 387 F.3d at 1260 (quotation marks omitted). Dell, as the proponent of Dr. Michalson's testimony, bears the burden of establishing the admissibility of his opinions. *Id.*

### 1.1. Opinions that Contradict or Disregard a Court's Claim Constructions are Inadmissible.

Claim construction "is exclusively within the province of the court." *Markman v. Westview Instruments*, 517 U.S. 370, 372 (1996). "No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). "As expert testimony inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact, it should be excluded under the *Daubert* standard." *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 109 (D. Del. 2016) (quotation marks omitted); *see Barry v. Medtronic, Inc.*, No. 1:14-cv-104, 2016 U.S. Dist. LEXIS 187030, at *10 (E.D. Tex. Aug. 5, 2016) ("An expert cannot offer an opinion that contradicts or disregards a court's claim construction rulings.") (quotation marks omitted).

### 1.2. Obviousness Opinions that Fail to Account for the Motivation-to-Combine/Modify or Expectation-of-Success Inquiries are Inadmissible.

"[A] patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). Instead, an obviousness determination "requires finding that a [PHOSITA] would have been motivated to combine or modify the teachings in the prior art and would have had a reasonable expectation of success in doing so." *Endo Pharm., Inc. v. Actavis LLC*, 922 F.3d 1365, 1373 (Fed. Cir. 2019) (alteration in original)). Thus, expert testimony that fails to account for the motivation-to-combine/modify or expectation-of-success inquires

is unreliable and inadmissible under *Daubert*. *See Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1373-74 (Fed. Cir. 2008) (affirming exclusion of expert's obviousness testimony because it "did not offer any motivation for one skilled in the art to combine the particular references he cites"). Plus, vague or conclusory testimony on these inquiries is not admissible, as it "would not [be] helpful to a lay jury in avoiding the pitfalls of hindsight that belie a determination of obviousness." *Id.* at 1373.

2.   **CERTAIN INVALIDITY OPINIONS OF DR. MICHALSON ARE INADMISSIBLE**

  2.1.   **Dr. Michalson's Obviousness Opinions for Claim 3 that Fail to Account for the Motivation-to-Combine/Modify Requirement Are Inadmissible.**

  2.1.1. *Opinions on the combination of Hipp and Ketris rendering obvious claim 3 are inadmissible because the Court has already stricken related portions of Dr. Michalson's report.*

With respect to Dell's obviousness challenge to claim 3 based on the combination of Hipp and Ketris, the entirety of Dr. Michalson's motivation-to-combine opinions are contained within paragraphs 243-244 of his initial invalidity report [Doc. 251-3] and paragraph 127 of his rebuttal invalidity report [Doc. 252-1]. However, the Court has stricken all of those paragraphs due to Dr. Michalson raising motivations-to-combine that were not permissible under its Order [Doc. 238] regarding the obviousness challenges permitted in this case.[1] Doc. 477 at 6-7, 15.

---

[1] The Court issued its Order [Doc. 238] regarding the obviousness challenges permitted in its case after finding that Dell's invalidity contentions "did not comply with the local patent rule at all in what they provided." Doc. 251-2 at 19:16-18.

Therefore, Dr. Michalson cannot offer opinions regarding any alleged motivation-to-combine Hipp and Ketris with respect to claim 3. *See* FED. R. CIV. P. 37(c)(1) (precluding expert testimony not disclosed in the expert's reports). As such, that means any additional obviousness testimony that Dr. Michalson might offer on this combination would necessarily be deficient and based on fatally flawed and incomplete methodology. As such, Dr. Michalson's opinions regarding this obviousness combination are appropriately inadmissible.

### 2.1.2. *Opinions on the combination of Hipp and RLX rendering obvious claim 3 are inadmissible because the Court has already stricken related portions of Dr. Michalson's report.*

With respect to Dell's obviousness challenge to claim 3 based on the combination of Hipp and RLX, the entirety of Dr. Michalson's motivation-to-combine opinions are contained within paragraphs 253 and 255 of his initial invalidity report [Doc. 251-3]. Dr. Michalson does not offer opinions with respect to an alleged motivation to combine Hipp and RLX in his rebuttal invalidity report. *See* Doc. 252-1 at ¶¶ 129-145 (section IV.B.4 addressing Hipp and RLX).

The Court has already found that Dr. Michalson failed to comply with the Court's Order [Doc. 238] regarding the motivations-to-combine permitted to be raised in this case and has stricken paragraphs 253 and 255 of Dr. Michalson's initial invalidity report. Doc. 477 at 6-7. As such, any remaining opinions Dr. Michalson might express at trial regarding this obviousness challenge would necessarily be incomplete, flawed, unreliable, and unhelpful to the jury for lacking evidence of a

motivation-to-combine. Thus, Dr. Michalson's opinions for Dell's challenge to claim 3 based on Hipp and RLX are appropriately inadmissible.

### 2.1.3. Opinions on the combination of Ketris and Tavallaei rendering obvious claim 3 are inadmissible because the Court has already stricken related portions of Dr. Michalson's report.

For Dell's obviousness challenge to claim 3 based on Ketris and Tavallaei, Dr. Michalson's motivation-to-combine opinions are contained within paragraph 269 of his initial invalidity report [Doc. 251-3], which has also been stricken by the Court as raising an improper motivation-to-combine under its prior Order [Doc. 238]. Doc. 477 at 6-7. Dr. Michalson also does not opine on a motivation-to-combine in his rebuttal invalidity report for this combination of references. *See* Doc. 252-1 at ¶¶ 161-164 (addressing Ketris and Tavallaei).

As Dr. Michalson's opinions on Ketris and Tavallaei for claim 3 lack any admissible motivation-to-combine evidence, any other opinions that he might express at trial for this obviousness challenge would necessarily be flawed, incomplete, unreliable, and unhelpful. Thus, Dr. Michalson's opinions for Dell's challenge to claim 3 based on Ketris and Tavallaei are appropriately inadmissible.

### 2.1.4. Opinions on the combination of Ketris and Jackson rendering obvious claim 3 are inadmissible because the Court has already stricken related portions of Dr. Michalson's report.

With respect to Dell's obviousness challenge to claim 3 in view of Ketris and Jackson, the only paragraphs in Dr. Michalson's initial invalidity report that address a motivation-to-combine are paragraphs 261 and 263. *See* Doc. 251-3 at ¶¶ 261, 263.

Yet the Court has stricken those two paragraphs due to Dr. Michalson failing to comply with the Court's Order [Doc. 238] and raising motivations-to-combine that were not permitted in this case. Doc. 477 at 6-7. As such, Dr. Michalson cannot testify at trial to the opinions contained in those paragraphs (*i.e.,* 261 & 263).

> In his rebuttal report, Dr. Michalson asserts the following:
>
> It is my understanding that a motivation to combine may exist if, for example, the prior art references are directed to addressing problems of common nature, or based on common sense, and/or ordinary creativity. My Invalidity Report sets forth benefits of the blade carrier structure of Jackson that would have motivated a person of ordinary skill in the art to implement these structures with the Ketris Server Blades, Ethernet Switch Blades, and/or power supplies. My Invalidity Report also references the structural similarities between the disclosure of Jackson and the structure of the Ketris Server Blades, and notes that carriers for a module already existed in the Ketris System. Thus, it is my opinion that a person of ordinary skill in the art would have been motivated to combine the Jackson carrier structures with the Ketris Server Blade, the Switch Blade, and the power supplies.

Doc. 252-1 at ¶ 155. Dr. Michalson offers no further explanation as to why one of ordinary skill would have allegedly been motivated to combine Ketris and Jackson but instead only offers blanket conclusions that provide no substance.[2]

Dr. Michalson's conclusory opinions regarding alleged motivations to combine Ketris and Jackson mimic the types of statements that the Federal Circuit has repeatedly found to be deficient to support an obviousness finding. "Since *KSR*,

---

[2] The Court found paragraph 155 of Dr. Michalson's rebuttal invalidity report to be supported by paragraphs 259-60 of his initial report. Doc. 477 at 16. However, Paragraphs 259-60 of Dr. Michalson's initial report, upon inspection, offer no insight as to the basis for Dr. Michalson's motivation-to-combine opinions.

we have repeatedly explained that obviousness findings grounded in 'common sense' must contain *explicit* and *clear* reasoning providing some rational underpinning why common sense compels a finding of obviousness." *In re Van Os*, 844 F.3d 1359, 1361 (Fed. Cir. 2017) (quotation marks omitted).[3] Upon inspection and evaluation, Dr. Michalson's statements in paragraph 155 of his rebuttal invalidity report (quoted above) are actually "no different than merely stating the combination 'would have been obvious.' Such a conclusory assertion with no explanation is inadequate to support a finding that there would have been a motivation to combine." *Id.*; *see also Arendi S.A.R.L. v. Apple*, 832 F.3d 1355, 1362 (Fed. Cir. 2016) ("[R]eferences to 'common sense' … cannot be used as a wholesale substitute for reasoned analysis and evidentiary support … ."); *Mintz v. Dietz & Watson*, 679 F.3d 1372, 1377 (Fed. Cir. 2012) ("The mere recitation of the words 'common sense' without any support adds nothing to the obviousness equation.").

Dr. Michalson's opinions for this obviousness challenge are conclusory and reflect a failure to conduct a legitimate inquiry into a motivation-to-combine these references. For example, Dr. Michalson fails to identify any known deficiencies in Ketris and explain why a POSITA would have looked specifically to the teachings of Jackson to solve those problems. *See KSR*, 550 U.S. at 420 ("any need or problem known in the field of endeavor at the time of invention and addressed by the patent can provide a reason for combining the elements in the manner claimed"). As such,

---

[3] All emphases in this brief have been added herein, unless indicated otherwise.

Dr. Michalson's opinions on this invalidity challenge are appropriately inadmissible. *See Innogenetics,* 512 F.3d at 1373-74 (Fed. Cir. 2008) (affirming exclusion of expert's obviousness testimony because it "did not offer any motivation for one skilled in the art to combine the particular references he cites in order to practice the claimed method").

> ### 2.1.5. Opinions on Ketris alone rendering obvious claim 3 are inadmissible for lack of any motivation-to-modify analysis.

While most obviousness challenges involve combining teachings from multiple prior art references, "[t]hough less common, in appropriate circumstances, a patent can be obvious in light of a single prior art reference *if it would have been obvious to modify that reference to arrive at the patented invention.*" *Monsanto Tech. LLC v. E.I. DuPont De Nemours & Co.*, 878 F.3d 1336, 1346-47 (Fed. Cir. 2018) (citations and quotation marks omitted). As such, an obviousness analysis that ignores the motivation-to-modify inquiry is inadmissible for being based on unreliable methodology.[4] *See Innogenetics,* 512 F.3d at 1373-74 (affirming exclusion of expert's obviousness testimony for failure to address motivation-to-combine).

---

[4] Earlier in this case, Dell cited *Realtime Data, LLC v. Iancu*, 912 F.3d 1368 (Fed. Cir. 2019) to assert that there is no motivation-to-combine requirement in a single-reference obviousness challenge. Doc. 277 at 9. Unlike the situation here, *Realtime Data* involved an invalidity challenge where a prior art reference was alleged to disclose all claim elements *without any modification.* 912 F. 3d at 1372-73. Because Dell's single-reference obviousness challenge based on Ketris requires modifying Ketris by adding enclosures to the Server Blades, *Realtime Data* is inapplicable.

Dr. Michalson opines that Ketris renders obvious the missing "caddies" in Ketris because it allegedly would have been obvious to modify Ketris by placing enclosures around its Server Blades. Doc. 251-3 at ¶¶ 231-34. At most, Dr. Michalson suggests that a POSITA *could* have potentially modified Ketris and that the results could have potentially provided benefits. *See id.* at ¶ 232.

But, Dr. Michalson skipped the critical issue of what *would* have served as the *motivation* for a POSITA to attempt to modify Ketris in the first place. *See InTouch Techs., Inc. v. VGo Communs., Inc.*, 751 F.3d 1327, 1352 (Fed. Cir. 2014) (rejecting expert testimony because it "primarily consisted of conclusory references to her belief that one of ordinary skill in the art *could* combine these references, not that they *would* have been motivated to do so" (emphasis in original)). Dr. Michalson fails to identify, for example, any known problems or deficiencies with the unmodified Ketris system that would have served as a motivation to attempt to modify it. *See KSR*, 550 U.S. at 420 (explaining that "any need or problem" can "provide a reason for combining the elements in the manner claimed").

Even after Acceleron's expert explained in his responsive validity report that there was no motivation to modify Ketris (Doc. 264-12 at ¶¶ 130-36), Dr. Michalson again failed in his rebuttal to even allege that there would have been a motivation to modify Ketris in the manner he contends would have been possible.[5] *See* Doc. 252-

---

[5] Even if Dr. Michalson raised a motivation-to-modify in his rebuttal, it would be improper as untimely. *See* FED. R. CIV. P. 26(a)(2)(B)(i) (requiring initial reports to disclose "all opinions" and "the basis and reasons for them").

1 at ¶¶ 82-100. Because Dr. Michalson has failed to address the inquiry as to whether there existed a motivation to modify Ketris to practice the configuration recited in claim 3, Dr. Michalson's opinions that Ketris allegedly renders obvious claim 3 are, therefore, inadmissible for being based on unreliable obviousness methodology.

### 2.2. Dr. Michalson's Obviousness Opinions for Claim 3 Are Also Inadmissible for Failing to Account for the Expectation-of-Success Requirement.

"[W]here a party argues a skilled artisan would have been motivated to combine references, it must show the artisan 'would have had a reasonable expectation of success from doing so.'" *Arctic Cat Inc. v. Bombardier Rec. Prods.*, 876 F.3d 1350, 1360-61 (Fed. Cir. 2017). The motivation-to-combine and expectation-of-success inquiries are "two different legal concepts." *Intelligent Bio-Systems, Inc. v. Illumina Cambridge, Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir. 2016). All obviousness challenges, even those involving only a single asserted reference, must address the expectation-of-success requirement. *In re Stepan Co.*, 868 F.3d 1342, 1346 n.1 (Fed. Cir. 2017).

#### 2.2.1. *Opinions on Hipp and Ketris rendering obvious claim 3 are also inadmissible for lack of any expectation-of-success analysis.*

Dr. Michalson opines in paragraph 244 of his initial invalidity report [Doc. 251-3] that there would have been a reasonable expectation of success in combining Hipp and Ketris. However, the Court has stricken that paragraph of his initial invalidity report because it raised motivations-to-combine that were not permitted in this case. Doc. 477 at 6-7. Because any testimony Dr. Michalson might offer at trial

regarding this combination would be methodologically flawed for lacking admissible evidence of any expectation of success, his remaining incomplete opinions would be unreliable and unhelpful to the jury, thus making them appropriately inadmissible.

### 2.2.2. Opinions on Hipp and RLX rendering obvious claim 3 are also inadmissible for lack of any expectation-of-success analysis.

Dr. Michalson mentions an "expectation of success" when combining Hipp and RLX in only paragraph 255 of his initial invalidity report [Doc. 251-3]. However, the Court has already stricken that paragraph for raising motivations-to-combine that are not permitted in this case. Doc. 477 at 6-7.

Because any testimony Dr. Michalson might offer at trial regarding this combination would be methodologically flawed for omitting the expectation-of-success inquiry, his opinions would be unreliable and unhelpful to the jury. Thus, Dr. Michalson's opinions for this combination are appropriately inadmissible.

### 2.2.3. Opinions on Ketris and Tavallaei rendering obvious claim 3 are also inadmissible for lack of any expectation-of-success analysis.

Dr. Michalson mentions an "expectation of success" when combining Ketris and Tavallaei in only paragraph 269 of his initial invalidity report [Doc. 251-3]. However, the Court has already stricken that paragraph because it raised a motivation-to-combine that was not permitted under the Court's Order [Doc. 238] regarding the obviousness challenges permitted in this case. Doc. 477 at 6-7.

Because any testimony Dr. Michalson might offer at trial regarding this

combination would be methodologically flawed for omitting the expectation-of-success inquiry, his opinions would be unreliable and unhelpful to the jury. Thus, Dr. Michalson's opinions for this combination are appropriately inadmissible.

### 2.2.4. Opinions on Ketris and Jackson rendering obvious claim 3 are also inadmissible for lack of any expectation-of-success analysis.

Only paragraph 263 of Dr. Michalson's initial invalidity report [Doc. 251-3] mentions an "expectation of success" when combining Ketris and Jackson with respect to claim 3. However, just like above, the Court has already stricken that paragraph for raising untimely motivations-to-combine. Doc. 477 at 6-7.[6]

Because any testimony Dr. Michalson might offer at trial regarding this combination would be methodologically flawed for omitting the expectation-of-success inquiry, his opinions would be unreliable and unhelpful to the jury. Thus, Dr. Michalson's opinions for this combination are appropriately inadmissible.

### 2.2.5. Opinions on Ketris alone rendering obvious claim 3 are also inadmissible for lack of any expectation-of-success analysis.

In the four paragraphs Dr. Michalson devoted to Dell's obviousness challenge to claim 3 based on Ketris, *none* of these paragraphs addresses the issue of whether one of ordinary skill in the art would have expected Dr. Michalson's proposed modifications to Ketris (*i.e.* placing individual enclosures around each of the Server Blades) to have been successful. *See* Doc. 251-3 at ¶¶ 231-234. Dr. Michalson fails

---

[6] The Court found paragraph 155 of Dr. Michalson's rebuttal invalidity report supported by paragraphs 259 and 260 of his initial report. Doc. 477 at 15-16. However, *none* of those paragraphs addresses the expectation-of-success inquiry.

to address, for example, whether a POSITA would have reasonably expected that placing individual enclosures around the densely packed, heat generating Server Blades inside the Ketris chassis would successfully result in the configuration of claim 3. This inquiry is critical because, as Acceleron's expert, Mr. Putnam, explained, "one of ordinary skill in the art would not have expected a system with Server Blades surrounded by enclosures to be a viable system due to heat issues that would arise due to the restriction of air flow" because Ketris documentation showed that "the ability of the Ketris 9000 components to get adequate cooling was already a concern … ." Doc. 264-12 at ¶ 134.[7]

In addition to failing to identify a motivation to modify Ketris (as discussed in Section 2.1.5 above), Dr. Michalson's failure to address the critical expectation-of-success inquiry provides another reason why his opinions on Ketris rendering obvious claim 3 are based on unreliable methodology and are, thus, inadmissible.

### 2.3. Dr. Michalson's Opinions on the Version of the Ketris Switch Blade Allegedly Demonstrated at the N+I Tradeshow Are Inadmissible for Being Unreliably Speculative.

In short, Dr. Michalson's opinions regarding the modified "Switch Blade" allegedly used at the Networld Interop show ("N+I Show") are inadmissible because

---

[7] Dr. Michalson also fails to address this issue in his rebuttal invalidity report. *See* Doc. 252-1 at ¶¶ 82-100. But because Dr. Michalson is required to have disclosed his expectation-of-success opinions in his initial invalidity report, only paragraphs from his initial report are addressed herein. *See* FED. R. CIV. P. 26(a)(2)(B)(i) (requiring initial reports to disclose "a complete statement of all opinions … and the bases and reasons for them").

13

there is no actual evidence upon which Dr. Michalson bases his opinions as to the modifications allegedly made to the Switch Blades. Instead, Dr. Michalson merely speculates as to what the modifications might have been based upon the testimony of Dell's paid consultant, who himself did not perform the modifications and cannot inform Dr. Michalson as to the actual modifications made. Thus, Dr. Michalson's opinions about the modified Switch Blade are mere inadmissible speculation.

More specifically, Dell asserts, based on the testimony of one of its paid consultants and former Ziatech employee, David Bottom, that the Switch Blade for an early version of the Ketris 9000 system allegedly demonstrated at the N+I Show constitutes the "ethernet switch module" recited in claims of the '021 Patent. Mr. Bottom testified that just days before the N+I show, Ziatech discovered that the chips for the Switch Blades were incompatible with the circuit boards designed for the chips because the polarities of a group of pins was reversed. *See* Doc. 258 at 4-6; Doc. 257-5 at 357:10-11. Mr. Bottom further testified that because there was no time to design and manufacture new boards for the N+I Show, technicians at Ziatech (but not Mr. Bottom himself) modified the Switch Blades by cutting traces and adding wiring to "reverse[] all the leads" on the boards. Doc. 257-5 at 357:23-24.

There is no testimony from any witness who actually modified the Switch Blades. There is only the testimony of Dell's paid consultant, Mr. Bottom, given about 19 years after the modifications were supposedly made. And as confirmed by Dr. Michalson, the Switch Blades allegedly demonstrated at the N+I show no longer

14

exist, and there are no documents, photographs, schematics, drawings, *etc.* depicting those Switch Blades or the changes that were made to them. *See* Doc. 258-3 at 167:3-4, 145:23-146:9, 169:11-14.

In view of this scant information, Acceleron's expert, William Putnam explains in his Validity Report that, "[a]s described in the '021 Patent, one of the techniques for enabling hot swappability involved having connector pins of varying lengths. Reversing the polarity of at least these connector pins could render an otherwise hot-swappable component unable to be hot-swapped." Doc. 264-12 at ¶ 77. Accordingly, Mr. Putnam opines, "Given that the versions of the Switch Blades allegedly demonstrated at the conference had traces cut and wires added to correct a PCB layout error where the polarity of groups of pins were reversed, it is not clear whether the Switch Blades were capable of being hot swapped." *Id.*

Dr. Michalson was asked at his deposition whether he inspected a version of the Switch Blade that was at the N+I show. Doc. 258-3 at 142:23-25. Dr. Michalson responded: "I did *not* inspect a switch blade that was at the show. I inspected switch blades that had the layout problem with the—with the boards corrected." *Id.* at 143:1-3. Dr. Michalson further confirmed that he formed his opinions by inspecting versions of hardware created only *after* the N+I show:

> Q.      … . It's true, is it not, Dr. Michalson, that *you have not inspected an Ethernet switch blade that was actually demonstrated or used at the Networld Interop show on May 9 through 11 of 2000. Correct?*
> A.      *That's correct.*
> Q.      *You have only analyzed one or more switch blades that have been*

*created sometime after the Networld Interop show of May 2000. Isn't that correct?*

A.      *That would be correct.*

Q.      Do I understand you to be basing your conclusion about the configuration of the Ketris 9000 as of May 9 through 11 of 2000 at the Networld Interop show *based on your analysis of Ethernet switch blades that existed sometime after the Networld Interop show?*

       MS. HEYMAN: Objection; Vague.

A.      *It's based, in part, on my inspection of the hardware that existed after the show, yes.*

*Id.* at 143:7-144:1. Furthermore, when asked if he had ever inspected a Switch Blade that had modifications such as those made to the ones allegedly shown at the N+I show, Dr. Michalson answered: "I did *not* inspect a board that had traces cut and/or wires added to accommodate a layout error with the AMD chips on the switch blade." *Id.* at 145:23-146:9.

Because Dr. Michalson has not inspected a version of the Switch Blade allegedly demonstrated at the N+I show, and because there are no documents, photographs, schematics, drawings, *etc.* depicting those Switch Blades or the changes that were made to get them to allegedly work at the show (*see* Doc. 258-3 at 167:3-4, 145:23-146:9, 169:11-14), Dr. Michalson's opinions regarding the Switch Blades allegedly demonstrated at the show are pure speculation. Because expert testimony based on "subjective belief or unsupported speculation" fails to satisfy the *Daubert* standard, Dr. Michalson's testimony on this issue is inadmissible. *Daubert*, 509 U.S. 590.

In his rebuttal invalidity report, Dr. Michalson asserts that "the only difference between the Ketris 9000 hardware that I inspected and that demonstrated at the

Networld Interop conference is [the] PCB connectivity fix to the Ethernet Switch Blade." Doc. 252-1 at ¶ 22. However, as discussed above, there are no documents, photographs, schematics, *etc.* that depict the changes that were made to the Switch Blades upon which Dr. Michalson could base such speculative opinions. Instead, based entirely on the assertion of Dell's paid consultant, Mr. Bottom, Dr. Michalson claims that the Switch Blade that he inspected is "the same" as the ones allegedly present at the N+I show. *Id.*

However, admission of expert testimony "is premised on an assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. 592. Because Dr. Michalson's opinions on the Switch Blade allegedly at the N+I show are not the product of sound scientific methodology—but instead merely parrot the statements of Dell's paid consultant, Mr. Bottom—they are not admissible as expert testimony. *See Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 429 (S.D.N.Y. 2009) ("An expert who simply repeats the hearsay of the client who retained him, without any independent investigation or analysis, does not assist the trier of fact in understanding matters that require specialized knowledge."); *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 798 (N.D. Tex. 2013) ("Although in forming an independent opinion an expert can rely on information provided by a party's attorney, an expert cannot forgo his own independent analysis and rely exclusively on what an interested party tells him."). Therefore, Dr. Michalson's opinions on the Switch Blade allegedly

shown at the N+I show are inadmissible.

### 2.4. Dr. Michalson's Opinions on Airflow in the Ketris 9000 System Fail to Comply with His Own Standard for Methodology.

Dr. Michalson's opinions with respect to airflow in the Ketris 9000 system are inadmissible because they fail to comply with the methodological standard that Dr. Michalson himself contends is required in order to form reliable opinions on such issues. Specifically, when criticizing opinions by Acceleron's technical expert, Dr. Michalson opines that "determining the precise air flow at a particular location within the chassis or across a component would *require a comprehensive air flow analysis*[.]" Doc. 252-1 at ¶ 66. At his deposition, Dr. Michalson elaborated that "comprehensive airflow analysis" involves performing "a simulation of the airflow" using "finite element analysis." Doc. 258-3 at 192:6-193:1.

When Dr. Michalson was asked whether he performed any comprehensive airflow analysis to form his opinions regarding airflow for the Ketris 9000, Dr. Michalson answered "no," as shown in the following exchange:

> Q.    Did you perform a comprehensive airflow analysis at a particular location within the chassis or across a component of the Ketris 9000?
> A.    *I did not do that with the Ketris 9000, no.*

*Id.* at 193:2-6. Thus, when forming his opinions on airflow for the Ketris 9000, Dr. Michalson failed to perform the very "comprehensive airflow analysis" that Dr. Michalson himself stated is *required* in order to form reliable opinions on this subject. Doc. 252-1 at ¶ 66. Therefore, his opinions on Ketris airflow issues are

unreliable for failing to meet Dr. Michalson's own standard and are, thus, inadmissible.

**3.   CERTAIN NON-INFRINGEMENT OPINIONS OF DR. MICHALSON ARE INADMISSIBLE**

**3.1.   Opinions regarding the MX7000 System Allegedly Lacking "at least one Backplane Board [that] Interconnects Each of the CPU Modules … such that … the at least one Ethernet Switch Module Can Be Used as a Shared Resource," as Recited in Claim 1, Are Inadmissible.**

Claim 1, from which asserted claim 3 depends, recites "at least one backplane board [that] interconnects each of the CPU modules with … the at least one ethernet switch module, such that … the at least one ethernet switch module can be used as a shared resource by the plurality of CPU modules." Doc. 288-1 at 9:10-15. Acceleron alleges that the "main distribution board" and "vertical distribution board" of the accused MX7000 satisfy this element of claim 1 because ████████████ ████████████████████████████ *See* Doc. 263-21 at ¶¶ 768-86.

In paragraphs 204-211 of his non-infringement report, Dr. Michalson opines that this element is not satisfied in the MX7000 because the accused backplane boards allegedly do not ████████████████████████████ ████████████████████████████████████████ Doc. 263-3 at ¶¶ 207-11. However, claim 1 does not require the backplane board(s) to interconnect ████████████████████████████████ as Dr. Michalson contends. Indeed, in ruling on summary judgment, this Court confirmed that no such requirement exists in stating that "[i]t is irrelevant that the network

communications paths do not need to transverse the backplane board so long as the IOMs can be used as a shared resource." Doc. 479 at 13, n.7. As Dr. Michalson's non-infringement opinions on this claim element contradict the plain claim language and the Court's statement "that the network communications paths do not need to transverse the backplane board so long as the IOMs can be used as a shared resource" (*id.*), they should be excluded as being unreliable and unhelpful to the jury.

### 3.2. Opinions regarding the MX7000 Allegedly Lacking "a Backplane Board Having a Plurality of Hot Swap Mating Connectors," as Recited in Claim 24, Are Inadmissible.

Claim 24 recites "a backplane board having a plurality of hot swap mating connectors" but, unlike claim 1, does not recite any language regarding the backplane board interconnecting modules such that they can be used as shared resources. Doc. 288-1 at 10:47-48. The table below illustrates the differences in language in these two independent claims:

| Claim 1 Elements | Claim 24 Elements |
|---|---|
| **[1d]** "a backplane board having a plurality of hot swap mating connectors," | **[24d]** "a backplane board having a plurality of hot swap mating connectors;" |
| **[1e]** "wherein the at least one backplane board interconnects each of the CPU modules with … the at least one ethernet switch module, such that … the at least one ethernet switch module can be used as a shared resource by the plurality of CPU modules." | **[24e]** "wherein each of the CPU module, the power module and the ethernet switch module includes a hot swap connector for connecting with a specific hot swap mating connector for the backplane board;" |

Although claim 24 does not recite the "shared resource" element (**[1e]** above), Dr. Michalson nevertheless opines that the "backplane board" element (**[24d]** above)

is not satisfied in the MX7000 for the *same* reasons he provided for element **[1e]**. Doc. 263-3 at ¶ 386 (referring to Section VIII.A.4, which addresses element 1[e]). That is, Dr. Michalson opines that the "backplane board having a plurality of hot swap mating connectors" element in claim 24 is not satisfied because of his opinion that MX7000's boards do not "interconnect[] each of the CPU modules with … the at least one ethernet switch module, such that … the at least one ethernet switch module can be used as a shared resource by the plurality of CPU modules." *Id.* But, again, claim 24 does not recite the "shared resources" element of claim 1.

Further demonstrating that Dr. Michalson failed to apply the language of claim 24 (and instead applied the different language of claim 1), the heading that precedes Dr. Michalson's opinions on this claim element clearly shows importation of the language of claim 1 into the language of claim 24—which does *not* contain the highlighted language below:

> 3. The PowerEdge MX7000 System Does Not Include "at least one backplane board [that] interconnects each of the CPU modules with . . . the at least one ethernet switch module"

Doc. 263-3 at p. 270. As Dr. Michalson's opinions on the "backplane board" element of claim 24 fail to address the real language of claim 24 but instead apply language from claim 1, his opinions are unreliable and would be unhelpful to the jury.[8]

---

[8] Furthermore, as discussed above, Dr. Michalson's opinions with respect to claim element 1[e] are fundamentally flawed due to his importing limitations that this Court has already said are not present in the language of claim 1. *See supra* § 3.1. For this additional reason, Dr. Michalson's opinions on the "backplane board"

### 3.3.   Dr. Michalson's Opinions regarding the Accused Caddies Are Inadmissible.

The Court construed the term "cadd[y]" (singular) as meaning a 'carrier[] for a module.'" Doc. 182 at 34. Dell argued in its summary judgment briefing that "the 'module' carried by the caddy must be a module recited in Claim 1" and that "the Court should clarify its construction that a 'cadd[y]' is a 'carrier for a hot-swappable module' … ." Doc. 264 at 13. The Court rejected Dell's attempt to re-construe this term and stated that "Acceleron is correct in reading the Court's claim construction for the claimed 'caddies,' which merely requires that the caddy be a carrier for a module." Doc. 479 at 10-11. The Court reaffirmed: "The construction for caddies remains 'carriers for a module.'" *Id.* at 11.

Although Dr. Michalson claims in his non-infringement report that he has applied the Court's construction, Dr. Michalson actually openly defies the Court's Claim Construction Order and substitutes the Court's construction with his own. As highlighted below, Dr. Michalson repeatedly re-construes "caddies" to be limited to a carrier for [1] *only* hot-swappable modules and [2] *only* the specifically enumerated modules of claim 1:



element of claim 24 are inadmissible.

Doc. 263-3 at ¶¶ 162, 225. Since the Court's construction is "carriers for a module," and because the Court expressly rejected the notion that a caddy should be limited to being a carrier for only a module that is hot-swappable and recited in claim 1, as Dr. Michalson opines, Dr. Michalson's opinions improperly contradict the Court's claim construction. Therefore, Dr. Michalson's opinions with respect to whether the Accused Products comprise "caddies" are fundamentally flawed and inadmissible.

### 3.4.    Dr. Michalson's Opinions regarding the Accused Filtering of Dell's Switch I/O Modules Are Inadmissible.

Independent claim 24 recites, "wherein the ethernet switch module filters communications internal and internal to the computer network appliance to limit collisions caused by communications traffic." Doc. 288-1 at 10:53-56. When opining on this element, Dr. Michalson's non-infringement report begins with a section titled "*Interpretation* of 'filter[ing] communications internal and external to the computer network appliance to limit collisions caused by communications traffic" in which he "provide[s] [his] opinion of how a person of ordinary skill in the art during the relevant time period would understand the phrase based on disclosure of the '021 Patent." Doc. 263-3 at p. 271 (¶ 388). But, because "the interpretation of and construction of patent claims … is a matter of law, exclusively for the court," *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, (1996), Dr. Michalson is not permitted to testify before the jury on issues regarding claim interpretation. *See Cytologix Corp. v. Ventana Med. Sys.*, 424 F.3d 1168, 1172 (Fed. Cir. 2005) (finding error in permitting claim

construction testimony at trial). Therefore, Dr. Michalson's opinions on claim interpretation are inadmissible.

Moreover, the reason Dr. Michalson includes a section interpreting the "filters" language in claim 24 is because he needs to deviate from the explicit claim language in the first place in order to rationalize his non-infringement opinions. To that end, Dr. Michalson improperly construes "filters" such that it is limited to *only* discarding packets of data: "Therefore, it is my opinion that 'filtering,' as understood by a person of ordinary skill in the art during the relevant time period, involves discarding packets of data to reduce the number of packets in the system which, in turn, reduces the probability of packet collisions." Doc. 263-3 at ¶ 392.[9] Because Dr. Michalson substitutes his own construction of the "filters" claim language instead of applying the plain and ordinary claim language, his non-infringement opinions are inadmissible for being based on unreliable methodology.

### 3.5.  Dr. Michalson's Opinions regarding the Hot-Swappability of the VRTX System's I/O Modules Are Inadmissible.

Dr. Michalson opines that the I/O modules of the VRTX system are not "hot swappable … module[s]" because ███████████████████████████████████████

---

[9] Not only is it improper for Dr. Michalson to offer claim construction opinions to the jury, but his construction is also fundamentally flawed for limiting the claim language to only embodiments disclosed in the '021 Patent. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) (en banc) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.")

 Doc. 263-3 at ¶ 81. He further opines that  Id. at ¶ 82. Dr. Michalson further opines:  Id. at ¶ 83.

However, the Court's Claim Construction Order clearly states: "the construction of 'hot-swappable … modules' is 'a [module] capable of being added to or removed from the computer network appliance while the computer network appliance is powered on _**or**_ _operational_." Doc. 182 at 13-14. Dr. Michalson indisputably replaces the phrase "_**or**_ operational" in the Court's construction with "_**and**_ operational." Dr. Michalson's clear disregard of the Court's claim construction renders his opinions on the hot-swappability of the VRTX I/O modules appropriately inadmissible.

**4.   CONCLUSION**

For the reasons above, Acceleron respectfully submits that this Motion to Exclude should be granted.

Respectfully submitted this 21st day of April, 2020.

*s/ Robert D. Gravois*
N. Andrew Crain
Georgia Bar No. 193081
*andrew.crain@thomashorstemeyer.com*
Dan R. Gresham
Georgia Bar No. 310280
*dan.gresham@thomashorstemeyer.com*
Eric Maurer
Georgia Bar No. 478199
*eric.maurer@thomashorstemeyer.com*
Robert D. Gravois
Georgia Bar No. 600183
*robert.gravois@thomashorstemeyer.com*
Wesley A. Roberts
Georgia Bar No. 867277
*wesley.roberts@thomashorstemeyer.com*
**THOMAS | HORSTEMEYER, LLP**
3200 Windy Hill Rd SE
Suite 1600E
Atlanta, Georgia 30339
Telephone:  770.933.9500
Facsimile:  770.951.0933

*Attorneys for Plaintiff Acceleron, LLC*

## **LOCAL RULE 7.1D CERTIFICATION**

The undersigned hereby certifies that the foregoing was prepared in Times New Roman 14 point, which is one of the font and point selections approved by the Court under Local Rule 5.1B.

*s/ Robert D. Gravois*

Robert D. Gravois
Georgia Bar No. 600183
*Attorney for Plaintiff Acceleron, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| ACCELERON, LLC,<br>　　　　　　Plaintiff,<br>　v.<br><br>DELL, INC.,<br>　　　　　　Defendant. | Civil Action File No.<br>1:12-CV-04123-TCB |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 21st, 2020, the foregoing was filed using the Court's ECF system, which will automatically send electronic notice of such filing to all attorneys of record.

　*s/ Robert D. Gravois*
Robert D. Gravois
Georgia Bar No. 600183
*Attorney for Plaintiff Acceleron, LLC*

28